UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHNATHAN JOHNSON,

                              Plaintiff,

                                                9:14-CV-0803
v.                                              (BKS/TWD)

JEFF MCKAY, GAIL HAPONIK,
DR. CARL KOENIGSMANN,
JOSEPH BELLINIER,
MAUREEN E. BOLL, BRIAN FISCHER,
DAVID ROCK, THEODORE ZERNIAK,
DONALD UHLER,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JONATHAN JOHNSON, 89-A-1042
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN                        DAVID J. SLEIGHT, ESQ.
Attorney General for the State of New York
Counsel for Defendants
Main Place Tower
350 Main Street, Suite 300A
Buffalo, NY 14202

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**<u>REPORT-RECOMMENDATION and ORDER</u>**

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Johnathan

Johnson alleges that he was deprived of paper and prevented from obtaining video evidence. (Dkt. No. 5). Plaintiff further alleges that Defendants denied him access to the courts and the inmate grievance program at Upstate Correctional Facility. *Id.* Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 2). For the reasons that follow, I recommend that Defendants' motion be granted.

## I.    BACKGROUND

Plaintiff is a frequent litigator who is barred from proceeding *in forma pauperis* in federal court absent a showing of an exception to the Prison Litigation Reform Act's "three-strikes" rule. *See Johnson v. Adams*, No. 9:10-CV-1082 (DNH/DEP), 2012 U.S. Dist. LEXIS 104723, 2012 WL 3052957 (N.D.N.Y. July 5, 2012) (recounting Plaintiff's litigation history).[1]

Plaintiff filed this action in state court on April 16, 2013. (Dkt. No. 5). Plaintiff alleges Special Housing Unit Directive 4933 deprived him of video evidence for a grievance hearing and

---

[1]    Taking judicial notice of Plaintiff's litigation history in federal and state court is appropriate in determining this motion to dismiss. It is "well established that courts may take judicial notice of publicly available documents on a motion to dismiss." *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 208 (S.D.N.Y. 2012). Under Federal Rule of Evidence 201, a court "may take judicial notice on its own" of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)-(c). A court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation. *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."). Courts also may take judicial notice of another court's order to recognize the judicial act the order represents or the litigation subject matter. *See City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1279 (E.D.N.Y. 1995) (*citing United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

access to paper from 2007 through 2013.  *Id.* at 1-3.  Plaintiff alleges that Defendants David

Rock, Donald Uhler, and Theodore Zerniak authorized the deprivation of video evidence and

paper.  *Id.* at 3-4.  Plaintiff states that because he was denied access to paper, he has lost "all

appeals with the Third Department of the Supreme Court of the State of New York."  *Id.* at 4.

Plaintiff alleges that he filed "numerous grievance complaints" regarding the issue, which

Defendants denied.  *Id.* at 3.  Plaintiff alleges that he notified Defendant Brian Fischer about the

alleged denial of access to the courts "to no avail."  *Id.* at 4.

On July 2, 2014, Defendants removed the action to this Court.  (Dkt. No. 1.)  Plaintiff

filed a motion to remand the case to state court.  (Dkt. No. 7.)  On December 9, 2014, the Court

denied Plaintiff's motion to remand.  (Dkt. No. 17.)

Defendants now seek to dismiss the complaint.  (Dkt. No. 2.)  Plaintiff has opposed the

motion.  (Dkt. No. 6.)  Defendants have filed a reply.  (Dkt. No. 9.)

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint on the ground that the complaint fails to

state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In order to state a claim

upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

requirement that a Plaintiff "show" that he or she is entitled to relief means that a complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

*plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint

states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

### A.    Personal Involvement

Plaintiff alleges that Defendants David Rock, Theodore Zerniak, and David Uhler authorized the denial of grievance video tapes and the paper deprivation order that form the basis for this lawsuit. (Dkt. No. 5 at 3-4.) Plaintiff alleges that he filed grievances on numerous occasions about the issues raised in this lawsuit. *Id.* at 3. Plaintiff alleges that Defendants Jeff McKay, Gail Haponik, Carl Koenigsmann, Joseph Bellinier, and Maureen E. Boll were members of the Central Office Review Committee that upheld the actions of which he complains in response to his grievances. *Id.* Plaintiff alleges that he notified Defendant Brian Fischer of the alleged violations that form the basis for this lawsuit. *Id.* at 4. Defendants argue that the

complaint should be dismissed because Plaintiff has not plausibly alleged the personal involvement of any Defendant. (Dkt. No. 2-1 at 2-3.) For the reasons discussed below, this argument is without merit.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a Plaintiff must show some "tangible connection" between the unlawful conduct and the Defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the Defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d

Cir. 1995) (citations omitted).[2]

Here, several of the *Colon* categories apply. First the complaint alleges that Defendants Rock, Uhler, and Zerniak authorized the denial of grievance video tapes and the paper deprivation order. (Dkt. No. 5 at 3-4.) This plausibly suggests that these Defendants directly participated in the alleged violation. Thus, the complaint alleges facts plausibly suggesting personal involvement by Defendants Rock, Uhler, and Zerniak.

Second, the complaint alleges that Defendants McKay, Haponik, Koenigsmann, Bellinier, and Boll served on the committee that responded to grievances that Plaintiff filed about the subject matter of this lawsuit. (Dkt. No. 5 at 3.) Receiving letters of complaint from an inmate and failing to respond is generally insufficient to establish personal involvement. *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009). However, district court decisions in this Circuit have established that

> where a supervisor receives an inmate grievance or other complaint and responds to it, the supervisor may be liable . . . . At first glance, these holdings might seem counter-intuitive, as giving supervisors an incentive to inaction in order to avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of

---

[2] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has . . . engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time. I will assume for the purposes of this motion that *Colon* remains good law.

> inmate complaints and delegate subordinates to handle them. Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.

*Walker v. Pataro*, No. 99 CIV. 4607 (GBD) (AJP), 2002 U.S. Dist. LEXIS 7067, at *42-43, 2002 WL 664040, at *12-13 (S.D.N.Y. Apr. 23, 2002) (internal citations omitted) (collecting and analyzing decisions).[3]

Here, the complaint alleges that Defendants McKay, Haponik, Koenigsmann, Bellinier, and Boll responded to Plaintiff's grievances. (Dkt. No. 5 at 3.) Therefore, the complaint plausibly suggests that these Defendants were personally involved in the alleged violation.

Third, the complaint alleges that Plaintiff notified Defendant Fischer about the subject matter of this lawsuit. (Dkt. No. 5 at 4.) District courts in this circuit have routinely held that a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference . . . by failing to act on information indicating that the violation was occurring" within the meaning of *Colon*. *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, district courts have held that "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is

---

[3]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). However, the Second Circuit has recently cautioned courts against dismissing claims at the 12(b)(6) stage for failure to allege personal involvement where the Plaintiff alleges that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) ("At the pleading stage, even if Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference . . . that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained.").

Here, under *Grullon*, Plaintiff is entitled to the inference that Defendant Fischer received his notifications, read them, and became aware of the alleged conditions of which Plaintiff complained. Therefore, the complaint plausibly suggests Defendant Fischer's personal involvement.

### B.    Access to the Courts

Plaintiff alleges that he was denied access to the courts. (Dkt. No. 5 at 2.) Defendants argue that the complaint should be dismissed because Plaintiff has not plausibly alleged that he has lost any meaningful access. (Dkt. No. 2-1 at 3-4.) Specifically, Defendants argue that the record indicates that Plaintiff "has had plenty of access to . . . the courts." *Id.* at 3. For the reasons discussed below, it is recommended that the Court grant Defendants' motion and dismiss this claim with leave to amend.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)

(citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)).  This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)).  To state a claim for denial of access to the courts, a Plaintiff must allege facts plausibly suggesting that (1)  the defendant acted deliberately and maliciously, and (2) the Plaintiff suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

Here, Plaintiff alleges that the Defendants denied him access to the courts.  (Dkt. No. 5 at 2.)  Facts on the face of the complaint and of which the Court may take judicial notice show, however, that Plaintiff was not denied such access.  As discussed above, Plaintiff filed myriad federal lawsuits during the time period in which he alleges that he was deprived of paper. Further, although Plaintiff asserts that he "has lost all appeals with the Third Department" because of the paper deprivation order (Dkt. No. 5 at 4), the public record shows that Plaintiff lost appeals in the Third Department during the relevant time period on grounds other than failure to file timely paperwork.  *See, e.g.*, *Johnson v. Dennison*, 860 N.Y.S.2d 758 (N.Y. App. Div. 3d Dep't 2008) (dismissing appeal regarding April 2006 parole decision as moot in light of later decision by the Board of Parole).  The record also shows that Plaintiff was a frequent litigant in the Second Department during the relevant time period.  *See, e.g.*, *People v. Johnson*, 954 N.Y.S.2d 487 (N.Y. App. Div. 2d Dep't 2013); *People v. Johnson*, 869 N.Y.S. 2d 911 (N.Y. App. Div. 2d Dep't 2009).  Therefore, Plaintiff has not pleaded an actual injury and the claim should be dismissed.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* Here, there is a possibility, however slim, that Plaintiff could amend the complaint to allege facts plausibly suggesting that he suffered an actual injury. Therefore, I recommend that the Court dismiss this claim with leave to amend.

