**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JOHNATHAN JOHNSON,

                                    **Plaintiff,**

v.

                                                                                9:14-CV-0803 (BKS/TWD)

JEFF MCKAY, GAIL HAPONIK,
DR. CARL KOENIGSMANN,
JOSEPH BELLINIER, MAUREEN E. BOLL,
BRIAN FISCHER, DAVID ROCK,
THEODORE ZERNIAK, and
DONALD UHLER,

                                    **Defendants.**

_____

**Appearances:**

Plaintiff Pro Se
**Jonathan Johnson**
**89-A-1042**
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

For Defendants:
**Hon. Eric T. Schneiderman**
Attorney General for the State of New York
**by David J. Sleight, Esq.**
Main Place Tower
350 Main Street, Suite 300A
Buffalo, NY 14202


**Hon. Brenda K. Sannes,  U. S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

1

## I. Introduction

Plaintiff pro se Johnathon Johnson brings this action against defendants Jeff McKay, Gail Haponik, Dr. Carl Koenigsmann, Joseph Bellinier, Maureen E. Boll, Brian Fischer, David Rock, Theodore Zerniak, and Donald Uhler, asserting claims under 42 U.S.C. §1983 and New York state law arising out of his incarceration at Upstate Correctional facility.  (Dkt. No. 5).  Plaintiff alleges that defendants: (1) denied him access to the courts by depriving him of paper, mail, outside communications, and access to the prison law library; and (2) denied him videotapes for and access to inmate grievance procedures.  (Dkt. No. 5).  Plaintiff originally filed a verified complaint in State of New York Supreme Court, Franklin County on April 16, 2013.  (Dkt. No. 1-1).  On July 2, 2014, defendants removed the action to this Court.  (Dkt. No. 1).  On July 7, 2014, defendants moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 2).  Plaintiff filed an affirmation in opposition to defendants' motion, and sought to remand this action back to State Court.  (Dkt. Nos. 6, 7).  On December 9, 2014, the Court denied plaintiff's motion to remand.  (Dkt. No. 9).[1]

Upon referral pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c), United States Magistrate Judge Thérèse Wiley Dancks issued a Report-Recommendation and Order ("Report-Recommendation"), dated March 4, 2015, recommending that defendants' motion to dismiss for failure to state a claim be granted, and that plaintiff be granted leave to amend his claim regarding access to the courts, but denied leave to amend his claim regarding access to the grievance program.  (Dkt. No. 19, pp. 10-11).  Magistrate Judge Dancks found that plaintiff was not denied access to the courts because he filed myriad federal lawsuits during the time period in

---

[1] On February 4, 2015, this case was reassigned to the undersigned for all further proceedings.  (Dkt. No. 18).

which he alleges that he was deprived of paper, mail, outside communications, and access to the prison law library, and therefore, plaintiff failed to plead an actual injury. (*Id.*, p. 9). With respect to plaintiff's claim that he was denied evidence for and access to grievance procedures, Magistrate Judge Dancks found that plaintiff failed to state a claim because prison inmates have no protected constitutional interest in grievance proceedings. (*Id.*, p. 10).

Plaintiff has filed several objections to the Report-Recommendation. (Dkt. No. 20). First, plaintiff objects to the recommended dismissal of his denial of access to the courts claim on the grounds that the Court improperly took judicial notice of other lawsuits plaintiff has brought without giving him the opportunity to be heard. (*Id.*, pp. 7-10). Plaintiff further argues that the Court improperly "resolve[d] [a] factual dispute" regarding his access to the courts, and "did not treat the defendants' motion to dismiss as a motion for summary judgment." (*Id.*, p. 6). Plaintiff also argues that the public records considered by the Court did not include his cases dismissed for failure to prosecute. (*Id.*, p. 12).

Second, plaintiff objects to the recommended dismissal of his claim for denial of access to grievance procedures on the grounds that "Plaintiff's involvement in filing claims against prison officials, and helping others do so, was protected activity as it was an exercise of his right to petition the government for redress of grievances under the First Amendment." (Dkt. No. 20, p. 14). Third, plaintiff objects that the Report-Recommendation "failed to address Johnson's supplemental [state law] claims." (*Id.*, p. 16). Plaintiff argues that access to grievance procedures is protected under New York state law, and therefore, his claims "would be properly adjudicated by this court." (*Id.*).

Defendants have not responded to plaintiff's objections. For the reasons set forth below,

the Report-Recommendation is adopted in its entirety.

## II.  Standard of Review

This Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been specifically objected to by plaintiff.  *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  To be specific, the objection must, with particularity, "identify the portions of the proposed findings, recommendations, or report to which it has an objection and the basis for the objection." N.D.N.Y. L.R. 72.1(c).  Under *de novo* review, the Court must "examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions." *Almonte v. N.Y. State Div. of Parole*, No. 04 Civ. 484, 2006 U.S. Dist. LEXIS 2926, at *15, 2006 WL 149049, at *5 (N.D.N.Y Jan. 18, 2006) (citing *United States v. Raddatz*, 447 U.S. 667, 675 (1980)).  Findings and recommendations that are not objected to are reviewed for clear error. *Petersen*, 2 F. Supp. 3d at 229; *see also* Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.  Where only vague or general objections are made, or a party resubmits the same papers and arguments that have already been considered by the magistrate judge, the findings and recommendations are also reviewed for clear error.  *Petersen*, 2 F. Supp. 3d at 228-229. After review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

A complaint shall be dismissed on defendant's motion when it fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). Thus a pro se complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980). Although pro se complaints must be construed liberally, civil rights complaints "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which

are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

### III. Discussion

In view of plaintiff's specific objections, this Court conducts a *de novo* review of the portions of the Report-Recommendation regarding plaintiff's claims for denial of access to the courts and denial of evidence for and access to inmate grievance procedures.

### A. Denial of Access to the Courts

Plaintiff alleges that defendants denied him access to the courts from 2007 to 2013 by depriving him of paper, mail, outside communications, and access to the prison law library. (Dkt. No. 5, pp. 2-3). "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)). To state a claim for denial of access to the courts under §1983, plaintiff must allege facts to plausibly suggest: "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar v. Ashcroft*, 585 F.3d 559, 592 (2d Cir. 2009) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

"[T]he right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Harbury*, 536 U.S. at 415. In order words, plaintiff must demonstrate an "actual injury" by showing that his underlying claim was non-frivolous. *Lewis v. Casey*, 518 U.S. 343, 351-353 (1996) (reasoning that the "actual injury" requirement means that inmates must "demonstrate that a nonfrivolous legal claim ha[s]

been frustrated or was being impeded.").  "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."  *Harbury*, 536 U.S. at 415.  Ultimately, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued."  *Id.* at 417.

Here, plaintiff has failed to state any facts to suggest what underlying claim or claims were allegedly frustrated by defendants.  Instead, plaintiff makes a blanket statement "that he was denied access to the Courts, Federal and State, pending criminal and civil proceeding due to the Paper Deprivation Order, from 2007, 2008, 2009, 2010, 2011, and from March-April 2013." (Dkt. No. 5, p. 2).  Plaintiff also alleges that he was denied access to the prison law library, postal mail, and outside communications during the same period.  (*Id.*, at 3).  As for an injury, plaintiff alleges only that "as a result of the Access to the Courts denial Plaintiff has lost all appeals with the Third Department-Supreme Court of the State of New York…And the Supreme Court of the State of New York-Albany County" during the same time period.  (*Id.*, at 4).

Thus, while the Complaint contains sufficient facts to plausibly suggest that defendants frustrated his right to access the courts, plaintiff has failed to identify any underlying cause of action.  To state a claim for denial of access to the courts, plaintiff must plead the underlying claim and facts to plausibly suggest that it is not frivolous.  Plaintiff's allegation that he sustained an injury because he lost appeals in State Court is entirely conclusory because he failed to describe the underlying claims.  While a complaint must be construed in the light most favorable to the plaintiff, the complaint must still contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  The Court finds that plaintiff has failed to state a plausible claim for denial of access to the courts because the Complaint alleges no facts to

suggest an actual injury.

Plaintiff argues that in recommending dismissal of his claim for denial of access to the courts, Magistrate Judge Dancks improperly took judicial notice of his litigation history. (Dkt No. 20, pp. 7-10). Under Federal Rule of Evidence 201, a court "may take judicial notice on its own" of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)-(c). Further, "it is well established that courts may take judicial notice of publicly available documents on a motion to dismiss." *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 208 (S.D.N.Y. 2012); *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004) (courts can "look to public records...in deciding a motion to dismiss."). Thus, plaintiff's prolific litigation history,[2] which is a matter of public record, is a proper subject of judicial notice. *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc*., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation.") (internal citation omitted).

Moreover, a court may consider matters that are subject to judicial notice, such as plaintiff's past lawsuits, without converting a motion to dismiss into one for summary judgment.

---

[2] *See, e.g., Johnson v. Adams*, No. 10 Civ. 1082, 2012 U.S. Dist. LEXIS 104723, 2012 WL 3052957 (N.D.N.Y. July 5, 2012) (recounting plaintiff's litigation history). An additional review of the Public Access to Court Electronic Records database shows that, at a minimum, plaintiff filed federal cases in the Northern District of New York under the following docket numbers from 2007 to 2013: 9:07-cv-00158-LEK-GHL, 9:07-cv-01018-DNH-DRH, 9:07-cv-01237-TJM-DEP, 9:08-cv-00196-DNH, 9:09-cv-00244-DNH-GHL, 9:09-cv-01431-GTS, 9:10-cv-00247-DNH-DRH, 9:10-cv-00342-GLS, 9:10-cv-00436-GLS-RFT, 9:10-cv-00860-FJ-RFT, 9:10-cv-00861-LEK-DEP, 9:10-cv-01082-DNH-DEP, 9:11-cv-00386-GLS-CFH, 9:12-cv-00019-NAM-TWD, 9:12-cv-00091-MAD, 9:12-cv-00329-GTS-DEP.

*See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Xiotech Corp. v. Express Data Prods. Corp., ESI, LLC*, 11 F. Supp. 3d 225, 234 (N.D.N.Y. 2014). However, the Court has confined its review to the Complaint in assessing plaintiff's denial of access to the courts claim. As discussed above, the Court finds, without reference to plaintiff's litigation history, that the Complaint fails to state a plausible claim for denial of access to the courts.

Accordingly, as recommended by Magistrate Judge Dancks, plaintiff is granted leave to amend the Complaint to plead facts detailing the specific nonfrivolous claim or claims that defendants are alleged to have frustrated. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (A pro se complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal citation omitted). Therefore, plaintiff's objection to the Report-Recommendation regarding his claim for denial of access to the courts is without merit.

### B. Denial of Evidence for and Access to Inmate Grievance Procedures

Plaintiff also objects to the recommended dismissal of his First Amendment claim for denial of access to inmate grievance procedures. (Dkt. No. 20, p. 14). In support, plaintiff cites numerous cases where inmates brought First Amendment claims related to issues with the Inmate Grievance Program. *(Id.)*. However, the cases on which plaintiff relies all involve First Amendment *retaliation* claims. *See Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996); *Scott v. Coughlin*, 344 F.3d 282 (2d Cir. 2003); *Morales v. Mackalm*, 278 F.3d 126 (2d Cir. 2002). Here, plaintiff alleges that he was denied the full opportunity to file a grievance, not that he suffered retaliation for filing a grievance. Therefore,

in the absence of any facts suggesting a First Amendment retaliation claim, the cases cited by plaintiff are inapplicable.

Plaintiff has a constitutional right to petition the government, through the courts, for the redress of "grievances" in the general sense. *See Bill Johnson's Restaurants. Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987). However, specific "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim." *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005); *see also Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (holding that a prisoner litigant's claim that he has a "federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."); *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014); *Mimms v. Carr*, No. 09 Civ. 5740, 2011 U.S. Dist. LEXIS 61853, at *30, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated . . . where prison officials deny an inmate access to grievance procedures."); *Justice v. Coughlin*, 941 F. Supp. 1312, 1316 (N.D.N.Y. 1996) ("[M]ere violations of the grievance system do not violate the Constitution.").[3]

Thus, even assuming that defendants denied plaintiff evidence for or access to inmate grievance procedures at Upstate Correctional Facility, such facts simply do not implicate the First Amendment or give rise to a constitutional claim. Accordingly, plaintiff's objection to the

---

[3] In at least two other cases, plaintiff has made precisely the same grievance denial claim, and courts have rejected it for the same reason. *See Johnson v. Gonzalez*, No. 14 Civ. 745, 2015 U.S. Dist. LEXIS 31516, at *8-9, 2015 WL 1179384, at *5 (N.D.N.Y. Feb. 20, 2015) ("[B]ecause the IGPs are created under state law, and, thus, not required by the Constitution, allegations against prison officials for violation of, or interference with, those procedures cannot give rise to a cognizable claim under § 1983."); *Johnson v. Barney*, No. 04 Civ. 10204, 2006 U.S. Dist. LEXIS 90398, at *7, 2006 WL 3714442, at *2 (S.D.N.Y. Dec. 13, 2006) ("[I]nmate grievance procedures are not even constitutionally required.").

Report-Recommendation regarding his claim for denial of evidence for and access to inmate grievance procedures is without merit.

### C. State Law Claims

Finally, plaintiff argues that his Complaint should not be dismissed because, even if his §1983 claims are dismissed, he has also alleged claims under New York state law. (Dkt. No. 20, pp. 15-18). Liberally construing the Complaint, plaintiff has alleged violations of Article 1, Sections 5 and 6 of the New York State Constitution parallel to his federal claims for denial of access to the courts and denial of evidence for and access to grievance procedures. (Dkt. No. 5, p. 5). However, in light of the dismissal of plaintiff's federal claims, and given the early stage of the case, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims at this juncture. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). In the event plaintiff amends the Complaint to state a valid claim for denial of access to the courts, the Court will exercise jurisdiction over his state law claims.

In conclusion, after carefully reviewing all of the papers in this action, including Magistrate Judge Dancks's Report-Recommendation, and Plaintiff's Objections thereto, the Court concludes that the Report-Recommendation is correct in all respects.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 19) is **APPROVED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion to dismiss for failure to state a claim (Dkt. No. 2) is **GRANTED**, and it is further

**ORDERED** that plaintiff's claim for denial of evidence for and access to grievance

procedures is **DISMISSED** with prejudice; and it is further

**ORDERED** that plaintiff's claim for denial of access to the courts is **DISMISSED** without prejudice; and it is further

**ORDERED** that within 30 days of the date of this Memorandum-Decision and Order, plaintiff may file an Amended Complaint limited to his claim for denial of access to the courts, to plausibly suggest that he suffered an actual injury; and it is further

**ORDERED** that if plaintiff fails to file an Amended Complaint within 30 days of this Memorandum-Decision and Order, this action will be dismissed with prejudice; and it is further;

**ORDERED** that the Clerk of the Court shall serve on the parties a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**IT IS SO ORDERED.**


Dated: April 16, 2015
Syracuse, New York


Brenda K. Sannes
U.S. District Judge



Not Reported in F.Supp.2d, 2006 WL 149049 (N.D.N.Y.)
**(Cite as: 2006 WL 149049 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Rafael ALMONTE, Petitioner,
v.
NEW YORK STATE DIVISION OF PAROLE, Respondent.

No. Civ. 904CV484GLS.
Jan. 18, 2006.

Rafael Almonte, No. 00-A-2216, Clinton Correctional Facility, Dannemora, New York, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York, Department of Law, The Capitol, Albany, New York, for the Respondent.

Steven H. Schwartz, Asst. Attorney General, of counsel.