### C. Denial of Evidence and Access to Inmate Grievance Procedure

Plaintiff alleges that he was denied "grievance video tapes " and denied access to grievance procedures. (No. 5 at 4.) Defendants move to dismiss this claim, arguing that inmates have no protected interest in grievance proceedings. (Dkt. No. 2-1 at 4-5.) Defendants are correct. "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak,* 365 F. Supp. 2d 362, 369-370 (W.D.N.Y. 2005). Therefore, I recommend that the Court dismiss this claim without leave to amend.

Because I have determined that Plaintiff's complaint is subject to dismissal on the constitutional merits, I decline at this time to address Defendants' argument that any allegations concerning events before April 16, 2010, are time-barred. (Dkt. No. 2-1 at 5.)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 2) be **<u>GRANTED</u>**. It is recommended that Plaintiff be granted leave to amend his claim

regarding access to the courts, but denied leave to amend his claims regarding access to the grievance program; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Walker v. Pataro*, No. 99 CIV. 4607, 2002 U.S. Dist. LEXIS 7067, 2002 WL 664040 (S.D.N.Y. Apr. 23, 2002).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: March 4, 2015
     Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2002 WL 664040
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lamont H. WALKER, Plaintiff,

v.

Joseph PATARO, Steven Lowry, David Thacker,
sued in their individual capacities, and Ada Perez,
Robert Ercole and Wayne Strack, sued in their
individual and official capacities, Defendants.

No. 99CIV.4607(GBD)(AJP).  |  April 23, 2002.

## REPORT AND RECOMMENDATION

PECK, Magistrate J.

**\*1** Pro se plaintiff Lamont Walker brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants retaliated against him—by moving him to a different housing unit which resulted in his loss of his higher paying prison job—for filing a grievance against a correction officer while in custody at the Fishkill Correctional Facility. (Dkt. No. 2: Compl.)

Defendants moved for summary judgment, arguing that: (1) Walker's damage claims against defendants in their official capacities should be dismissed pursuant to the Eleventh Amendment (Dkt. No. 31: Defs. Br. at 20–21); (2) defendants Lowry, Perez, Strack and Ercole were not personally involved in Walker's housing and job transfers (*id.* at 13–17); (3) Walker was moved to a different housing unit to accommodate his initial grievance (*i.e.,* to move him away from the correction officer he claimed was harassing him), not in retaliation for it, and the resulting job change was incidental to his housing move (*id.* at 7–12); and (4) defendants are entitled to qualified immunity (*id.* at 17–19).

For the reasons set forth below, defendants' summary judgment motion should be: (1) GRANTED as to defendants in their official capacities because the Eleventh Amendment bars such damage claims; (2) GRANTED as to defendants Lowry and Perez for lack of personal involvement; and (3) DENIED in all other respects. The parties shall file their Joint Proposed Pretrial Order by May 31, 2002.

## FACTS

### *The Parties*

Lamont Walker is an inmate under the custody of the New York State Department of Correctional Services ("DOCS"); at the time relevant to this action (December 1998 and January 1999), Walker was incarcerated at the Fishkill Correctional Facility. (Walker 56.1 Stmt. ¶ 1; Dkt. No. 33: Defs. 56.1 Stmt. ¶ 1; Dkt. No. 2: Compl. ¶ 1.) [1] At the relevant time, all defendants were employed by DOCS at Fishkill: Joseph Pataro as a Lieutenant, Steven Lowry and David Thacker as Captains, Ada Perez as the Deputy Superintendent for Correctional Facility Program Services, Robert Ercole as the Deputy Superintendent for Security Services, and Wayne Strack as Superintendent. (Walker 56.1 Stmt. ¶¶ 2–6; Defs. 56.1 Stmt. ¶¶ 2–7; Com pl. ¶¶ 2–6; Dkt. No. 32: Pataro Aff. ¶ 1; Lowry Aff. ¶ 2; Thacker Aff. ¶ 1; Perez Aff. ¶ 2; Ercole Aff. ¶ 1; Strack Aff. ¶ 1.)

### *Walker's Grievance Against Correction Officer Woodard and Prison Officials' Move of Walker to a Different Housing Unit, Resulting in a Job Change*

On November 24, 1998, Walker filed a grievance about an incident involving Correctional Officer ("C.O.") Woodard, alleging that C.O. Woodard verbally harassed and abused Walker, disrespected Walker, abused his authority, and threatened Walker with Special Housing Unit ("SHU") confinement. (Dkt. No. 2: Compl. ¶ 8; Walker 56.1 Stmt. ¶ 7; Walker Aff. ¶ 2 & Ex. 1: 11/24/98 Inmate Grievance Complaint; Dkt. No. 33: Defs. 56.1 Stmt. ¶ 8.)

**\*2** On December 1, 1998, Sergeant Pickett interviewed Walker as part of Fishkill's investigation of his grievance. (Compl. ¶ 8; Walker 56.1 Stmt. ¶ 8; Defs. 56.1 Stmt. ¶ 9; *see also* Walker Aff. ¶ 2.) Sgt. Pickett's report stated that Walker said that he tries to avoid C.O. Woodard and that Walker felt "uncomfortable" in his current housing unit when C.O. Woodard was on duty. [2] (Walker Aff. Ex. 2: 12/1/98 Grievance Investigation Memo; Dkt. No. 32: Ercole Aff. ¶ 4 & Ex. 1; Dkt. No. 32: Thacker Aff. ¶ 4 & Ex. 1.)

On December 18, 1998, Acting Superintendent Ercole responded to Walker's grievance, as follows:

Your grievance # 17055–98 filed 11/24/98 has been investigated by Sgt. Pickett. You were interviewed

on 12/1/98 concerning your allegations toward Officer Woodard.

At this time you verbalized your complaint but failed to show any harassing language or verbal abuse from Officer Woodard.

Officer Woodard was interviewed and stated that he has at no time "verbally abused or threatened" you.

Based upon review of information received in investigation reports I can find nothing to substantiate your grievance at this time.

However, *to make you feel more comfortable while at Fishkill, I will have you moved to another [housing] unit where you will be under the supervision of other Officers.*

(Compl. Ex. A: 12/18/98 Ercole Memo to Walker, emphasis added; *see also* Defs. 56.1 Stmt. ¶ 10; Ercole Aff. ¶ 5; Walker 56.1 Stmt. ¶ 9; Walker Aff. ¶ 4.)

At the time of his grievance, Walker was housed in Building 21A, the building in which C.O. Woodard was stationed. (Pataro Aff. ¶ 3; Walker 56.1 Stmt. ¶ 9; Compl. ¶ 9; Defs. 56.1 Stmt. ¶ 10.) Walker was employed as a "porter pool group leader assistant" for Building 21A, which required that Walker live in Building 21A or the adjoining Building 21. (Walker Aff. ¶ 3; Compl. ¶ 9; Walker 56.1 Stmt. ¶ 14; Defs. 56.1 Stmt. ¶ 15; Dkt. No. 32: Steckelman Aff. Exs. 1–2: Walker Dep. at 35–37; Perez Aff. ¶¶ 5–6.)

On December 18, 1998, at the direction of Captain Thacker, Lieutenant Pataro arranged for Walker to be moved from Building 21A to the Main building at Fishkill. (Walker Aff. ¶ 3; Pataro Aff. ¶ 3; Thacker Aff. ¶ 5; *see* Walker 56.1 Stmt. ¶¶ 13–14; Defs. 56.1 Stmt. ¶ 12.) Walker alleges that a C.O. Sylvester informed Lt. Pataro that Walker would lose his job if he was transferred out of the 21 complex and that Lt. Pataro responded "he's going to have to get another job." (Compl. ¶ 9; Walker Aff. ¶ 3.)

The position of porter pool group leader assistant in the Main building was filled by another inmate and thus not available to Walker. (Steckelman Aff. ¶ 4 & Ex. 3: Walker Dep. at 39; Perez Aff. ¶ 6; Defs. 56.1 Stmt. ¶ 16.) As a result, Walker worked in the general porter pool for the Main building. (Perez Aff. ¶ 6; Defs. 56.1 Stmt. ¶¶ 14–17.) The pay rate for a porter pool group leader assistant is greater than for the

general porter pool. [3] (Walker Aff. Ex. 12: Inmate Program Assignment; Steckelman Aff. Ex. 4: Walker Dep. at 40.)

**\*3** Walker worked in the Main building porter pool until January 6, 1999, when he requested and was granted a transfer to the barbershop . [4] (Compl. Ex. F: 1/6/99 Request for Change of Program; Perez Aff. ¶ 5 & Ex. 1; *see* Walker Aff. Ex. 12; Steckelman Aff. Ex. 4: Walker Dep. at 39–40; Defs. 56.1 Stmt. ¶ 17.)

On July 15, 1999, Walker was transferred to the position of porter pool group leader assistant for Building 21. (Steckelman Aff. Ex. 4: Walker Dep. at 40.)

### *Walker's Retaliation Grievance*
On December 21, 1998, Walker filed another grievance, alleging that his transfer to the Main building was in retaliation for his prior grievance against C.O. Woodard, and requesting that he be reinstated to his original housing and job assignments. [5] (Compl. ¶ 11 & Ex. B: 12/21/98 Inmate Grievance Complaint; Walker 56.1 Stmt. ¶ 26; Walker Aff. ¶ 4; Defs. 56.1 Stmt. ¶ 18.)

On January 20, 1999, Superintendent Strack responded to this grievance by memo to Walker:

Your original grievance # 17055–98 dated 11/24/98 was filed against Officer Woodard for harassment. This grievance was unsubstantiated based upon information received during the investigation.