*Memorandum-Decision and Order*
SHARPE, J.
I. *Introduction*
 **\*1** Rafael Almonte challenges a New York State Parole Board decision denying him parole. *See Pro Se,* 28 U.S.C. § 2241 Habeas Corpus Pet. ("Petition"); *Dkt. No 1.* The petition was referred to Magistrate Judge David R. Homer, *see* 28 U.S.C. § 636(b) and L.R. 72.4, who recommended that it be denied. *See Dkt. No. 10.* Almonte filed a limited objection challenging only Judge Homer's conclusion that the Parole Board's decision was not arbitrary and capricious.[FN1] Having considered Almonte's objection, having reviewed Judge Homer's arbitrary and capricious conclusion *de novo* and the remainder of his report for clear error, the court adopts the Report-Recommendation in its entirety for the reasons stated by Judge Homer. Additionally, Almonte has procedurally defaulted, thus forfeiting his right to judicial review of all findings and con-

clusions except whether the Parole Board's decision was arbitrary and capricious.

> **FN1.** This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

II. *Background*
 Following Almonte's 1989 conviction for drug possession, the Bronx Supreme Court sentenced him to an indeterminate term of six years to life imprisonment. After he was released to life-time parole in 1994, Almonte was arrested in 1996 for a conspiracy to commit robbery and to shoot a police officer. In 2000, he pled guilty to conspiracy and was sentenced to an indeterminate term of two to four years imprisonment. Because his 2000 conviction violated the terms of his earlier parole, his release was revoked and he was required to complete the remainder of his 1989 six years to life sentence.

 When Almonte subsequently appeared before the Parole Board in July 2000, his release application was denied, and he was ordered held for two years before he could reapply. Almonte appealed. On March 29, 2001, the denial was vacated because the Division of Parole could not locate the minutes of Almonte's earlier appearance. On April 10, 2001, he reappeared before the Parole Board for a *de novo* hearing, parole was again denied, and the two year preclusion was re-instituted, effective from the date of his first appearance. That decision was affirmed on May 15, 2002. Twice more in 2002 and 2004, Almonte sought parole release and was denied.

 Almonte's petition claims: (1) the Parole Board's 2001 decision violated New York's Executive Law and Code of Rules and Regulations; (2) the two year preclusion forbidding a renewed application was excessive; and (3) the Parole Board's failure to make a timely decision and its reliance on impermissible information violated his substantive and procedural due process rights.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 149049 (N.D.N.Y.)
**(Cite as: 2006 WL 149049 (N.D.N.Y.))**

In response, the Attorney General asserted that Almonte's claims should be denied because: (1) they are not cognizable on habeas review because there is no constitutional or statutory right to parole release; (2) they are moot since Almonte had two parole hearings which post-dated the 2001 hearing under attack; and (3) they are procedurally defaulted because the last state court considering the claims denied them on the basis of a state procedural bar, and Almonte failed to demonstrate either cause and prejudice or actual innocence.

**\*2** Judge Homer's report carefully analyzed each of Almonte's claims. Judge Homer found that New York's parole scheme does not create a constitutionally protected liberty interest, and that Almonte's challenge was therefore limited to whether the Parole Board's decision was arbitrary and capricious. He then analyzed the relevant New York statutes, and articulated the reasons why the parole decision was not arbitrary and capricious and why Almonte was afforded the process due. Judge Homer declined to reach the merits of the Attorney General's mootness argument, and resolved the issue of procedural default in Almonte's favor.

In the report's concluding paragraph, Judge Homer recited the standard warning that accompanies all reports issued in this district; namely:

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1983); *Small v. Secretary of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e). (emphasis in the original)

Almonte subsequently filed timely, but limited objections.[FN2] *See* Dkt. No. 11 (*"Almonte Objections"*). He generally objected to Judge Homer's findings and conclusions, *id.* at ¶ 1, and supported his general objection by referencing the arguments

in his original petition. *Id.* at ¶ 2. However, his only specific, written objection related to Judge Homer's conclusion that the Parole Board had not acted arbitrarily and capriciously. *Id.* at ¶¶ 3-5. Therefore, he procedurally defaulted and is not entitled to judicial review of Judge Homer's other conclusions.

> FN2. Each of the denials barred Almonte from re-applying for parole for twenty-four months.

### III. *Discussion*

#### A. *Legal Principles*

By statute and rule, district courts are authorized to refer habeas corpus petitions to Magistrate Judges for proposed findings and recommendations regarding disposition. *See* 28 U.S.C. § 636(b)(1)(A) & (B); Rules 8 & 10 of the Rules Governing § 2254 Petitions in the United States District Courts, *foll.* 28 U.S.C. § 2254. By local rule, the Northern District does so automatically, randomly referring all *pro se* state habeas corpus petitions to Magistrate Judges. *See* L.R. 40.1, 72.3(c), 72.4(a); General Order # 12, § D(1)(G).

When a report and recommendation is filed, the parties must comply with specified procedures if they seek statutorily mandated district court review. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); Rule 8 of the Rules Governing § 2254 Petitions in the United States District Courts, *foll.* 28 U.S.C. §§ 2254; L.R. 72.1(c). Thus, they have ten (10) days from receipt of the report to file specific, written objections to proposed findings and recommendations, and ten (10) days from the receipt of adversary objections to file responses. *Id.* Although the statute and federal rules are clear, the local rules are clearer yet that parties must file written objections that specify the findings and recommendations to which they object, and the basis for their objections. *Cf.* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); Rule 8 of the Rules Governing § 2254 Petitions in the United States District Courts, *foll.* 28 U.S.C. §§ 2254 *with* L.R. 72 .1(c). The loc-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

al rule is by no means inconsistent with the statute or federal rules, and is therefore legally enforceable. *See Whitfield v. Scully,* 241 F.3d 264, 270 (2d Cir.2001); *see also* FED. R. CIV. P. 83(a)(b).

**\*3** The district court must review *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); Rule 8 of the Rules Governing § 2254 Petitions in the United States District Courts, *foll.* 28 U.S.C. §§ 2254; L.R. 72.1(c). After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... [and] may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); Rule 8 of the Rules Governing § 2254 Petitions in the United States District Courts, *foll.* 28 U.S.C. §§ 2254.

If a party fails to object, or timely or specifically object, it procedurally defaults, and it is entitled to no judicial review whatsoever. *See Thomas v. Arn,* 474 F.3d 140, 149 & n. 7, 150, 152, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003); *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *Spence v. Superintendent, Great Meadow Correctional Facility,* 219 F.3d 162, 174 (2d Cir.2000); *DeLeon v. Strack,* 234 F.3d 84, 86 (2d Cir.2000); *United States v. Male Juvenile,* 121 F.3d 34, 38-39 (2d Cir.1997); *Federal Deposit Insurance Corporation v. Hillcrest Associates,* 66 F.3d 566, 569 (2d Cir.1995); *IUE AFL-CIO Pension Fund v. Herrman,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Limited,* 838 F.2d 55, 58 (2d Cir.1988); *Abehouse v. Ultragraphics, Inc.,* 754 F.2d 467, 473 (2d Cir.1985); *McCarthy v. Manson,* 714 F.2d 234, 237 & n. 2 (2d Cir.1983); *see also* FED. R. CIV. P. 72(b) advisory committee note (1983). Although the doctrine of procedural default developed as a

Circuit appellate rule, it applies in the district courts as long as parties, including those appearing *pro se,* receive clear notice of the consequences of their failure to properly object. *DeLeon v. Strack,* 234 F.3d at 86 (citing *Male Juvenile,* 121 F.3d at 38-39); *see also Thomas v. Arn,* 474 U.S. at 149 & n. 7 (statute does not preclude procedural default analysis at the district court level). As to *pro se* parties, the notice requirement is satisfied if the report at least states that the failure to object will preclude appellate review, and cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure. *Roldan v. Racette,* 984 F.2d at 89; *Frank v. Johnson,* 969 F.2d at 300. In this district, reports routinely recite the requisite warning, as did Judge Homer's in this case.

The doctrine of procedural default naturally flows from the Congressional expectation that highly credentialed men and women would fill the Magistrate Judge positions after the passage of the Federal Magistrates Act. *See Thomas v. Arn,* 474 U.S. at 148 & 152; *see also* 28 U.S.C. § 631 (merit selection process). Thus, the Act was designed to provide district courts with additional assistance, and any requirement mandating district court review of Magistrate Judges' reports absent objections "would be an inefficient use of judicial resources." *Id.* at 148.

**\*4** Although the failure to object or timely object constitutes procedural default, other factual predicates give rise to default as well. Thus, a party that limits its specific objections to a part of a report's findings or recommendations procedurally defaults as to the remainder. *See Cephas v. Nash,* 328 F.3d at 107 (citing *Mario v. P & C Food Markets, Inc.,* 313 F.3d at 766). Default occurs when objections are not specific or written, *Abehouse v. Ultragraphics, Inc.,* 754 F.2d at 473, and a general objection is not a specific objection. *Goney v. Clark,* 749 F.2d 5, 6-7 (3d Cir.1984); *Douglas v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir.1996); *Neuman v. Rivers,* 125 F.3d 315, 321-23 (6th Cir.1997); *Lockert v. Faulkner,* 843

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

F.2d 1015, 1019 (7th Cir.1988); *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1060 (10th Cir.1996); *Grosso v. Artuz,* No. 97 Civ. 1623, 1998 WL 542312, at *2-3 (S.D.N.Y. Aug.25, 1998) (citing *Thomas v. Arn,* 474 U.S. at 147-48). Resubmission of the same papers and arguments as submitted to the Magistrate Judge fails to comply with the specificity requirement because the local rule requires that objections address specific findings and conclusions. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 281 F.Supp.2d 436, 439 (N.D.N.Y.2003); *Camardo v. General Motors Hourly-Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (citing *Nettles v. Wainwright,* 677 F.2d 404, 410 (former 5th Cir. 1882) (*en banc* ) ("[i]t is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specifically consider. The rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.")); *but see Cicio v. John Does 1-8,* 321 F.3d 83, 90 n. 5 (2d Cir.2003). Furthermore, frivolous or conclusory objections fail to satisfy the specificity requirement. *Nettles v. Wainwright,* 677 F.2d at 410 n. 8; *Arbor Hill,* 281 F.Supp.2d at 439; *Camardo,* 806 F.Supp. at 382; *Brown v. Peters,* No. Civ. A. 95-CV-1641, 1997 WL 599355, at *2 (N.D.N.Y. Sept.22, 1997) (Pooler, DJ).

Because procedural default is non-jurisdictional, the district court retains discretion to disregard it in the interests of justice. *Cephas v. Nash,* 328 F.3d at 107 (citing *Thomas v. Arn,* 474 U.S. at 155). Such discretion is "based on, among other factors, whether the defaulted argument has substantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulted party." *Spence,* 219 F.3d at 174 (citing *Theede v. United States Dep't of Labor,* 172 F.3d 1262, 1268 (10th Cir.1999); *Douglas,* 79 F.3d at 1428). As the Supreme Court has observed:

[T]he district court ... must exercise supervision over the magistrate. Even ... [if a procedural default rule permits a] ... district judge ... to refuse to review a magistrate's report absent timely objection ... [t]he rule merely establishes a procedural default that has no effect on the ... court's jurisdiction. The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

**\*5** *Thomas v. Arn,* 474 U.S. at 154.

As noted, if the parties properly object, the court must conduct a *de novo* review, and may do so regardless. *De novo* review requires that the court " 'give fresh consideration to those issues to which specific objections have been made.' It will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions." *United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (citing H.R.Rep. No. 94-1609, 94th Cong., 1st Sess. p. 3 (1976), U.S.Code Cong. & Admin. News 1976, p. 6163); *see also* 12 Charles Alan Wright *et. al., Federal Practice and Procedure* § 3070.2 (2d ed.1997). 28 U.S.C. § 636(b)(1) actually employs the phrase "*de novo* determination" rather than "*de novo* hearing," thus permitting "whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations." *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989) (citing *Raddatz,* 447 U.S. at 676). When the district court makes its *de novo* determination, the parties have no right to present evidence not submitted to the Magistrate Judge. Nonetheless, the court retains the discretion to consider additional evidence although it should afford the parties notice. *See Hynes v. Squillace,* 143 F.3d 653, 656 (2d

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.1998) (citing *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994); *Pan American World Airways, Inc. v. International Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990)).

The more complex question arises when a party procedurally defaults, the court is neither statutorily mandated to conduct *de novo* review nor does it elect to do so, but it concludes that some review is in order nonetheless. Under such circumstances, what standard applies? In short, the court may elect any standard it wishes.

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure are both silent on the review standard under such circumstances. However, the Rule 72(b) Advisory Committee Note suggests that the court will review for "clear error," stating:

"When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119, quoted in House Report No. 94-1609, 94th Cong.2d Sess. (1976) at 3. *Compare Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

*See* FED. R. CIV. P. 72(b) advisory committee's note (1983). Numerous decisions cite the 1983 Note as persuasively requiring "clear error" review, but the value of that Note is undercut by dicta in the Supreme Court's 1985 decision in *Thomas v. Arn.* There, the Court stated: "[W]hile the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Arn,* 474 U.S. at 154.

**\*6** When reviewing reports despite procedural default, district courts have applied standards with varying names and definitions. Thus, some adopt the "clearly erroneous" standard that is articulated

in the statute and federal rule governing review of a Magistrate Judge's nondispositive orders, and referenced in the 1983 Advisory Committee Note. *See e.g. Martinez v. Senkowski,* No. 6:97-CV-0624, 2000 WL 888031, at *3 (N.D.N.Y. June 28, 2000); *see also* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). Given the definition typically assigned to "clearly erroneous," the courts review a report to determine whether the findings are against the clear weight of the evidence, or whether the recommendations cause the court to definitely and firmly conclude that a mistake has been committed. *See Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Other courts have adopted a "contrary to law" standard which means that the report fails to apply, or misapplies, relevant statutes, case law, or rules of procedure. *See e.g. Catskill Development, L.L.C. v. Park Place Entertainment Corp.,* 206 F.R.D. 78, 86 (S.D.N.Y.2002); *Tompkins v. R.J. Reynolds Tobacco, Co.,* 92 F.Supp.2d 70, 74 (N.D.N.Y.2000). When excusing procedural default in the interests of justice, the Circuit has reviewed the underlying decision or report for "plain error." *See Spence,* 219 F.3d at 174 (citing *Douglas,* 79 F.3d at 1428 (5th Cir.1996) (citing *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Plain error is one that is clear or obvious and affects substantial rights. *Spence,* 219 F.3d at 174.

Mindful that district courts retain jurisdictional authority over all dispositive issues, this court routinely reviews reports before entering final judgment whether objections are registered or not. When the court does so, however, it is aware that the reports are generated by Magistrate Judges with extraordinary professional and judicial experience. Accordingly, when required by statute or rule or when the court's routine review so dictates, the court will make a *de novo* determination of findings and recommendations. Absent *de novo* review, the

court will apply a "clearly erroneous" standard, and defines that phrase as follows: a report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights. Furthermore, the court will routinely identify issues which have been procedurally defaulted, and articulate the standard of review applied to all issues.

B. *Judge Homer's Report and the Objections*

In part, Judge Homer's report concludes: New York's parole statute does not create a protected liberty interest subject to the full panoply of due process safeguards; the two year preclusion forbidding Almonte from submitting a renewed parole application was consistent with the mandates of New York law, and therefore not excessive; Almonte's petition is not moot; and Almonte has not procedurally defaulted. Almonte has now procedurally defaulted on the first two findings because his objections regarding them were either nonexistent or non-specific. By failing to object whatsoever or file a response to Almonte's objections, the respondent has procedurally defaulted on the second two. Because these findings are not clearly erroneous, the court adopts them in their entirety for the reasons stated by Judge Homer.

**\*7** Judge Homer also concluded that the Parole Board decision was not arbitrary and capricious, and Almonte has specifically objected to that conclusion. The court has conducted a *de novo* review of Judge Homer's conclusion, Almonte's objection, and the underlying record.