Due to your complaint, in order to make you feel more comfortable while at Fishkill, you were moved at the discretion of a supervisory decision where you would be under the supervision of other Officers as it appeared you had a problem with Officer Woodard. You have been interviewed by Lt. Szymanowicz concerning your grievance and will not be moved back to H.U. [Housing Unit] J at this time.

(Compl. Ex. C: 1/20/99 Strack Memo; *see* Walker Aff. ¶ 5; Defs. 56.1 Stmt. ¶ 19; Strack Aff. ¶ 4 & Ex. 1.)

On January 28, 1999, Walker wrote a letter to Superintendent Strack explaining his situation in more depth and reasserting his retaliation claim. (Compl. ¶ 12 & Ex. D: 1/28/99 Letter to Strack; Defs. 56.1 Stmt. ¶ 20; Walker Aff. ¶ 6; Steckelman Aff. Ex. 10: Walker Dep. at 63.) Walker also appealed Supt. Strack's denial of his grievance to the Central Office Review

Committee ("CORC"), which held a hearing on February 23, 1999. (Compl. ¶ 13 & Ex. C; Walker Aff. ¶ 7; Defs. 56.1 Stmt. ¶ 22.) On February 24, 1999, the CORC sustained Supt. Strack's decision, finding that "there is insufficient evidence to indicate retaliation by staff related to the grievant's previous use of the grievance process."(Ercole Aff. ¶¶ 6–7 & Ex. 2: 2/24/99 CORC Report; Defs 56.1 Stmt. ¶ 22.)

On February 25, 1999, Ada Perez, the Deputy Superintendent for Program Services, responded to Walker's letter to Supt. Strack, informing Walker that he was in his "current assignment of Barber Shop as per [his] own request" and that he would be eligible to request a change of assignment after ninety days, *i.e.,* after April 18, 1999. (Compl. ¶ 14 & Ex. E: 2/25/99 Perez Letter; *see* Walker Aff. ¶ 7; Defs. 56.1 Stmt. ¶ 21.) As noted above, Walker returned to the porter pool group leader assistant position in Building 21 on July 15, 1999. (Steckelman Aff. Ex. 4: Walker Dep. at 40.)

### *Walker's Federal Lawsuit*

**\*4** Walker's pro se § 1983 complaint is dated April 12, 1999, was received by the Court's Pro Se Office on April 15, 1999 and filed as of June 25, 1999. (Dkt. No. 2: Compl.) On November 2, 1999, defendants moved to dismiss the complaint. (Dkt.Nos.7–9.) On December 22, 1999, Judge Scheindlin (to whom the case then was assigned) denied the motion to dismiss. (Dkt. No. 14: Opinion & Order.) *Walker v. Patero,* 99 Civ. 4607, 1999 WL 1243865 at \*1–3 (S.D.N.Y. Dec. 22, 1999).

At the conclusion of discovery, defendants filed the present summary judgment motion. (Dkt.Nos.31–33, 36.)

### ANALYSIS

### I. *SUMMARY JUDGMENT STANDARDS IN SECTION 1983 CASES* [6]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct.

2505, 2509–10 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment—here, defendants. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts."*Matsushita Elec. Indus. Co. v. Zenith Radio Corp .,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."Fed.R.Civ.P. 56(e); *accord, e.g ., Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. at 587, 106 S.Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."*Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513;*see also, e.g., Chambers v. TRM,* 43 F.3d at 36; *Gallo v. Prudential,* 22 F.3d at 1223. The Court draws all inferences in favor of the nonmoving party—here, Walker—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,*484 U.S. 977, 108 S.Ct. 489 (1987)."If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."*Chambers v. TRM,* 43 F.3d at 37.

**\*5** In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert.*

*denied,*480 U.S. 932, 1907 S.Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See, e.g., Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted."*Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (citations omitted); *see also, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11–12.

"The Court recognizes that it must 'extend extra consideration' to pro se plaintiffs" such as Walker and that "pro se parties are 'to be given "special latitude on summary judgment motions." ' " *Salahuddin v. Coughlin,* 999 F.Supp. at 535 (citing cases); *see also, e.g., McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (a pro se party's pleadings should be read liberally and interpreted " 'to raise the strongest arguments that they suggest' "). "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v.. Artuz,* 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).

## II. THE ELEVENTH AMENDMENT BARS DAMAGE CLAIMS AGAINST *DEFENDANTS IN THEIR OFFICIAL CAPACITIES*

" 'It is black letter law that a suit against a state official in his official capacity seeking damages is barred by the Eleventh Amendment ...' " *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *1 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.) (quoting *Jackson v. Johnson,* 30 F.Supp.2d 613, 618 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.) ( & cases cited therein). Since Walker's complaint seeks only damages, his claims against defendants in their official capacities should be dismissed.

## III. *RETALIATION UNDER SECTION 1983*

### A. *Legal Standard*

To prevail in a Section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See*42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55 (1988); *Graham v.*

*Henderson,* 89 F.3d 75, 79 (2d Cir.1996). [7] "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."*Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,*512 U.S. 1240, 114 S.Ct. 2749 (1994). [8]

## 1. A § 1983 Claim Can Be Asserted if a Prisoner is Reassigned from a Prison *Job in Retaliation for Filing a Prison Grievance*

**\*6** An inmate does not have any constitutional, statutory, orregulatory right to a particular prison job. *E.g., Davis v. Artuz,* No. 96–2911, 133 F.3d 906 (table), 1998 WL 29763 at *1 (2d Cir. Jan. 28, 1998); *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedental right to his prison job." ') (quoting *Cooper v. Smith,* 63 N.Y.2d 615, 616, 479 N.Y.S.2d 519, 519 (1984)); *Frazier v. Coughlin,* 81 F.3d 313, 318 (2d Cir.1996). [9]

Nevertheless, "a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights."*Gill v. Mooney,* 824 F.2d at 194;*accord, e.g., Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998) ("prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights"); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983"); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("Prisoners, like non-prisoners, have a right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right"); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988) (" 'An act in retaliation for the exercise of a constitutional right is actionable under [S]ection 1983 even if the act, when taken for a different reason, would have been proper." '); *Meriwether v. Coughlin,* 879 F.2d 1037, 1045–46 (2d Cir.1989) ("Although prison officials have broad discretion to transfer prisoners ... [t]hey may not, however, transfer them solely in retaliation for the exercise of constitutional rights."). [10]

Specifically, the Second Circuit has held that, "[w]hile a prisoner may not have a constitutional right to a specific job assignment, this Circuit has recognized that retaliation

against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."*Davis v. Artuz,* 1998 WL 29763 at *1;*accord, e.g., Davis v. Kelly,* 160 F.3d at 920 ("prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights, ... and [plaintiff] had a constitutionally protected right to petition the court for redress of grievances"); *Gill v. Mooney,* 824 F.2d at 194 (a claim for relief under § 1983 may be made if prison official's decisions to change inmate's work assignments "are made in retaliation for the exercise of constitutionally protected rights"); *Saunders v. Coughlin,* 1994 WL 88108 at *4 ("cognizable claim under § 1983 can be asserted based on an allegation that a prisoner was reassigned [from a particular prison job assignment] in retaliation for the exercise of his constitutional rights"); *Laureano v. Vega,* 1994 WL 68357 at *7 ("a claim for relief arising out of actions taken in connection with a prison job may be stated 'if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights' "); *Van Pelt v. Finn,* 92 Civ. 2977, 1993 WL 465297 at *4 (S.D.N.Y. Nov. 12, 1993); *Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y.1990) ("It is well established a claim for relief can be stated under section 1983 for job reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his legal rights ...."); *see, e.g., DeWalt v. Carter,* 224 F.3d 607, 612–13, 618–19 (7th Cir.1999) (joining the Second Circuit and holding that while "prisoners have no right to hold a particular prison job" plaintiff still can bring Section 1983 "retaliation claims arising from the loss of that job."); *see also* cases cited at pages 17–18, 36–37 below.

## 2. Plaintiff's Burden of Proof For a § 1983 Retaliation Claim

**\*7** The Second Circuit has clearly set forth a plaintiff's burden of proof in proving a § 1983 retaliation claim, as follows:

The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff "even in the absence of the protected conduct."Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.

*Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted); *see, e.g., Ebron v. CTO Huria,* No. 99–0087, 205 F.3d 1322 (table), 2000 WL 241576 at *1 (2d Cir. Feb. 1, 2000); *Davidson v. Chestnut,* 193 F.3d 144, 148–49 (2d Cir.1999); *Duamutef v. Hollins,* No. 97–2692, 159 F.3d 1346 (table), 1998 WL 537838 at *1 (2d Cir. July 7, 1998); *Hynes v. Squillace,* 143 F.3d 653, 657 (2d Cir.), *cert. denied,*525 U.S. 907, 119 S.Ct. 246 (1998); *Davidson v. Kelly,* No. 96–2066, 131 F.3d 130 (table), 1997 WL 738109 at *3 (2d Cir. Nov. 24, 1997); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984). [11]

A number of factors can be considered in determining whether a causal connection exists between the plaintiff's protected activity and the prison official's actions, including "any statements made by the defendant concerning his motivation" and "the temporal proximity between the protected activity and the defendant's adverse action."*Williams v. Muller,* 2001 WL 936297 at *3 (citing *Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995)); *see, e .g., Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002); *Gill v.. Jones,* 95 Civ. 9031, 2001 WL 1346012 at *6 (S.D.N.Y. Nov. 1, 2001); *Walker v. Keyser,* 2001 WL 1160588 at *6; *Rivera v. Goord,* 119 F.Supp.2d 327, 339 (S.D.N.Y.2000).