As Judge Homer observed, the parole decision was not arbitrary and capricious if the Parole Board gave Almonte an opportunity to be heard and advised him of the reasons for denying parole. Almonte had three hearings, was heard during all three, and received written denial decisions. In his petition and in his objection, Almonte essentially argues that the Parole Board saw fit to release him after his first conviction, but refused to do so after his second because it impermissibly considered facts that were not part of his conspiracy convic-

tion. To the contrary, the Parole Board was authorized to consider whether Almonte would lead a law-abiding life if released, whether his release was compatible with society's welfare, and whether his release would deprecate the seriousness of his crime thereby undermining respect for the law. *See Dkt. No. 10, Homer Report* at 5. In its decisions denying parole, the Board repeatedly referenced Almonte's prior convictions for possession of a loaded weapon, cocaine sales and conspiracy, but never referred to facts outside the record of those convictions. Furthermore, the Board specifically considered legitimate factors that arose after its original decision admitting Almonte to parole; namely, a probation revocation, a new conviction while under parole supervision, and the fact that his prior incarceration failed to deter him from continuing criminal behavior. *Id.* Having reviewed the underlying record *de novo,* there is no factual support for Almonte's bald conclusion that the Parole Board considered impermissible factors when reaching its decisions. Accordingly, Judge Homer's conclusion that the Parole Board's decision was not arbitrary and capricious is correct, and Almonte's petition is denied.

IV. *Conclusion*

For the reasons stated, it is hereby

ORDERED, that the Report-Recommendation of Magistrate Judge David R. Homer, filed on June 1, 2005 is ACCEPTED in its entirety for the reasons stated; and it is further

ORDERED, that this petition is DENIED in its entirety; and it is further

ORDERED, that the Clerk of the Court enter judgment in favor of defendant and close this case.

IT IS SO ORDERED.

REPORT-RECOMMENDATION AND ORDER
FN1

HOMER, Magistrate J.
Petitioner Rafael Almonte ("Almonte") is cur-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

rently an inmate in the custody of the New York State Department of Correctional Services (DOCS) at Clinton Correctional Facility. Almonte pleaded guilty to conspiracy in the fourth degree on April 20, 2000 in Bronx Supreme Court and was sentenced to an indeterminate term of two to four years imprisonment. Due to a previous conviction, Almonte remains incarcerated serving a sentence of life imprisonment. Almonte now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that the decision denying him parole was arbitrary, capricious, and violated New York law, that the time from the decision on reconsideration was excessive, that the parole board denied his parole without justification, and that he was denied substantive due process when his request for parole was denied. For the reasons which follow, it is recommended that the petition be denied.

### I. Background

On October 17, 1989, Almonte was convicted of criminal possession of a controlled substance in the second degree in Bronx Supreme Court and was sentenced to an indeterminate term of six years to life imprisonment. Resp't Answer (Docket No. 7), Ex. 2 at 3. On December 9, 1994, Almonte was released under parole supervision for life. *Id.* On December 19, 1996, Almonte was arrested for conspiracy to commit robbery and shoot a police officer. *Id.* at 5. On April 20, 2000, Almonte pleaded guilty to fourth degree conspiracy in violation of N.Y. Penal Law § 105.10 and was sentenced to a indeterminate term of two to four years imprisonment. *Id.* at Ex. 1. As this conviction was a violation of parole, Almonte was required to complete the remainder of his sentence for the 1989 conviction of six years to life imprisonment.

Almonte appeared before the parole board in July 2000 and parole was denied. Resp't Answer at Ex. 4. On March 29, 2001, Almonte's appeal was granted because the Division of Parole was unable to locate the transcribed minutes of Almonte's July 2000 appearance. Almonte was thus scheduled to appear in April 2001 before the parole board. *Id.*

On April 10, 2001, Almonte re-appeared before the parole board and parole was again denied. Resp't Answer at Exs. 8, 11. On Almonte's appeal, this decision was affirmed on May 15, 2002.[FN2] *Id.* at Ex. 13. On May 8, 2002, Almonte appeared before the parole board and parole was again denied. *Id.* at Ex. 12. Almonte's parole was again denied on May 10, 2004. Almonte's appeal of this decision was pending as of the date this petition was filed. *Id.* at Exs. 15, 16.

Almonte challenged the April 2001 denial of his parole in an Article 78 proceeding[FN3] which was denied as moot due to Almonte's subsequent appearance before the parole board. *Id.* at Ex. 18. On March 7, 2003, Almonte filed a petition for a writ of habeas corpus pursuant to N.Y. C.P.L.R. § 7001, which was denied. *Id.* at Ex. 19. Both of these decisions were affirmed by the Appellate Division. *Almonte v. New York State Div. of Parole,* 2 A.D.3d 1239, 768 N.Y.S.2d 861 (3d Dep't 2003). The New York Court of Appeals dismissed Almonte's appeal on March 25, 2004. *Almonte v. New York State Div. of Parole,* 2 N.Y.3d 758 (2004) This action followed.

### II. Discussion
#### A. Parole Denial

Respondent first contends that Almonte's petition is not cognizable because Almonte does not have a liberty interest in being released on parole.

The Supreme Court has held that since "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," due process safeguards in parole hearings are only required if the state's parole statute creates an expectation of liberty. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), *Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001). Furthermore, the mere possibility of parole does not, by itself, create a constitutionally protected liberty interest. *Greenholtz,* 442 U.S. at 11. The New York State parole scheme does not create a protected liberty interest.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Barna,* 239 F.3d at 171.

Almonte's challenge is therefore limited to whether he was denied parole for arbitrary or impermissible reasons. *Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Boddie v. New York State Div. of Parole,* 288 F.Supp.2d 431, 440 (S.D.N.Y.2003). "[A]ll that the Board must do is (a) afford the inmate an opportunity to be heard and (b) if parole is denied, advise him [or her] of the reasons for its decision." *Blackett v. Thomas,* 293 F.Supp.2d 317, 319 (S.D.N.Y.2003). A review of the parole board's determination here does not reveal a violation of due process or state statute. Almonte had three parole hearings in 2000, 2001, 2002, and 2004. Almonte was given an opportunity to be heard and written opinions providing the bases for the board's determinations at each. *See Greenholtz,* 442 U.S. at 16.

Almonte contends that he should have been released on parole because he received an eligibility certificate and had served the minimum period of imprisonment. New York's parole statute vests broad discretion in the parole board when determining an inmate's release. N.Y. Exec. Law § 259-i(2)(c) (McKinney 2001). An inmate's institutional record must be considered by the board, but the board must also consider "if there is a reasonable probability that, if such inmate is released, he [or she] will live and remain at liberty without violating the law, and that his [or her] release is not incompatible with the welfare of society and will not so deprecate the seriousness of his [or her] crime as to undermine respect for law." N.Y. Exec. Law § 259-i(2)(c)(A). The "seriousness of [the inmate's] crime" is relevant both to the likelihood that the inmate will not be a danger to the community and to the independent requirement that early release not "deprecate the seriousness of his crime so as to undermine respect for law." Here, each time parole was denied, the parole board considered Almonte's previous convictions for possession of a loaded weapon and possession and sale of cocaine, that his probation was previously revoked, that he was un-

der parole supervision at the time of the instant offense, and that prior incarcerations failed to deter him from continuing criminal behavior. Resp't Answer at Exs. 9, 12, 15. The factors considered here comply with New York law.

In ground two, Almonte contends that the twenty-four month wait for reconsideration was excessive. However, this is the period allowable by state law. N.Y. Exec. Law § 259 i(2)(a). In grounds three and four, Almonte also contends that the board considered charges that were dismissed when he pleaded guilty. The decision of the parole board in denying parole does not refer to the crimes that were dismissed and only refers to the conspiracy charge. Almonte has presented no evidence that the parole board's decision was based on factors other than those permitted by New York's statutory framework.

Therefore, the petition should be denied on its merits.

### B. Mootness

Respondent also argues in the alternative that Almonte's claim regarding the 2001 denial of parole is moot in light of his reappearance before the parole board in 2002 and 2004. Almonte argues that the state court's review of the denial of parole is futile because he would be eligible for a new parole hearing before the state court's appeal is complete. Traverse (Docket No. 8) at 6.

There exists support for the proposition that a subsequent parole hearing renders moot a challenge to a prior hearing. *Rodriguez v. Greenfield,* No. 99 Civ 0532 (TPJ), 2002 WL 48440, at *4 (S.D.N.Y. Jan. 10, 2002). However, other case law suggests that the issue in fact may not be moot and Almonte's argument that the state remedies are futile has been characterized as "potentially powerful." *Boddie,* 285 F.Supp.2d at 427-28; *Defino v. Thomas,* No. 02 Civ. 7413(RWS), 2003 WL 40502, at *3 (S.D.N.Y. Jan.2, 2003). However, this question need not be reached as Almonte articulates no due process violation. "Since [the] petition can eas-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ily be rejected on the merits, requiring submission of that petition to the state courts, with the likelihood that the same arguments will eventually be presented here in any event, would be a waste of the resources of both the state and federal courts." *Brown v. Thomas,* NO. 02 Civ 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar.10, 2003). Accordingly, it is recommended that respondent's argument on this ground not be addressed.

C. Independent and Adequate State Ground

Finally, respondent contends that Almonte has procedurally defaulted on all claims raised in his petition.

A federal habeas court is precluded from reviewing a "question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Jones v. Stinson,* 229 F.3d 112, 117 (2d Cir.2000). This occurs when the last state court rendering a judgment in the case clearly and expressly held that its judgment rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones,* 229 F.3d at 118. In order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis and the state court's reliance on state law must be unambiguous and clear from the face of the opinion. *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000); *Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir.2001). We apply a presumption against finding a state procedural bar and "ask not what we think the state court actually might have intended but whether the state court plainly stated its intention." *Jones,* 229 F.3d at 118.

The Appellate Division affirmed the county court's decision denying Almonte's Article 78 proceeding regarding the 2001 parole denial as moot and denying his state habeas petition. The Appellate Division did not plainly state that its judgment

was procedural and the cases cited did not indicate that dismissal for mootness was a state procedural ground. There is no indication from the decision that the Appellate Division's decision was based on an independent and adequate state ground. Therefore, the Appellate Division did not clearly and expressly state that their decision rested on procedural grounds.

Accordingly, respondent's argument on this ground should be rejected.

III. Conclusion
For the reasons stated above, it is hereby

RECOMMENDED that the petition for a writ of habeas corpus be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of HHS.* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

June 1, 2005.

FN3. N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp.2005) establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

FN1. The Clerk is directed to append Judge Homer's report and recommendation to this decision, and familiarity is presumed.

FN2. The Attorney General did not object or respond to Almonte's objections.

N.D.N.Y.,2006.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 149049 (N.D.N.Y.)
**(Cite as: 2006 WL 149049 (N.D.N.Y.))**

Almonte v. New York State Div. of Parole
Not Reported in F.Supp.2d, 2006 WL 149049
(N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2360059 (E.D.N.Y.)
**(Cite as: 2011 WL 2360059 (E.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Reginald MIMMS, Plaintiff,
v.
A.W. CARR, Captain Hess, Captain Pennick, K.
Page, K. Small, J. Anderson, C. Marshall, D.
Gonzalez, Ramcharan, Ms. Hamilton, and Dr. It-
tayem, Defendants.

No. 09–CV–5740 (NGG)(LB).
June 9, 2011.

Reginald Mimms, Ayer, MA, pro se.

Orelia E. Merchant, United States Attorneys Office,
Eastern District of New York, Brooklyn, NY, for
Defendants.

**MEMORANDUM & ORDER**
NICHOLAS G. GARAUFIS, District Judge.

**\*1** Plaintiff pro se Reginald Mimms
("Mimms") brings this action under *Bivens v. Six
Unknown Named Agents of Fed. Bureau of Narcot-
ics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971) against various government employees
working at the Metropolitan Detention Center
("MDC"), a prison run by the United States Bureau
of Prisons ("BOP"). (*See* Am. Compl. (Docket
Entry # 7).) Defendants move to dismiss under Fed-
eral Rule of Civil Procedure 12(b)(6).[FN1] (Docket
Entry # 48.) For the following reasons, Defendants'
motion is granted in part and denied in part.

> FN1. Defendants move in the alternative
> for summary judgment under Rule 56. As
> discussed below, all of Mimms's claims are
> dismissed, except for his claim against De-
> fendants Anderson and Marshall for retali-
> ating against him in violation of the First
> Amendment. Both parties should be af-
> forded an opportunity to conduct appropri-

ate discovery as to this claim before mak-
ing any factual submissions on a motion
for summary judgment. Therefore, the
court, in its discretion, declines to rule at
this stage on Defendants' alternative Rule
56 motion.

## I. BACKGROUND

Mimms alleges a series of events that occurred
at the MDC between October 2009 and January
2010. (*See* Am. Compl.) Accompanying the
Amended Complaint is an "Appendix" that includes
several administrative grievance forms that Mimms
filed, some of which correspond to the incidents al-
leged in the Amended Complaint, but many of
which do not. (*See* Docket Entry7–1, 7–2.) Also in-
cluded in the Appendix are several requests by
Mimms for medical treatment. (*See* Docket Entry #
7–3.) Mimms's specific allegations against the
named Defendants are as follows:[FN2]

> FN2. Mimms also makes allegations re-
> garding MDC employees who are not
> named Defendants, namely verbal abuse
> and threats by a Ms. Matos, a Mr. Ennis,
> and a Mr. Birkland. (*See* Am. Compl. at
> 13; Docket Entry # 7–1 at 1.) Because it
> does not appear that Mimms intends to sue
> these individuals, and because nothing in
> the docket indicates that they have been
> served or named as defendants, the court
> will not address these allegations.

(1) On October 4, 2009, Defendant Associate
Warden Carr ("Carr") threatened to place Mimms
in the "Special Housing Unit ['SHU'] and [to] give[
][him] an incident report for asking questions re-
garding the cadre program," a prison program he
was assigned to. (Am. Compl. at 4, 13.) In addition,
Carr warned Mimms, "Do what we say or we'll lock
you up." (*Id.* at 13.)

(2) On January 6, 2010, Defendant C. Marshall
("Marshall") made an inappropriate, sexually sug-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2360059 (E.D.N.Y.)
**(Cite as: 2011 WL 2360059 (E.D.N.Y.))**

gestive comment to Mimms, saying, "When you gonna let me suck that[?]," while looking at Mimms's crotch. (*Id.* at 5.)

(3) Mimms alleges a series of instances from October 2009 to January 2010 in which MDC employees—namely, Defendants J. Anderson ("Anderson"), K. Page ("Page"), K. Small ("Small"), Captain Hess ("Hess"), and Captain Pennick ("Pennick")—mishandled his administrative grievances by failing to accept them, failing to respond to them, or failing to forward them to appropriate parties. (*Id.* at 5, 12, 13.)

(4) On January 8, 2010, Defendant Dr. Ittayem ("Ittayem") refused to treat Mimms after he complained of nerve damage in his arm (*id.* at 5, 8) and, on January 14, 2010, Defendant Ms. Hamilton ("Hamilton") failed to respond to Mimms's request for dental treatment (*id.* at 6, 8).

(5) Mimms alleges that, on January 12 and 13, 2010, Anderson, Marshall, and other members of MDC staff retaliated against him for repeatedly filing administrative grievances. Anderson was part of the "unit team" assigned to Mimms, which apparently had some responsibility for handling his administrative grievances. (*Id.* at 13.) On three prior occasions—in October and December 2009—Mimms had handed Anderson grievances on other staff members. (*Id.* at 5, 13.) On these occasions, Anderson had said to Mimms, "You sure you want to file this[?]," "I'm tired of you and these ... administrative remedies," and "I'm so sick of you and these" administrative grievances. (*Id.* at 5, 13.)