"While ... the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim. Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis,* and therefore outside the ambit of constitutional protection."*Dawes v. Walker,* 239 F.3d 489, 492–93 (2d Cir.2001) (citations omitted); *accord, e.g., Morales v. Mackalm,* 278 F.3d at 131; *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999); *Thaddeus– X v. Blatter,* 175 F.3d 378, 396–98 (6th Cir.1999) (to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); *Crawford–El v. Britton,* 93 F.3d 813, 826 (D.C.Cir.1996) (en banc), *rev'd on other grounds,*523 U.S. 574, 118 S.Ct. 1584 (1998). [12]

**\*8** Prisoners' claims of retaliation, of course, must be examined with skepticism and particular care because they

are " 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d at 79 (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)); *accord, e.g., Dawes v. Walker,* 239 F.3d at 491; *Colon v. Coughlin* 58 F .3d at 872; *Jackson v. Johnson,* 15 F.Supp.2d at 364 ( & cases cited therein).

**B. *Analysis of Walker's Retaliation Claim***

Walker's § 1983 action alleges that defendants transferred him out of Building 21A in retaliation for the administrative grievance he filed against C.O. Woodard.

**1. *Walker's Initial Grievance Was A Protected Activity***

Defendants do not dispute that Walker's November 24, 1998 grievance against C.O. Woodard was a protected activity. (Dkt. No. 31: Defs. Br. at 8.) *See, e.g., Moore v. Gardner,* 00–CV–6076, 2002 WL 553708 at *9 (W.D.N.Y. May 12, 2002) ("filing an inmate grievance is constitutionally protected activity"); *Walker v. Keyser,* 98 Civ. 5217, 2001 WL 1160588 at *6 (S.D.N.Y. Oct. 17, 2001); *Wagnoon v. Gatson,* 00 Civ. 3722 & 99 Civ. 5872, 2001 WL 709276 at *5 (S.D.N.Y. June 25, 2001) ("A prisoner's filing of an internal [prison] grievance against a corrections officer is protected by the First Amendment, such that retaliation in response to such a grievance may form the basis for a retaliation claim.") (citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996)).

**2. Threat of a 60% Pay Cut is Substantial Enough to Deter a Reasonable *Inmate From Pursuing Prison Grievances***

The next question is whether Walker's transfer to another housing unit, costing him his prison job, constituted an adverse action sufficient to sustain a claim for retaliation, *i.e.,* whether it was substantial enough to deter a similarly situated inmate from exercising his constitutional right to file a prison grievance. (*See* cases cited on pages 15–16 above.) As a result of his transfer out of Building 21A, Walker lost a job that paid twenty-five cents an hour and was given a job that paid ten cents an hour. (Steckelman Aff. Ex. 4: Walker Dep. at 40.) This Court cannot conclude as a matter of law that the threat of such a substantial reduction in a prisoner's hourly pay rate would not discourage a reasonable inmate from exercising his constitutional right to file a prison grievance. *See Van Pelt v. Finn,* 92 Civ. 2977, 1993 WL 465297 at *4–5 (S.D.N.Y. Nov. 12, 1993) (denying defendants' summary judgment motion since plaintiff's "transfer from porter to clerk to recreational supervisor, and his corresponding decreases in

pay," was sufficient to sustain a reasonable inference of retaliation); *Baker v. Zlochowon,* 741 F.Supp. 436, 439–40 (S.D.N.Y. June 29, 1990) (decision not to pay plaintiff for his absences from work and to transfer him to a lower paying job after filing an Article 78 proceeding challenging prison officials' actions could sustain reasonable inference of retaliation sufficient to defeat summary judgment); *see also* cases cited at page 18 n.14 below. [13]

**\*9** Defendants argue that, since Walker filed another grievance soon after his housing and job transfer, there was no "chilling effect" on his constitutional rights. (Defs. Br. at 12.) The test, however, is not whether plaintiff Walker himself was chilled (if that were the standard, no plaintiff likely would prevail, for the very commencement of a lawsuit could be used by defendants to argue that the plaintiff was not chilled), but rather whether the retaliatory conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional right." *Dawes v. Walker,* 239 F.3d 489, 493 (2d Cir.2001). [14] The Court cannot say that a prison housing transfer that results in an inmate's loss of a higher-paying prison job and a sixty percent pay cut would not deter a similarly situated reasonable inmate from filing a prison grievance.

**3. Whether Walker's Initial Grievance Was a Substantial or Motivating *Factor Cannot Be Decided on This Summary Judgment Motion***

The remaining and decisive inquiry is whether Walker's initial grievance was a "substantial or motivating factor" in the decision to transfer him out of Building 21A. While temporal proximity can raise an inference of causal connection (*see* cases cited at page 15 above), here, defendants concede that the housing move *was* caused by Walker's initial grievance, but deny any improper motive, arguing that the decision to transfer Walker was an "accommodation" to Walker's concerns as expressed in his grievance. (Dkt. No. 31: Defs. Br. at 8–9; *see also* discussion at page 4 above.) Defendants argue that Deputy Superintendent Ercole's decision to transfer Walker was motivated by the desire to resolve Walker's complaint that he felt "uncomfortable" when C.O. Woodard was on duty and to avoid a "possibly volatile situation." (Defs. Br. at 9, 11; *see also* page 4 above.)

Defendants, however, have not submitted evidence that it was a standard or even common practice to transfer inmates who had filed a complaint alleging harassment by specific correctional officers to a different housing unit.

*See, e.g., Nicholas v. Mantello,* No. 96–2391, 104 F.3d 353 (table), 1996 WL 671276 at *1 (2d Cir. Oct. 20, 1996) (summary judgment for defendant reversed where defendant "has pointed to no prison regulation or other documentary evidence confirming his assertion about" reasons he took action which plaintiff claimed was retaliatory); *cf. Moore v. Gardner,* No. 00–CV–6076, 2002 WL 553708 at *9–11 (W.D.N.Y. Mar. 12, 2002) (summary judgment in favor of prison officials is appropriate where adherence to DOCS "policy and procedure" refutes retaliatory motive).

Moreover, Walker asserts that when a corrections officer informed Lt. Pataro that Walker would lose his job if transferred, Lt. Pataro responded that Walker was "going to have to get another job."(Dkt. No. 2: Compl. ¶ 9; Walker Aff. ¶ 3.) Defendants do not address this alleged statement in their papers. While Lt. Pataro's statement may be interpreted in more than one way, at least one possible interpretation is that Lt. Pataro intended to deprive Walker of his higher-paying job in retaliation for his grievance.

 **\*10** Finally, perhaps the most persuasive circumstantial evidence of defendants' intent is the way they handled Walker's second grievance. Defendants claim that they transferred Walker to a different building to make him more "comfortable," *i.e.,* for his benefit. But within three days of the transfer, Walker filed a second grievance, requesting that he be reinstated to his original housing and job assignments. (*See* pages 5–6 above.) Rather than transferring Walker back when defendants learned that the supposedly beneficial transfer was not what Walker wanted, defendants denied his second grievance. (*See* pages 6–7 above.) A reasonable jury could infer from this that defendants did not transfer Walker to another housing unit to make him "comfortable," but rather in retaliation for his original grievance against a corrections officer.

Based on all these factors, the issue of whether, in admitted response to Walker's initial grievance, defendants' transfer of Walker to another housing unit, causing him to lose a higher-paying job, was for Walker's benefit or in retaliation for the grievance, "runs to matters of credibility and weight of the evidence, which are matters for the jury and should not be decided on summary judgment."*Graham v. Henderson,* 89 F.3d 75, 81 (2d Cir.1996).

## IV. *PERSONAL INVOLVEMENT UNDER SECTION 1983*

### A. *Legal Standard*

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " ' *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *accord, e.g., Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999); *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y.1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of *respondeat superior* does not apply to § 1983 actions ."). [15]

"The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) *the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,* (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."*Colon v. Coughlin,* 58 F.3d at 873 (emphasis added). [16]

### B. Defendants Lowry and Perez are Entitled to Summary Judgment for Lack of Personal Involvement, But Defendants Ercole and Strack Were Personally *Involved*

 **\*11** Defendants argue that defendants Captain Lowry, Deputy Superintendent Perez, Deputy Superintendent Ercole and Superintendent Strack are entitled to summary judgment for lack of personal involvement in Walker's alleged retaliatory transfer. (Dkt. No. 31: Defs. Br. at 13–17.) [17]

#### 1. *Deputy Superintendent Ercole*

Defendants contend that summary judgment should be granted for Deputy Superintendent Ercole because he had no involvement in the decision to transfer Walker. (Dkt. No. 31: Defs. Br. at 14–15; Dkt. No. 36: Defs. Reply Br. at 4–5.) Deputy Supt. Ercole stated in his affidavit that

while he oversees general prison security, his duties "do not include assigning inmates to specific housing units within the facility or assigning inmates to [job] programs."(Dkt. No. 32: Ercole Aff. ¶¶ 2–3.) However, Deputy Supt. Ercole wrote a memo responding to Walker's initial grievance against C.O. Woodard, in which he informed Walker that to make him "more comfortable while at Fishkill," Deputy Supt. Ercole "will have you moved" to another housing unit where Walker would be under the supervision of other officers. (Compl. Ex. A: 12/18/98 Ercole Memo; Defs. 56.1 Stmt. ¶ 10; Ercole Aff. ¶ 5; Walker 56.1 Stmt. ¶ 9; Walker Aff. ¶ 4.) Thus, it is crystal clear that Deputy Supt. Ercole was personally and directly involved in the decision to transfer Walker to another housing unit—he ordered it. [18] Defendant's motion on his behalf on this issue is frivolous and borders on sanctionable conduct. Summary judgment therefore should be denied as to Supt. Ercole's personal involvement.