**\*2** On January 12, 2010, Mimms attempted to give Anderson a grievance "on the legal department," which Anderson refused to accept. (*Id.* at 6.) "Ten minutes" later, Anderson "coerced" Marshall into "shak[ing] down" Mimms's cell and confiscating his belongings. (*Id.*) The same day, Marshall "ranted angrily" at Mimms, saying "let what I've taken from you be a lesson" and "the next time you write me up, spell my name right—Marshall has two L's ." (*Id.*) The next day, January 13, 2010,

Marshall sprayed ketchup all over Mimms's cell and told Mimms's cellmate, "Tell Mimms to clean that shit up or I'll give him an incident report." (*Id.*) That same day, Mimms received four "incident reports." (*Id.*) After Mimms explained to Defendant D. Gonzalez ("Gonzalez") that Gonzalez was "violating policy and my rights regarding incident reports and policy," Gonzalez said, "I have to lock you up." (*Id.*) Mimms was then placed in the SHU; he does not state for how long. (*Id.*)

Mimms alleges that he was the victim of "retaliation for filing on staff." (*Id.*) He further alleges that Anderson and Marshall are liable for "conspiring to falsely arrest and imprison [him] for exercising his constitutional rights by filing administrative remedies against staff for misconduct." (*Id.* at 7.)

In addition to alleging that Anderson, Marshall, and Gonzalez were involved in imposing discipline on him in retaliation for his filing of grievances, Mimms alleges that Page and Defendant Ramcharan ("Ramcharan"), along with Anderson and Marshall, "caused [his] wrongful charging, prosecution, false report, and ... wrongful conviction of prison infractions by coercing, constructing, altering, manipulating, and fabricating evidence which formed the basis for plaintiff [sic] charges." (*Id.*) Mimms does not provide any detail as to how or when such fabrication occurred.

(6) Mimms alleges that Carr, Hess, Pennick, Page, and Small failed to properly supervise or train Anderson and Marshall. (*Id.* at 4, 8, 12.)

Nothing in Mimms's Amended Complaint or Appendix indicates that he fully exhausted any of his administrative grievances, as required, and Defendants move to dismiss on this ground (*see* Def. Mem. (Docket Entry # 52) at 5–7). In response, Mimms claims that he somehow exhausted his administrative remedies by filing separate civil suits in connection with unrelated, prior events at different correctional facilities. (*See* Minims Resp. (Docket Entry # 46) at 2.) Mimms does not state

that he exhausted his claims in any other fashion. He also argues that, in any event, the BOP's administrative grievance procedure violates the First Amendment, such that exhaustion should be excused. (*Id.*) Mimms's own submissions establish that he did not exhaust his administrative remedies as per BOP procedure.

## II. DISCUSSION

### A. Applicable Legal Standards

#### 1. *Motion to Dismiss Standard*

**\*3** In reviewing a defendant's motion to dismiss under Rule 12(b) (6), the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences from these allegations in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund. Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). But while "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (internal quotation marks omitted), even a pro se complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,' " *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

*Bivens* provides a remedy only for constitutional violations. *See Benzman v. Whitman,* 523 F.3d 119, 125 (2d Cir.2008) ("A *Bivens* action is a blunt and powerful instrument for correcting constitutional violations[.]"); *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) ("In a *Bivens* action, 'damages may be obtained for injuries consequent upon a violation of [the Constitution] by federal officials.' ") (quoting *Bivens,* 403 U.S. at 395). Thus, to the extent Mimms's claims fail to state a constitutional violation, they will be dismissed.

#### 2. *Exhaustion*

Under the Prison Litigation Reform Act of 1996 ("PLRA"), an action may not be brought "with respect to prison conditions under [42 U.S.C. § ] 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (noting that PLRA exhaustion requirement applies to *Bivens* claims). "Once within the discretion of the district court, exhaustion in cases covered by [the PLRA] is now mandatory." *Id.* The PLRA "requires proper exhaustion," *Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), which means the prisoner must "compl[y] with the agency's deadlines and other critical procedural rules," *id.* at 90; *see also Davis v. Reilly,* 324 F.Supp.2d 361, 365 (E.D.N.Y.2004) (finding that, to satisfy the exhaustion requirement, a prisoner "must pursue his challenge ... through to the highest level of administrative review prior to his suit").

The BOP has established a four-step administrative-remedies process that federal inmates must follow to meet the PLRA's exhaustion requirement. First, the inmate must attempt to informally resolve any issue of concern with prison staff. 28 C.F.R. § 542.13(a). If the inmate is dissatisfied with the informal resolution, he must submit a formal Administrative Remedy Request (BP–9) within twenty days of the incident in question. *Id.* § 542.14(a). Within twenty days of such filing, the prison warden is required to respond in writing. *Id.* § 542.18. An inmate who is not satisfied with the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

warden's response to his BP–9 may submit an appeal on a BP–10 form to the Regional Director within twenty days of the date of the warden's response. *Id.* § 542.15(a). The Regional Director is required to respond in writing within thirty days of such filing. *Id.* § 542.18. An inmate who is not satisfied with the Regional Director's response may submit a final appeal on a BP–11 form to the BOP's General Counsel within thirty days of the Regional Director's response. *Id.* § 542.15(a). General Counsel is required to respond in writing within forty days of such filing. *Id.* § 542.18.

**\*4** If, at any stage, the inmate does not receive a response within the time allotted, he should consider his request or appeal to have been denied. *Id.* In other words, if the deadline for response to either a BP–9 or a BP–10 has expired, the inmate, in order to preserve his claim, must file an appeal at the next level, rather than file suit in the district court. *See George v. Morrison–Warden, No. 06–CV–3188 (SAS),* 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007)* ("It is well-settled ... that *even when an inmate files a grievance and receives no response,* he must nevertheless properly exhaust all appeals before his grievance is considered exhausted.") (emphasis in original and internal quotation marks omitted).

Although exhaustion under the PLRA is mandatory, the court must employ a three-part inquiry where defendants, as here, assert lack of exhaustion as a defense. *See Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir.2007). First, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Id.* Second, the court must inquire as to "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* Finally, if administrative remedies were available to the inmate and the defendants are not estopped, the court should consider whether "special circumstances," such as a reasonable misunderstanding of grievance procedures, have been plausibly alleged

to justify the prisoner's failure to exhaust. *Id.*

Though a plaintiff need not plead exhaustion, *see Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), his complaint may be dismissed on the ground of exhaustion if "the allegations in the complaint suffice to establish that ground," *id.* at 215.

**B. Individual Claims**

1. *First Amendment Retaliation*

Mimms alleges that, on January 12 and 13, 2010, Anderson, Marshall, and other members of the MDC staff retaliated against him for filing administrative grievances. Mimms alleges that, on several prior occasions, he had attempted to hand Anderson—who was part of the "unit team" assigned to Mimms—administrative grievances on other staff members. (Am. Compl. at 5, 13.) Upon receiving these grievances, Anderson expressed displeasure and said she was "sick of" Mimms's repeated filings. (*Id.* at 5, 13.) On January 12, 2010, after Mimms attempted to hand Anderson another grievance—this one on the "legal department"—Anderson directed Marshall to search Mimms's cell. (*Id.* at 6.) Marshall did so, confiscating several of Mimms's belongings. (*Id.*) Some time later, Marshall yelled that this should "be a lesson" to Mimms, adding, "the next time you write me up, spell my name right." (*Id.*) The next day, Marshall sprayed ketchup all over Mimms's cell and warned that he would receive an "incident report" if he failed to clean it up. (*Id.*) The same day, Mimms received four "incident reports" and was placed in the SHU. (*Id.*) Mimms alleges that Anderson and Marshall "conspir[ed] to falsely arrest and imprison" him, and that all this was done in retaliation for his filing of complaints against prison staff. (*Id.* at 6, 7.)

**\*5** Mimms's allegations in connection with the events of January 12 and 13, 2010, are not limited to Anderson and Marshall. Mimms alleges that, along with Anderson and Marshall, Page, Ramchar-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

an, and Gonzalez "caused [his] wrongful charging, prosecution, false report, and ... wrongful conviction of prison infractions by coercing, constructing, altering, manipulating, and fabricating evidence which formed the basis for plaintiff [sic] charges." (*Id* . at 7.) Mimms also alleges that, on January 13, 2010, after he received the four incident reports, he complained to Gonzalez that the incident reports violated his rights. (*Id.*) Gonzalez responded that, nevertheless, he had to "lock [Mimms] up." (*Id.*)

a. Exhaustion

Mimms's allegations are sufficient to support the conclusion, at this stage, that, after January 13, 2010, the BOP's administrative grievance procedures were no longer "available" to him. *See Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir.2007) (exhaustion is excused if administrative remedies were not "available" to the inmate). Whether conduct by prison staff renders grievance procedures unavailable to an inmate depends on whether "a similarly situated individual of ordinary firmness" would have deemed them available. *Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir.2004) (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)). Mimms's allegations are sufficient to show that Marshall's conduct and Mimms's subsequent discipline, apparently in retaliation for Mimms's previous filing of grievances against prison staff, would have deterred a similarly situated inmate of ordinary firmness from pursuing further grievances or appeals. *See Hill v. Donohue,* No. 08–CV–1045 (JS)(AKT), 2010 WL 3924858, at *1 (E.D.N.Y. Sept. 30, 2010) ("[C]ourts have held that administrative remedies may not be available when prison officials engage in affirmative misconduct, such as threats or intimidation, to deter or impede a prisoner from filing a grievance."); *Hepworth v. Suffolk County,* No. 02–CV–6473 (ENV)(ETB), 2006 WL 2844408, at *4–7 (E.D.N.Y. Sept. 29, 2006) (exhaustion excused where inmate was threatened for filing a grievance); *McCullough v. Burroughs,* No. 04–CV–3216 (FB)(LB), 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005) (exhaustion excused where inmate was assaulted in retaliation for filing

grievances); *see also Macias,* 495 F.3d at 45 (remanding for consideration of whether threats by prison staff rendered administrative remedies unavailable); *Hemphill,* 380 F.3d at 688 (same). Therefore, the court declines to dismiss, on exhaustion grounds, Mimms's claims relating to the events of January 12–13, 2010.

b. Claims Against Anderson and Marshall

i. Sufficiency of Allegations

Recognizing "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," the Second Circuit has warned that retaliation claims should be treated "with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). "However, that does not mean that such claims are automatically to be dismissed." *See Jones v. Harris,* 665 F.Supp.2d 384, 397 (S.D.N.Y.2009). To prove a First Amendment retaliation claim, the plaintiff must demonstrate (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) a causal connection between the protected speech and the adverse action. *See Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009).

**\*6** The first requirement—that the conduct in question be protected-is met, as it is well-settled that filing prison grievances is activity protected by the First Amendment. *See, e.g .,* *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004); *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003).

The second requirement—that the prison officials' actions be "adverse" to the prisoner—is met as well. In the prison context, whether a retaliatory action is "adverse" depends on whether it would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights. *See Espinal,* 558 F.3d at 129 n. 7. The prisoner "need *not* demonstrate an actual or subjective chill—that is, any dissuasion from further exercising *his own*

rights." *Gill v. Calescibetta,* 157 F. App'x 395, 398 (2d Cir.2005) (emphasis in original) (citing *Pidlypchak,* 389 F.3d at 380). The Second Circuit has held that the retaliatory filing of false misbehavior reports against a prisoner and his placement in "keeplock" constitutes adverse action. *See Pidlypchak,* 389 F.3d at 384; *see also Mateo v. Fischer,* 682 F.Supp.2d 423, 434 (S.D.N.Y.2010) (filing of false misbehavior report constitutes adverse action). Mimms alleges that Marshall, on Anderson's order, searched Mimms's cell and confiscated his belongings; that Marshall subsequently sprayed ketchup all over Mimms's cell and threatened to file an incident report if Mimms didn't clean it up; that Anderson and Marshall "construct[ed], alter[ed], manipulate [ed], and fabricat[ed] evidence which formed the basis" for disciplinary charges against Mimms; that Mimms was given four disciplinary incident reports; and that Mimms was subsequently put in the SHU. These allegations clearly meet the "adverse action" requirement.

Mimms has also met the third requirement, that of causation. "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis,* 320 F.3d at 354. Mimms alleges that, on several prior occasions, Anderson expressed displeasure at Mimms's repeated filing of grievances. (Am.Compl.5, 13.) He also alleges that Marshall stated that the confiscation of Mimms's belongings should be a "lesson," and added, "the next time you write me up, spell my name right—Marshall has two L's." (*Id.* at 6.) These alleged comments by Anderson and Marshall tie their alleged retaliatory conduct to Mimms's filing of prison grievances. Furthermore, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal,* 558 F.3d at 129; *see also Mateo,* 682 F.Supp.2d at 435 ("Circumstantial evidence of causation may exist where the adverse action occurs soon after the protected activity"; where prisoner alleged that false

misbehavior report was filed one day after he filed a grievance, causation requirement was met) (citing *Colon,* 58 F.3d at 872). Minms alleges that the retaliatory action took place on the same day and the day after he attempted, on January 12, 2010, to file a prison grievance against the "legal department" by handing it to Anderson. (Am. Compl. at 6.) Furthermore, Mimms includes, in his Appendix, a grievance filed against Anderson and Marshall, also dated January 12, 2010. (*See* Docket Entry # 7–2 at 8.)

**\*7** In sum Mimms has alleged sufficient, plausible facts to show that Anderson and Marshall subjected him to adverse action in retaliation for his exercise of protected activity, namely the filing of administrative grievances against prison staff. Mimms has therefore stated a First Amendment retaliation claim as to Anderson and Marshall.

ii. Qualified Immunity

Notwithstanding Defendants' argument to the contrary (*see* Def. Mem. at 28), Anderson and Marshall are not entitled to qualified immunity. "Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Costello v. City of Burlington,* 632 F.3d 41, 51 (2d Cir.2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Accordingly, a government official "is shielded from liability for civil damages if his conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights." *Reuland v. Hynes,* 460 F.3d 409, 419 (2d Cir.2006). In determining whether the constitutional right in question was "clearly established," a court may refer to the decisional law of the applicable circuit. *Costello,* 632 F.3d at 52.

As the case law cited above demonstrates, it was clearly established, at the time of the incidents in question, that the filing of prison grievances was protected by the First Amendment. *See Gill v.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2360059 (E.D.N.Y.)
**(Cite as: 2011 WL 2360059 (E.D.N.Y.))**

*Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004); *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003). It was also clearly established that subjecting a prisoner to fabricated disciplinary reports and consequent confinement in the SHU, in retaliation for the filing of such grievances, constituted unconstitutional "adverse action." *See Espinal v. Goord,* 558 F.3d 119, 129 n. 7 (2d Cir.2009); *Pidlypchak,* 389 F.3d at 380. Moreover, where, as here, the allegations in the complaint are sufficient to support the claim that a defendant violated clearly established constitutional rights with a retaliatory motive, the defendant cannot assert that his conduct was "objectively reasonable." *See Johnson v. Ganim,* 342 F.3d 105, 117 (2d Cir.2003).

Accordingly, the court denies Defendants' motion to dismiss as to Mimms's claim that Anderson and Marshall retaliated against him in violation of the First Amendment.[FN3]

> **FN3.** Contrary to Defendants' argument ( *see* Def. Mem. at 19), Mimms's First Amendment retaliation claim is not barred by *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). In that case, the Supreme Court, extending its ruling in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), held that the district courts must dismiss any civil claim necessarily implying the invalidity of a prison disciplinary proceeding *affecting the length of sentence* (e.g., affecting "good time" credit), unless the disciplinary action has previously been reversed. *See Balisok,* 520 U.S. at 648. In *Peralta v. Vasquez,* 467 F.3d 98 (2d Cir.2006), the Second Circuit made clear that the *Balisok* rule has no application where the prison disciplinary proceeding in question does *not* affect the length of the inmate's sentence. *Id.* at 103–04; *see also McEachin v. Selsky,* 225 F. App'x 36, 37 (2d Cir.2007). Nothing in the parties' submissions indicates that the discipline to

which Mimms was subject on January 13, 2010 affected the length of his sentence. Therefore, *Balisok* does not apply.

c. Claims Against Ramcharan, Page, and Gonzalez

i. First Amendment

To state a First Amendment retaliation claim against Ramcharan, Page, or Gonzalez, Mimms, under *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), must allege facts sufficient to render it facially "plausible" that those Defendants took "adverse action" against Mimms that was causally connected to his filing of prison grievances. Whereas Mimms presents a relatively detailed, plausible narrative as to Anderson and Marshall, he offers no such detail to add plausibility to his allegations against Page, Ramcharan, and Gonzalez.