## 2. Superintendent Strack

Walker alleges that Superintendent Strack was personally involved in the alleged retaliation against him and points to the following evidence: (1) Walker's December 21, 1998 prison grievance to Supt. Strack claiming that his transfer was made in retaliation for his prior grievance against C.O. Woodard; (2) Supt. Strack's January 20, 1999 memo to Walker in response to the second grievance, justifying the transfer decision and denying relief; and (3) Walker's January 28, 1999 response to Supt. Strack reiterating his retaliation claim. (*See* pages 5–6 above.)

As noted above, the Second Circuit holds that: "The personal involvement of a supervisory defendant may be shown by evidence that: ... (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong ... or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986))); *accord, e.g., Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999); *Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). [19]

**\*12** On the other hand, district court decisions in this Circuit have held that " 'it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." ' *Higgins*

*v. Artuz,* 94 Civ. 4810, 1997 WL 466505 at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, D.J.) (quoting *Greenwaldt v. Coughlin,* 93 Civ. 6551, 1995 WL 232736 at *4 (S.D.N.Y. Apr. 19, 1995)); *accord, e.g., Ramos v. Artuz,* 00 Civ. 0149, 2001 WL 840131 at *7 (S.D.N.Y. July 25, 2001) (Swain, D.J. & Pitman, M.J.) ("Notwithstanding the fact that a supervisory official may be held liable for failing to remedy a constitutional violation after learning of the violation through a report or appeal, inaction following receipt of letters from a prisoner regarding alleged violations does not automatically render an official personally liable under Section 1983.... District courts have generally been reluctant to find personal liability where a prison official's involvement is limited to the receipt of a prisoner's letters or complaints.").*Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). [20]

Thus, where a supervisory official like the Commissioner of Corrections or a prison Superintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable. On the other hand, where a supervisor receives an inmate grievance or other complaint and responds to it, the supervisor may be liable (*see* cases cited at pages 26–27 below). At first glance, these holdings might seem counter-intuitive, as giving supervisors an incentive to inaction in order to avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them. *See, e.g., Amaker v. Goord,* 98 Civ. 3634, 2002 WL 523371 at *16 (S.D.N.Y. Mar. 29, 2002) (Commissioner "Goord has testified that he receives thousands of letters each year as the Commissioner and Chief Executive Officer of DOCS, and that his office generally forwarded the letters to the appropriate personnel to handle the problems in question."); *Ramos v. Artuz,* 2001 WL 840131 at *8 (no personal involvement by Supt. Artuz where he forwarded inmate's complaint letters to appropriate subordinates); *Higgins v. Artuz,* 1997 WL 466505 at *6 ("In an affidavit, defendant [Supt.] Artuz responded that all complaints filed with him by inmates are referred to 'the appropriate deputy superintendent to investigate and take corrective action if warranted." '); *Watson v. McGinnis,* 964 F.Supp. at 130 ("as soon as Supt. McGinnis received the letter he forwarded it to Capt. Many who immediately informed [plaintiff] that the matter would be investigated"). Thus, if mere receipt of a letter or similar

complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability. (*See* cases cited on page 21 above.) [21]

**\*13** On the other hand, where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint), personal involvement will be found under the second *Colon* prong: "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong."*Colon v. Coughlin,* 58 F.3d at 873;*see, e.g., Ramos v. Artuz,* 2001 WL 840131 at *8–10 (no personal involvement by Supt. who forwarded letters to others to respond, but personal involvement found for prison Health Services Administrator Zwillinger whose "involvement extends beyond the mere receipt of letters. Zwillinger sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff in his letter to defendant [Supt.] Artuz."); *Booker v. Strack,* 97 Civ. 2418, 1999 WL 983878 at *5–6 (S.D.N.Y. Oct. 29, 1999) (grievances sent to Superintendent may show personal involvement); *James v. Artuz,* 93 Civ.2056, 1994 WL 174005 at *7 (S.D.N.Y.May4, 1994) (personal involvement where Supt. Artuz "conducted a *de novo* review" of prison disciplinary hearing); *Van Pelt v. Finn,* 92 Civ. 2977, 1993 WL 465297 at *6 (S.D.N.Y. Nov. 12, 1993) (Superintendent found to have personal involvement where he reviewed plaintiff's grievances and also plaintiff wrote to Superintendent about correction officer's alleged threats, yet Superintendent "consistently denied plaintiff's subsequent complaints of retaliation."). [22]

With this background, the Court turns to the facts concerning Supt. Strack's involvement here. Supt. Strack did not simply receive complaints from Walker about concluded conduct; rather, he evaluated Walker's second grievance and defended the transfer decision at a time when he could have righted the alleged wrong by ordering Walker reinstated to his old housing unit and old job.

Walker alleged in his December 21, 1998 grievance to Supt. Strack, that:

> On 12/18/98, I was removed from my program assignment (B/21A PP Group lead. Asst). This removal only occurred because I exercised my constitutional protected rights.

> Which was the grievance complaint I filed [against] C.O. Woodard dated 11/23/98. In that complaint I requested that no retaliation action be taken for filing such grievance complaint. Now by my exercising my 1st Amendment Right, I am subjected to have my 5th and 14th Amendment Rights violated.

(Compl. ¶ 11 & Ex. B: 12/21/98 Inmate Grievance Complaint; *see*Walker 56.1 Stmt. ¶ 26; Walker Aff. ¶ 4; Defs. 56.1 Stmt. ¶ 18.) Supt. Strack responded to Walker's grievance as follows:

> Your original grievance # 17055–98 dated 11/24/98 was filed against Officer Woodard for harassment. This grievance was unsubstantiated based upon information received during investigation.

> Due to your complaint, in order to make you feel more comfortable while at Fishkill, you were moved at the discretion of a supervisory decision where you would be under the supervision of other Officers as it appeared you had a problem with Officer Woodard. You have been interviewed by Lt. Szymanowicz concerning your grievance and will not be moved back to H.U.J. at this time.

**\*14** (Compl. Ex. C: 1/20/99 Strack Memo; *see*Walker Aff. ¶ 5; Defs. 56.1 Stmt. ¶ 19; Strack Aff. ¶ 4 & Ex. 1.)

Responses to grievances (or other inmate complaints) which attempt to defend or explain alleged constitutional violations have been found sufficient to sustain a plaintiff's claim of personal involvement. *See* cases cited at pages 26–27 above. This Court, therefore, cannot conclude as a matter of law on this summary judgment motion that Supt. Strack was not personally involved in the alleged violation. Accordingly, summary judgment should be denied as to Supt. Strack's personal involvement.

### 3. *Deputy Superintendent Perez*
Walker alleges that Deputy Superintendent Ada Perez was personally involved in retaliation against him because Deputy Supt. Perez knew he had lost his job as a result of his grievance against C.O. Woodard and should have "stopped this from occurring, at least until the matter could have properly been resolved."(Steckelman Aff. ¶ 10 & Ex. 9: Walker Dep. at 57.)

Deputy Supt. Perez testified that she did not know why Walker had been moved out of Building 21A, had no

knowledge of Walker's original grievance against C.O. Woodard until the filing of this lawsuit, and has no involvement in inmate housing transfers at Fishkill. (Dkt. No. 32: Perez Aff. ¶¶ 7–9.) In response to Walker's January 28, 1999 letter to Supt. Strack explaining his retaliation claim, Deputy Supt. Perez wrote a February 25, 1999 memo to Walker informing him that he was "in [his] current assignment of Barber Shop as per [his] own request" and would be eligible for "a change of assignment after 90 days, on 4/18/99."(Compl. ¶ 14 & Ex. E: 2/25/99 Perez Letter; *see*Walker Aff. ¶ 7; Defs. 56.1 Stmt. ¶ 21.)

As noted above, a response to an inmate's letter which does little more than provide information does not establish personal involvement. *E.g., Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (defendant not personally involved where he responded to inmate's status inquiry by informing inmate that a decision had been reached regarding his grievance); *Amaker v. Goord,* 98 Civ. 3774, 2002 WL 523371 at *16 (S.D.N.Y. Mar. 29, 2002) (response letter from Commissioner that indicated matter would be handled by someone else not sufficient for personal involvement). Moreover, Deputy Supt. Perez's duties did not include the assignment of inmates to housing units within the facility (Perez Aff. ¶ 4), and there is no evidence that she participated in the initial decision to change Walker's housing unit or that she could have caused him to be returned to Building 21A in February 1999 when she learned of Walker's second grievance. *See, e.g., Saar v. United States Dep't of Justice,* 705 F.Supp. 999, 1006 (S.D.N.Y.1989) (where supervisor was informed of plaintiff's complaint but "had no control over plaintiff's segregation, he cannot be held personally liable for any due process violations arising out of that segregation.").

 **\*15** Deputy Superintendent Perez should be granted summary judgment for lack of her personal involvement in Walker's housing unit transfer.