**\*8** Ramcharan is mentioned only once in the Amended Complaint, as part of the group of five people (including Ramcharan, Anderson, Page, Marshall, and Gonzalez) who allegedly fabricated evidence. (Am. Compl. at 7.) Mimms does not differentiate among the conduct of these five and does not specify what evidence was allegedly fabricated, or how.

Page is mentioned elsewhere in the Amended Complaint, where Mimms alleges that he, along with Anderson and Small, failed to properly handle Mimms's administrative grievances. (*Id.* at 5, 13.) Mimms also alleges that Page, along with Carr, Hess, Pennick, and Small, failed to properly train Anderson and Marshall. (*Id.* at 8.) Nonetheless, these additional allegations do not add detail or plausibility to his claim that Page participated in fabricating the evidence that led to Mimms's January 13, 2010 placement in the SHU.

Mimms alleges that Gonzalez was one of the five who fabricated evidence and also alleges that, on January 13, 2010, Gonzalez said to Mimms, "I have to lock you up." (*Id.* at 6, 7.) These are the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2360059 (E.D.N.Y.)
**(Cite as: 2011 WL 2360059 (E.D.N.Y.))**

only mentions of Gonzalez in the Amended Complaint. Mimms's allegations against Gonzalez are not meaningfully different from those against Ramcharan. Gonzalez's alleged statement that he had to "lock [Mimms] up" does not suggest that he participated in the alleged fabrication of evidence or that he acted with retaliatory motive.

Mimms's bare allegation that Ramcharan, Page, and Gonzalez, at some unidentified time, fabricated unidentified evidence against Mimms is insufficient to meet the *Iqbal* plausibility standard. *See Iqbal,* 129 S.Ct. at 1949 (allegations are insufficient to state a claim if they consist of " 'naked assertion[s]' devoid of 'further factual enhancement' ") (quoting *Twombly,* 550 U.S. at 557: *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that *Iqbal* plausibility standard was not met as to one of plaintiff's claims where plaintiff, in connection with this claim, alleged that " 'Defendants[,]' undifferentiated," violated his rights, and "fail[ed] to specify any culpable action taken by any single defendant"). The court therefore dismisses Mimms's First Amendment retaliation claims against Ramcharan, Page, and Gonzalez.

ii. Due Process

To the extent that Mimms's allegations against Ramcharan, Page, and Gonzalez can be read to claim a violation of Mimms's due process rights, such a claim must also fail. "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (internal quotation marks omitted). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir.2009) (internal quotation marks and alterations omitted). An inmate who alleges that prison officials violated his due process rights by imposing discipline must show that the

conditions of his disciplinary segregation were more onerous than "routine prison conditions" or that the duration of the segregation was longer than permissible "discretionary confinement." *Id.* The Second Circuit noted in *Colon v. Howard,* 215 F.3d 227 (2d Cir.2000), that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and that, therefore, an inmate subjected to such confinement would have to prove that the conditions were more onerous than usual. *Id.* at 231–32 & 232 n. 5. Nothing in Mimms's Amended Complaint indicates that he was subjected to confinement that was unusually onerous or extended. Thus, Mimms has failed to state a claim that the January 13, 2010 disciplinary proceeding implicated any due-process-protected liberty interest. Mimms also fails to state a claim that Ramcharan, Page, and Gonzalez deprived him of due process, because, as explained above, his allegation that those Defendants participated in fabricating evidence against him lacks plausibility under *Iqbal.*

2. *Threat to Place Mimms in the SHU*

**\*9** Mimms alleges that, on October 4, 2009, Carr threatened to place him in the SHU "for asking questions" about a prison program, after which Mimms was given an "incident report" in connection with the incident. (Am. Compl. at 4, 13.) Any claims related to these allegations are unexhausted. Mimms alleges that he submitted an administrative grievance in connection with Carr's threat, and never received any response. (*Id.* at 13.) As the applicable BOP rules make clear, Mimms was required to file a BP–9 Administrative Remedy Request within twenty days of the incident, i.e., by October 24, 2009. If he received no response to the BP–9 within twenty additional days—i.e., by November 13, 2009—he was required to assume that the relief requested in the BP–9 had been denied and to submit a BP–10 appeal. Neither in his Amended Complaint nor in his response to Defendants' motion does Mimms claim to have filed either a BP–9 or a BP–10. Instead, he argues that he exhausted his administrative remedies by filing unrelated lawsuits

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

and that the BOP's grievance procedures are unconstitutional. (*See* Mimms Resp. at 2.) The court considers it established by the pleadings that Mimms failed to exhaust his administrative remedies in connection with the October 4, 2009 incident, and therefore any related claims must be dismissed. *See Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009) (affirming dismissal of claim where inmate's failure to properly exhaust was "undisputed").

3. *Inappropriate Sexual Comment*

Mimms alleges that, on January 6, 2010, Marshall made an inappropriate sexual comment to him. (Am. Compl. at 5.) Exhaustion is excused as to this claim for the same reason discussed above as to Mimms's First Amendment retaliation claim. After the alleged retaliation of January 12 and 13, 2010—that is, before the passing of the twenty-day deadline for filing a grievance in connection with the January 6, 2010 incident—an inmate of "ordinary firmness" would have felt that administrative grievance procedures were no longer "available."

Nonetheless, Mimms fails to state a claim in connection with this incident. Allegations of verbal harassment, unaccompanied by resulting injury, do not state a claim under the United States Constitution. *See Cole v. Fischer,* 379 F. App'x 40, 43 (2d Cir.2010); *Felder v. Filion,* 368 F. App'x 253, 256 (2d Cir.2010) (both citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)). An inmate's allegations of "severe or repetitive" sexual abuse may state a claim under the Eighth Amendment. *See Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997). The comment alleged by Mimms does not rise to this level, however. *See id.* (finding that plaintiff's allegations of "small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent" were insufficiently serious to state a claim under the Eighth Amendment): *see also Jones v. Harris,* 665 F.Supp.2d 384, 396 (S.D.N.Y.2009) ("Several district courts have considered the issue, and have held that verbal sexual harassment of a prisoner,

without physical contact, does not violate the Eighth Amendment.") (citing cases). "This is true even though sexual harassment in any form, and no matter how minor the incident, is always despicable." *Id.* at 396.

**\*10** Because Mimms's allegations as to Marshall's conduct on January 6, 2010 do not make out a constitutional violation, any claims relating to this conduct are dismissed.

4. *Improper Handling of Administrative Grievances*

Mimms alleges that, between October 2009 and January 2010, Anderson, Page, Small, Hess, and Pennick mishandled his administrative grievances by failing to accept them, failing to respond to them, or failing to forward them to appropriate parties. (Am. Compl. at 5, 12, 13.) Based on Mimms's filings, it appears that Mimms did not exhaust his administrative remedies as to these incidents. Further, in at least some instances, this failure to exhaust cannot be excused by the alleged January 12–13, 2010 retaliation against Mimms, because there were steps Mimms was required to take to exhaust prior to January 12, 2010. However, the court need not determine which of these claims must be dismissed for lack of exhaustion, since it is clear that these allegations fail to state a constitutional claim, either under the Due Process Clause or the First Amendment.

To make out a due process claim, a plaintiff must prove that he had a liberty interest upon which defendant's conduct infringed. *See Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). It is well-established that prison grievance procedures do not create a due-process-protected liberty interest. *See, e.g., Mateo v. Fischer,* 682 F.Supp.2d 423, 431 n. 3 (S.D.N.Y.2010); *Mastroianni v. Reilly,* 602 F.Supp.2d 425, 437 (E.D.N.Y.2009); *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003). Thus, the alleged failure of prison staff to properly respond to or accept Mimms's grievances did not, in itself, violate Mimms's right to due process.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Nor did it violate Mimms's First Amendment rights. The First Amendment guarantees meaningful access to the courts and the right to petition the government for redress. *See Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). The First Amendment is not implicated, however, where prison officials deny an inmate access to grievance procedures. As discussed above, where an inmate files a grievance but is dissatisfied with the response, or lack of response, he may appeal to the Regional Director and then to the BOP's General Counsel. If the inmate is unable to obtain relief in this manner, he may bring suit in federal court. In particular, if the conduct of prison staff renders these procedures unavailable to the inmate, failure to exhaust will be excused and the inmate may bring suit in federal court. *See Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir.2007). Thus, the First Amendment rights to petition the government and access the courts are not infringed where prison officials deny inmates access to grievance procedures. *See, e.g., Harris v. Westchester County Dep't of Corrections,* No. 06–CV–2011 (RJS), 2008 WL 953616, at *5 (S.D.N.Y. Apr.3, 2008) (citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991)); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 370–71 (W.D.N.Y.2005); *Lumaj v. Williams,* No. 03–CV–1849 (PKC), 2004 WL 1207894, at *5 (S.D.N.Y. June 2, 2004); *Cancel v. Goord,* No. 00–CV–2042 (LMM), 2001 WL 303713, at *3–4 (S.D.N.Y. Mar.29, 2001).

**\*11** Accordingly, the court dismisses Mimms's claims based on the failure by MDC staff to properly respond to his prison grievances.[FN4]

> FN4. For the same reasons—the lack of a protected liberty interest and the inmate's unimpeded access to federal court—the court finds meritless Mimms's argument that the BOP's grievance procedures are themselves

5. *Deliberate Indifference to Mimms's Medical Needs*

a. Claim Against Hamilton

Mimms alleges that, on January 14, 2010, Hamilton failed to respond to Mimms's request for dental treatment. (Am. Compl. at 6, 8.) This claim is dismissed for lack of jurisdiction.

In a sworn declaration accompanying the Defendants' motion, Nicole McFarland ("McFarland"), a staff attorney employed by the MDC, states that Hamilton worked at the MDC as a "dentist commissioned by the Public Health Service ('PHS')." (McFarland Decl. (Docket Entry # 50) ¶ 22.) Mimms does not dispute this (*see* Mimms Resp.) and the court finds that Hamilton was, as McFarland states, commissioned by the PHS.

Under 42 U.S.C. § 233(a), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), is the "exclusive remedy" for actions "resulting from the performance of medical, surgical, dental, or related functions, ... by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." *See Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir.2000). Section 233(a) specifically extends this immunity to civil actions based on an "omission." Furthermore, § 233(a) extends to alleged constitutional violations, shielding PHS employees from *Bivens* actions arising out of their employment duties. *See generally Hui v. Castaneda,* —— U.S. ——, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010): *see also Cuoco,* 222 F.3d at 107–08.

It is clear that Hamilton's alleged failure to respond to Mimms's request for dental treatment was an omission "within the scope" of her employment as a dentist commissioned by the PHS. *See, e.g., Warrender v. United States,* No. 09–CV–2697 (KAM)(LB), 2011 WL 703927, at *4 (E.D.N.Y. Feb. 17, 2011) (defendant PHS employee's delay in providing medication to plaintiff was within the scope of defendant's employment); *Brown v. McElroy,* 160 F.Supp.2d 699, 703 (S.D.N.Y.2001) (alleged failure by defendant PHS employees to provide plaintiff with medical treatment, "if true,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

occurred within their capacity as doctors responsible for rendering medical treatment to Brown").

Since, under § 233(a), the FTCA provides the "exclusive remedy" for claims such as this one, the court lacks subject matter jurisdiction over Mimms's *Bivens* claim against Hamilton. *See Adekova v. Holder,* 751 F.Supp.2d 688, 693–94 (S.D.N.Y.2010) (plaintiff's claims against PHS employees dismissed for lack of subject matter jurisdiction under § 233(a)); *Libbett v. Doody,* 686 F.Supp.2d 271, 275 n. 5 (W.D.N.Y.2010) ("[T]he issue of § 233(a)'s applicability to plaintiff's claims goes to the Court's subject matter jurisdiction over those claims[.]"). Accordingly, the court dismisses this claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court, in dismissing on jurisdictional grounds, is permitted to rely on McFarland's affidavit without, in so doing, converting Defendants' motion to dismiss into one for summary judgment. *See Alliance For Environmental Renewal, Inc. v. Pyramid Crosseates Co.,* 436 F.3d 82, 88 & 88 n. 8 (2d Cir.2006); *J.S. ex rel. N.S. v. Attica Central Schools,* 386 F.3d 107, 110 (2d Cir.2004).[FN5]

> FN5. Under 28 U.S.C. § 2679(d)(1), the court must deem Mimms's claim against Hamilton to be a claim under the FTCA, such that "the United States shall be substituted as the party defendant." The court, however, must dismiss such a claim for lack of subject matter jurisdiction, since Mimms failed to exhaust his administrative remedies under the FTCA. *See Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir.2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."). In order to exhaust an FTCA claim, a federal inmate must first file his claim with the BOP's regional office. *See* 28 C.F.R. § 543.31(c). If the inmate is dissatisfied with

the regional office's response, he may submit a written request for reconsideration. *See id.* § 543 .32(g). Only if the inmate is "dissatisfied with the final agency action" may he file an FTCA suit in federal court. *See id.; Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 242, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008). Under 28 U.S.C. § 2401(b), an FTCA action may not proceed unless the plaintiff presents his claim to the appropriate federal agency with two years of the time the claim accrued. Mimms has not administratively exhausted his claim as to Hamilton in this manner, thus depriving the court of subject matter jurisdiction over any FTCA claim.

b. Claim Against Ittayem

**\*12** Minims alleges that, on January 8, 2010, Ittayem refused to treat the nerve damage in Mimms's left arm. (Am. Compl. at 5, 8.)

For the same reason discussed above as to Mimms's retaliation claim, exhaustion of administrative remedies is excused as to this claim. This is so even though Mimms does not allege that Ittayem was personally involved in the retaliation. Anderson and Marshall allegedly retaliated against Mimms for filing grievances against prison staff in general—not only grievances against Anderson and Marshall themselves. Mimms's allegations as to this retaliation, taken as true, are sufficient to show that a person "of ordinary firmness" would reasonably have felt that administrative grievances were unavailable as to *any* member of the MDC's staff, at least in the immediate aftermath of the alleged January 12–13, 2010 retaliation.

However, Mimms fails to state a constitutional claim against Ittayem. Where a prison official exhibits "deliberate indifference to serious medical needs" of an inmate, the official violates the Eighth Amendment's prohibition of cruel and unusual punishment. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state such an Eight Amendment claim, the plaintiff must plead

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

allegations meeting both "objective" and "subjective" standards. *See Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006).

The "objective" standard requires that the alleged deprivation of medical care be "sufficiently serious." *Id.* "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)) (internal quotation marks omitted). If the plaintiff, as in Mimms's case, alleges "a failure to provide any treatment for [his] medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.' " *Id.* (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)); *see also Chance,* 143 F.3d at 702 (serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain") (internal quotation marks omitted). A plaintiff is not required to demonstrate that he experienced "pain that is at the limit of human ability to bear, nor [that his] condition will degenerate into a life-threatening one." *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003).

The "subjective" standard requires that the defendant prison official have acted with a sufficiently culpable state of mind, namely "deliberate indifference." *See Salahuddin,* 467 F.3d at 280 (citing *Wilson,* 501 U.S. at 300). Deliberate indifference "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1970). "Deliberate indifference is a mental

state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839–40). Thus, a plaintiff must allege sufficient facts to show that "the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result." *Id.; see also Farmer,* 511 U.S. at 837–38 (criminal law "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware"); *Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) ( "Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it' ") (quoting *Farmer,* 511 U.S. at 847).