**4.** *Captain Lowry*

Captain Lowry asserts that he was not personally involved in Walker's housing or job assignments and that he was unaware of Walker's original grievance against C.O. Woodard until the filing of this lawsuit. (Dkt. No. 32: Lowry Aff. ¶¶ 5–6.) Walker does not dispute Lowry's position. In fact, Walker conceded at his deposition that Lowry "does not have any say over supervisory decisions."(Steckelman Aff. ¶ 8 & Ex. 7: Walker Dep. at 56.) Walker's own statements, therefore, support the grant of summary judgment to Capt. Lowry for lack of personal involvement. *See, e.g., Bellamy v.*

*McMickens,* 692 F.Supp. 205, 214 (S.D.N.Y.1988) (§ 1983 claim based on alleged denial of access to counsel fails where plaintiff "by his own admission was allowed to contact his attorney by telephone"). [23]

In any event, Walker has not submitted any evidence to contradict Capt. Lowry's claim that he was not involved in Walker's transfer. (*See*Dkt. No. 36: Defs. Reply Br. at 4.) After "discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case."*Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998); *see also, e.g., Neitzke v. Williams,* 490 U.S. 319, 324 n.2, 109 S.Ct. 1827, 1831 n.2 (1989) (affirming Court of Appeals' finding that plaintiff in a § 1983 action "alleged no personal involvement on the part of three ... defendants ... and that these defendants' prison jobs did not justify an 'inference of personal involvement ...' "); *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (defendant "documented his assertion of no personal involvement [and plaintiff] offers no concrete evidence to the contrary"); *Saar v. United States Dep't of Justice,* 705 F.Supp. 999, 1006 (S.D.N.Y.1989) (where "Plaintiff has not contradicted defendant" supervisor's assertion that "he has no power to act to remedy the violation," § 1983 claim against that defendant dismissed). Summary judgment therefore should be granted to Capt. Lowry for lack of personal involvement.

## V. *QUALIFIED IMMUNITY*

### A. *Legal Standard*

"Qualified immunity shields public officials from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time."*Poe v. Leonard,* 282 F.3d 123, 132 (2d Cir.2002); *see also, e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Qualified immunity is " 'an entitlement not to stand trial or face the other burdens of litigation.' " *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 2156 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)).

As the Second Circuit has explained, government actors are entitled to qualified immunity from liability for civil damages when they perform discretionary functions "if either (1) their conduct 'did not violate clearly established rights of which a reasonable person would have known,' or (2) 'it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.' " *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998); *accord, e.g., Poe*

*v. Leonard,* 282 F.3d at 132–33; *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir.2001); *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001); *Martinez v. Simonetti,* 202 F.3d 625, 633–34 (2d Cir.2000); *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998). [24] "The availability of the defense depends on whether a reasonable [official] could have believed his action to be lawful, in light of clearly established law and the information [he] possessed." *Weyant v. Okst,* 101 F.3d 845, 858 (2d Cir.1996). [25]

**\*16** "In a suit against [a government official] for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence."*Saucier v. Katz,* 533 U.S. at 200, 121 S.Ct. at 2155;*accord, e.g., Poe v. Leonard,* 282 F.3d at 133; *Smith v. Menifee,* 00 Civ. 2521, 2002 WL 461514 at \*4 (S.D.N.Y. Mar 26, 2002).

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"*Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. at 2156 (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793 (1991)); *accord, e.g., Poe v. Leonard,* 282 F.3d at 132; *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 251 (2d Cir.2001); *Smith v. Menifee,* 00 Civ. 2521, 2002 WL 461514 at \*4 (S.D.N.Y. Mar. 26, 2002)."If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."*Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. at 2156;*accord, e.g., Poe v. Leonard,* 282 F.3d at 132; *Smith v. Menifee,* 2002 WL 461514 at \*4.

The "right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."*Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 1700 (1999); *accord, e.g., Smith v. Menifee,* 2002 WL 461514 at \*4–5. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."*Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. at 2156;*accord, e.g., Poe v. Leonard,* 282 F.3d at 135; *Smith v. Menifee,* 2002 WL 461514 at \*4–5. " '[T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and

hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." ' *Saucier v.. Katz,* 533 U.S. at 202, 121 S.Ct. at 2156 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987)); *see also, e.g., Wilson v. Wayne,* 526 U.S. at 614–15, 119 S.Ct. at 1699; *Smith v. Menifee,* 2002 WL 461514 at \*5. Therefore, to determine whether a right is clearly established, the Court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier v. Katz,* 533 U.S. at 202, 121 S.Ct. at 2156;*see also, e.g., Anderson v. Leighton,* 487 U.S. at 640, 107 S.Ct. at 3029; *Smith v. Menifee,* 2002 WL 461514 at \*5.

**\*17** "In determining whether a particular legal principle was 'clearly established' for purposes of qualified immunity, [the Second Circuit] has considered three factors: 'whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." ' *Powell v. Schriver,* 175 F.3d 107, 113 (2d Cir.1999) (internal quotes omitted); *accord, e.g., Cerrone v. Brown,* 246 F.3d at 199; *Mollica v. Volker,* 229 F.3d 366, 371 (2d Cir.2000); *Powell v. Schriver,* 175 F.3d 107, 113 (2d Cir.1999); *Cahill v.. O'Donnell,* 75 F.Supp.2d 264, 277 (S.D.N.Y. Dec. 7, 1999) (B.D.Parker, D.J.).

Moreover, where the qualified immunity issue is raised in connection with a supervisor's liability, "both the subordinate's and the supervisor's actions (or lack thereof) are relevant."*Poe v. Leonard,* 282 F.3d at 134. A plaintiff "must show that both laws were clearly established to lay the predicate for demonstrating that [the supervisor] lacked qualified immunity: the law violated by [the subordinate official] and the supervisory liability doctrine under which [plaintiff] wishes to hold [the supervisor] liable."*Poe v. Leonard,* 282 F.3d at 134.

Finally, "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to a factual situation the officer confronts.... If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."*Saucier v. Katz,* 533 U.S. at 205, 121 S.Ct. at 2158;*accord, e.g., Poe v. Leonard,* 282 F.3d at 133. "If the law did not put the officer on notice that his conduct

would be clearly unlawful, summary judgment based on qualified immunity is appropriate."*Saucier v. Katz,* 533 U.S. at 202, 121 S.Ct. at 2156–57. "[E]ven if the plaintiff's federal rights were clearly established at the time of the alleged violation, the defendants may nevertheless enjoy qualified immunity if it was objectively reasonable for them to believe that their actions did not violate those rights."*Lennon v. Miller,* 66 F.3d at 423. " 'Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant['s] conduct under the circumstances,' qualified immunity applies." *Poe v. Leonard,* 282 F.3d at 133 (quoting *Lennon v. Miller,* 66 F.3d at 421)." 'A defendant is therefore entitled to summary judgment on qualified immunity grounds if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions." ' *Poe v. Leonard,* 282 F.3d at 146 (quoting *Cerrone v. Brown,* 246 F.3d 194, 202 (2d Cir.2001)); *see also, e.g., Tierney v. Davidson,* 133 F.3d at 196.

## B. Defendants are Not Entitled to Summary Judgment on Qualified Immunity *Grounds*

*\*18* The first question is whether Walker has alleged a constitutional violation. Walker alleges that he was transferred in retaliation for an administrative grievance he filed against C.O. Woodard. (Dkt. No. 2: Compl.) The law is clear that prison officials may not retaliate against an inmate for exercising his constitutional rights, including the right to file a prison grievance. *See, e.g., Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ( "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983"); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("Prisoners, like non-prisoners have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988); *see also* cases cited at pages 12–13 & n.10 above. Thus, Walker's claim that he was transferred in retaliation for filing a grievance, if proved, clearly would demonstrate violation of a constitutional right.

The next inquiry is whether Walker's particular right in this case was "clearly established," *see, e.g., Saucier v. Katz,* 533 U.S. at 194, 201, 121 S.Ct. at 2151, 2156; *Poe v. Leonard,* 282 F.3d 123, 132 (2d Cir.2002), that is, whether

it would have been clear to a reasonable prison official that it was impermissible to transfer Walker in retaliation for his grievance. Retaliatory transfer of a prisoner's housing and/or job assignment has long been prohibited in this Circuit. *See, e.g., Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998) ("prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights"); *Meriwether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989) ("Retaliatory transfers were clearly illegal in 1980."); *Hohman v. Hogan,* 597 F.2d 490, 493 (2d Cir.1979) (retaliatory transfer to another prison and segregated confinement would be impermissible); *Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976) (impermissible to transfer inmate in retaliation for exercise of constitutional rights), *cert. denied,*431 U.S. 967, 97 S.Ct. 2925 (1977); *Bennet v. Tucker,* 95 Civ. 8029, 1996 WL 288202 at *4 (S.D.N.Y. May 30, 1996) (qualified immunity defense denied for alleged retaliatory prison transfer; "This court has held that the doctrine of qualified immunity does not shield officials from § 1983 liability for engaging in retaliatory conduct in response to an inmate's exercise of rights."); *Lowrance v. Coughlin,* 862 F.Supp. 1090, 1098 (S.D.N.Y.1994) (retaliatory transfers held to be constitutionally impermissible); *Van Pelt v. Finn,* 92 Civ. 2977, 1993 WL 465297 at *7 (S.D.N.Y. Nov. 12, 1993) ("Qualified immunity will not save these defendants from suit because retaliatory job assignments, and retaliatory transfers, have both been held in this Circuit to violate constitutional rights, and were so held throughout the relevant period.") (citations omitted); *Baker v. Zlochowon,* 741 F.Supp. 436, 440 (1990) ("Defendants ['] contention that they have qualified immunity from suit for damages does not warrant granting their summary judgment motion.... The Second Circuit has held that at least with respect to transfers in retaliation for exercise of constitutional rights, 'a reasonable jury could find that a reasonable commissioner of corrections would be aware of [the illegality of his actions],' and thus might not be able to establish the defense of qualified immunity. We believe that the same can be said with respect to retaliatory job reassignments.") (citations omitted; bracketed material in original); *see also* cases cited at pages 13–14 above. Given this abundance of case law, a reasonable prison official should have been aware that transferring Walker's housing and/or job assignment in retaliation for filing a grievance was unlawful.