**\*13** Mimms alleges that Ittayem refused to treat nerve damage in his left arm.[FN6] In particular, Mimms alleges that, at the time of his treatment request to Ittayem, he suffered from nerve damage in his left arm due to a broken finger in his left hand, accompanied by numbness, weakness, and chronic pain. (Am. Compl. at 8, 9, 11; Docket Entry # 7–3 at 3, 4.)

> **FN6.** In his Amended Complaint, Mimms refers to several other medical problems as well, but these do not appear to be relevant to his claim against Ittayem.

The court need not determine whether these conditions are sufficiently serious to state an Eighth Amendment claim, since it is clear that Mimms fails sufficiently to allege Ittayem's "deliberate indifference," as required. Mimms alleges that he asked Ittayem, "How long before I'm seen regarding nerve damage to my left arm?" (Am. Compl. at 5.) Ittayem then told Mimms, "Lift your arm, stretch it out." (*Id.*) "After that," Mimms states, "Dr. Ittayem smirked and said 'Nerve damage, huh' and dismissed me with a wave of his hand." (*Id.*) The clear implication is that Mimms did in fact lift and stretch his left arm and that this convinced Dr. Ittayem that Mimms's alleged "nerve damage" was not serious. In other words, Mimms's own allega-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

tions show that Ittayem, while perhaps negligent, did not disregard a substantial risk, of which he was aware, that failing to provide Mimms treatment would cause serious harm.

Because Mimms pleads insufficient facts to meet the "subjective" standard applicable to Eight Amendment deliberate indifference claims, his claim as to Ittayem is dismissed.

### 6. *Supervisory Liability*

Finally, Mimms alleges that Carr, Hess, Pennick, Page, and Small failed to properly supervise or train Anderson and Marshall. (Am. Compl. at 4, 8, 12.) Because the only claim that survives Defendants' motion to dismiss is Mimms's claim that Anderson and Marshall retaliated against him in violation of the First Amendment, the court considers Mimms's supervisory liability claim only in connection with that alleged constitutional violation. FN7

> FN7. Mimms also alleges that Carr is liable for "malicious prosecution." (Am. Compl. at 4.) The court assumes that Mimms here refers to his January 13, 2010 disciplinary proceeding and subsequent placement in the SHU. Mimms does not allege that Carr was personally involved in this incident. Therefore, the court reads Mimms's Amended Complaint to allege that Carr is liable to the extent that he failed to supervise or train those who *were* personally involved, i.e., Anderson and Marshall. unconstitutional (*see* Mimms Resp. at 2).

There is no vicarious liability in *Bivens* suits. *See Iqbal,* 129 S.Ct. at 1948. Accordingly, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* A plaintiff can prove such personal liability in the following ways:

(1) the defendant participated directly in the al-

leged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (internal quotation marks omitted). Where a plaintiff alleges the violation of a constitutional right resulting from a supervisory official's failure to train subordinates, he must prove (1) that the official was deliberately indifferent to the need to train subordinates as to their obligation not to violate the constitutional right at issue, and (2) that the lack of training actually caused the alleged constitutional violation. *See Connick v. Thompson,* —— U.S. ——, ——, 131 S.Ct. 1350, 1358, 179 L.Ed.2d 417 (2011).

**\*14** Mimms does not allege any specific facts to support any of the above-listed theories of supervisory liability. Instead, his claim that Carr, Hess, Pennick, Page, and Small failed to supervise or train Anderson and Marshall is wholly conclusory, and thus insufficient to support a finding of liability. *See Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (affirming dismissal of failure-to-supervise claim against supervisory official since complaint lacked "any hint that [the official] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Accordingly, Mimms's supervisory liability claims are dismissed.

### III. CONCLUSION

Defendants' motion to dismiss as to Mimms's claim that Anderson and Marshall violated the First Amendment by retaliating against Mimms for filing

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2360059 (E.D.N.Y.)
**(Cite as: 2011 WL 2360059 (E.D.N.Y.))**

prison grievances is DENIED. As to all of Mimms's other claims, Defendants' motion to dismiss is GRANTED.

SO ORDERED.

E.D.N.Y.,2011.
Mimms v. Carr
Not Reported in F.Supp.2d, 2011 WL 2360059 (E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3052957 (N.D.N.Y.)
**(Cite as: 2012 WL 3052957 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jonathan JOHNSON, Plaintiff,
v.
ADAMS, Doctor, Upstate Correctional Facility, et al., Defendants.

Civil Action No. 9:10–CV–1082 (DNH/DEP).
July 5, 2012.

Johnathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Office of Attorney General State of New York, Adele M. Taylor–Scott, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*
DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Johnathan Johnson, a prolific inmate litigant who has been granted leave to proceed *in forma pauperis* ("IFP"), has commenced this action pursuant to 42 U.S.C. § 1983 against the former Deputy Commissioner and Director of Health Services for the New York State Department of Corrections and Community Supervision ("DOCCS"), the Superintendent of the correctional facility in which he is incarcerated, and a physician, a physician's assistant, and two registered nurses who work at that prison, alleging deprivation of his civil rights. In his complaint, Johnson maintains that he has been denied various medications including an inhaler for his alleged chronic obstructive pulmonary disease ("COPD"), Neutrogena soap, and A & D Ointment, and asserts that the denial represents deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, and was in retaliation for his having filed grievances, in violation of his rights under the First Amendment. Plaintiff's complaint seeks recovery of compensatory and punitive damages in the amount of $1 million each, as well as injunctive and declaratory relief.

Now that discovery is closed, the defendants have moved for summary judgment seeking dismissal of plaintiff's claims on a variety of grounds, including qualified immunity. Also included within their motion is an application by the defendants for revocation of plaintiff's IFP status based upon the "three strikes" provision of 28 U.S.C. § 1915(g). Because it is abundantly clear that plaintiff has accumulated three strikes, within the meaning of that provision, and based upon the lack of any palpable showing of circumstances sufficient to meet the imminent danger exception to the three strikes rule, I recommend that plaintiff's IFP status be revoked and that the remaining portions of defendants' motion be held in abeyance pending plaintiff's payment of the required $350 filing fee.

I. *BACKGROUND*[FN1]

> FN1. In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

Plaintiff is a New York State prison inmate confined under the supervision of the DOCCS. *See generally* Complaint (Dkt. No. 1). At all times relevant to his complaint, plaintiff was designated to the Upstate Correctional Facility, located in Malone, New York, and remains confined at that facility.[FN2] *Id.*

> FN2. Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002). Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

In his complaint plaintiff complains of the failure of prison medical personnel at Upstate to provide him with medical care and treatment. Plaintiff alleges, for example, that on April 8, 2010, Physician's Assistant ("PA") Patrick Johnson discontinued his skin allergy medication, A & D Ointment, soap, and stomach medications based upon his alleged failure to attend a scheduled call out on that date.[FN3] Complaint (Dkt. No. 1) Statement of Facts ¶ 1. On June 10, 2010, according to Johnson, Dr. Adams, a physician assigned to work at Upstate, discontinued all of his prescriptions, including his Provincial inhaler for his COPD as well as his Neutrogena soap, a fact which he attributes to Nurses George Waterson and Heath Baker having told Dr. Adams that according to Johnson those medications were not working.[FN4] *Id.* at ¶¶ 2–6. Plaintiff further alleges that on or about May 8, 2010 PA Johnson discontinued plaintiff's skin ointment, and that from March 2010 to the date of filing of his complaint Nurses Baker, Waterson, and others continuously denied him medical care and treatment for his medical conditions.[FN5] *Id.* at ¶¶ 8–11.

> **FN3.** It appears from plaintiff's medical records that the discontinuation on April 8, 2010 was a result of his refusal to come out of his cell. *See* Plaintiff's Medical Records (Dkt. No. 43) Entry Dated 4/8/10. Those records also reflect that plaintiff was issued Neutrogena Soap, A & D Ointment, and medication for his stomach two days later on April 10, 2010. *Id.* at Entry Dated 4/10/10.

> **FN4.** In a note authored by a registered nurse on June 12, 2010, it is reported that

plaintiff's prescription medications were discontinued by a doctor on June 10, 2010 due to plaintiff's refusal to be seen by the doctor. *See* Plaintiff's Medical Records (Dkt. No. 43) Entry Dated 6/12/10. That notation goes on to indicate that the doctor would consider the plaintiff's need for medication once he was seen for a medical evaluation. *Id.*

> **FN5.** Plaintiff's medical records contain no evidence of cessation of plaintiff's skin ointment on or about May 8, 2010, and in fact indicate that he was provided Vaseline for his skin on that date. *See* Plaintiff's Medical Records (Dkt. No. 43) Entry Dated 5/8/10.

## II. *PROCEDURAL HISTORY*

**\*2** Plaintiff commenced this action on September 9, 2010, and thereafter was granted leave to proceed IFP.[FN6] Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Dr. Lester Wright, the former Deputy Commissioner and Director of Health Services for the DOCCS; David Rock, the Superintendent at Upstate; Dr. Adams, a medical doctor engaged to perform medical services at Upstate; Nancy Smith, the Nurse Administrator at the facility; Patrick Johnson, a PA at Upstate; and Registered Nurses George Waterson and Heath Baker, all of whom are employed by the DOCCS and assigned to work at Upstate. *Id.*

> **FN6.** In my order dated December 23, 2010, granting plaintiff's IFP application, I addressed a potential three strikes concern and, while finding that Johnson had indeed accumulated far more than three strikes by the time his complaint was filed, concluded that his allegations met the threshold requirement under the Second Circuit's decision in *Chavis v. Chappius,* 618 F.3d 162 (2d Cir.2010) for alleging imminent danger. Order dated December 23, 2010 (Dkt. No. 4) at pp. 8–9. In that initial order, however, I went on to note

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

that plaintiff's IFP status would be revoked if, as the case progressed, the court concluded that he did not face imminent danger of serious physical at the time he commenced this action. *Id.*

On December 30, 2011, following the completion of discovery, defendants moved for the entry of summary judgment dismissing plaintiff's complaint.[FN7] Dkt. No. 42. In their motion, defendants request revocation of plaintiff's IFP status based upon 28 U.S.C. § 1915(g). In addition, defendants argue that 1) plaintiff's Eighth Amendment cause of action lacks merit; 2) defendants are not exposed to liability damages for actions taken in their official capacities; 3) plaintiff cannot demonstrate the irreparable harm necessary to obtain permanent injunctive relief; 4) defendants Wright, Rock and Smith were not personally involved in the constitutional violations alleged; 5) plaintiff has failed to establish the necessary elements of a retaliation claim; and 6) in any event, the defendants are entitled to qualified immunity. *Id.* Responses in opposition to defendants' motion were received from the plaintiff on January 9, 2012, March 15, 2012, and March 16, 2012. Dkt. Nos. 45, 51, 52. Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) (B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

> FN7. Three separate applications by the plaintiff seeking the issuance of a preliminary injunction were denied by District Judge David N. Hurd, by decision issued on February 23, 2012. Dkt. No. 47. None of those three motions involved medical treatment rendered to Johnson at Upstate. Plaintiff has appealed the denial of injunctive relief to the Second Circuit. *See* Dkt. No. 48. The pendency of that appeal, however, does not stand as a barrier to deciding the pending summary judgment motion or revoking plaintiff's IFP status. *New*

*York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1350 (1989).

III. *DISCUSSION*

A. *Three Strikes Provision*

In their motion defendants invoke 28 U.S.C. § 1915(g), arguing that under that section plaintiff's litigation history, which includes for greater than three merit-based dismissals, warrants revocation of his IFP status.

Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

**\*3** 28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443–44 (2d Cir.2007); *Gill v. Pidlychak,* No. 9:02–CV–1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in the same cost-benefit analysis that other civil litigants must make before deciding whether to com-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

mence suit, accompanied by the filing of the full fee—that is, to assess whether the result to be achieved justifies the filing fee expenditure. *Tafari,* 473 F.3d at 444; *Ibrahim v. District of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006). As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted *in forma pauperis* status,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing law suits. Indeed, the very nature of incarceration—prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials—has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), *cert. denied sub nom., Nicholas v. Miller,* 523 U.S. 1126, 118 S.Ct. 1812 (1998) (internal citations omitted); *see also Gill,* 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such question for the court.[FN8] *Tafari,* 473 F.3d at 442–43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. *Tafari,* 473 F.3d at 442 (citing *Andrews v. King,* 398 F.3d 1113, 1121 (9th Cir.2005)).

> FN8. The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g)

issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004); *see also Snider v. Melindez,* 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed").

**B.** *Application of Section 1915(g)*

It appears to be firmly established that prior to commencing this action plaintiff had accumulated three or more strikes falling within section 1915(g), and Johnson seemingly does not dispute this fact. When asked to list previous lawsuits relating to his imprisonment in the form utilized to file his complaint, plaintiff noted simply "three strikes". *See* Complaint (Dkt. No. 1) § 5. The fact that Johnson has accumulated at least three strikes is confirmed in a report and recommendation authored by Magistrate Judge George H. Lowe, and adopted by Senior District Judge Lawrence E. Kahn, in 2008. *See Johnson v. Connolly,* No. 9:07–CV–0158 (LEK/GHL), 2008 WL 724167 (N.D.N.Y. Mar. 17, 2008). In his report in that action, Judge Lowe chronicled plaintiff's extensive prior litigation history, which at that point included the filing of forty-six prisoner civil rights actions and, after making the required analysis, concluded that plaintiff had acquired three strikes at a minimum, for purposes of section 1915(g), by the time the complaint in that action was filed.[FN9] *Id.* at * 8; *see also Johnson v. Fischer,* No. 11–CV–386 (GLS/DRH), 2011 WL 6945706, at *4 (N.D.N.Y. Dec. 22, 2011) (finding that plaintiff had accumulated three strikes but could potentially satisfy the imminent danger exception based upon his allegation that he was the target of enemy gang members and prison officials did nothing to protect him, resulting in his being assaulted). This is consistent with an earlier determin-

ation issued by another court in 2005 finding that at that time, plaintiff had acquired at least five strikes. *See Johnson v. Goord,* No. 05–CV–6084 *slip op.* at p. 2 (W.D.N.Y., filed Feb. 28, 2005) (Telesca, J.), and a subsequent finding from that court later in 2005 that at that point plaintiff had acquired at least eight strikes. *See Johnson v. Worley,* No. 05–CV–6602, *slip op.* at p. 2 (W.D.N.Y., filed Nov. 18, 2005) (Siragusa, J.).

> FN9. According to publically available records, with the subsequent filing of this action and others, it appears plaintiff has filed in excess of fifty-three civil rights actions, while incarcerated, not including federal habeas corpus actions, federal court appeals, state court actions, or state court appeals.

**\*4** I therefore conclude that plaintiff had accumulated well in excess of three strikes, within the meaning of section 1915(g), by the time this action was filed.

### C. *Imminent Danger Exception*

As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g). *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). In accordance with this exception, an inmate who has had three prior "strikes" but nonetheless wishes to commence a new action *in forma pauperis* must show that he or she was under imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm. *Malik,* 293 F.3d at 562–63; *see also Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010). An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of exposure to a "serious physical injury." 28 U.S.C. § 1915(g). The imminent danger claimed by the inmate, moreover, must be real, and

not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at \*1–2 (S.D.N.Y. Sept. 6, 2005) (finding that inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, does not establish imminent danger).

For a three-strikes litigant to qualify for the imminent danger exception, his or her complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009). When determining whether the requisite relationship is present a court must examine "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Id.* at 299 (emphasis in original).