*\*19* Since Walker's right not to be transferred in retaliation for his grievance was "clearly established" long before December 1998, the final question is whether it should have been clear to defendants that their conduct was unlawful in

the situation they confronted. *E.g., Saucier v. Katz,* 533 U.S. at 202, 121 S.Ct. at 2156. The relevant question is whether a reasonable jury would conclude that "officers of reasonable competence could disagree" on the legality of defendants' actions under the circumstances. *Poe v. Leonard,* 282 F.3d at 146.

Defendants Strack, Ercole, Thacker and Pataro concede in their affidavits that they were aware of Walker's grievance against C.O. Woodard and indeed that Walker's grievance was the reason for his transfer out of Building 21A. (Dkt. No. 32: Strack Aff. ¶ 4; Ercole Aff. ¶¶ 4–5; Thacker Aff. ¶¶ 4–5; Pataro Aff. ¶ 3.) Defendants argue, however, that their transfer of Walker out of Building 21A was a reasonable response to Walker's grievance that he was "uncomfortable" around C.O. Woodard. (*See* Defs. Br. at 19; *see also* discussion at page 19 above.) [26] While defendants contend that Walker's December 18, 1998 transfer was undertaken to accommodate Walker's interests, Walker immediately informed prison officials that he would lose his job as a result of the move and that he needed and wanted to stay in Building 21A or 21. (Walker Aff. ¶ 3; *see also* pages 4–5 above.) [27] Walker also filed a formal grievance three days later, on December 21, 1998, informing prison officials that he had lost his job as a result of the housing transfer and that he wished to be moved back to his original housing unit. (*See* pages 5–6 above.) Finally, after his second grievance was denied, Walker wrote to Superintendent Strack reiterating his desire to be moved back to Building 21A. (*See* page 6 above.) Taken together, these grievances should have put prison officials on notice that their transfer of Walker had a negative impact on Walker and as a result did not serve to make him "more comfortable." Causation here is conceded; the only issue is whether defendants moved Walker for his benefit or in retaliation for his initial grievance. The Court cannot say that the only conclusion a reasonable jury could reach, viewing the evidence in the light most favorable to Walker, is that reasonable prison officials could disagree about the legality of defendants' actions if they changed his prison housing assignment to retaliate for his grievance.

Summary judgment for the remaining defendants on qualified immunity grounds should be denied.

## CONCLUSION

For the reasons set forth above, defendants' summary judgment motion should be: (1) GRANTED as to defendants in their official capacities because the Eleventh Amendment bars such damage claims; (2) GRANTED as to defendants Lowry and Perez for lack of personal involvement; and (3) DENIED in all other respects.

Pursuant to the Court's prior scheduling order, the parties are to submit a joint proposed Pretrial Order by May 31, 2002.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**\*20** Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 40 Centre Street, Room 410, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Daniels. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Footnotes

1    Reference to paragraphs in the complaint are to the sub-paragraphs in Section IV of the complaint.

2    Sgt. Pickett records that Walker told him: "Now I try to avoid [C.O. Woodard]. He now works on nights ... and I'm uncomfortable on my unit, I leave the TV room when he's on to avoid him ...." (Walker Aff. Ex. 2.) Walker also cited two specific incidents in which he alleged that C.O. Woodard harassed him in the stairwell and threatened to punish him for advising his fellow porters how to perform their duties correctly. (*Id.*)

3    A porter pool group leader earned approximately 25 cents per hour while porter pool workers earned approximately 10 cents per hour. (Steckelman Aff. Ex. 4: Walker Dep. at 40.)

4    The hourly pay rate for the barbershop job was approximately 18 cents. (Steckelman Aff. Ex. 4: Walker Dep. at 40.)

5    Walker also noted in the grievance that he had not requested the transfer in his housing or employment assignment. (Compl. Ex. B: 12/21/98 Inmate Grievance Complaint.)

6    For additional cases authored by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Report and Recommendation, *see, e.g., Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *5–7 (S.D.N.Y. May 7, 2001)(Peck, M.J.); *Fulmore v. Mamis,* 00 Civ. 2831, 2001 WL 417119 at *5 (S.D.N.Y. Apr. 23, 2001) (Peck, M.J.); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *4 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.); *Culp v. Koenigsmann,* 99 Civ. 9557, 2000 WL 995495 at *4 (S.D.N.Y. July 19, 2000) (Peck, M.J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *4 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Greenfield v. City of New York,* 99 Civ. 2330, 2000 WL 124992 at *3 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); *Salahuddin v. Coughlin,* 999 F.Supp. 526, 534 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.); *Watson v. McGinnis,* 981 F.Supp. 815, 817 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.).

7    *Accord, e.g., Soldal v. Cook County,* 506 U.S. 56, 60 n.6, 113 S.Ct. 538, 543 n.6 (1992); *Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *7 (S.D.N.Y. May 7, 2001) (Peck, M.J.); *Fulmore v. Mamis,* 00 Civ. 2831, 2001 WL 417119 at *7 (S.D.N.Y. Apr. 23, 2001) (Peck, M.J.); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *5 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.); *Culp v. Koenigsmann,* 99 Civ. 9557, 2000 WL 995495 at *6 (S.D.N.Y. July 19, 2000) (Peck, M.J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *5 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Greenfield v. City of New York,* 99 Civ. 2330, 2000 WL 124992 at *4 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); *Ali v. Szabo,* 81 F.Supp.2d 447, 453 (S .D.N.Y.2000) (Pauley, D.J. & Peck, M.J.).

8    *Accord, e.g., Espinal v. Goord,* 2001 WL 476070 at *7; *Fulmore v. Mamis,* 2001 WL 417119 at *7; *Freeman v. Strack,* 2000 WL 1459782 at *5; *Culp v. Koenigsmann,* 2000 WL 995495 at *6; *Carbonell v. Goord,* 2000 WL 760751 at *5.

9    *See also, e.g., Muhammad v. Warithu–Deen Umar,* 98 F.Supp.2d 337, 345 (W.D.N.Y.2000); *Guillen v. Tierney,* 93 Civ. 8853, 1995 WL 479406 at *4 (S.D.N.Y. Aug. 11, 1995); *West v. Keane,* 93 Civ. 6680, 1995 WL 434306 at *2 (S.D.N.Y. July 24, 1995); *James v. Artuz,* 93 Civ.2056, 1994 WL 174005 at *8 (S.D.N.Y. May 4, 1994); *Saunders v. Coughlin,* 92 Civ. 4289, 1994 WL 88108 at *4 (S.D.N.Y. Mar. 15, 1994); *Laureano v. Vega,* 92 Civ. 6056, 1994 WL 68357 at *7 (S.D.N.Y. Feb. 25, 1994), *aff'd,*No.94–2140, 40 F.3d 1237 (table) (2d Cir. Oct. 18, 1994).

10    *See also, e.g., Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574 (1977) (even though non-tenured teacher could have been fired for any reason, he may have a § 1983 claim if fired for exercising constitutionally protected First Amendment rights); *Higgins v. Davis,* 95 Civ. 3011, 2001 WL 262930 at *5 (S.D.N.Y Mar. 15, 2001); *Smith v. Deckelbaum,* 97 Civ. 1265, 2000 WL 1855128 at *3 (S.D.N.Y. Dec. 19, 2000); *Rivera v. Goord* 119 F.Supp.2d 327, 339–40 (S.D.N.Y.2000); *Oyague v. State,* 98 Civ. 6721, 2000 WL 1231406 at *4 (S.D.N.Y. Aug. 31, 2000), *aff'd,*2001 WL 668466, 13 Fed. Appx. 16 (2d Cir. June 12, 2001), *cert. denied,*122 S.Ct. 484 (2001); *Shabazz v. Vacco,* 97 Civ. 3761, 1998 WL 901737 at *3 (S.D.N.Y. Dec. 28, 1998); *Bey v. Eggleton,* 96 Civ. 4288, 1998 WL 118158 at *2 (S.D.N.Y. Mar. 17, 1998); *Pacheco v. Vanwyk,* No. 94–CV–456, 1997 WL 642540 at *7 (N.D.N.Y. Oct. 15, 1997) (Pooler, D.J.), *aff'd,*No. 97–2767, 164 F.3d 618 (table), 1998 WL 716572 (2d Cir. Oct. 9, 1998); *Lowrance v. Coughlin,* 862 F.Supp. 1090, 1101 (S.D.N.Y.1994).