The term "serious physical injury," as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]" *Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6–7; and patterns of harassment from corrections officers, heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330–31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

**\*5** Plaintiff's eligibility for IFP status turns on whether he can establish that he faced imminent

danger of serious physical injury on September 9, 2010, when this action was filed. Any potential claim of imminent danger in this case is belied by plaintiff's complaint as well as other portions of the record now before the court. A review of plaintiff's medical records, for example, reveals that the principal cause of the denial of medical care and medications of which he complains has been his refusal to be seen by a physician and to comply with the protocols associated with dispensing those medications, requiring him to recite his name and DIN number before receiving medications while in SHU confinement. *See* Smith Decl. ¶¶ 6–13; *see also* Plaintiff's Medical Records (Dkt. No. 43); Scott Decl. (Dkt. No. 42–2) Exh. E., Transcript of Plaintiff's Deposition of May 6, 2011 at pp. 35–36, 44–45. This same conclusion was reached by another court in connection with a challenge brought by the plaintiff pursuant to New York Civil Practice Law & Rules ("CPLR") Article 78, with Acting Supreme Court Justice Michael Melkonian observing the following regarding Johnson's conduct:

> It is noteworthy ... that petitioner fails to mention that the medicine has been held back in part because of petitioner's refusal to be examined by a facility doctor. Petitioner's refusal to comply with minor formalities that he believes are unnecessary demonstrates that petitioners [sic] medical conditions and his need for the medications are not as important to petitioner as his desire to assert himself and establish control over how the respondents do their work.

Scott Decl. (Dkt. No. 42–2) Exh. D, slip op. at p. 3. Indeed, during his deposition Johnson essentially acknowledged that he himself was the cause of any deprivation of medication, and that were he truly at risk because of that deprivation he held the key to recurring treatment and medication, needing only comply with the required protocols, testifying as follows:

Q. Mr. Johnson, who is the person who's being allegedly deprived of anything as a result of your behavior?

A. Johnson.

Q. Thank you.

A. Ask me do I care.

Q. Okay. It's no sweat off your back then?

A. As long as I can put a lawsuit in against it, no, it's no sweat off my back....

Scott Decl. (Dkt. No. 42–2) Exh. E, at p. 62.

A careful review of plaintiff's medical records covering the period leading up to and including when this action was filed, medical personnel at Upstate attempted, on literally a daily basis, to provide medication and treatment to the plaintiff in his SHU cell. Plaintiff's medical records are replete with notations showing that it was as a result of his actions, including his refusal to comply with prison policies, that he was not provided with medications and treatment. On November 8, 2010, for example, a medical provider (whose signature is illegible) noted the following on plaintiff's ambulatory health record:

**\*6** Upon arrival to cell, asked inmate his name ☞ DIN. Inmate refused to provide and responded "you know my name ☞ DIN you Homo." Conversation terminated and inmate stated "you'll be named in the lawsuit" and continued to shout profanities and insults while Nurse was on gallery. Not provided.

*See* Plaintiff's Medical Records. (Dkt. No. 43) Entry Dated 11/8/10. On many other dates plaintiff hurled obscenities or issue threats toward medical staff members at the facility. *See, e.g.,* Plaintiff's Medical Records (Dkt. No. 43) Entry Dated 5/10/10 ("verbally abusive"); 5/16/10 ("verbally inappropriate"); 5/22/10 ("I/M became verbally abusive"); 5/29/10 ("hollering obscenities"); 6/22/10 ("swearing, verbal harassment to staff"); 6/26/10 ("verbally inappropriate"); 6/28/10 ("verbally abusive"); 7/3/10 ("verbally inappropriate"); 7/4/10 ("verbally harassing staff", "swearing"); 7/6/10

("verbally abusive"); 7/10/10 ("verbally abusive"); 7/11/10 ("verbally inappropriate"); 7/17/12 ("swearing at nurse"); 7/18/12 ("swearing at nurse"); 7/21/10 ("verbally abusive toward staff"); 7/22/12 ("inappropriate"); 7/23/12 ("swearing @ staff, threatening, [with] physical harm"); 7/24/12 ("vulgar obscene language"); 7/28/10 ("threatening to sexual violate [nurse]"); 7/27/12 ("swearing and threatening nurse"); 7/31/10 (stating to nurse "I want to stick my finger up your ass you little slut"); 8/1/10 ("inappropriate"); 8/2/10 ("inappropriate verbal harassment"); 8/3/10 ("verbal harassment towards staff"); 8/4/12 ("verbally abusive swearing at staff"); 8/6/12 ("inappropriate behavior"); 8/9/12 ("inappropriate @ cell door, swearing at staff threatening violence"); 8/12/10 ("swearing at nurse"); 8/18/10 (stating to nurse "suck my dick"); 8/26/10 (stating to nurse that he would come out of cell "if you suck my dick"); 9/7/10 ("verbally abusive"); 9/8/10 ("swearing verbally inappropriate"); 9/16/10 ("standing @ cell door yelling"); 9/25/10 (stating to nurse "get the f_ck away from my window"); 9/26/10 (stating to nurse "I hate you mother fu_ker"); 9/29/10 ("swearing @ staff"); 10/10/10 ("swearing @ staff, inappropriate behavior"); (10/13/10 "verbally inappropriate"); 10/21/10 (referring to nurse as an "alcoholic"); 10/26/10 ("verbally inappropriate"); 10/30/10 ("swearing at nurse"); 11/1/10 ("swearing at staff"); 11/2/10 ("swearing at staff"); 11/3/10 ("inappropriate behavior"); 11/7/10 ("vulgar and inappropriate language toward nurse"); 11/14/10 ("aggressive behavior, scream extreme vulgarity—unable to redirect behavior"); 11/21 /10 ("swearing at nurse"); 11/22/12 ("swearing at staff"); 11/24/10 ("inappropriate behavior"); 11/26/10 ("dangerous behavior"); 11/27/10 ("inmate began yelling swearing and threatening verbally"); 12/1/10 ("noncompliant, swearing at staff"); 12/10/12 ("swearing @ nurse"); 12/10/12 ("threatening staff [with] violence"); 12/11/12 ("swearing"); 12/24/11 ("swearing @ staff inappropriate language"); 12/26/12 ("swearing & name-calling"); 12/28/12 ("swearing at staff"); 12/29/12 (referring to nurse as a "dick sucker"); 1/6/11 ("verbally abusive toward staff"); 1/17/11

(when asked for name and DIN responding "I'll see you in court mother fucker"); 1/20/11 ("becoming verbally abusive screaming obscenities and racial/ sexual slurs"); 1/21/11 ("yelling racial and sexual slurs at RN"); 1/25/12 ("yelling sexual and racial slurs @ an RN"); 1/25/11 ("vulgar/inappropriate"); 1/30/12 ("vulgar remarks verbalized").

**\*7** At the heart of plaintiff's complaint is his claim that prison officials discontinued his prescription medications. Plaintiff's health records show, however, that plaintiff's prescription drugs were discontinued based upon his refusal to be seen by the prison physician. *See* Plaintiff's Medical Records (Dkt. No. 43) Entry Dated 6/12/10. On September 18, 2010—nine days after commencement of this action—plaintiff complained of dry skin and gas, and was provided with sinus medication as well as A & D ointment. *See* Plaintiff's Medical Records. *See id.* at Entry Dated 9/18/10. On the following day, plaintiff was provided with Vaseline for his dry skin and athletes foot cream for a fungal condition. *See id.* at Entry Dated 9/19/10.

In sum, a careful review of the record now before the court, even when viewed in a light most favorable to the plaintiff fails to disclose any basis for concluding at the time this action was filed, he was exposed to imminent danger of serious physical injury. Plaintiff has therefore failed to demonstrate his entitlement to this narrow exception to the PLRA's three-strike statutory provision.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff, a persistent litigant in this and other courts, brings this action to challenge defendants' failure to provide him with desired medication and treatment while in SHU confinement at Upstate. A review of the plaintiff's litigation history reveals that without dispute, he has incurred three or more strikes falling within 28 U.S.C. § 1915(g). The record further fails to disclose a basis to conclude that at the time this action was filed he was in imminent danger of serious physical injury, even under the arguably relaxed standard announced by the Second Circuit in *Chavis*. A review of plaintiff's litigation

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

history and his conduct during the course of this action makes it clear that to the plaintiff, litigation is a form of recreation of the type which the PLRA's three strikes provision was intended to curb. Plaintiff's repeated filing of actions in this and other courts not only unduly harasses prison officials, but burdens already over-taxed court resources and those of the Office of the Attorney General, which is called upon to defend against such claims.

Based upon the foregoing, it is hereby respect-fully

RECOMMENDED that plaintiff's *in forma pauperis* status be REVOKED, and that he be required to pay the required filing fee within thirty days of the issuance of an order adopting this report and recommendation, and that his complaint be dismissed in the event of his failure to pay the statutory $350 filing fee; and it is further hereby

RECOMMENDED, that the substantive portions of defendants' summary judgment motion (Dkt. No. 42) be held in abeyance, and that in the event the plaintiff does pay the required filing fee, that the matter be returned to me for consideration of the remaining portions of defendants' motion.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**\*8** It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2012.
Johnson v. Adams
Not Reported in F.Supp.2d, 2012 WL 3052957

(N.D.N.Y.)

END OF DOCUMENT


Slip Copy, 2015 WL 1179384 (N.D.N.Y.)
**(Cite as: 2015 WL 1179384 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Johnathan JOHNSON, Plaintiff,
v.
William GONZALEZ, et al., Defendants.

No. 9:14–CV–0745 (LEK/CFH).
Signed March 13, 2015.

Jonathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the, State of New York, David J. Sleight, Assistant Attorney General, Of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER
LAWRENCE E. KAHN, District Judge.
## I. INTRODUCTION
**\*1** This civil rights action comes before the Court following a Report–Recommendation filed on February 20, 2015, by United States Magistrate Judge Christian F. Hummel, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Dkt. No. 23 ("Report–Recommendation"). *Pro se* Plaintiff Johnathan Johnson ("Plaintiff") timely filed Objections. Dkt. No. 24 ("Objections"). For the following reasons, the Report–Recommendation is adopted in its entirety.

## II. STANDARD OF REVIEW
When a party makes a timely objection to a Report–Recommendation, it is the duty of the Court to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). Where, however, an objecting "party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Farid v. Bouey,* 554 F.Supp.2d 301,

307 (N.D.N.Y.2008) (quoting *McAllan v. Von Essen,* 517 F.Supp.2d 672, 679 (S.D.N.Y.2007)) (citations omitted); *see also Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

## III. DISCUSSION
Plaintiff first argues that Defendants' Motion for judgment on the pleadings was improperly filed, and thus Judge Hummel erred in considering the merits of the Motion. Objs. ¶¶ 9–12; *see also* Dkt. No. 11. Specifically, Plaintiff argues that Defendants waived their "defense of Rule 12(c)" by failing to include such request for relief in their Answer. Objs. ¶¶ 9–12. However, Plaintiff is misguided. Federal Rule of Civil Procedure 12(c) explicitly provides that "*after the pleadings are closed* ... a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c) (emphasis added). Rule 12(c) does not require a defendant to move for judgment on the pleadings in her answer. *See id.* Accordingly, Plaintiff's first objection is without merit.

Plaintiff next objects to Judge Hummel's finding that Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983 for Defendants' refusal to file Plaintiff's grievances and appeals. Objs. ¶¶ 13–20. In support, Plaintiff cites numerous cases where inmates brought First Amendment claims related to issues with the Inmate Grievance Program ("IGP"). *See id.* However, the cases on which Plaintiff relies all involve First Amendment *retaliation* claims. *See Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Graham v. Henderson,* 89 F.3d 75 (2d Cir.1996); *Scott v. Coughlin,* 344 F.3d 282 (2d Cir.2003); *Morales v. Mackalm,* 278 F.3d 126 (2d Cir.2002). Here, Plaintiff is alleging an entirely different cause of action—denial of access to the courts. Therefore, these cases cited in support of Plaintiff's argument are irrelevant.

**\*2** In further support, Plaintiff cites *Govan v. Campbell,* 289 F.Supp.2d 289, 297 (N.D.N.Y.2003), in which the Court held that "[p]risoners retain the constitutional right to petition the government for the redress of grievances." (citing *Overton v. Bazzetta,* 539 U.S. 126, 137 (2003)). However, a careful reading of *Overton* reveals that the Supreme Court was referring to "grievances" only in a broad sense; the Court was not referring to the Inmate "Grievance" Program. *Id.* at 137. Moreover, it is well-settled in the Second Circuit that allegations that prison officials failed to comply with the IGP do not state a viable claim under § 1983. *See Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014) ("Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, 'inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim.' " (quoting *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005)); *see also Mimms v. Carr,* No. 09–CV–5740, 2011 WL 2360059, at \*10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures."). Accordingly, Plaintiffs second objection is also without merit.

Plaintiff's third objection is that Judge Hummel erroneously combined Plaintiff's allegations concerning filing of his grievances with his separate allegations concerning denial of access to evidence. Objs. ¶¶ 21–26. However, a careful reading of the Report–Recommendation reveals that Judge Hummel did not conflate Plaintiff's allegations. Rather, Judge Hummel considered each allegation as a separate claim of denial of access to the courts. *See* Report–Rec. at 7–8. Thus, Plaintiff's third objection is also without merit.

Finally, Plaintiff argues that his Complaint should not be dismissed because, even if his § 1983 claims are dismissed, he has also alleged violations of the New York Constitution. Objs. ¶¶ 27–36. Plaintiff's argument must be rejected for two reasons. First, even liberally construed, Plaintiff has not asserted any claims under the New York Constitution in his Complaint. *See generally* Dkt. No. 4 ("Complaint"). Second, even if Plaintiff's claims were construed to allege violations of the New York Constitution, it would not be proper for the Court to exercise supplemental jurisdiction in light of dismissal of all of Plaintiff's federal claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, dismissal of Plaintiff's Complaint is warranted.

**IV. CONCLUSION**
Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 23) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Defendants' Motion (Dkt. No. 11) for judgment on the pleadings is **GRANTED;** and it is further

**\*3 ORDERED,** that Judgment be entered in favor of Defendants on all claims; and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 19) to compel is **DENIED as moot;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

JONATHAN JOHNSON,

Plaintiff,

v.

WILLIAM GONZALEZ, Deputy Commissioner, DOCCS; SCOTT WOODWARD, Grievance Supervisor, Upstate Correctional Facility; BRANDI WHITE, Grievance Supervisor, Upstate Correctional Facility; DAVID ROCK, (Former) Superintendent, Upstate Correctional Facility; BRIAN FISC-

HER, Commissioner, DOCCS; JOSEPH BELLNI-ER, Deputy Commissioner, DOCCS; GAYLE HAPONIK, Deputy Commissioner, DOCCS; DANIEL MARTUSCELLO, Deputy Commissioner, DOCCS; ANTHONY J. ANNUCCI, Acting Deputy Commissioner, DOCCS; KAREN BEL-LAMY, Director of Inmate Grievances, DOCCS; MIKE LIRA, Deputy Superintendent, Upstate Correctional Facility; MAUREEN BOLL, Deputy Commissioner, DOCCS; DR. CARL KOENIGS-MANN, Deputy Commissioner, DOCCS; DONITA E. MCINTOSH, Deputy Superintendent, Upstate Correctional Facility; JEFF MCKOY, Deputy Commissioner, DOCCS; GEORGE GLASSANOS, Deputy Counsel, DOCCS,

Defendants.

## REPORT–RECOMMENDATION AND ORDER[FN1]

> **FN1.** This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Jonathan Johnson ("Johnson"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, sixteen current and former DOCCS employees and employees of Upstate Correctional Facility, violated his constitutional rights under the First Amendment. Compl. (Dkt. No. 4). Presently pending is defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Dkts. No. 10, 11. Plaintiff was directed to respond to this motion by September 2, 2014, but has failed to do so. Dkt. No. 10. For the following reasons, it is recommended that defendants' motion for judgment on the pleadings be granted.

## I. Background[FN2]

> **FN2.** Johnson filed a notice to remand and to impose sanctions on defendants pursuant to Fed.R.Civ.P. 11 (Dkt. No. 6) which was denied by District Court Judge Lawrence Kahn because (1) Johnson's complaint, on its face, asserts a federal constitutional claim, i.e. the § 1983 claim; (2) Johnson points to nothing that would defeat the requisite subject matter jurisdiction (Dkt. No. 21); and (3) defendants' notice of removal was timely. Dkt. No. 21.