11    *See also, e.g., Walker v. Keyser,* 98 Civ. 5217, 2001 WL 1160588 at *6 (S.D.N.Y. Oct. 2, 2001); *Williams v. Muller,* 98 Civ. 5294, 2001 WL 936297 at *3 (S.D.N.Y. Aug. 17, 2001); *Jackson v. Johnson,* 15 F.Supp.2d 341, 363–64 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Campbell v. Kuhlmann,* 91 Civ. 6766, 1998 WL 249196 at *4 (S.D.N.Y. May 15,1998).

12    *See also, e.g., Walker v. Keyser,* 2001 WL 1160588 at *6;*Wagnoon v. Gatson,* 00 Civ. 3722 & 99 Civ. 5872, 2001 WL 709276 at *6 (S.D.N.Y. June 25, 2001); *Rivera v. Goord,* 119 F.Supp.2d at 340.

13    Defendants argue that any injury was *de minimis* because Walker was able to acquire a job in the prison barbershop, paying approximately eighteen cents an hour, two weeks after the transfer. (Defs. Br. at 12; *see* page 7 above.) The fact that Walker was able to secure a new job which paid more than the job he was assigned after the alleged retaliatory transfer but less than the job he lost in Building 21A does not change the Court's analysis.

14    *See, e.g., Morales v. MacKalm,* 278 F.3d 126, 131–32 (2d Cir.2002) (at motion to dismiss stage, "the allegation that defendants transferred [plaintiff] to a psychiatric facility must be construed as describing an adverse action. [Plaintiff] should have the opportunity to develop facts that would demonstrate that the prospect of confinement in a psychiatric facility would deter a reasonable inmate from pursuing grievances."); *Davidson v. Chestnut,* 193 F.3d 144, 150–51 (2d Cir.1999) (issue of whether alleged retaliatory acts would chill reasonable inmate is "factual in nature"); *Rivera v. Goord,* 119 F.Supp.2d 327, 339–40 (S.D.N.Y.2000) (finding that assault by prison officials "would chill a person of ordinary firmness from continuing to engage in his First Amendment activity," but that verbal harassment is "*de minimis* and would not chill a person of ordinary firmness from exercising his First Amendment rights"); *Wells v. Wade,* 96 Civ. 1627, 2000 WL 1239085 at *2–4 (S.D.N.Y. Aug. 31, 2000) ("a rational trier of fact could find that the filing of a frivolous misbehavior report that resulted in thirteen days of pre-hearing keeplock confinement would be likely to chill

a person of ordinary firmness from continuing to engage in activity protected by the First Amendment: namely, pursuing a prison grievance.") (internal quotations omitted).

15  *See also, e.g., Brown v. Peters,* No. 97–2725, 175 F.3d 1007 (table), 1999 WL 106214 at *1 (2d Cir. Feb. 26, 1999); *Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *10 (S.D.N.Y. May 7, 2001)(Peck, M.J.); *Fulmore v. Mamis,* 00 Civ. 2831, 2001 WL 417119 at *8 (S.D.N.Y. Apr. 3, 2001) (Peck, M.J.) ( & cases cited therein); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *7 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *6 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Ali v. Szabo,* 81 F.Supp.2d 447, 462 (S.D.N.Y.2000) (Pauley, D.J. & Peck, M.J.).

16  *Accord, e.g., Wright v. Smith,* 21 F.3d at 501; *Espinal v. Goord,* 2001 WL 476070 at *10; *Fulmore v. Mamis,* 2001 WL 417119 at *8 ( & cases cited therein); *Freeman v. Strack,* 2000 WL 1459782 at *7; *Carbonell v. Goord,* 2000 WL 760751 at*7; *Zamakshari v. Dvoskin,* 899 F.Supp. at 1109;*see also, e.g., Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

17  Defendants have not moved for summary judgment for lack of personal involvement with respect to defendants Lt. Pataro and Capt. Thacker.

18  Deputy Supt. Ercole's statement that he is involved in prison security and not housing or job assignments is circumstantial evidence that Walker's transfer was not to make Walker more "comfortable" but may have been done to prevent Walker from fighting with C.O. Woodard. (*See also*Walker Aff. Ex. 1: 11/22/98 Grievance, where Walker stated that "this is the final time I request" that something be done about C.O. Woodard "or I will take the necessary steps to ensure I'm no longer harassed [and] verbally abused by this officer.")

19  In *Colon v. Coughlin,* the Second Circuit affirmed summary judgment for Commissioner Coughlin and Supt. Senkowski on the ground, *inter alia,* that the contents of the inmate's letters to them was not in the record and "we do not know, therefore, whether the letter was one that reasonably should have prompted [defendants] to investigate."*Colon v. Coughlin,* 58 F.3d at 873, 874 n.8.

In *Wright v. Smith,* the Second Circuit affirmed summary judgment for Commissioner Coughlin where plaintiff's letter to him was not specific, but found personal involvement by Supt. Smith because he received detailed notice, through a habeas petition, that plaintiff had not received a meaningful hearing before being placed in administrative confinement.*Wright v. Smith,* 21 F.3d at 501–02.

In *Williams v. Smith,* the Second Circuit found Supt. Smith personally involved where he affirmed plaintiff's disciplinary punishment on appeal.*Williams v. Smith,* 781 F.2d at 324.

In *Sealy v. Giltner,* the Second Circuit affirmed summary judgment for Commissioner Coughlin where he referred plaintiff's appeal letter to the prison superintendent. *Sealy v. Giltner,* 116 F.3d at 51.

20  *See also, e.g., Rivera v. Goord,* 119 F.Supp.2d 327, 344 (S.D.N.Y.2000) (Defendant "merely asserts that he wrote to these [supervisory] defendants [including the Commissioner and Supt.] complaining about the conduct of various Medical and Correctional Defendants and that his complaints were ignored. These allegations are insufficient to hold these Official/Supervisory Defendants liable under § 1983."); *Woods v. Goord,* 97 Civ. 5143, 1998 WL 740782 at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints, however, does not render [Supt.] Artuz personally liable under § 1983."); *Cox v. Cosgrove,* 94 Civ. 6361, 1998 WL 148424 at *9 (S.D.N.Y. Mar. 27, 1998) (" 'It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations .' ') (quoting *Higgins v. Artuz,* cited above).

21  It would appear to this Court that implicit (but not articulated as such) in the decisional law in this Circuit is that the more senior the defendant DOCS official, more will be needed in order to find personal involvement. This Court also believes that officials are more likely to be held personally involved where the inmate's complaint is about an ongoing problem that the official's action could eliminate (*e.g.,* prison housing assignments) than about a concluded action (*e.g.,* a corrections officer's use of excessive force), although again this distinction is not clearly articulated in the case law.

22  The Court notes that there are some district court decisions that hold that affirming denial of a grievance is not enough to constitute personal involvement, *e.g., Joyner v. Greiner,* 01 Civ. 7399, 2002 WL 550092 at *5 (S.D.N.Y. Mar. 28, 2002) ("The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement...."), while conversely other decisions hold that informing a supervisory official of a problem by letter can be enough for personal involvement, *e.g., Saar v. United States Dep't of Justice,* 705 F.Supp. 999, 1006 (S.D.N.Y. Feb. 7, 1989) (personal involvement by warden where plaintiff informed warden by letter and orally of alleged deprivations). The Court declines to follow such decisions that appear to deviate from the mainstream of decisions within the Circuit.

23  *See also, e.g., Williams v. NYC Dep't of Sanitation,* 00 Civ. 7371, 2001 WL 1154627 at *17 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); *Gonzalez v. New York City Transit Authority,* 00 Civ. 4293, 2001 WL 492448 at *14 (S.D.N.Y. May 9, 2001) (Peck, M.J.); *Wheeler v. Corporation Counsel of N.Y.C.,* 93 Civ. 5184, 2000 WL 1760947 at *9 (S.D.N.Y. Nov. 30, 2000), *aff'd*2002 WL 136088, 28 Fed. Appx. 90 (2d Cir. Jan. 29, 2002).

24  *See also, e.g., Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *11 (S.D.N.Y. May 7, 2001) (Peck, M.J.); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *7 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.) ( & cases cited therein); *Culp v. Koenigsmann,* 99

Civ. 9557, 2000 WL 995495 at *8 (S.D.N.Y. July 19, 2000) (Peck, M .J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *7 & n. 16 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Salahuddin v. Coughlin,* 999F.Supp. 526, 536–37 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.).

25    *See also, e.g., Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536 (1991); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987); *Martinez v. Simonetti,* 202 F.3d at 634; *Freeman v. Strack,* 2000 WL 1459782 at *7; *Culp v. Koenigsmann,* 2000 WL 995495 at *8; *Carbonell v. Goord,* 2000 WL 760751 at *7.

26    As noted above, where the qualified immunity issue is raised as to a supervisor's liability "both the subordinate's and the supervisor's actions (or lack thereof) are relevant." *Poe v. Leonard,* 282 F.3d at 134;*see* page 34 above. Here, however, defendants' brief spent only two pages on the qualified immunity argument and treated all defendants together. (*See*Dkt. No. 31: Defs. Br. at 17–19; *see also*Dkt. No. 36: Defs. Reply Br. at 6–7 .) The Court accordingly will also consider the qualified immunity issue as to all defendants as a group.

27    Walker stated that he "explained to C.O. Sylvester that his job required him to live in B/21 or B/21A. C.O. Sylvester informed Lt. Patero, the official in charge of movement at [Fishkill], of plaintiff's relocation problem."(Walker Aff. ¶ 3.)

---