The facts are related herein in the light most favorable to Johnson as the non-moving party. *See* subsection II(A) *infra.* At all relevant times, Johnson was confined to Upstate Correctional Facility ("Upstate"). Compl. ¶ 3.

From 2011 to 2013, Johnson had filed or attempted to file a number of inmate grievances[FN3] for improper conduct by various staff members at Upstate. Compl. ¶ 4. Although unclear from the complaint, Johnson appears to contend he gave these grievances directly to defendants Woodward and White, both grievance supervisors at Upstate. *Id.* ¶ 5. Johnson alleges that defendants Woodward and White refused to properly file or process numerous grievances, as well as properly and timely submit appeals to the Central Office Review Committee ("CORC") and the Superintendent. *Id.* ¶¶ 3–5. When grievances were properly filed by defendants Woodward and White, Johnson alleges that they refused to allow him to obtain certain documents and denied him access to witnesses and videotaped footage relevant to the investigation of his grievances. *Id.* ¶ 7.

> **FN3.** The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] ... within four working

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

days of receipt of the superintendent's written response." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (internal quotations omitted).

**\*4** Johnson also alleges that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh failed to supervise defendants Woodward and White to ensure the proper handling of his grievances and appeals. Compl. ¶ 10. Johnson also alleges that these defendants denied him access to, or failed to obtain, evidence relevant to his grievances. *Id.* ¶ 7. Johnson seeks compensatory and punitive damages. *Id.* ¶ 11.

## II. **Discussion**[FN4]

[FN4]. All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

Johnson contends that defendants Woodward and White violated his First Amendment right of access to the courts by failing to submit in the proper manner and follow through with his grievances and appeals at Upstate. Compl. ¶¶ 3–6. Johnson also contends that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh violated his First Amendment right of access to the courts by failing to supervise defendants Woodward and White to ensure proper handling of his grievances and appeals. He also alleges that all defendants denied him access to certain evidence relevant to his grievances. *Id.* ¶ 7, 10. Finally, affording Johnson special solicitude,[FN5] his complaint may be read to suggest that all named defendants violated his procedural due process rights by failing to properly investigate his grievances. Compl. ¶¶ 7, 11.

[FN5]. When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the nonmovant special solicitude.

*See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, ... that a *pro se* litigant's submissions must be construed liberally, ... and that such submissions must be read to raise the strongest arguments that they suggest .... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, ... or arguments that the submissions themselves do not suggest, ... that we should not excuse frivolous or vexatious filings by *pro se* litigants ... and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Id.* (citations and footnote omitted) (internal quotations omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

As relevant here, defendants request judgment on the pleadings because (1) defendants' failure to follow the inmate grievance procedures does not give rise to a cognizable claim against defendants under § 1983; and (2) there are no factual allegations in the complaint against defendant Fischer.[FN6]

[FN6]. Defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh also argue that Johnson inadequately alleged their person-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

al involvement in the alleged constitutional violations (Dkt. No. 11) which is a "prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Because this Court finds, as discussed *infra,* that no constitutional violation has been alleged, it does not reach that issue.

### A. **Legal Standard**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw,* 448 F.3d 518, 521 (2d Cir.2006) (citing *Karedes v. Ackerley Group, Inc.,* 423 F.3d 107, 113 (2d Cir.2005) ). The Court is required to "accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." *Id.* However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts re-

quire enough facts to state a claim to relief that is plausible ....") (citations omitted).

**\*5** Still, " Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly,* 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id* . (citations omitted).

### B. **Analysis**
### 1. **First Amendment Access to the Courts**

Johnson contends that defendants Woodward and White denied him his right of access to the courts under the First Amendment by interfering with his right to file grievances and appeals and denying him access to certain relevant evidence. Johnson also claims that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh violated his right of access to the courts based upon their failure to supervise and ensure that defendants Woodward and White properly handled grievances and appeals. *Id.* ¶ 10.

The prisoner's right of access to the court system has been anchored by the United States Supreme Court in a variety of sources including "the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection, and Due Process Clauses." *Christopher v. Harbury,* 536 U.S. 403, 414–15 & n. 12 (2002); *see Lewis v. Casey,* 518 U.S. 343, 346 (1996). However, because the IGPs are created under state law, and, thus, not required by the Constitution, allegations against prison officials for violation of, or interference with, those procedures cannot give rise to a cognizable claim

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

under § 1983. *Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014) (quoting *Shell v. Brezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005)). It has also been established that the "First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures." *Mimms v. Carr,* No. 13–CV–2515 (VB), 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011); *see also Brown v. Graham,* 470 F. App'x 11, 13 (2d Cir.2012) (holding that a prisoner litigant's claim that he has a "federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.").[FN7]

> FN7. Under the PLRA, a plaintiff whose access to the grievance process has been hindered by actions of prison officials is excused from the exhaustion requirement and can file suit without having completed that process. *Hemphill v. New York,* 380 F.3d 680, 686–92 (2d Cir.2004). Thus, an inmate who is denied access to an IGP may directly commence an action to seek redress for the alleged constitutional violations.

Johnson seeks relief based upon a denial of his right of access to the courts by the defendants' failure to properly submit and timely follow through with his grievance complaints and appeals made while at Upstate. Compl. ¶ 5. Additionally, Johnson alleges that when these complaints were properly filed, defendants Woodward and White did not allow him to obtain any documentary evidence or videotaped footage. *Id.* ¶ 7. It is clear, as discussed *supra,* defendants Woodward and White's apparent refusal or subsequent failure to file, provide evidence for, or follow through with the processing of grievances or appeals does not create a claim under § 1983 as there is no constitutional right to access to an inmate grievance program. *See Brezniak,* 365 F.Supp.2d at 370. Similarly, the remaining defendants' failure to properly supervise the filing or appeal of these grievances does not amount to a constitutional violation as there is no underlying denial

of access to the courts. *Id.*

**\*6** Insofar as Johnson's complaint may suggest that any of the named defendants failed to properly investigate grievances or instances of wrongdoing against him (Compl.¶¶ 7, 11) in violation of the Due Process Clause, the Court notes that inmates do not have a due process right to a thorough investigation of grievances. *See Torres v. Mazzuca,* 246 F.Supp.2d 334, 341–42 (S.D.N.Y.2003).

Accordingly, it is recommended that defendants' motion on this ground be granted.

### C. **Failure to State a Claim Against Defendant Fischer**

The standard set forth in *Twombly* and affirmed in *Iqbal* requires more than mere conclusory statements; rather, it demands sufficient factual allegations against a defendant to reasonably lead to the discovery of illegal conduct. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555–56. "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981)).

In this case, the verified complaint lists defendant Fischer's name in the caption, but fails to again name or assert allegations against him. Compl. ¶ 1. Without any specific factual allegations asserted against defendant Fischer, he cannot be deemed a party in this action. *See Dove,* 56 F.Supp.2d at 335.

Accordingly, it is recommended that defendants' motion on this ground be granted.

### III. **Motion to Compel**

Because the undersigned recommends granting defendants' motion for judgment on the pleadings on all grounds against all defendants, it is also recommended that Johnson's motion to compel dis-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

covery (Dkt. No. 19) be dismissed as moot.

### IV. **Conclusion**

For the reasons stated above, it is hereby

1. **RECOMMENDED** that defendants' motion for judgment on the pleadings (Dkt.Nos.10, 11) be **GRANTED** and that judgment be entered for all defendants on all claims;

2. **RECOMMENDED** that plaintiffs motion to compel discovery (Dkt. No. 19) be **DISMISSED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRE-CLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Filed Feb. 20, 2015.

N.D.N.Y.,2015.
Johnson v. Gonzalez
Slip Copy, 2015 WL 1179384 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3714442 (S.D.N.Y.)
**(Cite as: 2006 WL 3714442 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jonathan JOHNSON, Plaintiff,
v.
M.A. BARNEY, Prison Guard, Oracz, Sergeant,
Frank J. Tracy, Superintendent, Scullivan, Captain,
Sergio Reyes, Joseph Palermo, Michael Lavender,
and David Lawrence, Defendants.

No. 04 Civ. 10204(LBS).

Dec. 13, 2006.

*MEMORANDUM AND ORDER*

SAND, J.

**\*1** Pro se plaintiff Jonathan Johnson brought an action under 28 U.S.C. § 1983 for violation of his constitutional rights stemming from an incident in the Downstate Correctional Facility. In his first cause of action, plaintiff alleges that he was physically assaulted by several corrections officers FN1 during a search of his person and cell at Downstate in violation of the Eighth Amendment. In his second cause of action, plaintiff alleges that defendant Captain Daniel Sullivan,FN2 an employee of Southport Correctional Facility where plaintiff was later incarcerated, fabricated a report of the investigation into the incident. Before the Court is Sullivan's motion to dismiss the second cause of action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> FN1. Plaintiff alleges that he was assaulted by corrections officers Barney, Reyes, Palermo, Lawrence, and Lavender while Sergeant Oracz watched. With the exception of Lavender, these individual defendants, along with Superintendent Tracy have filed an answer to the complaint. Lavender has not been served with the summons and amended complaint. Plaintiff does not al-

lege that Sullivan was involved in the incident at Downstate.

> FN2. Sullivan is erroneously named as "Scullivan" in the caption.

I

In his complaint, plaintiff alleges that in December 2003 Captain Sullivan interviewed him about the alleged assault at Downstate. Plaintiff claims that Sullivan filed a fabricated investigative report about the incident, stating in it that plaintiff "had no idea who his witnesses was" and "that it was [Johnson's] statement that it was probably not likely." (Amended Compl. at 4-5.) Plaintiff claims that he made no such statements. For the filing of this falsified report, plaintiff claims that he is entitled to $50,000 in compensatory and punitive damages.

In his opposition to the motion to dismiss, plaintiff further asserts that Sullivan, who was assigned to conduct the inmate grievance investigation into the incident, fabricated the report as part of a conspiracy to cover up the acts of the corrections officers at Downstate. He alleges that Sullivan "had conspired with the other defendants to violate plaintiff's civil rights." (Pl.'s Mem. in Opp'n at 3.) In addition to the conspiracy allegation, plaintiff claims that by refusing to interview plaintiff's requested witnesses and filing a fabricated report, Sullivan deprived plaintiff of valid grievance proceedings, to which he claims he is constitutionally entitled.

II

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the allegations in the complaint as true. *Hughes v. Rowe,* 449 U.S. 5, 10 (1980). The pleadings of pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Thus a pro se complaint "should not be dismissed

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes,* 449 U.S. at 10. Although pro se complaints must be construed liberally, civil rights complaints "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfardo Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987).

**\*2** The Second Circuit has held that claims of conspiracy to violate civil rights under 28 U.S.C. § 1983 or § 1985 are held to a heightened pleading standard. *See Angola v. Civletti,* 666 F.2d 1, 4 (2d Cir.1981) ("Our Court has recognized that certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule of *Conley v. Gibson,* 355 U.S. 41 (1957), detailed fact pleading is required to withstand a motion to dismiss. A claim of conspiracy to violate civil rights is a clear example."); *see also Pollack v. Nash,* 58 F.Supp.2d 294, 299-300 (S.D.N.Y.1999). To state a claim for conspiracy, a plaintiff must plead facts giving rise to an inference of an agreement or "meeting of the minds" among two or more persons to deprive the plaintiff of his constitutional rights. *Romer v. Morganthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000) ("Specifically, plaintiff must provide some factual basis supporting a 'meeting of the minds,' such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end; plaintiff must also provide some details of time and place and the alleged effects of the conspiracy.") (citations and internal quotation marks omitted). A plaintiff must also plead, "with at least some degree of particularity," overt acts engaged in by the defendant in furtherance of the conspiracy. *Powell v. Workmen's Compensation Bd.,* 327 F.2d 131, 137 (2d Cir.1964). Finally, to state a claim for conspiracy under § 1983 a plaintiff must allege "an actual deprivation of constitutional rights." *Romer,* 119 F.Supp.2d at 363; *see also Singer v. Fulton*

*County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995).

### III

The complaint fails to allege facts that would give rise to an inference of any constitutional violation by Sullivan or any conspiracy to violate plaintiff's federally protected rights. The complaint merely alleges that Sullivan filed an investigative report that contained fabricated statements attributed to the plaintiff. (*See* Amended Compl. at 4-5.) The complaint does not even allege that Sullivan's report concluded that plaintiff's version of the incident at Downstate was inaccurate or that the report had an adverse impact on his grievance proceedings. "[T]he filing of a false report does not give rise to a constitutional violation per se ." *Gill v. Riddick,* Civ. No. 9:03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at \*24. Even in the context of disciplinary proceedings, the filing of a misbehavior report containing false charges does not rise to the level of a constitutional violation as long as due process in the form of notice and a hearing is provided. *See Freeman v. Rideout,* 808 F.2d 949, 950 (2d Cir.1986) (holding that prison inmates do not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest[ ]"), *cert. denied,* 485 U.S. 982 (1988). This case does not involve a misbehavior report, but rather an investigative report as part of an inmate grievance procedure. Despite plaintiff's assertion to the contrary,[FN3] inmate grievance procedures are not even constitutionally required.[FN4] *Cancel v. Goord,* No. 00 Civ.2042, 2001 U.S. Dist. LEXIS 3440, at \*9-10; *see also Justice v. Coughlin,* 941 F.Supp. 1312, 1316 (N.D.N.Y.1996) ("[M]ere violations of the grievance system do not violate the Constitution."). Merely filing a falsified investigative report in a grievance proceeding does not rise to the level of a constitutional violation; plaintiff's complaint fails to state a claim.

> FN3. Plaintiff asserts that "[g]rievances filed through an official grievance procedure are constitutionally protected," citing

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991). (Pl.'s Mem. in Opp'n at 3.) In *Williams v. Meese,* however, the Tenth Circuit held that prison officials could not *retaliate* against a prisoner for filing administrative grievances. *Id.* at 998. The Tenth Circuit went on to affirm the district court's dismissal of the claim that the administrative procedures were inadequate for failure to state a claim. *Id.* In this case, plaintiff does not allege that Sullivan's actions are retaliatory in nature.

FN4. Plaintiff's claim, raised only in his opposition papers, that his First Amendment right to petition the government has been violated by Sullivan's report is also unavailing. Even if an inmate's claims are ignored or otherwise stifled by an official grievance proceeding, the inmate still has the right to petition the government directly for redress of his claims. *Cancel v. Goord,* No. 00 Civ.2042, 2001 U.S. Dist. LEXIS 3440, at *10.

**\*3** The complaint does not mention conspiracy, however plaintiff alleges in his opposition papers that "Captain Sullivan had conspired with the other defendants to violate plaintiff's civil rights." (Pl.'s Mem. in Opp'n at 3.) Even if the Court were to construe this assertion as an amendment to the complaint, it would still be insufficient to survive a motion to dismiss under Rule 12(b)(6). Plaintiff's allegations are too vague and conclusory to make out a claim of conspiracy under § 1983 or § 1985. Plaintiff has not alleged any facts from which the Court could infer an agreement or meeting of the minds between Sullivan and another person to violate plaintiff's constitutional rights. Nor has plaintiff alleged any facts that would constitute an overt act in furtherance of the conspiracy. Finally, plaintiff does not allege any actual violation of his constitutional rights. Therefore, even if the Court were to read an assertion of conspiracy into the complaint, it would also have to be dismissed.

Because plaintiff has failed to state a claim of a constitutional violation against Sullivan, the Court need not reach the issue of qualified immunity.

IV

For the reasons stated above, defendant Sullivan's motion to dismiss for failure to state a claim is granted. Plaintiff's second cause of action against Sullivan is dismissed. The Court will hold a telephonic pretrial conference with all remaining parties on January 16, 2007 at 10:30 a.m.

SO ORDERED.

S.D.N.Y.,2006.
Johnson v. Barney
Not Reported in F.Supp.2d, 2006 WL 3714442 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.