UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHNATHAN JOHNSON,

                                    Plaintiff,

                                                            9:14-cv-00803
v.                                                          (BKS/TWD)

JEFF McKAY, et al.,

                                    Defendants.

_____

APPEARANCES:                                        OF COUNSEL:

JOHNATHAN JOHNSON
Plaintiff pro se
89-A-1042
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON.  ERIC T.  SCHNEIDERMAN                         RYAN L.  BELKA, ESQ.
Attorney General for the State of New York
Counsel for Defendant
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Brenda K.  Sannes,

United States District Judge, pursuant to 28 U.S.C.  § 636(b) and Local Rule 72.3(c).  Presently

before the Court for report-recommendation is Defendants' motion to dismiss Plaintiff's Second

Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6).  For reasons explained below, the Court recommends that Defendants' motion to dismiss be denied.

I.    **PROCEDURAL BACKGROUND**

In his original Complaint (Dkt. No. 5), Plaintiff Johnathan Johnson claimed that Defendants Jeff McKay, Gail Haponik, Dr.  Carl Koenigsmann, Joseph Bellinier, Maureen E. Boll, Brian Fischer, David Rock, Theodore Zerniak, and Donald Uhler: (1) denied him access to the courts by depriving him of paper, mail, outside communications and access to the prison law library; and (2) denied him videotapes for, and access to, inmate grievance procedures.  *Id.* Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6).  (Dkt. No. 2.)  The District Court granted Defendants' motion.  *Johnson v. McKay*, No. 9:14-CV-0803 (BSK/TWD), 2015 WL 1735102, at *6 (N.D.N.Y.  April 16, 2015).[1]  Plaintiff's access to courts claim was dismissed without prejudice and with leave to amend, and his claim for denial of evidence and access to the inmate grievance program was dismissed with prejudice.  *Id.*

Plaintiff filed an Amended Complaint against the same Defendants asserting claims for: (1) denial of access to the courts, specifically the New York State Court of Claims ("Court of Claims") and the Appellate Division, Third Department; and (2) retaliation for filing lawsuits and inmate grievance complaints.  (Dkt. No. 24.)  Defendants responded with a Rule 12(b)(6) motion to dismiss Plaintiffs' Amended Complaint.  (Dkt. No. 26.)

Judge Sannes dismissed the Amended Complaint and granted Plaintiff leave to amend both the access to courts and retaliation claims.  Judge Sannes allowed Plaintiff a second attempt to amend his access to courts claim "in light of [his] pro se status and his representation that he

---

[1] The Court will provide Plaintiff with copies of unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

misunderstood the District Court's previous decision."[2] *Johnson v. McKay*, No. 9:14-cv-0803

(BKS/TWD), 2015 WL 6125890, at * 2 (N.D.N.Y. Oct. 16, 2015). Judge Sannes specifically

instructed Plaintiff that "[a]s explained in the Court's decision dated April 16, 2015 (Dkt. No.

21), to state a claim for denial of access to the courts under § 1983, Plaintiff must allege facts to

plausibly suggest: (1) a nonfrivolous arguable underlying claim that has been frustrated by the

defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying

claim." *Id*. (citation and internal quotation marks omitted).

## II.    PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff thereafter filed his Second Amended Complaint in which Dr. Koenigsmann has

been omitted as a defendant. (Dkt. No. 34 at 1-3.[3]) Plaintiff has alleged in his Second Amended

Complaint, as he did in his original and Amended Complaints, that he was denied access to the

courts during the years 2010 through 2013 as a result of the issuance of paper deprivation orders

by Defendants Uhler and Zerniak, Deputy Superintendent for Security and Captain, respectively,

pursuant to Department of Corrections and Community Supervision ("DOCCS") Directive 4933,

and the enforcement of those orders by Defendants McKay, Haponik, Bellinier, Boll, Rock, and

Fischer. (Dkt. No. 34 at 4-5, 9; *see also* Dkt. Nos. 1-1 at ¶ 4; 24 at 5-6.[4]) According to Plaintiff,

he was deprived of writing paper, envelopes, and his incoming and outgoing mail. (Dkt. No. 34

---

[2] In his objections to this Court's Report-Recommendation on Defendants' motion to
dismiss (Dkt. No. 30), Plaintiff asserted that he misconstrued the court's directions that he must
allege facts to plausibly suggest a nonfrivolous underlying claim that has been frustrated by
Defendants' actions in order to state a claim for denial of access to the courts. *See Johnson v.
McKay*, 2015 WL 6125890, at * 2.

[3] Page references to documents identified by docket number are to the numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.

[4] Inasmuch as the paragraphs in Plaintiff's Amended Complaint and Second Amended
Complaint are not numbered consecutively throughout the pleading, references herein are made
to the page numbers rather than paragraph numbers.

at 5.)  In addition, Plaintiff claims briefs and records relating to his appeals in the Appellate Division, Third Department, from the dismissal of his claims and denial of his motions for summary judgment were confiscated by Defendants.  *Id*. at 5, 9.  In his opposition to Defendants' motion, Plaintiff claims that thirteen bags of legal papers on active appeals were confiscated under the deprivations orders.  (Dkt. No. 38 at 2-3.)  Plaintiff has alleged that as a result of Defendants' actions, he missed the filing deadlines in the Third Department on all of the Court of Claims cases listed in his Second Amended Complaint.  (Dkt. No. 34 at 6, 9.)  In his opposition papers, Plaintiff contends that each time he requested and was given an extension on his appeals by the Third Department, Defendants would issue a new deprivation order until the extension expired.  (Dkt. No. 38 at 5.)

In his Second Amended Complaint, unlike his original and Amended Complaints, Plaintiff has identified by docket, claim, or index number the Court of Claims and Supreme Court actions with respect to which he was allegedly prevented from perfecting appeals in the Appellate Division, Third Department, in a timely manner as a result of Defendants' actions in connection with the paper deprivation orders.  (Dkt. No. 34 at 4-8.)  The only allegations in the Second Amended Complaint describing the underlying claims asserted in the State court actions are that they "challenged prison conditions at Upstate Correctional Facility," *id.* at 5, and that they "pertained to prison conditions."  *Id*. at 8.

Plaintiff has also asserted retaliation claims against Defendants Uhler and Zerniak, alleging that the paper deprivation orders were issued in retaliation for his filing of grievances and lawsuits complaining of prison conditions at Upstate against numerous Upstate and Albany DOCCS officials.  (Dkt. No. 34 at 7.)   The retaliatory conduct is alleged by Plaintiff to have

included deprivation of legal material essential for the perfection of his pending appeals. (Dkt. No. 38 at 12.)

## III. LEGAL STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss).

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV. ANALYSIS

### A. Personal Involvement

One of the grounds upon which Defendants seek dismissal of Plaintiff's Second Amended Complaint is lack of personal involvement. (Dkt. No. 36-1 at 14.) Defendants sought dismissal of Plaintiff's original and Amended Complaints on the same grounds. (Dkt. Nos. 2-1 at 2-3; 26 at 5.) Plaintiff was found to have alleged facts plausibly showing personal involvement by the Defendants as to both, and the Court makes the same finding on this motion. (*See* Dkt. No. 34 at 5, 9.) *See Johnson v. McKay*, 2015 WL 1735102, at *8; *Johnson v. McKay*, No. 9:14-CV-0803, 2015 WL 6126878, at *4 (N.D.N.Y. Sept. 3, 2015), *adopted in relevant part*, 2015 WL 6125890.

### B. Access to the Courts Claim Against Defendants Uhler, Zerniak, McKay, Haponik, Bellinier, Boll, Rock, and Fischer

The Supreme Court has long noted that inmates are guaranteed a right of access to the courts under the First Amendment of the Constitution. *See Bounds v. Smith,* 430 U.S. 817

(1977). In *Lewis v. Casey*, 518 U.S. 343, 352-53 & n.3 (1996), the Supreme Court explained that a denial of access claim required actual injury and that a plaintiff had to identify a nonfrivolous arguable underlying cause of action. In *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), the Supreme Court stated that its cases addressing the constitutional right of access to courts "rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." The Court instructed that to demonstrate actual injury for purposes of an access to courts claim, "the underlying cause of action and its lost remedy must be addressed in allegations in the complaint sufficient to give fair notice to a defendant" and must be "described well enough to apply the 'nonfrivolous' test and show that the 'arguable' nature of the underlying claim is more than hope." *Id*.

Thus, in *Arar v. Ashcroft*, 585 F.3d 559, 592 (2d Cir. 2009), the Second Circuit found that to state a claim for denial of access to the courts under § 1983, a plaintiff must allege facts to plausibly suggest: "(1) 'a nonfrivolous arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim" (quoting *Christopher*, 536 U.S. at 415).

### 1. Plaintiff's Underlying State Court of Claims Actions

As noted above, on the motion to dismiss his Amended Complaint, Plaintiff was given a second opportunity to amend to state a claim for denial of access to courts, in part because he claimed to have been confused by the District Court's decision dismissing his original Complaint. *Johnson v. McKay*, 2015 WL 6125890, at *1-2. In the Memorandum-Decision and Order allowing Plaintiff another opportunity to amend, Judge Sannes explained the pleading requirements for an access to courts claim set forth in *Arar*, 585 F.3d at 592, as she already had in her Memorandum-Decision and Order dismissing Plaintiff's original Complaint, and

instructed Plaintiff that he "must specifically identify and describe the nonfrivolous claims or court cases that were frustrated by Defendants' actions." *Johnson v. McKay*, 2015 WL 6125890, at * 2.

In his Second Amended Complaint, Plaintiff has again failed to specifically identify and describe the nonfrivolous claims he alleges were frustrated by Defendants' actions, alleging only that his State court lawsuits complained of conditions at Upstate. (Dkt. No. 34, 5, 8.) However, Plaintiff has identified by docket, claim, or index number the court cases in which he claims his ability to perfect appeals in the Appellate Division, Third Department, was deliberately and maliciously obstructed by Defendants' actions. *Id.* Moreover, it is apparent from Defendants' motion papers that the docket, claim, and index numbers were sufficient to give Defendants fair notice of the nature of the underlying claims, one of the purposes of the pleading requirement set forth in *Christopher,* 536 U.S. at 416, and to allow the Court to determine whether, for purposes of this motion, the claims were nonfrivolous. (*See* Dkt. Nos. 36 through 36-5.)

Generally, in considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). However, district courts also "routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings." *Id.* at 774.

Defendants have submitted a number of court documents related to the cases identified by Plaintiff in his Second Amended Complaint in support of their motion to dismiss; a print out of Plaintiff's State court litigation history generated by the New York State Attorney General's

Office; and defense counsel's commentary on the merits of Plaintiff's access to the court's claim based upon Defendants' submissions.[5]  (Dkt. Nos. 36-1 at 5, 36-4 and 36-5.)

On Claim No. 116467, one of the cases identified by Plaintiff in his Second Amended Complaint, Defendants have submitted a May 20, 2010, Court of Claims Decision and Order on a discovery motion in a conditions of confinement case in which Plaintiff asserted claims for improprieties in the imposition of a disciplinary diet, assault by corrections officers and denial of medical treatment, denial of sick calls, destruction of personal property, and fabrication of a misbehavior report.  (Dkt. No. 36-4 at 8-9.)  Defendants, in a printout they have submitted of Plaintiff's State court litigation history during the time period they believe to be relevant to the lawsuit, have conceded that Plaintiff filed an appeal in the case as alleged in his Second Amended Complaint.  (Dkt. Nos 34 at 4; 36-5 at 3.)  Plaintiff alleges in his Second Amended Complaint that he missed deadlines on the appeal to the Appellate Division Third Department because of Defendants' obstruction.  (Dkt. No. 34 at 4.)  The litigation history submitted by Defendants indicates only that an appeal was filed and not what happened with the appeal.  (Dkt. No. 36-5.)

Also among the documents submitted by Defendants is a Decision and Order issued on July 3, 2012, by the Court of Claims in a consolidated trial of Claims Nos. 112759, 113973, 114668, 114968, 115059, 115726, 115726, 115787, 116540, and 116755.  (Dkt. No. 36-4 at 3.)  Each of those actions is identified in Plaintiff's Second Amended Complaint as one of the Court

---

[5] According to defense counsel, "[Plaintiff's] injury claim would be laughable if it wasn't wasting everyone's time" (Dkt. No. 36-1 at 5); "having been rebuffed twice in pleading vague nonsense – [Plaintiff] has instead decided to plead specific nonsense" in his Second Amended Complaint, *id*. at 10; and because Plaintiff continued to be a prolific state court litigator during the relevant time period, he could not possibly have been denied access to the courts in the State Court actions and proceedings identified by him the Second Amended Complaint.  *Id*. at 8-10.

of Claims actions complaining of conditions at Upstate in which Plaintiff has allegedly been denied access to appeals in the Appellate Division, Third Department. (Dkt. No. 34 at 5-6.)

According to the Court of Claims Decision and Order, each of those cases involved the imposition of the "restricted diet loaf" sanction. (Dkt. No. 36-4 at 4-5.) Plaintiff did not appear for the trial, and Correction Sergeant Santamore testified that Plaintiff's absence was the result of a verbal and physical altercation between Plaintiff and corrections officers attempting to bring him from his cell for trial, and Plaintiff's affirmative response that there would be further problems if he were taken out of his cell that day. *Id.* at 4. Defense counsel's motion to dismiss the claims related to the restricted diet loaf sanction, based upon what the court construed as Plaintiff's refusal to appear at trial, was granted by the Court of Claims. *Id.* at 5. Plaintiff, who was not present in court, presumably had no opportunity to refute or otherwise respond to Sergeant Santamore's testimony regarding Plaintiff's actions.

The printout of Plaintiff's State court litigation history shows that Plaintiff filed appeals in the cases dismissed as a result of his non-appearance at trial.[6] (Dkt. No. 38 at 2-4, 9.) Plaintiff alleges in his Second Amended Complaint that he missed deadlines in the appeals because of Defendants' obstruction. (Dkt. No. 34 at 4.) The litigation history provided by Defendants gives no indication what happened with the appeals. (Dkt. No. 36-5.)

2. Analysis

The fact that Court of Claims No. 116467 apparently reached the discovery stages without dismissal for failure to state a claim plausibly suggests that, for purposes of Defendants'

---

[6] The docket numbers on the appeals from the claims dismissed in the Court of Claims Decision and Order of July 3, 2012, are No. 510713 (Claim No. 112759) (Dkt. No. 36-5 at 5); No. 510100 (Claim No. 113973), *id.* at 4; No. 510430 (Claim No. 114668), *id.*; No. 510431 (Claim No. 114968), *id.*; No. 510435 (Claim No. 115059), *id.*; No. 510432 (Claim No. 115726), *id.* at 2; No. 510434 (Claim No. 115787), *id.*; No. 510436 (Claim No. 115540), *id.* at 3; No. 510436 (Claim No. 116540), *id.*; No. 510099 (Claim No. 116755), *id.* at 2.

motion to dismiss, at least some of the claims asserted by Plaintiff were nonfrivolous. The fact that Court of Claims Nos. 112759, 113973, 114668, 114968, 115059, 115726, 115726, 115787, 116540, and 116755 had proceeded to the trial stage on issues related to defendant's potential liability for imposing a disciplinary sanction of a diet loaf on Plaintiff, makes a plausible showing that, for purposes of Defendants' motion to dismiss, Plaintiff's underlying diet loaf claim in those cases was also considered nonfrivolous by the Court of Claims.

Therefore, the Court finds that the allegations in Plaintiff's Second Amended Complaint, in conjunction with the Court of Claims Decisions and Orders submitted by Defendants, of which the Court has taken judicial notice, are sufficient to satisfy the requirement of showing a nonfrivolous arguable underlying claim for the purposes of Defendants' motion to dismiss. *See Arar,* 585 F.3d at 592.

Plaintiff has alleged in his Second Amended Complaint and again in his opposition that he appealed to the Appellate Division, Third Department, from the dismissal of the cases identified by him but was obstructed from meeting deadlines on the appeals by Defendants. (Dkt. Nos. 34 at 4 and 38 at 2.) Defendants, through the printout of Plaintiff's litigation history submitted by them, have conceded for purposes of this motion that Plaintiff filed appeals in the above-numbered cases. (Dkt. No. 36-5.) Therefore, the Court also finds a plausible showing of the continued inability to obtain the relief sought by the underlying claim for purposes of this motion. *See Arar,* 585 F.3d at 592.

The Court is compelled to decline Defendants' invitation to dismiss Plaintiff's access to the courts claim because the sixty-nine cases listed on the print out that were commenced during the time period in which Plaintiff claims to have been denied access to the courts clearly establish that Plaintiff did, in fact, have access to the courts. (Dkt. No. 36-1 at 4, 7-11.) Even if

the Court were to find it appropriate to take judicial notice of the substantial volume of litigation identified in the bare-bones printout submitted by Defendants, it cannot, on a Rule 12(b)(6) motion, take the next step urged by Defendants and make the factual determination that because Plaintiff was able to pursue litigation during the time he was under the paper deprivation order, Plaintiff's claim that he was obstructed in meeting deadlines in appeals in the cases identified in his Second Amended Complaint is false. *See Sheppard v. Beerma*n, 18 F.3d 147, 150 (2d Cir. 1994) (in evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant"); *Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 106 (2d Cir. 1999) (reversing district court because the court "improperly reached beyond the pleadings to make adverse factual determinations in dismissing [plaintiff's] complaint under Fed.R.Civ.P. 12(b)(6)").

Based upon the foregoing, the Court finds that the allegations in Plaintiff's Second Amended Complaint, along with the Decisions and Orders of the Court of Claims discussed herein, plausibly show that Plaintiff has stated a claim for First Amendment claim for denial of access to the courts against Defendants Uhler, Zerniak, McKay, Haponik, Bellinier, Boll, Rock, and Fischer sufficient to survive Defendants' motion to dismiss. Therefore, the Court recommends that Defendants' motion to dismiss for failure to state a claim be denied.[7]

### C.    Retaliation

To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the

---

[7] The Court expresses no opinion as to whether Plaintiff's access to the courts claim could survive a properly made motion for summary judgment in light of the substantial amount of litigation in which he engaged during the period when he claims to have been denied access to the courts.

plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *see also Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002)). "Adverse action" for purposes of a retaliation claim has been defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Pidlypchak*, 389 F.3d at 381 (internal quotation marks omitted).

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in a defendant's decision to take action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Because of the relative ease with which claims of retaliation can be incanted, courts have scrutinized retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz*, 534 U.S. at 508. As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are
> difficult to dispose of on the pleadings because they involve

> questions of intent and are therefore easily fabricated. Second,
> prisoners' claims of retaliation pose a substantial risk of
> unwarranted judicial intrusion into matters of general prison
> administration.  This is so because virtually any adverse action
> taken against a prisoner by a prison official, even those otherwise
> not rising to the level of a constitutional violation, can be
> characterized as a constitutionally proscribed retaliatory act.

*Dawes*, 239 F.3d at 491.  Accordingly, claims of retaliation must be supported by specific facts;

conclusory statements are not sufficient.  *Flaherty*, 713 F.2d at 13.

Plaintiff alleges that Uhler and Zerniak retaliated against him for filing numerous

grievances and lawsuits against numerous Upstate and Albany DOCCS officials who had

deliberately and maliciously obstructed his lawsuits challenging prison conditions at Upstate

during the years 2010 to 2013.  (Dkt. No. 34 at 7.)  The filing of lawsuits and grievances is

protected conduct for purposes of First Amendment retaliation claims.  *See Colon*, 58 F.3d at

872; *Graham,* 89 F.3d at 80.  Therefore, the allegations in Plaintiff's Second Amended

Complaint plausibly show that Plaintiff was engaged in protected conduct.

Plaintiff has alleged that Uhler and Zerniak's retaliatory issuance of paper deprivation

orders denied him the ability to pursue litigation pending in the Appellate Division, Third

Department.  (Dkt. No. 34 at 9.)   More specifically, Plaintiff has alleged that under the

deprivation orders issued by Uhler and Zerniak, Defendants deprived him of writing paper,

envelopes, and his incoming and outgoing mail, and that thirteen bags of legal papers, including

briefs and records relating to active appeals in the Appellate Division, Third Department, were

confiscated by Defendants.  *Id*. at 5, 9; Dkt. No. 38 at 2-3.

The Court finds that impeding or preventing an inmate from pursuing constitutionally

protected state court litigation in retaliation for the filing of lawsuits could constitute adverse

action for purposes of a retaliation claim.  Moreover, courts have held that confiscation or

destruction of an inmate's legal documents can constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Roache v. Hogan*, No. 9:13-CV-0253 (BKS/DEP), 2015 WL 5316209, at *14 (N.D.N.Y. Sept. 11, 2015) (depriving an inmate of access to legal papers may constitute adverse action); *Edwards v. Horn*, No. 10 Civ 6194 (RJS)(JLC), 2012 WL 473481, at 15 (S.D.N.Y. Feb. 14, 2012) (retaliatory loss of legal documents prevented plaintiff from prosecuting action that was dismissed for failure to prosecute); *Smith v. City of New York*, No. 03 Civ. 7576 (NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (retaliatory destruction of prisoner's legal documents appears designed to deter plaintiff's exercise of constitutional rights and constitutes adverse action for purposes of a retaliation claim).

In recommending dismissal of Plaintiff's retaliation claim in his Amended Complaint, the Court found that Plaintiff had failed to make a plausible showing that Uhler and Zerniak's adverse actions were causally connected to his exercise of protected First Amendment rights in filing lawsuits against all of the Defendants during the period from 2010 to 2013. *Johnson v. McKay*, 2015 WL 6126878, at *8. The Court finds that Plaintiff's Second Amended Complaint and opposition to Defendants' motion to dismiss, along with the Court of Claims documents relating to the Court of Claims actions identified in the Second Amended Complaint that have been submitted by Defendants, make a plausible showing of causal connection for purposes of stating a retaliation claim.

Plaintiff's identification of his Court of Claims actions in his Second Amended Complaint, which allowed Defendants to identify the cases in which Plaintiff claims to have been denied access to courts and to submit Court of Claims Decisions and Orders in those cases (including those discussed above dated May 20, 2010, and July 3, 2012), shows the temporal proximity between the Court of Claims cases and issuance of the deprivation orders from April

2010 to December 2013. (Dkt. Nos. 34 at 4-5, 7; 36-4 at 3, 8-9.) *See Guillory v. Ellis*, No. 9:11-CV-600 (MAD/ATB), 2012 WL 2755296, at \*5 (N.D.N.Y. March 22, 2012) ("The fact that an allegedly adverse action occurred in close proximity to the protected conduct will suffice to prevent dismissal on the pleadings, but will not necessarily prove plaintiff's claim by a preponderance of the evidence.") (citing *Davis v. Goord*, 320 F.3d 346, 352-54 (2d Cir. 2003) (temporal proximity and other factors support an "inference" of retaliation sufficient to survive a motion to dismiss)). In addition, in his opposition papers, Plaintiff has alleged that each time he requested an extension of time to act on an appeal in the Appellate Division, Third Department, Uhler and Zerniak would implement another deprivation order. (Dkt. No. 38 at 5.) The extension would then expire without Plaintiff having been able to act and further requests for extensions would be denied by the Appellate Division. *Id*. *See Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir. 1987) ("[c]hronology of events from which retaliatory animus on defendant's part could be inferred" sufficient to overcome motion to dismiss).

While as with Plaintiff's access to the courts claim, the Court expresses no opinion as to whether Plaintiff's retaliation claim could survive a properly made motion for summary judgment, the Court does find that Plaintiff has made a plausible showing sufficient to state a claim for retaliation against Defendants Uhler and Zerniak and recommends that Defendants' motion to dismiss the claim for failure to state a claim be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's Second Amended Complaint (Dkt. No. 36) for failure to state a claim be **DENIED;** and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: June 9, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2012 WL 473481
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

William EDWARDS, Plaintiff,
v.
Martin HORN, et al., Defendants.

No. 10 Civ. 6194(RJS)(JLC).
|
Feb. 14, 2012.

*REPORT & RECOMMENDATION*

JAMES L. COTT, United States Magistrate Judge.

**\*1 To The Honorable Richard J. Sullivan, United States District Judge:**

Plaintiff William Edwards, proceeding *pro se,* brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 alleging that Defendants violated his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments during his incarceration in various facilities on Rikers Island. Edwards also alleges that he was discriminated against in violation of the Americans with Disabilities Act. Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, I recommend that the motion to dismiss be granted except as to Edwards' retaliatory termination claim against Defendant Rosa.

## I. *BACKGROUND*

### A. Factual Background

The following facts are taken from the Complaint and are accepted as true for purposes of this motion. (*See* Complaint, dated June 23, 2010 ("Compl.") (Dkt. No. 2)). Edwards brings this suit pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.,* against 44 current and former New York City employees and two John Doe Defendants: Commissioner Martin Horn, Warden Bailey, Warden J. Davis, Warden E. Duffy, Warden Michael Hourihan, Warden Riordan, Warden Robert Shaw, Correctional Officer ("CO.") Dinolfo, CO. Grima, CO. Hernandez, CO. Holmes, CO.

Lagos, CO. Lewis, CO. Maynard, CO. Morales, CO. Noon, CO. Reyes, CO. Richardson, CO. Rosa, CO. Smalls, CO. Smith, CO. Sumpter, Captain Alleyve, Captain Bethacourt, Captain Calle, Captain G. Davis, Captain Polak, Marybeth Campfield, Ms. Carrera, Mrs. M. Cattafesta, Mr. K. Guerrant, Cook Hannah, Deputy Hill, Florence Hunter, Ms. Jenkins, Ms. K. Johnson [1], Ms. G. Lee, Ms. P. Mimms, Mr. R. Mulvena, Ms. B. Musmacher, Ms. R. Padmore, Karen Powell, James Robinson, and Ms. Steven (together, "Defendants"). (*See* Compl. at 1–5). [2]

Edwards alleges that Defendants deprived him of his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments during his incarceration at several facilities on Rikers Island: the Anna M. Kross Center ("AMKC"), the Eric M. Taylor Center ("EMTC"), the George Motchan Detention Center ("GMDC"), the George R. Vierno Center ("GRVC"), and the Robert N. Davoren Complex ("RNDC"). At the time he filed his Complaint, Edwards was an inmate at the Clinton Correctional Facility, and he is currently on parole. (*See* Letter, dated Dec. 11, 2011 (Dkt. No. 135)).

Throughout his roughly 100 paragraph, single-spaced, 25–page Complaint, Edwards does not present his allegations by cause of action, nor does he clearly articulate exactly what causes of action he is asserting, as many allegations appear to overlap and lack clarity. [3] Several of Edwards' allegations deal with Defendants' actions in relation to a separate lawsuit Edwards brought in the Northern District of New York, *Edwards v. Selsky,* No. 04 Civ. 493(FJS)(DRH), 2008 WL 190385 (N.D.N.Y. Jan. 22, 2008) (*"Selsky"* or the "NDNY action"), which was dismissed for failure to prosecute. The Court has made every effort to identify and address all possible claims asserted in the Complaint. [4] The Court is able to identify 12 potential causes of action spanning separate dates from July 25, 2007 to April 5, 2010. Specifically, Edwards asserts the following claims: (1) verbal harassment; (2) deprivation of access to free telephone calls; (3) deprivation of access to legal services; (4) mail tampering; (5) denial of required food portions; (6) unconstitutional strip search; (7) violation of due process rights within the prison's disciplinary and grievance system; (8) excessive force and denial of medical treatment; (9) deprivation of access to the prison's grievance system; (10) retaliation; (11) conspiracy; and (12) disability discrimination under the ADA. Edwards seeks $75,000,000 in damages, attorneys' fees, a reimbursement of penalties incurred due

to two allegedly false infractions, injunctive relief in the form of expunging those false infractions, injunctive relief terminating Defendants from their positions in the New York City Department of Correction ("DOC") and permanently enjoining them from city, state, or federal employment, and a permanent restraining order to prevent Defendants from committing any future similar violations. (Compl.¶ V). Edwards does not present these allegations in a narrative fashion, but instead describes dozens of grievance letters that he has submitted to DOC staff at the various Rikers Island facilities over the course of nearly three years. To avoid repetition, the Court will describe the factual background relating to Edwards' specific allegations in the context of the relevant legal discussion below.

**B. Procedural Background**

 **\*2** Edwards filed the Complaint on August 18, 2010. (Dkt. No. 2). On October 29, 2010, the United States Marshals executed service of the Summons and Complaint on 32 of the 44 named defendants. [5] Over the course of the next several months, with the assistance of the Office of Corporation Counsel, the United States Marshals, and the Court, Edwards has attempted to serve the remaining 12 named defendants. (*See* Dkt. Nos. 56, 62, 69, 70, 75, 119, 120, 129). To date, Edwards has successfully served nine additional Defendants and appears to have served a number of Defendants twice. [6] Accordingly, there are three named Defendants who have not been served—Bethacourt, Davis, and Johnson—and two John Doe Defendants who have not been identified. [7]

During the pendency of his lawsuit, Edwards has submitted several requests to the Court. By Order dated November 1, 2010, the Court denied Edwards' request for an order prohibiting certain employees at the Southport Correctional Facility, where Edwards was incarcerated at the time, from tampering with his legal and personal mail. (Dkt. No. 8). By Orders dated November 30, 2010 and April 14, 2011, the Court denied Edwards' motions for default judgment against certain Defendants (Dkt.Nos.56, 92), and Edwards' interlocutory appeal of the November 30 Order was denied by the Second Circuit on May 26, 2011. (Dkt. No. 118). By Orders dated February 9, 2011, I declined Edwards' request that I disqualify myself from this action and also denied his motion for the appointment of counsel. (Dkt.Nos.73–74). Lastly, on March 8, 2011, I denied Edwards' request for sanctions in connection with Corporation Counsel's providing Edwards with service addresses for Defendants. (Dkt. No. 81).

On April 4, 2011, Defendants moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss, dated Apr. 4, 2011 ("Def.Mem.") (Dkt. No. 89)). [8] Defendants assert that Edwards has failed to state a claim as to his verbal harassment, deprivation of telephone access, unconstitutional strip search, mail tampering, denial of food, denial of legal services, due process, grievance processing and protocol, excessive force and medical treatment, conspiracy, and retaliation causes of action. (Def. Mem. at 16–45). In addition, Defendants argue that Edwards' claims against Defendants Bailey, Cattafesta, Davis, Hill, Horn, Hourihan, Powell, and Riordan fail for lack of personal involvement, all defendants are entitled to qualified immunity, and Edwards' claims are barred by the Prison Litigation Reform Act (the "PLRA") . [9] (*Id.* at 14–16, 45–48). Pursuant to the Court's Order dated March 3, 2011, Edwards' deadline to submit an opposition to Defendants' motion was May 4, 2011. (Dkt. No. 80). However, despite receiving several extensions—first to May 18 (Dkt. No. 90) then to June 8 (Dkt. No. 116) and June 29 (Dkt. No. 122)—Edwards has not submitted any opposition. Accordingly, the Court considers Defendants' motion fully submitted.

## II. *DISCUSSION*

**A. Applicable Legal Standards**

 **\*3** A plaintiff's failure to oppose a 12(b)(6) motion does not by itself merit dismissal of a complaint. *See Goldberg v. Danaher,* 599 F.3d 181, 183–84 (2d Cir.2010); *McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id.* Consequently, as with all Rule 12(b)(6) motions, in deciding an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency" according to the principles below. *Id.* at 322.

A complaint will not survive a 12(b)(6) motion to dismiss if it "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Although "a complaint attacked by a 12(b) (6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation marks and citations omitted). "To survive a motion to dismiss, the complaint must set out only enough facts to state a claim to relief that is plausible on its face." *Hollander v. Copacabana Nightclub,* 624 F.3d 30, 32 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950 (citation omitted). A complaint thus may only survive a 12(b)(6) motion to dismiss if it has "facial plausibility" and pleads enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Given that Edwards is proceeding *pro se,* the Court must "construe [his Amended Complaint] broadly and interpret it to raise the strongest arguments it suggests." *Sharpe v. Conole,* 386 F.3d 482, 484 (2d Cir.2004) (citation omitted). Furthermore, "when the plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004) (citation omitted). Nevertheless, "a *pro se* litigant [is] bound by the same rules of law ... as those [litigants] represented by counsel." *Fertig v. HRA Med. Assistance Program,* No. 10 Civ. 8191(RPP), 2011 WL 1795235, at *4 (S.D.N.Y. May 6, 2011) (quotation marks and citation omitted).

## B. Verbal Harassment

Edwards asserts that several Defendants, in violation of Section 1983, used harassing, threatening, and profane language towards him on 17 separate occasions taking place between July 25, 2007 and September 1, 2008. (Compl.¶¶ III, 2, 6, 8, 17, 19, 22, 24, 30, 33, 37, 38, 53, 65, 81, 83, 91(b)). In separate allegations, he claims that Defendants Campfield, Dinolfo, Grima, Hannah, Hernandez, Holmes, Lewis, Maynard, Morales, Noon, Reyes, Richardson, Smalls, and Smith, called him a "snitch" in front of other inmates, mocked his disability, falsely informed him that he had a visitor when in fact he did not have a visitor, and directed racial slurs and profane language toward him. (*Id.*). These claims should be dismissed. The Eighth Amendment prohibits the imposition of cruel and unusual punishment, *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), but its protection does not extend to

verbal harassment of an inmate by correction officers without any resulting "appreciable injury." *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 373 (S.D.N.Y.2011) (quoting *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)).

**\*4** Verbal harassment, by itself, is not a constitutional violation. *See, e.g., Tafari v. McCarthy,* 714 F.Supp.2d 317, 364 (N.D.N.Y.2010) ("[v]erbal harassment itself does not rise to the level of a constitutional violation [,]" and "[v]erbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations") (quotation marks and citation omitted); *Davidson v. Bartholome,* 460 F.Supp.2d 436, 446 (S.D.N.Y.2006) (no relief to inmate "simply because [an officer] made a hostile or derogatory comment"); *Lunney v. Brureton,* No. 04 Civ. 2438(LAK)(GWG), 2005 WL 121720, at *11 (S.D.N.Y. Jan. 21, 2005) (no claim because merely "insulting" or "disrespectful" comments "do not give rise to a constitutional violation") (quotation marks and citations omitted) (Report and Recommendation), *adopted,* 2005 WL 433285 (S.D.N.Y. Feb.23, 2005). Absent any appreciable injury, courts routinely dismiss claims of verbal harassment brought under Section 1983. *See, e.g., Felder v. Filion,* 368 F. App'x 253, 256 (2d Cir.2010) (verbal harassment did not violate Eighth Amendment where plaintiff did not present evidence of resulting injury); *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) ("allegations of verbal harassment are insufficient to base a [Section] 1983 claim if no specific injury is alleged"). Because Edwards does not allege any injury whatsoever, let alone one that could be considered "appreciable," Defendants' alleged threats, verbal harassment, or profane language do not give rise to constitutional violations and should therefore be dismissed.

## C. Denial of Required Telephone Calls

Edwards alleges that since his incarceration began on January 23, 2008, he has not been provided with a free telephone call as required by the "DOC Telephone System." (Compl.¶ 46).[10] Edwards further alleges that he submitted a grievance on June 3, 2008 regarding his deprivation of free telephone calls. (*Id.*). However, "[p]hone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world." *Henry v. Davis,* No. 10 Civ. 7575(PAC)(JLC), 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) (citing cases) (Report and Recommendation), *adopted,* 2011 WL 5006831 (S.D.N.Y. Oct.20, 2011). Because inmates "have no right to unlimited telephone calls[,]" *Bellamy v. McMickens,* 692 F.Supp. 205, 214 (S.D.N.Y.1998) (citation omitted), Edwards must, but

fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights. *See, e.g., Paulino v. Menifee,* No. 00 Civ. 5719(RCC)(KNF), 2001 WL 243207, at *2 (S.D.N.Y. Mar. 9, 2001) (refusing to issue injunction restoring phone privileges where inmate did not allege that alternate means of communication were inadequate). Edwards' claim regarding the denial of free telephone calls should therefore be dismissed.

### D. Deprivation of Access to Legal Services

**\*5** Edwards alleges numerous deprivations of access to legal services by Defendants Campfield, Musmacher, and Smalls. As to Campfield, Edwards alleges that in March 2008 she denied him a legal manila envelope, lost his legal documents pertaining to the NDNY action, and denied him legal services. (Compl. ¶¶ 31, 36). As to Musmacher, Edwards asserts that she denied him legal services for more than a month around August 2008 and discriminated against him by providing legal services to Latino detainees when Edwards was "next ... on line" to receive such services. (*Id.* ¶¶ 56–57). As to Smalls, Edwards claims that she denied him extra time in the prison facility's law library in August 2008. (*Id.* ¶ 61). Each of these claims should be dismissed.

The Supreme Court has recognized that an inmate does not have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Rather, a prison facility must ensure that its inmates have " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Id.* (quoting *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). Accordingly, for a defendant's conduct to provide a basis for an inmate to invoke his right of access to the courts, it must cause "actual injury" or "materially prejudice[ ]" the inmate. *Salvatierra v. Connolly,* No. 09 Civ. 3722(SHS)(DF), 2010 WL 5480756, at *21 (S.D.N.Y. Sept. 1, 2010) (citations and quotation marks omitted) (Report and Recommendation), *adopted,* 2011 WL 9398 (S.D.N.Y. Jan.3, 2011).

Here, Edwards does not state sufficient facts to constitute any injury or material prejudice. He does not claim any injury suffered because of Defendants' alleged denials of legal services, legal supplies, extra time in the law library, or alleged discrimination in favor of Latino detainees. While he asserts that Campfield's losing his legal documents in connection with the NDNY action prevented him from "prosecuting" that action (Compl.¶ 36), he fails to provide any specifics as to his purported inability to prosecute. He does

not elaborate on, for example, what documents he believes were lost and what actions he was prevented from taking in his litigation, which is especially relevant since Edwards appears to have participated in the NDNY lawsuit in some capacity, but failed to keep the court apprised of his mailing address. *See Selsky,* 2008 WL 190385, at *1–3. Accordingly, because Edwards has not identified any injury or material prejudice as a result of his alleged deprivation of access to legal services, these claims should be dismissed.

### E. Mail Tampering

Edwards' mail tampering claims are based on allegations of interference with his outgoing non-legal mail and his incoming and outgoing legal mail at the EMTC and AMKC. Specifically, Edwards first alleges that on November 1, 2007 he wrote a letter to Michael Caruso at the DOC that was never sent from the EMTC. (Compl.¶ 16). Second, Edwards alleges that his "legal mail" addressed to Caruso never left the EMTC and was returned to him on November 27, 2007. (*Id.* ¶ 27). Next, Edwards submitted a grievance on September 8, 2008 alleging that his "personal and legal mail" addressed to a co-defendant never left the AMKC because it was returned for insufficient postage despite being marked with a postage stamp. (*Id.* ¶ 70). Edwards' fourth claim of mail tampering relates to the NDNY action. He asserts that Defendant Davis failed to forward his incoming legal mail to the correct address, despite Edwards' instruction for him to do so, and that as a result, his NDNY lawsuit was dismissed. (*Id.* ¶ 47). Lastly, Edwards alludes to an allegation of tampering with his outgoing "legal and personal mail" against unnamed AMKC staff, which he documented in a November 18, 2008 grievance letter. (*Id.* ¶ 94). None of these claims should withstand a motion to dismiss.

**\*6** Both legal and non-legal mail are protected by the First Amendment's "right to the free flow of incoming and outgoing mail." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). "[A] prison official's interference with an inmate's mail may violate his First Amendment right to free speech, which includes the 'right to be free from unjustified governmental interference with communication.' " *Cancel v. Goord,* No. 00 Civ.2042(LMM), 2001 WL 303713, at *5 (S.D.N.Y. Mar.29, 2001) (citation omitted). In addition, "the Supreme Court has recognized that 'the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.' " *Id.* (quoting *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)).

With these principles in mind, Edwards' allegations as to outgoing non-legal mail-non-legal mail being afforded less protection than legal mail, *Davis,* 320 F.3d at 351—fail to state a claim because he does not assert that Defendants actually tampered with his mail, only that his mail never left the facility. Moreover, instead of establishing plausible mail tampering claims for his outgoing non-legal mail, Edwards' alleged facts make mail tampering an unlikely possibility. For example, Edwards' allegation that his November 1, 2007 letter to Michael Caruso never left the EMTC is based solely on the fact that Caruso never answered the letter. (Compl.¶ 16). Caruso's failure to respond to Edwards' letter, of course, does not necessarily suggest that it was never sent by EMTC staff. Absent any allegations that Defendants opened the letter, withheld it from being sent, or otherwise took any adverse action to make it plausible that EMTC staff tampered with Edwards' outgoing mail, Edwards' claim is merely speculative. Similarly, Edwards' allegation in his September 8, 2008 grievance that a letter to a co-defendant was returned to him for insufficient postage despite having a postage stamp does not suggest mail tampering, but rather that Edwards had failed to affix sufficient postage. (*Id.* ¶ 70). In any event, an isolated failure to mail an inmate's letter does not state a constitutional violation. *See, e.g., Battice v. Phillip,* No. 04 Civ. 669(FB)(LB), 2006 WL 2190565, at *6 (E.D.N.Y. Aug. 2, 2006) (defendant's failure to deliver plaintiff's mail, even if intentional, is "simply *de minimis* and therefore outside the ambit of constitutional protection") (citation and quotation marks omitted). Finally, Edwards' claim regarding mail tampering in November 2008 is devoid of any facts that could state a cause of action. (Compl.¶ 94).

As to Edwards' claims regarding interference with his incoming and outgoing legal mail, the Court notes that such interference "implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis,* 320 F.3d at 351. To survive a motion to dismiss, a plaintiff must allege that correction officers "regularly and unjustifiably" interfered with his mail, depriving him of his constitutional rights. *Shepherd v. Fisher,* No. 08 Civ. 9297(LTS)(RLE), 2011 WL 3278966, at *2 (S.D.N.Y. July 27, 2011) (citations and quotation marks omitted). To assert such a claim, a prisoner must allege that the defendant's actions (1) were "deliberate and malicious" and (2) "resulted in actual injury" to the plaintiff. *Cancel,* 2001 WL 303713, at *4 (quoted in *Davis,* 320 F.3d at 351). Actual injury exists where interference with legal mail results in "the dismissal of an otherwise meritorious legal claim." *Id.* However,

"[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Id.* at 352 (citations and quotation marks omitted).

**\*7** None of Edwards' claims of interference with his legal mail—both those related to incoming and outgoing mail— sufficiently states an actual injury. Edwards fails to allege that he suffered any injury in connection with DOC staff's alleged failure to send his outgoing legal mail on November 27, 2007, September 8, 2008, or November 18, 2008, assuming that Edwards' "legal mail" is in fact legal mail. (Compl.¶¶ 27, 70, 94). For the same reason, Edwards' claim pertaining to incoming mail from the NDNY does not state a constitutional violation. This claim is based on Defendant Davis' alleged failure to adhere to Edwards' request to have his mail sent to a forwarding address. For support, Edwards appears to rely on language in Judge Scullin's order that the magistrate judge's report and recommendation was returned to the Court marked "unable to forward." (Compl.¶ 47). The NDNY action, however, was not dismissed solely because certain documents were returned to the Court. Rather, the case was dismissed for Edwards' failure, for more than one year, to prosecute the action, which included his failure to keep the court and defendants apprised of his address, appear for a deposition, or pay a sanction, despite being aware of the pending litigation. *See Selsky,* 2008 WL 190385, at *1–3. Even if Davis had complied with Edwards' forwarding request, the court's decision to dismiss the complaint for Edwards' "repeated and ongoing failures to fulfill his obligations to notify the [c]ourt and counsel of his address and to cooperate in discovery" would likely have remained unchanged. *Id.* at *3. The alleged failure to forward did not, therefore, cause "the dismissal of an otherwise meritorious legal claim." *Cancel,* 2001 WL 303713, at *4 (citation omitted).

Moreover, Edwards does not plead that Defendants blocked his outgoing legal mail in connection with the NDNY action. Indeed, Edwards could not assert such an argument, since, as Judge Scullin noted, he had previously mailed documents to the court during the pendency of his lawsuit. *See Selsky,* 2008 WL 190385, at *1–2. Accordingly, Edwards cannot establish the requisite injury needed to state a cause of action for the deprivation of his constitutional right of access to the courts. Edwards' mail tampering claims should therefore be dismissed.

**F. Denial of Required Food Portions**

Edwards alleges that on several occasions Defendants Lagos, Lewis, and Richardson deprived him of required food portions, including "prescribed therapeutic diet 'soy milk' " on April 19, 2008 (Compl.¶ 38), a second chicken patty on or around May 2008 (*Id.* ¶ 43), a "morning meal" on July 31, 2008 (*Id.* ¶ 53), and an "afternoon meal" on or around October 2008. (*Id.* ¶ 90). Each of these claims should be dismissed. The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (per curiam) (quotation marks and citation omitted). Courts have found the Eighth Amendment to be implicated only where a prisoner's allegations involve a serious and continued deprivation of nutritionally adequate food. *See, e.g., Reeder v. Artus,* No. 09 Civ. 575(DNH)(DRH), 2010 WL 3636138, at *11 (N.D.N.Y. July 27, 2010) (seven out of twelve days without meals constituted sufficient deprivation to survive motion to dismiss) (Report and Recommendation), *adopted,* 2010 WL 3636132 (N.D.N.Y. Sept.9, 2010).

**\*8** Edwards does not allege that the alleged denials of food placed his health and well being in any immediate danger. *See, e.g, Martinez v. Lape,* No. 09 Civ. 0665(TJM) (RFT), 2011 WL 4527943, at *9 (N.D.N.Y. Mar. 28, 2011) (Report and Recommendation), *adopted,* 2011 WL 4528980 (N.D.N.Y. Sept.28, 2011) (no Eighth Amendment claim where inmate failed to allege how expired food and juice posed an immediate risk to health); *Bee v. Krupp,* No. 08 Civ. 10141(SHS)(KNF), 2009 WL 2981910, at *3 (S.D.N.Y. Sept. 15, 2009) ("visible globs of spit" in food did not violate Eighth Amendment). Nor do the allegations, which are alleged to have taken place on four separate dates over a span of six months, suggest that Edwards was in any danger. Accordingly, Edwards' claims regarding deprivation of meals should be dismissed.

## G. Unconstitutional Strip Search

Edwards alleges that an unspecified officer subjected him to an "institutional" strip search on an unspecified date in violation of the Fourth Amendment. (Compl.¶ 13). Edwards argues that this strip search was unconstitutional because he was convicted of a misdemeanor and not a felony. (*Id.*). While the Fourth Amendment prohibits "unreasonable searches," *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (citation omitted), it is not unreasonable for prison officials to perform routine random strip searches on prison inmates. *See N.G. v. Connecticut,*

382 F.3d 225, 230–32 (2d Cir.2004). Edwards' reliance on the distinction between inmates convicted of misdemeanors and those convicted of felonies is misplaced, as that distinction is only relevant as to pre-trial detainees. *See Shain v. Ellison,* 356 F.3d 211, 214 (2d Cir.2004) ("clearly established Fourth Amendment precedent ... preclude[s] jails from strip searching misdemeanor arrestees absent a reasonable suspicion that weapons or other contraband were concealed"); *Walsh v. Franco,* 849 F.2d 66, 70 (2d Cir.1988) ("indiscriminate strip-searching of misdemeanor arrestees is unconstitutional"). Here, Edwards admits that he was convicted at the time of his strip search. (Compl.¶ 13). *See, e.g., Castro–Sanchez v. N.Y. State Dep't of Corr. Servs.,* No. 10 Civ. 8314(DLC), 2011 WL 6057837, at *8 (S.D.N.Y. Dec.6, 2011) (strip search claim dismissed because routine random searches of inmates are constitutional). Accordingly, Edwards' claim should be dismissed.

## H. Deprivation of Due Process Rights Within Prison's Disciplinary System

Edwards alleges that he was denied certain rights during two disciplinary proceedings heard by Defendant Davis on September 30, 2008, which can be broadly construed as a claim asserting a deprivation of procedural due process under the Fourteenth Amendment. (Compl.¶¶ 86, 87b, 89, 95, 97–99). The disciplinary hearings appear to relate to Edwards' alleged violations of "numerous [ ] rules within the inmate misbehavior rule book" on September 20, 2008 and September 24, 2008. (*Id.* ¶¶ 86, 87). Edwards takes issue with several aspects of the disciplinary hearings, including that: (1) Davis found him guilty of the infraction without conducting an investigation into Edwards' claim that he never received a copy of the rule book (*Id.* ¶ 86); (2) Davis failed to provide him with certain documentary evidence that "could have help [ed]" Edwards defend himself, including Edwards' "orange detention card," his "injury report," and a video tape of the alleged infraction (*Id.* ¶¶ 86, 87b); (3) no witnesses to Edwards' violations "endor[s]e[d]" the infraction against him (*Id.* ¶ 87); and (4) Edwards never received responses to notices of appeal and letters submitted to Horn, Hourihan, Hunter, and Robinson regarding his fine and punitive segregation. (*Id.* ¶¶ 86, 87b, 89, 94–99). In addition, Edwards appears to challenge his resulting discipline, which included a $25.00 "surcharge" and 30 days of punitive segregation. (*Id.* ¶¶ 87, 87b).

**\*9** Edwards' cause of action for deprivation of his procedural due process rights fails because he does not allege sufficient facts to state an actionable claim. "In evaluating due process

claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir.2001) (citation and quotation marks omitted). Prisoners subject to disciplinary proceedings can show a liberty interest only where "an institution's disciplinary decision results in an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' " *Luna v. Pico,* 356 F.3d 481, 487 n. 3 (2d Cir.2004) (quoting *Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). In determining whether an inmate endured atypical and significant hardship during punitive segregation, the Second Circuit instructs courts to consider both the duration and conditions of the confinement. *See Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) ("[f]actors relevant to determining" whether inmate endured atypical hardship include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement") (quotation marks and citation omitted).

The Second Circuit has expressly declined to provide a bright-line rule as to what length of time in punitive confinement implicates a prisoner's constitutional rights; however, general guidelines have been defined. *See id.* Confinement for 101 days or fewer under typical punitive segregation conditions "generally do[es] not constitute 'atypical' conditions of confinement." *Bunting v. Nagy,* 452 F.Supp.2d 447, 456 (S.D.N.Y.2006) (quoting *Sealey v. Giltner,* 197 F.3d 578, 589 (2d Cir.1999)); *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000). By contrast, 305 days or more of confinement has been deemed an atypical and a significant hardship. *Id.* at 231–32. Even if an inmate is segregated for fewer than 101 days, a violation of his liberty interest may be implicated if "the conditions were more severe than the normal [punitive segregation] conditions ... or a more fully developed record showed that even relatively brief confinements under normal [punitive segregation] conditions were, in fact, atypical." *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir.2009) (quoting *Palmer,* 364 F.3d at 65; *see also Ortiz v. McBride,* 380 F.3d 649, 654–55 (2d Cir.2004). Indeed, " 'the conditions of confinement are a distinct and equally important consideration' in determining whether the prisoner has suffered a due process violation." *Sales v. Barizone,* No. 03 Civ. 6691(RJH), 2004 WL 2781752, at *6 (S.D.N.Y. Dec.2, 2004) (quoting *Palmer,* 364 F.3d at 64–65).

Here, Edwards claims that he was confined to punitive segregation for 30 days. Several courts have concluded that, absent unusual conditions, 30 days of segregation is not an atypical or significant hardship under *Sandin. See, e.g., Sandin,* 515 U.S. at 486 (30 days' disciplinary segregation not atypical and significant hardship); *Duncan v. Keane,* No. 95 Civ. 1090(SHS), 1997 WL 328070, at *2 (S.D.N.Y. June 13, 1997) (30 days in keeplock not atypical or significant hardship) (citation omitted); *Harris v. Keane,* 962 F.Supp. 397, 404 (S.D.N.Y.1997) (23 days in keeplock not atypical or significant hardship as "[t]he Second Circuit's post-*Sandin* decisions are unanimous that keeplock of 60 days or less in New York prisons is not an atypical hardship") (quotation marks and citations omitted); *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1108 (S.D.N.Y.1995) (60 days in confinement does not implicate liberty interest). Given the duration of his segregation and Edwards' failure to allege that the conditions of his confinement were atypical and significant, Edwards' punishment does not implicate a liberty interest. Similarly, Edwards' $25.00 "surcharge" was not an atypical hardship. *See, e.g., Byrd v. Cornell Corr., Inc,* 60 F. App'x 191, 193–94 (10th Cir.2003) ( $50 fine and 30 days' segregation not atypical and significant hardship). Thus, neither Edwards' punitive segregation nor his $25 fine implicates the requisite liberty interest to state a due process claim.[11] Because of the absence of any protected liberty interest—and because Edwards' allegations cannot be construed to allege a protected property interest—any failures by the hearing officer to conduct a thorough investigation of Edwards' claims, including the provision of certain documentary evidence and witnesses, do not support a cause of action for the denial of due process. *See, e.g., Torres v. Mazzuca,* 246 F.Supp.2d 334, 341–42 (S.D.N.Y.2003) (inmate cannot claim due process violations at hearing where 12–day disciplinary confinement did not implicate protected liberty interest). Edwards' procedural due process claims should therefore be dismissed.

### I. Excessive Force and Denial of Required Medical Treatment

**\*10** Edwards asserts two allegations of physical injury, which the Court construes as excessive force claims, and a related allegation that he was denied medical treatment. (Compl.¶¶ 91, 91b). Edwards asserts that on November 1, 2008, Defendant Grima hit him in the head with a "pushdraw" and then refused Edwards' request for medical treatment. (*Id.* ¶ 91). He also argues that Grima inflicted "personal physical harm" upon him after Grima pressed the "emergency personal alarm device." (*Id.* ¶ 91b). Neither of these claims should survive Defendants' motion to dismiss.

The constitutional basis for Edwards' excessive force and deliberate indifference to medical needs claims is the Eighth Amendment's ban on cruel and unusual punishment. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (per curiam). Any actionable claim under the Eighth Amendment consists of a subjective component, which focuses on the defendant's motive for his conduct, and an objective component, which focuses on the conduct's effect. *See, e.g., Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness ..." *Id.* (citations and quotation marks omitted). In the excessive force context, this means "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In the medical needs context, the defendant must act with a "sufficiently culpable state of mind[,]" *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), which means that he must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment's objective component "focuses on the harm done, in light of contemporary standards of decency" and whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Wright,* 554 F.3d at 268 (citations and quotation marks omitted). For deliberate indifference claims, "the alleged deprivation must be sufficiently serious ... that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (citations and quotation marks omitted).

Edwards' allegations of excessive force and denial of medical treatment fail to meet either the subjective or objective components under the Eighth Amendment. Both claims of excessive force are devoid of any specific information regarding the extent of a temporary or permanent injury, if any, and the level of pain that Edwards endured. The entirety of Edwards' first allegation of excessive force is that Grima "hit [him] in [the] head with the pushdraw that's part of the officers [sic] station" (Compl.¶ 91), which falls far short of what is needed to state a claim of excessive

force. As to his second allegation, Edwards states only that Grima "caused [him] personal physical harm" after Grima pressed his "emergency personal alarm device[,]" but he fails to elaborate on what exactly Grima did, how and where it harmed Edwards, and what injury Edwards suffered. (*Id.* ¶ 91b). Edwards' medical treatment claims are similarly deficient, as he alleges only that Grima "said 'no' " after Edwards requested medical assistance and then sent Edwards away to pack up his belongings. (*Id.* ¶ 91). These allegations do not shed light on whether any injury that Edwards suffered was sufficiently serious to warrant medical attention, whether Grima knew of and disregarded an excessive risk to Edwards' health, or even whether there was any risk to Edwards' health. Accordingly, Edwards has failed to state claims for excessive force and denial of medical treatment, and those claims should be dismissed.

## J. Deprivation of Access to Prison Grievance System

**\*11** Throughout the Complaint, Edwards claims that he submitted several grievance letters and complaints to numerous Defendants, who he alleges denied, ignored, never answered, and/or improperly processed his grievances on various dates from July 2007 through February 2009. (Compl.¶¶ 1–15, 17–20, 21–33, 36–39, 41–45, 48–51, 54–85, 88, 90, 91b, 92–94, 96). As one example, Edwards states that on September 18, 2007, he wrote a complaint letter to Defendant Horn about Defendant Rosa's use of her cellular phone while on duty, which caused a "security breach." (*Id.* ¶ 7). Edwards alleges that he was denied access to the grievance system because Defendant Mulvena failed to file that grievance (or any of his other grievances) and Defendant Horn did not follow up regarding the complaint. (*Id.*).

While a plaintiff has a right "to meaningful access to the court and to petition the government for the redress of grievances" under the First Amendment, *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005) (citation omitted), the failure to process a grievance does not rise to the level of a constitutional violation. *See, e.g., id.* at 370 ("inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable [Section] 1983 claim") (citation omitted); *Torres,* 246 F.Supp.2d at 342 ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.") (citations omitted); *Cancel,* 2001 WL 303713, at *3–4 (violation of grievance procedures does not give rise to claim under First Amendment).

Courts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures. *See, e.g., id.; Muhammad v. McMickens,* No. 86 Civ. 7376(SWK), 1988 WL 7789, at *3 (S.D.N.Y. Jan.25, 1998). Accordingly, because Edwards' claims for alleged violations of the inmate grievance process have no constitutional basis, those claims should be dismissed. [12]

## K. Retaliation

Edwards alleges that on 17 separate occasions between July 2007 and November 2008, Defendants Campfield, Grima, Hannah, Holmes, John Doe # 1, John Doe # 2, Lagos, Lee, Maynard, Polak, Richardson, Rosa, Shaw, Smalls, and Sumpter retaliated against him in response to his submitting, or informing Defendants that he intended to submit, grievance letters. Edwards' allegations of retaliation include the use of verbal threats or harassment, issuance of infractions, transfers between prison facilities, denials of meals, loss of legal documents, and termination from part-time employment he had while on Rikers Island.

To prove a First Amendment retaliation claim under Section 1983, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). For a retaliation claim to survive a motion to dismiss, it must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York,* 210 F.3d 79, 86 (2d Cir.2000) (citation and quotation marks omitted). An "unsupported, speculative, and conclusory" allegation of retaliatory conduct may be dismissed on the pleadings. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citations and quotation marks omitted).

**\*12** In reviewing Edwards' retaliation claims, the Court is mindful that "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). Indeed, while the "First Amendment protects prisoners from retaliation for filing grievances[,]" *Quezada v. Ercole,* No. 09 Civ. 2832(DLC), 2011 WL 3251811, at *5 (S.D.N.Y. Jul.29, 2011) (citations omitted), the Court recognizes "the near inevitability of decisions and actions by prison officials

to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citing *Flaherty,* 713 F.2d at 13). Moreover, courts should carefully scrutinize an inmate's claims of retaliation because such allegations "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Hodges v. Wright,* No. 10 Civ. 0531(GLS)(GHL), 2011 WL 5554866, at *9 (N.D.N.Y. Sept. 29, 2011) (quoting *Dawes,* 239 F.3d at 491) (citations omitted) (Report and Recommendation), *adopted,* 2011 WL 5554880 (N.D.N.Y. Nov.15, 2011). Therefore, courts reviewing an inmate's retaliation claims should do so "with skepticism and particular care." *Colon,* 58 F.3d at 872 (citation omitted).

Edwards' allegations, in chronological order, are as follows: (1) in retaliation for submitting a grievance against Defendant Morales on July 25, 2007, Morales called Edwards' housing unit on August 1, 2007 and informed other officers that Edwards had a visitor, when in fact he did not, which caused him to wait in the inmate visitor process area for two hours (*Id.* ¶¶ 2, 4); (2) in retaliation for an incident where Defendant Hannah said she was made to apologize to Edwards for "making fun of [his] phsical [sic] disability/and deformity[,]" Hannah threatened Edwards on September 5, 2007 by saying "I'm going to get you back for that" (*Id.* ¶ 6); (3) in retaliation for filing a grievance against Defendant Rosa on September 18, 2007, Rosa fired Edwards from his job as a Suicide Prevention Aide and issued an infraction against him on October 31, 2007 (*Id.* ¶¶ 14–16); (4) on or around November 1, 2007, after Edwards informed Defendant Holmes that he intended to submit a grievance against her, Holmes caused Edwards to be transferred to another housing facility (*Id.* ¶ 17); (5) in retaliation for filing a grievance against Holmes on November 2, 2007, Holmes came to Edwards' housing unit and verbally abused him by "ridicul[ing] and mak[ing] fun of [his] physical disability and deformity" (*Id.* ¶ 19); (6) on or around November 15, 2007, in retaliation for filing a grievance against Rosa, Rosa informed John Doe officers that Edwards "like[s] to utilize the grievance mechanism against staff [,]" subsequent to which Edwards was subjected to an unauthorized transfer from "6–Lower" to "7–Lower" in the EMTC (*Id.* ¶ 20); (7) on or around November 25, 2007, in retaliation for Edwards' filing a grievance against Rosa, Defendants Hernandez and Smith retaliated against Edwards by informing another inmate that Edwards was a "snitch," which "cause[d] [Edwards] physical harm by other inmate's [sic] within [the] housing unit" (*Id.* ¶¶ 24, 26); (8) in retaliation for submitting a grievance against

Defendants Campfield and Reyes on or around March 22, 2008, Defendant Shaw had Edwards transferred out of the GRVC on March 25, 2008 (*Id.* ¶ 34); (9) on or around April 1, 2008, in retaliation for submitting a grievance against her, Campfield intentionally lost Edwards' legal documents relating to the NDNY action (*Id.* ¶ 36); (10) after filing a grievance on June 27, 2008, Edwards was transferred out of the GMDC that same day, which he says was approved by Defendant Bailey (*Id.* ¶¶ 48, 52); (11) after Edwards informed Defendant Richardson that he planned to file a grievance against her because she refused to turn off the lights in his jail cell on July 30, 2008, Richardson retaliated by denying Edwards his "morning meal" on July 31, 2008 (*Id.* ¶ 53); (12) in retaliation for filing a grievance against him, Richardson put a "hit out" by offering 20 boxes of Frosted Flakes cereal to any inmate that physically assaulted Edwards, for which Edwards filed a grievance on August 7, 2008 (*Id.* ¶ 55); (13) on August 18, 2008, in retaliation for informing a supervisor that Defendant Smalls was "only providing certain detainees with options on the hour every hour" in the law library, Smalls verbally abused Edwards (*Id.* ¶ 61); (14) on or around August 25, 2008, in retaliation for Edwards' use of the grievance mechanism against her, Defendant Smalls retaliated against Edwards through verbal abuse, threatening to have Edwards transferred, and informing other inmates that Edwards uses the grievance process (*Id.* ¶ 66); (15) on or around September 24, 2008, in retaliation for filing numerous grievances against them, Defendants Maynard and Musmacher conspired to retaliate against Edwards by threatening physical violence and issuing an infraction, which resulted in a disciplinary hearing on September 30, 2008 (*Id.* ¶¶ 83, 87, 87b); (16) after Edwards informed Defendant Lagos on October 17, 2008 that he planned to file a grievance against her because of alleged racial discrimination, Lagos retaliated by denying Edwards his "afternoon meal" on October 18, 2008 (*Id.* ¶ 90); and (17) after Edwards informed Defendant Grima that he intended to submit a grievance about his alleged physical assault with a "pushdraw" on November 1, 2008, Grima retaliated by threatening physical harm, pressing his "emergency personal alarm device," issuing an infraction, and causing Edwards to be transferred to a new housing unit (*Id.* ¶¶ 91, 91b).

## 1. Protected Activity

**\*13** It is well-established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances" and is therefore actionable under Section 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) (citation omitted); *see, e.g., Mateo v. Fischer,* 682 F.Supp.2d 423, 433–34 (S.D.N.Y.2010)

(filing of a grievance is a protected activity). However, expressing an intent to engage in a constitutionally protected activity—in this case, filing a grievance—is not protected activity. *See Henry v. Dinelle,* No. 09 Civ. 0456(GTS) (DEP), 2011 WL 5975027, at \*7 n. 12 (citing cases) & n. 13 (N.D.N.Y. Nov. 29, 2011) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.") (citing *McKinnie v. Heisz,* No. 09 Civ. 0188(BBC), 2009 WL 1455489, at \*11 (W.D.Wis. May 7, 2009)). In light of these principles, Edwards' allegations of retaliation in response to his submitting grievance letters constitute protected activities. However, Edwards' allegations of retaliatory conduct arising from his expressing an intent to file a grievance—those allegations occurring on or about November 1, 2007 (Compl.¶ 17), July 31, 2008 (*Id.* ¶ 53), October 18, 2008 (*Id.* ¶ 90), and November 1, 2008 (*Id.* ¶¶ 91, 91b)—are not protected activities and therefore cannot form the basis of a claim for retaliation. [13]

## 2. Adverse Actions

Having determined that four of Edwards' allegations of retaliation fail because he was not engaged in a constitutionally protected activity, the Court now considers whether the remaining 13 allegations meet the adverse action requirement. "[I]n the prison context [the Second Circuit has] defined 'adverse action' objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (citations and quotation marks omitted). An inmate can meet this requirement by "alleging a serious injury that is independent of a possible First Amendment chill, or by alleging that he has been chilled from engaging in the First Amendment activities that triggered the retaliation." *Smith v. Maypes–Rhynders,* No. 07 Civ. 11241(PAC)(MHD), 2009 WL 874439, at \*4 (S.D.N.Y. Mar. 31, 2009). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493 (citation omitted). "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill,* 389 F.3d at 381. In applying this objective test to determine whether conduct is *de minimis,* the Court must consider that "[p]risoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is

considered adverse." *Davis,* 320 F.3d at 353 (citation and quotation marks omitted).

### a. Retaliatory Verbal Abuse

**\*14** Several of Edwards' allegations of retaliation are based on verbal harassment, abuse, or threats. (*See* Compl. ¶¶ 2, 4, 6 ("I'm going to get you back for that."), 19, 24 (calling Edwards a "snitch"), 26, 55 (putting a "hit out" on Edwards to any inmate that "fucks Edwards up"), 61 (calling Edwards a "crackhead" and "one arm faggot"), 66). While "some verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action[,]" *Mateo,* 682 F.Supp.2d at 434 (citations omitted), "[n]on-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim." *Ross v. Westchester Cnty. Jail,* No. 10 Civ. 3937(DLC), 2012 WL 86467, at \*7 (S.D.N.Y. Jan.11, 2012). "[V]erbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered." *Hofelich v. Ercole,* No. 06 Civ. 13697(PKC), 2010 WL 1459740, at \*2 (S.D.N.Y. Apr.8, 2010) (citation and quotation marks omitted).

Here, Edwards' claims of retaliatory verbal abuse do not include any allegations of harm, nor are they alleged with any specificity to suggest that they would deter others from exercising their constitutional rights. Several of his claims allege only that Edwards was forced to endure verbal abuse, but do not explain what was said and why that abuse was in any way adverse. And where Edwards has detailed the nature of the verbal abuse, his allegations are either *de minimis*—for example, in the case of being told he had a visitor when he in fact did not—amount to name-calling, or are insufficiently direct or specific to be adverse. *See, e.g., Dawes,* 239 F.3d at 492–93 (referring to plaintiff as an "informant" and "rat" in presence of other inmates not an adverse action); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir.2000) (referring to transsexual inmate as "he/she" was "rudeness and name-calling" but not a constitutional violation); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam) (name-calling, without any appreciable injury, not a constitutional violation); *Kemp v. LeClaire,* No. 03 Civ. 844S (WMS), 2007 WL 776416, at \*15 (W.D.N.Y. Mar.12, 2007) (threats of "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" not adverse actions); *Battice,* 2006 WL 2190565, at \*6–7 (defendant's making fun of plaintiff s disability does not constitute adverse action). Accordingly,

Edwards' charges of retaliation that allege only retaliatory verbal abuse—on August 1, 2007 (Compl.¶¶ 2, 4), September 5, 2007 (*Id.* ¶ 6), November 2, 2007 (*Id.* ¶ 19), November 25, 2007 (*Id.* ¶¶ 24, 26), August 7, 2008 (*Id* . ¶ 55), August 18, 2008 (*Id.* ¶ 61), and August 25, 2008 (*Id.* ¶ 66)—should be dismissed.

### b. Retaliatory Loss of Legal Documents

**\*15** Courts have held that theft, confiscation, or destruction of an inmate's legal documents may constitute an adverse action. *See, e .g., Smith,* 2009 WL 874439, at \*5 (theft of legal papers is adverse action). However, "mere delays in the transfer of [an inmate's] legal papers, even if motivated by retaliation, is not the type of adverse action required to support a retaliation claim." *Ford v. Fischer,* No. 09 Civ. 723(DNH)(ATB), 2011 WL 856416, at \*8 (N.D.N .Y. Jan. 31, 2011); *see, e.g., Rivera v. Pataki,* No. 04 Civ. 1286(MBM), 2005 WL 407710, at \*19 (S.D.N.Y. Feb.7, 2005) (several temporary incidents of interference with plaintiff's legal documents not an adverse action). Here, because Edwards has pled an injury in connection with this allegation—Defendant Campfield's allegedly retaliatory loss of his legal documents prevented him from prosecuting the NDNY action (Compl.¶ 36), which was subsequently dismissed for failure to prosecute, *see Selsky,* 2008 WL 190385, at \*1—it contains sufficient facts to constitute an adverse action.

### c. Retaliatory Filing of Infractions

Edwards alleges that Defendants Maynard, Musmacher, and Rosa issued false infractions against him on or about October 31, 2007 (Compl. ¶¶ 14–16; Dkt. No. 2–6 at 18) and September 24, 2008 (*Id.* ¶¶ 83, 87, 87b) in retaliation for filing grievances. While an "inmate has no general constitutional right to be free from being falsely accused in a misbehavior report[,]" *Boddie,* 105 F.3d at 862, a misbehavior report issued in retaliation for an inmate's exercise of a protected activity may constitute an adverse action. *See Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under [Section] 1983.") (citation omitted); *see, e.g., Gill,* 389 F.3d at 384 (false misbehavior report and placement in keeplock constitutes adverse action); *Mateo,* 682 F.Supp.2d at 434 (false misbehavior report constitutes adverse action). Accordingly, Edwards' allegations that these Defendants filed

false retaliatory infractions against him are sufficient to plead an adverse action.

#### d. Retaliatory Transfers

Edwards' allegations that Defendants Bailey, Bethacourt, Hannah, John Doe # 1, John Doe # 2, Rosa, and Shaw transferred Edwards between prison facilities in retaliation for submitting grievances are also sufficient to establish an adverse action at the motion to dismiss stage. (*See* Compl. ¶¶ 20, 34, 48, 52). While a "prisoner has no liberty interest in remaining at a particular correctional facility ... prison authorities may not transfer [him] in retaliation for the exercise of constitutionally protected rights." *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998) (citations omitted); *see, e.g., Soto v. Iacavino,* No. 01 Civ. 5850(JSM), 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (prison housing transfer is adverse action for retaliation claim).

#### e. Retaliatory Termination

 **\*16** Finally, Edwards' allegation that Defendant Rosa fired him from his position as a Suicide Prevention Aide states sufficient facts to constitute an adverse action. (Compl. ¶¶ 14–16; Dkt. No. 2–6 at 18). "[A] claim for relief may be stated under [S]ection 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (citation omitted). More specifically, an inmate can bring a claim under Section 1983 for termination of employment in retaliation for his exercise of constitutionally protected rights. *See, e.g., Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y.1990). The termination of Edwards' job, if found to be retaliatory, could serve to "chill a person of ordinary firmness from continuing to engage" in a protected activity. *Thaddeus–X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999) (quoted in *Davis,* 320 F.3d at 353).

### 3. Causal Connection

Of his six allegations of retaliation that meet the adverse action requirement—those dated October 31, 2007, November 15, 2007, March 25, 2008, April 1, 2008, June 27, 2008, and September 24, 2008—all but one should be dismissed. Edwards has not alleged any facts, as he must, that his filing of grievances was a "substantial or motivating factor" for Defendants' actions. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). In addressing the causal connection requirement, a court may consider: (1)

the temporal proximity between the protected conduct and the alleged retaliatory act, (2) the inmate's prior disciplinary record, (3) vindication at a hearing on the matter, and (4) any statements by the defendants regarding their motives. *See Colon,* 58 F.3d at 872–73. However, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty,* 713 F.2d at 13.

With the exception of his claim arising on October 31, 2007, Edwards' allegations of retaliation are wholly conclusory. Edwards does not set forth any specific facts, other than his repeated use of the word "retaliation," to support his suspicion of retaliation or to suggest that Defendants were motivated in any way by Edwards' filing grievance letters. On several occasions, Edwards appears to rely on the mere fact that the purported adverse actions took place after he filed a grievance. To infer causation from the very fact that one activity preceded another, however, is insufficient here to adequately plead retaliatory intent. Temporal proximity may serve as circumstantial evidence of retaliation, *see, e.g., Colon,* 58 F.3d at 872, and the Second Circuit has found that such proximity can establish causality. *See Espinal v. Goord,* 558 F.3d 119, 129–30 (2d Cir.2009) (causal connection present where six months passed between protected activity and retaliatory beating); *but see Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at *14 (S.D.N.Y. Oct.31, 2006) (temporal proximity insufficient by itself to prove causation) (citations omitted); *Nunez v. Goord,* 172 F.Supp.2d 417, 431–32 (S.D.N.Y.2001) (same). But in this case, Edwards' reliance on temporal proximity does not make his claims plausible, as he fails to differentiate between his seemingly innumerable grievances or provide specific factual allegations, including but not limited to concrete dates, that might demonstrate any nexus between a specific grievance and a specific adverse action. *See, e.g., Andino v. Fischer,* 698 F.Supp.2d 362, 385 (S.D.N.Y.2010) (proximity between complaints and adverse actions the result of large number of grievances in short period of time).

 **\*17** In addition to Edwards' failure to plead any facts suggesting retaliation, the facts that Edwards chose to include in the Complaint suggest a relationship between protected activity and adverse action that is too attenuated to plausibly constitute causation. For example, Edwards theorizes that on November 15, 2007 he was transferred by Defendant John Doe # 2 in retaliation for filing a grievance against Rosa, after Rosa informed John Doe # 1, who then informed John Doe # 2, of Edwards' use of the grievance mechanism. (Compl.¶ 20). However, absent any additional information, such as

corroborating statements from other officers or inmates, it is simply not plausible to impute a retaliatory motive to John Doe # 2 by way of John Doe # 1 and Rosa. Edwards' allegations of March 25, 2008 suffer the same deficiency, as he aims to pin a retaliatory motive not on the target of his protected activity, but on an entirely different Defendant. (*Id.* ¶ 34). Apart from any apparent temporal proximity, therefore, Edwards' allegations are wholly conclusory and should be dismissed. *See, e .g., Sioleski v. McGrain,* No. 10 Civ. 0665S (WMS), 2012 WL 32423, at \*4 (W.D.N.Y. Jan.5, 2012); *Douglas v. Smith,* No. 05 Civ. 1000(LEK)(DRH), 2008 WL 434605, at \*15 (N.D.N.Y. Feb. 14, 2008).

By contrast, Edwards is able to state an actionable claim of retaliatory termination against Rosa based on his allegations of October 31, 2007. Edwards states that on September 18, 2007, he submitted a grievance letter regarding Defendant Rosa's alleged use of her personal cell phone while on duty, which Edwards contends is a "security breach." (Compl.¶ 7). Then, on October 31, 2007, while he was working as a Suicide Prevention Aide, Edwards alleges that Rosa stated, "Watch your mouth boy before I write you. You like writing anyway." (Dkt. No. 2–6 at 18). Edwards asked another officer for a grievance form, intending to submit another grievance against Rosa, at which point Rosa stated: "What lies are you going to write on me now stupid nigger. The cellphone lie didn't work nigger. All you are nigger is a snitch don't worry, you're going to get yours. I'm going to make sure you get fuck up nigger." (*Id.*). Moments later, Rosa returned and asked for Edwards' identification card, stating, "I'm writing you up nigger. Two can play that game and also nigger you're fired. Morales get this nigger out of here now." (*Id.*).

These statements clearly suggest a retaliatory animus. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 732–33 (S.D.N.Y.2002) (defendant's comments during assault point to retaliatory animus). In mentioning the "cellphone lie," which likely refers to Edwards' September 18 grievance about Rosa's use of her personal cell phone, Rosa's comments establish a clear causal link between Edwards' protected activity and Rosa's decision to terminate Edwards from his job and issue an infraction against him. *See, e.g., Headley v. Fisher,* No. 06 Civ. 6331(PAC)(KNF), 2008 WL 1990771, at \*18 (S.D.N.Y. May 7, 2008) (causal connection exists where officer referred to protected activity during retaliatory assault). Accordingly, Edwards has stated a plausible claim of retaliatory termination against Rosa, and Defendants' motion to dismiss that claim should be denied.

## L. Conspiracy

**\*18** Edwards alleges four conspiracy claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, specifically that (1) on October 31 and November 1, 2007, Rosa and Polak conspired to fire Edwards from his job as a Suicide Prevention Aide and issue an infraction against him (Compl.¶¶ 14–16); (2) as described in a complaint letter dated July 10, 2008, Defendant Johnson conspired with "the prison staff" to violate Edwards' constitutional rights by not filing his grievances (*Id.* ¶ 50); (3) as described in a complaint letter dated August 28, 2008, Defendants Johnson and Sumpter conspired to deny Edwards access to the prison's grievance system (*Id.* ¶ 69); and (4) as described in a September 24, 2008 grievance letter, Defendants Maynard and Musmacher conspired to issue threats of physical violence and submit a false infraction against Edwards. (*Id.* ¶ 83).

### 1. Conspiracy Under Section 1983

To state a conspiracy claim under Section 1983, a plaintiff must show "(1) an agreement between [two or more state actors or] a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002) (citing *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999)). "[A] plaintiff must show that defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated [his] rights, privileges or immunities secured by the Constitution or federal courts." *Bussev v. Phillips,* 419 F.Supp.2d 569, 586–87 (S.D.N.Y.2006) (quotation marks and citations omitted). "[C]omplaints containing only conclusory, vague, or general allegations [of conspiracy] ... are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello,* 292 F.3d at 325 (citation and quotation marks omitted). Finally, "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000) (citation omitted). If a plaintiff fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy claim, the conspiracy claim fails as a matter of law. *See, e.g., AK Tournament Play, Inc. v. Town of Wallkill,* No. 09 Civ. 10579(LAP), 2011 WL 197216, at \*3–4 (S.D.N.Y. Jan.19, 2011), *aff'd,* 444 F. App'x 475 (2d Cir.2011).

Each of Edwards' conspiracy claims should be dismissed because he has failed to state any underlying constitutional

violations, with the exception of his retaliatory termination claim against Rosa. Moreover, even if the Court were to find that Edwards could state plausible constitutional claims as a predicate for conspiracy, he fails to state any non-conclusory allegations pertaining to the existence of a conspiracy, a meeting of the minds to support a conspiracy claim, or any overt acts which would suggest the existence of a conspiracy. Edwards' statements that certain Defendants "conspired" with others is not, by itself, sufficient to state an actionable claim for conspiracy. *See Nealy v. Berger,* No. 08 Civ. 1322(JFB)(AKT), 2009 WL 704804, at *5 (E.D.N .Y. Mar. 16, 2009) ("The mere use of the term 'conspiracy' ... is clearly insufficient to satisfy Rule 12(b)(6) in connection with a Section 1983 conspiracy claim.") (citation omitted). The only claim for which Edwards alleges any facts is that Rosa and Polak conspired to retaliate against him. However, the statements that he attributes to Polak—"my girl said you are fired" and "you are not getting your job back" (Compl.¶ 15)—do not suggest any understanding, agreement, or meeting of the minds between these two Defendants. Polak's reinforcement of Rosa's decision to fire Edwards, at best, suggests only that Polak sided with Rosa's decision, but it is not sufficient to state a conspiracy claim. Absent any actionable allegations of a conspiratorial understanding between Polak and Rosa, Edwards' conspiracy claims fail.

**2. Conspiracy Under Section 1985**

**\*19** 42 U.S.C. § 1985(2) and (3) also provide relief for claims of conspiracy. To plead a claim under Section 1985(2), a plaintiff must show "(1) a conspiracy (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." *Rodriguez v. City of New York,* No. 05 Civ. 10682(PKC) (FM), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008) (citing 42 U.S.C. § 1985(2)). The elements of a claim under Section 1985(3) are: " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States.' " *Id.* (quoting *Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000)).

As with Section 1983 conspiracy claims, Section 1985 claims require a showing of an underlying constitutional violation. *See, e.g., Okoh v. Sullivan,* No. 10 Civ. 2547(SAS), 2011 WL 672420, at *4 (S.D.N.Y. Feb.24, 2011), *aff'd,* 441 F. App'x 813 (2d Cir.2011); *Bishop v. Best Buy, Co.,* No. 08 Civ. 8427(LBS), 2010 WL 4159566, at *13 (S.D.N.Y. Oct.13, 2010). Because Edwards has not set forth sufficient facts to state any constitutional violations, with the exception of his retaliatory termination claim against Rosa, his Section 1985 claims should be dismissed as well. Even if the Court were to find any underlying constitutional violations, including the surviving retaliation claim, the Section 1985 claims should be dismissed because Edwards has failed to allege any facts, as he must, that Defendants' conspiracies were motivated not by any personal malice of the conspirators toward him, but rather by " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' animus.' " *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (citation omitted); *accord Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993) (per curiam); *Okoh,* 2011 WL 672420, at *6.

**3. Conspiracy Under Section 1986**

To state a claim under Section 1986, a plaintiff must state a valid claim under Section 1985. "Section 1986 imposes liability on individuals who have knowledge of a conspiracy under [Section] 1985, but fail to take action to prevent them." *Jenkins v. N.Y. City Dep't of Educ.,* No. 10 Civ. 6159(BSJ) (THK), 2011 WL 5451711, at *5 (S.D.N.Y. Nov. 9, 2011) (citing 42 U.S.C. § 1986). A Section 1986 claim "must be predicated upon a valid [Section] 1985 claim." *Brown,* 221 F.3d at 341 (citation and quotation marks omitted). Because Edwards fails to state a claim under Section 1985 and otherwise fails to make any allegations that certain Defendants had knowledge of a conspiracy but failed to prevent it, the Court should also dismiss his Section 1986 claim.

**M. Disability Discrimination Claim**

**\*20** Edwards asserts that on five occasions he was discriminated against on the basis of an alleged disability in violation of Title II of the ADA. (Compl. ¶¶ 6, 17, 19, 30, 61). To state a claim under Title II, which applies to inmates in state prisons, *see United States v. Georgia* 546 U.S. 151, 153, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), a prisoner must show: (1) "he is a 'qualified individual' with a disability"; (2) "he was excluded from participation in a public entity's services,

programs or activities or was otherwise discriminated against by a public entity"; and (3) "such exclusion or discrimination was due to his disability." *Phelan v. Thomas,* 439 F. App'x 48, 50 (2d Cir.2011) (citing *Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir.2003)); *see* 42 U.S.C. § 12132.

Although Defendants have moved to dismiss the Complaint in its "entirety" (Def. Mem. at 49), they have failed to offer any specific arguments to dismiss Edwards' ADA claims. (*See* Def. Mem. at 3). Nevertheless, these claims should be dismissed. It appears from the Complaint that Edwards' alleged disability is that one of his arms is significantly shorter than the other, and his discrimination claims arise from Defendants' comments allegedly mocking this deformity. Leaving aside the question of whether Edwards' deformity falls under the ADA's definition of disability, Edwards fails to state that Defendants excluded him from participating in, or denied him the benefit of, any particular activity as a result of his alleged disability. Edwards' allegations of objectionable language are not sufficient to state a claim under the ADA.

### N. Edwards' Potential Recovery Is Limited to Nominal or Punitive Damages From Rosa

In his Complaint, Edwards seeks both money damages and injunctive relief. (Compl.¶ V). However, because of qualified immunity, Edwards can only obtain monetary damages from Defendant Rosa and, because of the PLRA, that recovery is limited to nominal or punitive damages. In addition, Edwards' request for injunctive relief is moot because he is no longer in prison.

### 1. Qualified Immunity Precludes Money Damages, Except From Rosa

Qualified immunity provides a basis to preclude monetary damages, but not injunctive relief. *See Morse v. Frederick,* 551 U.S. 393, 432, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (citation omitted). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* ––– U.S. ––––, ––––, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "A state actor is afforded qualified immunity if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson*

*v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001) (citations and quotation marks omitted). Because Edwards has failed to plead facts showing that Defendants violated any constitutional right, with the exception of his claim for retaliatory termination against Rosa, Defendants are entitled to qualified immunity for each of Edwards' claims.

**\*21** However, as to Edwards' surviving retaliation claim, Defendant Rosa is not entitled to qualified immunity. Courts have long recognized, well before the time of Edwards' allegations, that inmates have a constitutional right to seek redress of grievances without suffering retaliation. *See Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988); *see, e.g., Baskerville,* 224 F.Supp.2d at 737–38 (no qualified immunity for retaliation claim because right to file grievances without retaliation is well-established); *Wells v. Wade,* 36 F.Supp.2d 154, 160 (S.D.N.Y.1999) (same). Here, Edwards has alleged intentional conduct by Rosa in response to a protected activity, adequately stating a cause of action for retaliation. Moreover, Defendants have offered no argument that Rosa's conduct was objectively reasonable. Accordingly, at the pleading stage, Rosa is not entitled to qualified immunity from monetary damages on Edwards' retaliatory termination claim against her.

### 2. Any Money Damages from Rosa Are Limited to Nominal or Punitive Damages

In light of the qualified immunity finding above, Edwards' recovery of monetary damages, if any, is limited to Rosa. Because of the PLRA's physical injury requirement, however, that recovery from Rosa cannot include compensatory damages. Defendants argue that all of Edwards' claims are barred by the PLRA because he does not allege that he has suffered any physical injury. (Def. Mem. at 46–48). Section 1997e(e) of the PLRA provides that " '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.' " *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002) (quoting 42 U.S.C. § 1997e(e)). The term "physical injury" is not statutorily defined; however, the injury complained of must be more than *de minimis* to meet the requirements of § 1997e(e). *See Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999). Therefore, in the absence of a showing of physical injury, a prisoner cannot recover compensatory damages for mental or emotional injury. *Thompson,* 284 F.3d at 417. To recover punitive or nominal damages, however, a prisoner need not allege that he has sustained a physical injury. *Id.* at 418; *see also*

*Abreu v. Nicholls,* No. 04 Civ. 7778(DAB)(GWG), 2011 WL 1044373, at *4 (S.D.N.Y. Mar. 22, 2011) (Report and Recommendation); *Walker v. Shaw,* No. 08 Civ. 10043(CM), 2010 WL 2541711, at *15 (S.D.N.Y. June 23, 2010) (citing *Robinson v. Cattaraugus,* 147 F.3d 153, 162 (2d Cir.1998)).

Edwards does not allege that he has suffered any physical injury as a result of his alleged constitutional violations, including his allegation of excessive force, which does not mention any temporary or permanent physical injury as a result of Defendants' actions. *See supra* Section II.I. The only injuries that Edwards complains about are the "loss of amenity" and "limited liberty" as a result of his segregated confinement, and emotional distress arising from the "embarrass[ment]" caused by Defendants ridiculing his physical deformity. (Compl.¶ V). Neither of these injuries constitutes a physical injury under the PLRA. *See, e.g., Henry,* 2011 WL 3295986, at *4 (no physical injury where inmate complained of embarrassment); *Wilson v. Phoenix House,* No. 10 Civ. 7364(DLC), 2011 WL 3273179, at *3 (S.D.N.Y. Aug.1, 2011) (confinement not enough, by itself, to fulfill physical injury requirement). Accordingly, in the absence of any allegations of physical injury, Edwards' claims against Defendants (including his surviving retaliation claim against Rosa) should be dismissed insofar as he seeks compensatory damages, and he should be limited to seeking nominal or punitive damages from Rosa. *See, e.g., Brummell v. Stewart,* No. 09 Civ. 10326(PAC)(FM), 2011 WL 1306170, at *4 (S.D.N.Y. Mar. 24, 2011) (Report and Recommendation) (claims seeking compensatory damages dismissed because no allegation of physical injury suffered); *Kasiem v. Rivera,* No. 09 Civ. 9665(DLC), 2011 WL 166929, at *10 (S.D.N.Y. Jan.18, 2011) (request for compensatory damages for emotional injuries stricken from complaint).

**3. Edwards' Request for Injunctive Relief Is Moot**

 **\*22** By letter dated December 11, 2011, Edwards informed the Court that he has been released from prison. (Dkt. No. 135). This factual development renders moot Edwards' request for injunctive relief. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983). Under that principle, an inmate's request for injunctive and declaratory relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged. *See Muhammad v. City of N.Y. Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997); *see, e.g., Khalil v. Laird,* 353 F. App'x 620, 621 (2d Cir.2009) (injunctive and declaratory relief moot because inmate released from prison);

*Sheppard v. Lee,* No. 10 Civ. 6696(GBD)(JLC), 2011 WL 5314450, at *4 n. 6 (S.D.N.Y. Nov. 7, 2011) (declaratory and injunctive relief claims moot because inmate no longer incarcerated) (Report and Recommendation), *adopted,* 2011 WL 6399516 (S.D.N.Y. Dec.20, 2011). Accordingly, because Edwards has been released from prison, his claims for injunctive relief should be dismissed. [14]

## III. *CONCLUSION*

For the foregoing reasons, I recommend that Defendants' motion to dismiss be granted as to Edwards' claims for verbal harassment, deprivation of access to free telephone calls, deprivation of access to legal services, mail tampering, denial of required food portions, unconstitutional strip search, violation of due process rights within the prison's disciplinary and grievance system, excessive force and denial of medical treatment, deprivation of access to the prison's grievance system, retaliation (against all Defendants except Rosa for Edwards' termination), conspiracy, and disability discrimination under the ADA. I further recommend that the motion to dismiss be denied only as to Edwards' retaliatory termination claim against Defendant Rosa to the extent Edwards seeks nominal or punitive damages against her.

### *PROCEDURE FOR FILING OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed.R.Civ.P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. If Plaintiff does not have access to cases cited herein that are reported on LexisNexis or

Westlaw, he should request copies from Defendants' counsel. See *Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 473481

Footnotes

1  In the case caption on the first page of the Complaint, Edwards mistakenly identifies Defendant Johnson as "Ms. K. Jonhson." (Compl. at 1).

2  In Section I.b of the Complaint, Edwards lists 38 Defendants. Six additional Defendants—Carrera, Cattafesta, Duffy, Grima, Powell, and Steven—do not appear on this list, but are named in the case caption on the first page of the Complaint.

3  Accordingly, while Defendants do not argue as much, the Complaint could also be dismissed under Rule 8(a)(2), which requires a pleading to contain "a short and plain statement" of the claims.

4  Edwards has attached more than 300 pages of documents to his Complaint, consisting of grievance letters, notices of infraction, and inmate grievance committee decisions. These materials can be properly considered in deciding Defendants' motion to dismiss. *See, e.g., Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted). However, while the Court will consider these materials in support of the claims asserted in the Complaint—indeed, nearly every paragraph advises the reader to "see attached exhibit" but fails to cite to a specific page—the Court will not attempt to identify the potentially innumerable causes of action that could be construed from the hundreds of allegations contained solely in the attachments.

5  This set of defendants consists of Sumpter (Dkt. No. 11), Horn (Dkt. No. 12), Cattafesta (Dkt. No. 13), Hunter (Dkt. No. 15), Guerrant (Dkt. No. 17), Lagos (Dkt. No. 18), Shaw (Dkt. No. 19), Campfield (Dkt. No. 20), Reyes (Dkt. No. 21), Davis (Dkt. No. 22), Hernandez (Dkt. No. 23), Holmes (Dkt. No. 24), Rosa (Dkt. No. 25), Smith (Dkt. No. 26), Mulvena (Dkt. No. 27), Polak (Dkt. No. 28), Noon (Dkt. No. 29), Duffy (Dkt. No. 31), Dinolfo (Dkt. No. 32), Mimms (Dkt. No. 34), Bailey (Dkt. No. 35), Lewis (Dkt. No. 36), Alleyve (Dkt. No. 37), Calle (Dkt. No. 39), Hannah (Dkt. No. 41), Hourihan (Dkt. No. 43), Jenkins (Dkt. No. 44), Maynard (Dkt. No. 45), Padmore (Dkt. No. 48), Richardson (Dkt. No. 49), Riordan (Dkt. No. 50), and Smalls (Dkt. No. 51).

6  Since October 29, 2010, Edwards has served the following Defendants: Lee (service executed on Dec. 2, 2010 (Dkt. No. 61)); Powell (service executed on Mar. 29, 2011 (Dkt. No. 98)); Steven (service executed on Feb. 24, 2011 (Dkt. No. 110); service executed on Mar. 31, 2011 (Dkt. No. 99)); Grima (service executed on Mar. 2, 2011 (Dkt. No. 107); service executed on Mar. 14, 2011 (Dkt. No. 100)); Robinson (service executed on Mar. 29, 2011 (Dkt. No. 101)); Musmacher (service executed on Mar. 14, 2011 (Dkt. No. 102)); Hill (service executed on Feb. 24, 2011 (Dkt. No. 112); service executed on Mar. 14, 2011 (Dkt. No. 103)); Horn (service executed on Mar. 31, 2011 (Dkt. No. 97)); and Carrera (service executed on Oct. 6, 2011 (Dkt. No. 131)).

7  As to Defendant Bethacourt, the Office of Corporation Counsel advised the Court by letter dated June 8, 2011 that it is unable to locate records that would assist in identifying Bethacourt. Accordingly, as stated in the Court's Order dated June 9, 2011 (Dkt. No. 120), it does not appear that any further action can be taken to identify this Defendant. As to Defendant Davis, the Office of Corporation Counsel advised the Court by letter dated February 16, 2011 that the Legal Bureau of the DOC would accept service on his behalf. By Order dated September 1, 2011, the Court directed Edwards to serve Davis by September 26, 2011 (Dkt. No. 129), but the docket sheet does not reflect any attempt to effect service. Lastly, on October 31, 2011, Edwards attempted to serve Defendant Johnson but was unsuccessful because she was not located at the address provided by the Office of Corporation Counsel. (*See* Order, dated Dec. 12, 2011 (Dkt. No. 134), at 1). Edwards was directed to again attempt to serve Johnson by January 27, 2012 (*Id* .), but no proof of service has been filed.

8  Although the motion to dismiss was not filed on behalf of any of the unserved Defendants (*see* Def. Mem. at 2–3 n. 2), Counsel has stated that the arguments raised apply equally to all Defendants. Accordingly, in light of my recommendation to dismiss all claims against all Defendants except the retaliatory termination claim against Defendant Rosa, *see infra* Section ILK, the Court should *sua sponte* dismiss the Complaint as to Defendants Bethacourt, Davis, John Doe # 1, John Doe # 2, and Johnson.

9  Defendants have not moved to dismiss any of Edwards' claims on the ground that he has failed to exhaust his administrative remedies, as he is required to have done under the PLRA. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). While exhaustion under Section 1997e(a) is mandatory, *see Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), non-exhaustion "is an affirmative defense that is waiveable." *Handberry v. Thompson,* 446 F.3d 335, 342 (2d

Cir.2006) (citations, alterations, and quotation marks omitted); *see also Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Here, because Defendants have not argued that Edwards failed to exhaust his administrative remedies, the non-exhaustion defense has been waived. *See, e.g., Ortiz v. Dep't of Corr. of the City of N.Y.,* No. 08 Civ. 2195(RJS)(HBP), 2011 WL 2638137, at \*4 (S.D.N.Y. Apr. 29, 2011) (defendant's failure to raise non-exhaustion constitutes waiver) (Report and Recommendation), *adopted,* 2011 WL 2638140 (S.D.N.Y. Jul.5, 2011); *Hobson v. Fischer,* No. 10 Civ. 5512(SAS), 2011 WL 891314, at \*2 n. 22 (S.D.N.Y. Mar.14, 2011) (finding waiver even where grievance "appears not to have been fully exhausted" under PLRA).

10    In the context of his claim for the denial of free telephone calls, Edwards provides different dates for the start of his incarceration, stating January 23, 2008 in his Complaint and January 24, 2008 in an attached exhibit. (Compl. ¶ 46; Dkt. No. 2–3 at 4). These cited dates, however, appear to be inconsistent with the commencement of Edwards' incarceration, as his earliest allegation in this lawsuit takes place on July 25, 2007 while he was housed at the AMKC. (*Id.* ¶ III). In any event, regardless of whether Edwards has been denied free telephone calls since July 2007 or January 2008, his cause of action should be dismissed because he has failed to state an actionable claim.

11    Edwards also alleges a claim for the deprivation of his procedural due process rights in connection with a September 24, 2008 disciplinary hearing. This claim fails because Edwards cannot establish the requisite liberty interest, as he does not allege that he was subject to any discipline as a result of Davis' finding him guilty on September 24, 2008. (Compl.¶ 86). Even if Edwards had alleged disciplinary confinement resulting from the September 28 hearing, and assuming that that confinement implicated a liberty interest under the Fourteenth Amendment, Edwards still cannot state a claim for deprivation of due process. Citing to the Notice of Disciplinary Disposition Form # 6500D attached to the Complaint (Dkt. No. 2–7 at 1), Edwards alleges that he was "never called down" for the hearing and that the hearing officer, Defendant Davis, was biased in favor of finding him guilty of the underlying infraction. (Compl.¶ 86). While an inmate "has a right to a fair and impartial hearing officer [,]" *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (citation omitted), and one who "does not prejudge the evidence[,]" *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990), Edwards fails to plead any specific facts, beyond his conclusory allegation of bias, to suggest that Davis was predisposed to finding him guilty. Moreover, despite Edwards' claim that he was never called down for a disciplinary hearing, Edwards' signature appears next to a notation on the Form # 6500D that the hearing was adjourned by Edwards himself.

12    Related to the allegations about the grievance system, Defendants also assert that Edwards' failure to allege personal involvement for Defendants Bailey (*Id.* ¶¶ 37, 41, 48, 52), Caruso (*Id.* ¶¶ 16, 27), Cattafesta (*Id.* ¶ 80), Davis (*Id.* ¶¶ 13, 26, 47), Hill (*Id.* ¶ 63), Horn (Compl.¶¶ 7, 9, 10, 12, 14–16, 21, 23, 25, 28, 29, 32–35, 39, 41–43, 45, 52, 59, 79, 97), Hourihan (*Id.* ¶¶ 50, 61, 66, 68, 77, 95, 98), Powell (*Id.* ¶¶ 57, 78), and Riordan (*Id.* ¶ 6) provide an independent basis for dismissal. (Def. Mem. at 14–16). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (citation and quotation marks omitted). An official's failure to respond to a prisoner's letter of protest and request for an investigation, as Edwards is alleging in his Complaint, "is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (citation and quotation marks omitted). Accordingly, Edwards' claims against these Defendants should be dismissed on this ground as well.

13    Moreover, of the four allegations of retaliation that are not based on protected activities, two cannot be considered adverse actions—concerning Defendant Richardson on July 31, 2008 (Compl.¶ 53) and Defendant Lagos on October 18, 2008 (*Id.* ¶ 90)—because both of these allege that these Defendants retaliated against Edwards by denying him a meal. The denial of meals on two occasions, separated by more than three months, is *de minimis* and not actionable. *See, e.g., Snyder v. McGinnis,* No. 03 Civ. 0902E (WMS), 2004 WL 1949472, at \*11 (W.D.N.Y. Sept.2, 2004) (denial of food to plaintiff two times would not chill First Amendment activity).

14    In addition, Edwards cannot establish a likelihood of success on the merits or the possibility of irreparable injury as required for any injunctive relief. Even assuming he could however, and to the extent Edwards' claims for injunctive relief are not moot, the PLRA extends prospective relief "no further than necessary to correct the violation of the Federal right of a particular plaintiff[,]" 18 U.S.C. § 3626(a)(1)(A), and the relief Edwards seeks—terminating Defendants from their positions and enjoining them from future government employment—is not "narrowly drawn." *Id.; see also Barrington v. New York,* 806 F.Supp.2d 730, 750 (S.D.N.Y.2011) (proposed order directing installation of security cameras beyond narrow scope permitted by PLRA); *Easter v. CDC,* 694 F.Supp.2d 1177, 1188–90 (S.D.Cal.2010) (inmate not entitled to injunctive relief preventing officials from future supervision or control over him when inmate no longer in facility where attack took place, and no indication of imminent injury).

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2755296
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

Kurt ELLIS, et al, Defendants.

No. 9:11–CV–600 (MAD/ATB).
|
March 22, 2012.

**Attorneys and Law Firms**

Patrick Guillory, pro se.

William J. McCarthy, Jr., Asst. Attorney General for Defendants.

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants subjected him to religious discrimination, denial of access to courts, and retaliation for the exercise of his First Amendment Rights, while he was incarcerated at Mid–State Correctional Facility. (Compl.; Dkt. 1). Plaintiff seeks monetary and injunctive relief.

Presently before the court are two motions filed by plaintiff. (Dkt.Nos.35, 48). On November 4, 2011, plaintiff filed a motion for a Temporary Restraining Order ("TRO") (Dkt. No. 35), and on December 29, 2011, plaintiff filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 (Dkt. No. 48). On November 15, 2011, plaintiff filed his affidavit and memorandum of law in support of this motion for a TRO, and on November 22, 2011, plaintiff filed a "supplement" to his motion for a TRO. (Dkt.Nos.40, 43). Defendants filed a response in opposition to the TRO, and plaintiff filed a reply. (Dkt.Nos.41, 45). On January 4, 2012, defendants filed a "Response" in opposition to the motion for summary judgment, and on January 18, 2012, plaintiff filed a "Reply." (Dkt.Nos.49, 53). For the following reasons, this court will recommend denying both motions.

### DISCUSSION

#### I. *Facts and Procedural History*

The facts forming the basis of plaintiff's complaint were exhaustively reviewed in Judge D'Agostino's September 27, 2011 order,[1] which granted plaintiff's motion to proceed *in forma pauperis* and denied plaintiff's motions for injunctive relief (TROs), appointment of counsel, and for class certification. (Dkt. No. 19 at 40–41). Judge D'Agostino dismissed some of plaintiff's claims "with prejudice" and some "without prejudice with leave to replead." (*Id.*) Plaintiff was informed that if he wished to pursue any of the claims dismissed without prejudice, he would have to file an amended complaint. (*Id.* at 40 n. 10). The court allowed the following claims to proceed without amendment:

(1) A First Amendment Free Exercise Clause and Religious Land Use and Institutionalized Persons Act[2] ("RLUIPA") claim against defendant Ready regarding the events of December 7, 2010;

(2) A First Amendment Free Exercise Clause and RLUIPA claim against defendant Ellis regarding the events of March 20, 2011;

(3) A claim that defendant Ready denied plaintiff the right to attend a religious service on December 7, 2010 in retaliation for filing a grievance;

(4) An Equal Protection claim against defendant Ready;

(5) A claim that defendant Kupiec and Marlenga lost or destroyed plaintiff's property in retaliation for filing grievances;

(6) A claim that defendants Kupiec and Marlenga interfered with plaintiff's right to send or receive mail;

(7) A claim that defendants Kupiec and Marlenga denied plaintiff access to the courts, and

(8) Plaintiff's claims against defendants Fischer and Boll (except those claims relating to the allegedly inadequate grievance system).

**\*2** (Dkt. No. 19 at 41 n. 11). On October 4, 2011, plaintiff filed a letter, stating that he agreed with Judge D'Agostino's order with respect to both the claims dismissed with and without prejudice. (Dkt. No. 22). Plaintiff stated that he would not be filing an amended complaint with respect to those claims dismissed without prejudice. (*Id.* at 1). Plaintiff also stated that he would not appeal the denial of his motions for injunctive relief. [3] (*Id.*)

## II. *Injunctive Relief*

### A. Legal Standards

Plaintiff has filed a third motion for a "TRO." (Dkt. No. 35). Generally in order for the court to grant temporary or preliminary injunctive relief, the party seeking the injunction has the burden to show: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (citation omitted); *Beal v. Stern,* 184 F.3d 117, 122–23 (2d Cir.1999) (citing *Bery v. City of New York,* 97 F.3d 689, 693–94 (2d Cir.1996)). As stated by Judge D'Agostino, the purpose of issuing a preliminary injunction is to "preserve the status quo and prevent irreparable harm until the court has the opportunity to rule on the ... merits." (Dkt. No. 19 at 37) (citations omitted).

### B. Application

In his current motion for a "TRO", plaintiff states that after Judge D'Agostino's order, the "defendant" unconstitutionally imposed a "104 hour hunger strike" upon plaintiff and denied him access to Jewish services for a week, while allowing Christians to attend their services. (Dkt. No. 35–1 at ¶¶ 3–7). Plaintiff also believes that one of the facility Rabbis at Gouverneur Correctional Facility (GCF) lost her job because of plaintiff's lawsuit. [4] (Dkt. No. ¶ 13). Plaintiff asks that the "defendants" be prohibited from retaliating against him by denying him food and access to Jewish services, by planting drugs or weapons in his locker, by using force against him, by writing false misbehavior reports against him, and by putting him in the "Box." [5]

Plaintiff is no longer incarcerated at Mid–State, where the events stated in the complaint are alleged to have occurred. Judge D'Agostino has already denied two of plaintiff's motions for injunctive relief based on his transfer to Gouverneur. The Second Circuit has held that an inmate's request for prospective injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. [6] *See, e.g., Day v. Chaplin,* 354 F. App'x 472, 473 (2d Cir.2009) (citing *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976)); *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (citations omitted).

**\*3** In this case, plaintiff's third motion for injunctive relief is not directed at the original defendants. [7] Plaintiff argues that although some of the defendants named in his complaint are at Mid–State, two of the defendants, Fischer and Boll, are DOCCS [8] administrators, who could still be subject to an injunction. [9] Plaintiff alleges that he was still being denied food after his transfer, and he was denied food and the ability to attend Jewish services between October 12, 2011 and October 19, 2011, [10] after Judge D'Agostino's order.

However, by the time he filed this third motion, the "new" alleged deprivations were over. [11] In this motion for a TRO, plaintiff is also complaining about the possibility of future "retaliation" based upon this lawsuit. [12] The plaintiff's general fear of future retaliation is too speculative to warrant injunctive relief, regardless of the location of the defendants. *Smolen v. Dildine,* No. 11–CV–6434, \*2 (W.D.N.Y. Dec. 5, 2011) (citing *Salvatierra v. Connolly,* No. 09 Civ. 3722. 2010 WL 5480756, at \*24)). In his reply papers, plaintiff names a vast number of people who allegedly denied him his constitutional rights, most of whom are not defendants. If additional individuals denied plaintiff his constitutional right to practice his religion, he may move to supplement his complaint or bring a separate action against individuals at Gouverneur.

In his reply, plaintiff "asks" the court "[h]ow has the defendant proved [sic] that I have not established such entitlement." (Dkt. No. 45 at ¶ 30). The defendant does not have the burden of proof on an application for a TRO or in the case itself. As stated above, the plaintiff bears the burden of proof on such an application. Plaintiff states that he was not "speculating" when he filed the action. While that may be, and regardless of what happens later in the litigation, plaintiff has not met his burden to show that he is entitled to the injunction that he seeks, and this court will recommend denying plaintiff's motion.

### III. *Summary Judgment*

#### A. Legal Standards

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F.Supp. 1048, 1052 (S.D.N.Y.1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); Fed.R.Civ.P. 56(c)(1)(A). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc .,* 369 U.S. 654, 655 (1962). However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48.

#### B. Application

**\*4** In this case, plaintiff has moved for summary judgment. (Dkt. No. 48). Although defendants have not formally responded, they have submitted a letter, stating that summary judgment is premature because they have not had the opportunity to conduct discovery. Plaintiff responds by stating that he has submitted seventy five (75) exhibits, proving his case. Plaintiff claims that defendants have not "refuted" his material facts. (Dkt. No. 53 at 8; Pl.'s Reply). [13] He also faults the defendants for failing to "respond" to the motion for summary judgment and relies upon my order,

taking the motion on submission of papers, while stating that "[n]o further submissions are required or allowed except as may be ordered by the court." (Dkt. No. 53 at 3, 5–8; Pl.'s Reply).

Plaintiff may not turn my order into a failure to respond by defendants. Although plaintiff assumes that this court's order denied defendants' extension request, that is not the case. Plaintiff states that although defendants argue that they have not had an opportunity for discovery, "all of the evidence that the defendants will ever get from plaintiff is already upon the record, extremely detailed, and enough to make a prima facie showing of entitlement to judgment as a matter of law." (Dkt. No. 53 at 7). While the court understands that plaintiff has submitted a multitude of exhibits, it is not up to him to determine what the defendants would request in discovery, and discovery includes the ability to take an opposing party's deposition. Fed.R.Civ.P. 30. As discussed below, while plaintiff may have made a sufficient showing for his case to proceed on the remaining claims listed above, that does not mean that plaintiff has made a showing that he is entitled to judgment on those issues, particularly without a response by defendants.

#### 1. Religion

One of plaintiff's remaining claims is that his First Amendment Free Exercise Clause and rights under RLUIPA were violated by defendant Ready as a result of the events of December 7, 2010. On that date, plaintiff claims that notwithstanding plaintiff's name on a call-out list for religious services, defendant Ready refused to allow plaintiff to attend those services. [14] (Compl. at ¶¶ 37–47).

The court notes that plaintiff's own exhibits show that there is a question of fact regarding these issues. Plaintiff filed a grievance complaining about the December 7, 2010 incident, and he has included a copy of the Superintendent's determination of that grievance. (Compl.Ex.L). The investigation found that there was insufficient evidence to "substantiate any malfeasance by staff." (*Id.*) While plaintiff's allegations may be sufficient to survive past the pleading stage, it is clear that with respect to constitutional and statutory violations, there is a question of fact, at least with respect to defendant's initial conduct. *See Brown v. Graham,* No. 9:07–CV–1353, 2010 WL 6428251, at *14– 16 (N.D .N.Y. March 30, 2010) (denying plaintiff's motion for summary judgment on his claims that he was denied his

kosher meals for a period of time), *aff'd,* No. 11–1380–pr, 2012 WL 933993 (2d Cir. March 21, 2012).

**\*5** Judge D'Agostino also allowed plaintiff's claim against defendant Ellis to proceed past the pleading stage. Plaintiff alleges that on March 20, 2011, he was scheduled to see a Rabbi that was coming to Mid–State from Brooklyn for a Purim celebration. (Compl.¶ 65). Plaintiff claims that the service was scheduled to be one and one half hours, but defendant Ellis cut the service short. [15] Plaintiff attaches to his motion a copy of the grievance that he filed regarding this incident. (Dkt. No. 48–1, ¶¶ 19, 20; Dkt. No. 48–2, Ex. A). Plaintiff's grievance expands on the facts of the incident, and the investigation of that grievance indicates that there was an issue regarding the timely arrival of the Rabbis for the Purim Holiday. It is clear from the plaintiff's own submissions that a question of fact remains regarding defendant Ellis's conduct, and plaintiff may not obtain summary judgment for this claim.

**2. Retaliation**

Plaintiff cannot just allege retaliation and obtain a decision in his favor. Plaintiff implies that the fact that the facility took "corrective action" implies that a constitutional violation occurred. The fact that corrective action was taken after a grievance by plaintiff, without more, does not prove that a constitutional or statutory violation occurred. Corrective action may be taken in the face of an error as well as in the face of a more serious violation. The factual circumstances are for a jury to decide. Plaintiff has misinterpreted Judge D'Agostino's order. The fact that plaintiff states a claim does not indicate that he is entitled to summary judgment. It only means that plaintiff's case may proceed on the issues that Judge D'Agostino determined were viable. This is particularly so because plaintiff bears the ultimate burden of proof in a civil case, [16] and in a motion for summary judgment, all factual inferences are drawn in favor of the non-moving party. *Doninger v. Niehoff,* 642 F.3d 334, 344 (2d Cir .2011) (quoting Fed.R.Civ.P. 56(a) (burden in a summary judgment motion)).

The fact that an allegedly adverse action occurred in close proximity to the protected conduct will suffice to prevent dismissal on the pleadings, but will not necessarily prove plaintiff's claim by a preponderance of the evidence. *See Davis v. Goord,* 320 F.3d 346, 352–54 (2d Cir.2003) (temporal proximity and other factors support an "inference" of retaliation sufficient to survive a motion to dismiss); *Jackson v. Goord,* No. 06–CV–6172, 2011 WL 4829850,

at *17 (W.D.N.Y. Oct. 12, 2011) (denying both defendants' motion and plaintiff's cross-motion for summary judgment on the issue of retaliation, notwithstanding temporal proximity of the adverse action to the protected conduct); *Brown v. Graham,* No. 9:07–CV–1353, 2010 WL 6428251, at *16– 20 (denying plaintiff's motion for summary judgment on retaliation claims against various defendants). Thus, plaintiff has not sustained his burden to show that he is entitled to summary judgment on his retaliation claims.

**3. Access to Courts/ Mail Claims**

**\*6** An inmate has the First Amendment right to the free flow of incoming and outgoing mail. *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir.2006). Regulations limiting the right to send and receive mail are valid if "reasonably related to legitimate penological interests." *Id.* (citing *Rodriguez v. James,* 823 F.2d 8, 12 (2d Cir.1987) (quoting *Turner v. Safely,* 482 U.S. 78, 89 (1987)). In *Turner,* the Supreme Court held that the court should determine whether the government objective is legitimate and neutral, and then whether there is a valid, rational connection between the prison regulation or the official action and the legitimate governmental interest that justifies that action. *Turner v. Safely,* 482 U.S. at 89. Finally, the court must determine whether there are alternative means for the inmate to exercise that constitutional right. *Id.* at 90.

It is also well-settled that inmates have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 823 (1977). The Supreme Court held in *Bounds* that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. The Supreme Court later clarified that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). The *Lewis* court explained, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (citing *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995). In addition, "to establish a constitutional

violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord,* 581 F.Supp.2d 563, 573 (S.D.N.Y .2008).

Plaintiff alleges that he requested legal mail to be sent to the Attorney General's Office by certified mail, return receipt requested, but was later informed that the legal mail was not sent as he requested. (Compl.¶ 67). Plaintiff claims that defendant Kupiec informed plaintiff of this error and directed that plaintiff's funds be reimbursed to him. (Compl.¶ 68). Plaintiff implies that defendant Kupiec was responsible for the error and should have known that plaintiff's document (a Notice of Intention to File a Claim) was required to be served by certified mail, and thus, caused plaintiff injury to his Court of Claims action. (Compl .¶ 70).

**\*7** The fact that defendant Kupiec responded to plaintiff's complaint and obtained a reimbursement for plaintiff does not mean that she was responsible for the error. Obtaining the reimbursement does not show retaliation or malicious interference with the mail. A question of fact still exists. With respect to the Court of Claims action, although plaintiff appears to claim that the defendants caused the "dismissal" of his case, plaintiff includes as an exhibit to his summary judgment motion, a letter he received from the Court of Claims, dated December 9, 2011, stating "[p]lease be advised that the records of this Court indicate that the above numbered claim is open and pending.... When your claim is reached for trial, you will be notified by mail as to the date and place of trial." (Pl.'s Ex. V; Dkt. No. 48–2 at 65). The next page of Exhibit V is a "Motion to Dismiss Complaint With Prejudice" that plaintiff filed *himself* in the Court of Claims. (Dkt. No. 48–2 at 66). The motion states that he knows he cannot win the Court of Claims action because of the defendant's "reckless unconstitutional conduct," and that he was seeking "relief in the ... U.S. District Court." (*Id.*) Plaintiff cannot ask the Court of Claims to dismiss his action and then blame the defendant for the "injury." If an injury exists, there is at least a question of fact regarding the causation of the injury to plaintiff's legal claim.

Plaintiff also claims that defendant Kupiec lost or destroyed plaintiff's mail (including some test scores that he was being sent) in retaliation for his complaints about his religious rights. (Compl.¶¶ 67–68). With respect to plaintiff's test scores (not an access to courts issue), plaintiff includes in the exhibits to his motion for summary judgment, a letter from

defendant Kupiec, apologizing for tearing the two documents containing the test scores. (Pl.'s Ex. S; Dkt. No. 48–2 at 61). In the letter, defendant Kupiec stated that she thought the documents were advertisements, but as soon as she tore the documents, she realized what they were. (*Id.*) While this may or may not be true, it raises a question of fact with regard to the defendant's motive in tearing the documents. In any event, plaintiff apparently received the documents, albeit in poor condition.

It is also unclear how defendant Marlenga is involved in any alleged First Amendment deprivations. In his complaint, plaintiff alleges that defendant Marlenga is the facility steward who investigates inmate property claims. (Compl.¶ 78(E)). Plaintiff alleges that defendant Marlenga denies inmates' property claims and then when the inmate decides to sue the state, Marlenga "walks across the hall and notify [sic] defendant Theda Kupiec ... that plaintiff intends to file a claim ... 'so just send his Notice of Intention to the Office of the AG by regular mail and not certified mail return receipt because our affirmative defenses from the AG Office and Defendant Boll has [sic] been working." (*Id.*) Plaintiff then accuses defendants Kupiec and Marlenga of intentionally falsifying reports. Judge D'Agostino did not dismiss these claims, due to the liberality with which *pro se* claims are treated, however, plaintiff clearly has not sustained his burden of showing that there is no question of fact remaining and that he is entitled to judgment as a matter of law on these issues.

**\*8** Plaintiff does not point to any evidence upon which he could rely to show that defendant Marlenga "walked across the hall" after she determined that plaintiff wanted to bring an action in the Court of Claims or that the failure to send a document certified mail, return receipt requested was an intentional act aimed at depriving the plaintiff of his access to courts. Plaintiff has not shown the absence of a genuine issue of material fact with respect to any of his remaining claims, and further discovery will be necessary.

### 4. Supervisory Officials

Judge D'Agostino did not dismiss plaintiff's actions against defendants Boll and Fischer. These two defendants are supervisory officials. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F .3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways

in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* *See also Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007) (citing *Colon v. Coughlin,* 58 F.3d 865, 873) (2d Cir.1995)), *rev'd on other grounds,* 129 S.Ct. 1937 (U.S.2009).

Because questions of fact remain regarding the individuals who allegedly committed the violations, and defendants' Boll and Fischer's liability depends on the liability of their subordinates, plaintiff has not shown that he is entitled to summary judgment against these two defendants. Plaintiff's motion should, therefore, be denied.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that plaintiff's motion for a TRO (Dkt. No. 35) be **DENIED,** and it is

**RECOMMENDED,** that plaintiff's motion for summary judgment (Dkt. No. 48) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2755296

Footnotes

1   Judge D'Agostino's order was 42 pages long, and this court assumes familiarity with the facts as stated in that order. The court will only state facts as necessary for this recommendation.

2   42 U.S.C. § 2000cc.

3   Plaintiff filed two motions for injunctive relief. (Dkt. Nos.4, 8). Plaintiff labeled these motions as applications for Temporary Restraining Orders ("TRO"), however, a TRO is limited in time, and Judge D'Agostino interpreted these motions for injunctive relief as requesting Preliminary Injunctions. (Dkt. No. 19 at 36). The standards for the issuance of either form of injunctive relief is the same.

4   Plaintiff's reply states that he is not asking for any injunctive relief on behalf of the Rabbi. (Dkt. No. 45 at ¶ 33).

5   The "Box" is a term for a "Special Housing Unit (SHU)," a form of disciplinary confinement.

6   Judge D'Agostino based her denial of plaintiff's requests for injunctive relief, in part, on his transfer to GCF. (Dkt. No. 19 at 36–38). Judge D'Agostino also found that plaintiff's transfer removed any possible threat of imminent harm. (*Id.* at 38).

7   In his reply, plaintiff claims that these are "non-party defendants," (Dkt. No. 45 at ¶ 25) however, non-parties are not defendants. The fact that someone received "notice" of a lawsuit, (assuming that they did), does not make them a party to the lawsuit. An amendment or supplement to the complaint is required for that.

8   The Department of Correctional Services ("DOCS") is now known as the Department of Corrections and Community Supervision ("DOCCS").

9   Defendant Brian Fischer is the Commissioner of DOCCS, and Maureen Boll is the Deputy Commissioner. They are not located at Mid–State or any other specific facility. In his reply, plaintiff argues that they are sufficiently "personally responsible" for his alleged deprivations to be subject to the requested injunction. (Dkt. No. 45 at ¶¶ 40–48).

10  Plaintiff claims that unknown individuals, who he states were "defendants," imposed a "hunger strike" on plaintiff for 104 hours. (Dkt. No. 35–1 at ¶ 6). A hunger strike implies that plaintiff chose not to eat for one reason or another. It is unclear what the problem was, but plaintiff has not shown that any particular person, let alone administrative defendants in Albany, denied plaintiff food for 104 hours. Plaintiff claims that defendants Fischer and Boll "approve all transfers," but even if that were true, approval of plaintiff's transfer is not proof of the subsequent denial of religious rights.

**11**     Plaintiff includes two memoranda he received after writing letters of complaint regarding his Sukkot Meal. (Pl.'s Ex. E, F). Each memorandum was authored by R. Pine, Superintendent for Program Services. One memorandum was written on October 13, 2011 and the other on October 17, 2011, and each memorandum indicated that "steps have been taken to resolve this matter." (*Id.*) The court understands that the "steps" were not sufficient for him, however, these exhibits do not support the issuance of the injunction that he requests.

**12**     Plaintiff states that defendants are retaliating against him for his obtaining a "favorable" decision from Judge D'Agostino. The court notes that Judge D'Agostino's decision, regardless of length, only allowed plaintiff's case to go forward as any other "filing order" would have done. Judge D'Agostino found only that plaintiff stated a claim, sufficient for the case to proceed and to be served on the remaining defendants. There was no finding on the merits of any of plaintiff's claims, other than the basic finding that plaintiff stated a "plausible" claim.

**13**     The court is referring to the pages as numbered by plaintiff at the bottom of the page, not the CM/ECF pages, which are slightly different.

**14**     Plaintiff also alleges various forms of verbal harassment by defendant Ready in conjunction with the incident. *(See, e.g.* Compl. ¶ 40). The court would point out that verbal harassment, no matter how inexcusable it may be, does not rise to the level of a constitutional violation. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D .N.Y.1996).

**15**     The rest of paragraph 65 of the complaint discusses "class action litigation," but it is clear that Judge D'Agostino denied class certification, thus, the only remaining claim involves defendant Ellis's conduct as it relates to plaintiff alone.

**16**     When the court considers a motion for summary judgment, it must be mindful of the underlying standards and burdens of proof. *U.S. S.E. C. v. Meltzer,* 440 F.Supp.2d 179, 187 (E.D.N.Y.2006) (citations omitted). The evidentiary burdens that the respective parties bear at trial will guide the court. *Id.* Where the plaintiff moves for summary judgment, he bears a greater initial burden to show that the evidence supporting his claims is so compelling that no reasonable jury could return a verdict in favor of the defendant. *Id.* (citation omitted).

---

**End of Document**            © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1735102
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan JOHNSON, Plaintiff,

v.

Jeff McKAY, Gail Haponik, Dr. Carl
Koenigsmann, Joseph Bellinier, Maureen E.
Boll, Brian Fischer, David Rock, Theodore
Zerniak, and Donald Uhler, Defendants.

No. 9:14–CV–0803 (BKS/TWD).
|
Signed April 16, 2015.

**Attorneys and Law Firms**

Jonathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, by David J. Sleight, Esq., Main Place Tower,
Buffalo, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

Hon. BRENDA K. SANNES, District Judge.

**I. Introduction**

**\*1** Plaintiff pro se Johnathon Johnson brings this action
against defendants Jeff McKay, Gail Haponik, Dr. Carl
Koenigsmann, Joseph Bellinier, Maureen E. Boll, Brian
Fischer, David Rock, Theodore Zerniak, and Donald Uhler,
asserting claims under 42 U.S.C. § 1983 and New York state
law arising out of his incarceration at Upstate Correctional
facility. (Dkt. No. 5). Plaintiff alleges that defendants: (1)
denied him access to the courts by depriving him of paper,
mail, outside communications, and access to the prison law
library; and (2) denied him videotapes for and access to
inmate grievance procedures. (Dkt. No. 5). Plaintiff originally
filed a verified complaint in State of New York Supreme
Court, Franklin County on April 16, 2013. (Dkt. No. 1–1).
On July 2, 2014, defendants removed the action to this Court.
(Dkt. No. 1). On July 7, 2014, defendants moved to dismiss
the Complaint for failure to state a claim under Federal Rule
of Civil Procedure 12(b)(6). (Dkt. No. 2). Plaintiff filed an
affirmation in opposition to defendants' motion, and sought

to remand this action back to State Court. (Dkt.Nos.6, 7).
On December 9, 2014, the Court denied plaintiff's motion to
remand. (Dkt. No. 9). [1]

Upon referral pursuant to 28 U.S.C. § 636(b)(1)(B)
and Local Rule 72.3(c), United States Magistrate Judge
Thérèse Wiley Dancks issued a Report–Recommendation and
Order ("Report–Recommendation"), dated March 4, 2015,
recommending that defendants' motion to dismiss for failure
to state a claim be granted, and that plaintiff be granted
leave to amend his claim regarding access to the courts,
but denied leave to amend his claim regarding access to
the grievance program. (Dkt. No. 19, pp. 10–11). Magistrate
Judge Dancks found that plaintiff was not denied access to
the courts because he filed myriad federal lawsuits during
the time period in which he alleges that he was deprived of
paper, mail, outside communications, and access to the prison
law library, and therefore, plaintiff failed to plead an actual
injury. (*Id.*, p. 9). With respect to plaintiff's claim that he
was denied evidence for and access to grievance procedures,
Magistrate Judge Dancks found that plaintiff failed to state a
claim because prison inmates have no protected constitutional
interest in grievance proceedings. (*Id.*, p. 10).

Plaintiff has filed several objections to the Report–
Recommendation. (Dkt. No. 20). First, plaintiff objects to the
recommended dismissal of his denial of access to the courts
claim on the grounds that the Court improperly took judicial
notice of other lawsuits plaintiff has brought without giving
him the opportunity to be heard. (*Id.*, pp. 7–10). Plaintiff
further argues that the Court improperly "resolve[d][a] factual
dispute" regarding his access to the courts, and "did not treat
the defendants' motion to dismiss as a motion for summary
judgment." (*Id.*, p. 6). Plaintiff also argues that the public
records considered by the Court did not include his cases
dismissed for failure to prosecute. (*Id.*, p. 12).

**\*2** Second, plaintiff objects to the recommended dismissal
of his claim for denial of access to grievance procedures
on the grounds that "Plaintiff's involvement in filing claims
against prison officials, and helping others do so, was
protected activity as it was an exercise of his right to
petition the government for redress of grievances under the
First Amendment." (Dkt. No. 20, p. 14). Third, plaintiff
objects that the Report–Recommendation "failed to address
Johnson's supplemental [state law] claims." (*Id.*, p. 16).
Plaintiff argues that access to grievance procedures is
protected under New York state law, and therefore, his claims
"would be properly adjudicated by this court." (*Id.*).

Defendants have not responded to plaintiff's objections. For the reasons set forth below, the Report–Recommendation is adopted in its entirety.

## II. Standard of Review

This Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been specifically objected to by plaintiff. *Petersen v. Astrue,* 2 F.Supp.3d 223, 228–29 (N.D.N.Y.2012); Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). To be specific, the objection must, with particularity, "identify the portions of the proposed findings, recommendations, or report to which it has an objection and the basis for the objection." N.D.N.Y. L.R. 72.1(c). Under *de novo* review, the Court must "examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions." *Almonte v. N.Y. State Div. of Parole,* No. 04 Civ. 484, 2006 U.S. Dist. LEXIS 2926, at *15, 2006 WL 149049, at *5 (N.D.N.Y Jan. 18, 2006) (citing *United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Findings and recommendations that are not objected to are reviewed for clear error. *Petersen,* 2 F.Supp.3d at 229; *see also* Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. Where only vague or general objections are made, or a party resubmits the same papers and arguments that have already been considered by the magistrate judge, the findings and recommendations are also reviewed for clear error. *Petersen,* 2 F.Supp.3d at 228–229. After review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1) (C).

A complaint shall be dismissed on defendant's motion when it fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

**\*3** "In reviewing a complaint for dismissal under Rule 12(b) (6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (citation omitted). Thus a pro se complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Although pro se complaints must be construed liberally, civil rights complaints "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983 ." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987).

## III. Discussion

In view of plaintiff's specific objections, this Court conducts a *de novo* review of the portions of the Report–Recommendation regarding plaintiff's claims for denial of access to the courts and denial of evidence for and access to inmate grievance procedures.

## A. Denial of Access to the Courts

Plaintiff alleges that defendants denied him access to the courts from 2007 to 2013 by depriving him of paper, mail, outside communications, and access to the prison law library. (Dkt. No. 5, pp. 2–3). "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."

*Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). To state a claim for denial of access to the courts under § 1983, plaintiff must allege facts to plausibly suggest: "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar v. Ashcroft,* 585 F.3d 559, 592 (2d Cir.2009) (quoting *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)).

"[T]he right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Harbury,* 536 U.S. at 415. In order words, plaintiff must demonstrate an "actual injury" by showing that his underlying claim was non-frivolous. *Lewis v. Casey,* 518 U.S. 343, 351–353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (reasoning that the "actual injury" requirement means that inmates must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or was being impeded."). "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Harbury,* 536 U.S. at 415. Ultimately, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Id.* at 417.

**\*4** Here, plaintiff has failed to state any facts to suggest what underlying claim or claims were allegedly frustrated by defendants. Instead, plaintiff makes a blanket statement "that he was denied access to the Courts, Federal and State, pending criminal and civil proceeding due to the Paper Deprivation Order, from 2007, 2008, 2009, 2010, 2011, and from March–April 2013." (Dkt. No. 5, p. 2). Plaintiff also alleges that he was denied access to the prison law library, postal mail, and outside communications during the same period. (*Id.,* at 3). As for an injury, plaintiff alleges only that "as a result of the Access to the Courts denial Plaintiff has lost all appeals with the Third Department–Supreme Court of the State of New York ... And the Supreme Court of the State of New York–Albany County" during the same time period. (*Id.,* at 4).

Thus, while the Complaint contains sufficient facts to plausibly suggest that defendants frustrated his right to access the courts, plaintiff has failed to identify any underlying cause of action. To state a claim for denial of access to the courts, plaintiff must plead the underlying claim and facts to plausibly suggest that it is not frivolous. Plaintiff's allegation that he sustained an injury because he lost appeals in State

Court is entirely conclusory because he failed to describe the underlying claims. While a complaint must be construed in the light most favorable to the plaintiff, the complaint must still contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. The Court finds that plaintiff has failed to state a plausible claim for denial of access to the courts because the Complaint alleges no facts to suggest an actual injury.

Plaintiff argues that in recommending dismissal of his claim for denial of access to the courts, Magistrate Judge Dancks improperly took judicial notice of his litigation history. (Dkt No. 20, pp. 7–10). Under Federal Rule of Evidence 201, a court "may take judicial notice on its own" of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)-(c). Further, "it is well established that courts may take judicial notice of publicly available documents on a motion to dismiss." *In re DDAVP Indirect Purchaser Antitrust Litig.,* 903 F.Supp.2d 198, 208 (S.D.N.Y.2012); *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004) (courts can "look to public records ... in deciding a motion to dismiss."). Thus, plaintiff's prolific litigation history, [2] which is a matter of public record, is a proper subject of judicial notice. *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992) ("A court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation.") (internal citation omitted).

**\*5** Moreover, a court may consider matters that are subject to judicial notice, such as plaintiff's past lawsuits, without converting a motion to dismiss into one for summary judgment. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002); *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Xiotech Corp. v. Express Data Prods. Corp., ESI, LLC,* 11 F.Supp.3d 225, 234 (N.D.N.Y.2014). However, the Court has confined its review to the Complaint in assessing plaintiff's denial of access to the courts claim. As discussed above, the Court finds, without reference to plaintiff's litigation history, that the Complaint fails to state a plausible claim for denial of access to the courts.

Accordingly, as recommended by Magistrate Judge Dancks, plaintiff is granted leave to amend the Complaint to plead

facts detailing the specific nonfrivolous claim or claims that defendants are alleged to have frustrated. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (A pro se complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal citation omitted). Therefore, plaintiff's objection to the Report–Recommendation regarding his claim for denial of access to the courts is without merit.

## B. Denial of Evidence for and Access to Inmate Grievance Procedures

Plaintiff also objects to the recommended dismissal of his First Amendment claim for denial of access to inmate grievance procedures. (Dkt. No. 20, p. 14). In support, plaintiff cites numerous cases where inmates brought First Amendment claims related to issues with the Inmate Grievance Program. (*Id.*). However, the cases on which plaintiff relies all involve First Amendment *retaliation* claims. *See Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Graham v. Henderson,* 89 F.3d 75 (2d Cir.1996); *Scott v. Coughlin,* 344 F.3d 282 (2d Cir.2003); *Morales v. Mackalm,* 278 F.3d 126 (2d Cir.2002). Here, plaintiff alleges that he was denied the full opportunity to file a grievance, not that he suffered retaliation for filing a grievance. Therefore, in the absence of any facts suggesting a First Amendment retaliation claim, the cases cited by plaintiff are inapplicable.

Plaintiff has a constitutional right to petition the government, through the courts, for the redress of "grievances" in the general sense. *See Bill Johnson's Restaurants. Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983); *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987). However, specific "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim." *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005); *see also Brown v. Graham,* 470 F. App'x 11, 13 (2d Cir.2012) (holding that a prisoner litigant's claim that he has a "federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."); *Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014); *Mimms v. Carr,* No. 09 Civ. 5740, 2011 U.S. Dist. LEXIS 61853, at *30, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures."); *Justice v. Coughlin,* 941 F.Supp. 1312, 1316 (N.D.N.Y.1996)

("[M]ere violations of the grievance system do not violate the Constitution."). [3]

**\*6** Thus, even assuming that defendants denied plaintiff evidence for or access to inmate grievance procedures at Upstate Correctional Facility, such facts simply do not implicate the First Amendment or give rise to a constitutional claim. Accordingly, plaintiff's objection to the Report–Recommendation regarding his claim for denial of evidence for and access to inmate grievance procedures is without merit.

## C. State Law Claims

Finally, plaintiff argues that his Complaint should not be dismissed because, even if his § 1983 claims are dismissed, he has also alleged claims under New York state law. (Dkt. No. 20, pp. 15–18). Liberally construing the Complaint, plaintiff has alleged violations of Article 1, Sections 5 and 6 of the New York State Constitution parallel to his federal claims for denial of access to the courts and denial of evidence for and access to grievance procedures. (Dkt. No. 5, p. 5). However, in light of the dismissal of plaintiff's federal claims, and given the early stage of the case, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims at this juncture. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee,* 316 F.3d 299, 306 (2d Cir.2003). In the event plaintiff amends the Complaint to state a valid claim for denial of access to the courts, the Court will exercise jurisdiction over his state law claims.

In conclusion, after carefully reviewing all of the papers in this action, including Magistrate Judge Dancks's Report–Recommendation, and Plaintiff's Objections thereto, the Court concludes that the Report–Recommendation is correct in all respects.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Report–Recommendation (Dkt. No. 19) is **APPROVED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion to dismiss for failure to state a claim (Dkt. No. 2) is **GRANTED,** and it is further

**ORDERED** that plaintiff's claim for denial of evidence for and access to grievance procedures is **DISMISSED** with prejudice; and it is further

**ORDERED** that plaintiff's claim for denial of access to the courts is **DISMISSED** without prejudice; and it is further

**ORDERED** that within 30 days of the date of this Memorandum–Decision and Order, plaintiff may file an Amended Complaint limited to his claim for denial of access to the courts, to plausibly suggest that he suffered an actual injury; and it is further

**ORDERED** that if plaintiff fails to file an Amended Complaint within 30 days of this Memorandum–Decision and Order, this action will be dismissed with prejudice; and it is further;

**ORDERED** that the Clerk of the Court shall serve on the parties a copy of this Memorandum–Decision and Order in accordance with the Local Rules of the Northern District of New York; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**\*7 IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION and ORDER*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Johnathan Johnson alleges that he was deprived of paper and prevented from obtaining video evidence. (Dkt. No. 5.) Plaintiff further alleges that Defendants denied him access to the courts and the inmate grievance program at Upstate Correctional Facility. *Id.* Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 2.) For the reasons that follow, I recommend that Defendants' motion be granted.

### I. BACKGROUND

Plaintiff is a frequent litigator who is barred from proceeding *in forma pauperis* in federal court absent a showing of an exception to the Prison Litigation Reform Act's "three-strikes" rule. *See Johnson v. Adams,* No. 9:10–CV–1082 (DNH/DEP), 2012 U.S. Dist. LEXIS 104723, 2012 WL 3052957 (N.D.N.Y. July 5, 2012) (recounting Plaintiff's litigation history). [1]

Plaintiff filed this action in state court on April 16, 2013. (Dkt. No. 5.) Plaintiff alleges Special Housing Unit Directive 4933 deprived him of video evidence for a grievance hearing and access to paper from 2007 through 2013. *Id.* at 1–3. Plaintiff alleges that Defendants David Rock, Donald Uhler, and Theodore Zerniak authorized the deprivation of video evidence and paper. *Id.* at 3–4. Plaintiff states that because he was denied access to paper, he has lost "all appeals with the Third Department of the Supreme Court of the State of New York." *Id.* at 4. Plaintiff alleges that he filed "numerous grievance complaints" regarding the issue, which Defendants denied. *Id.* at 3. Plaintiff alleges that he notified Defendant Brian Fischer about the alleged denial of access to the courts "to no avail." *Id.* at 4.

On July 2, 2014, Defendants removed the action to this Court. (Dkt. No. 1.) Plaintiff filed a motion to remand the case to state court. (Dkt. No. 7.) On December 9, 2014, the Court denied Plaintiff's motion to remand. (Dkt. No. 17.)

Defendants now seek to dismiss the complaint. (Dkt. No. 2.) Plaintiff has opposed the motion. (Dkt. No. 6.) Defendants have filed a reply. (Dkt. No. 9.)

### II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a Plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for

relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

**\*8** "In reviewing a complaint for dismissal under Rule 12(b) (6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. ANALYSIS

### A. Personal Involvement

Plaintiff alleges that Defendants David Rock, Theodore Zerniak, and David Uhler authorized the denial of grievance video tapes and the paper deprivation order that form the basis for this lawsuit. (Dkt. No. 5 at 3–4.) Plaintiff alleges that he filed grievances on numerous occasions about the issues raised in this lawsuit. *Id.* at 3. Plaintiff alleges that Defendants Jeff McKay, Gail Haponik, Carl Koenigsmann, Joseph Bellinier, and Maureen E. Boll were members of the Central Office Review Committee that upheld the actions of which he complains in response to his grievances. *Id.* Plaintiff alleges that he notified Defendant Brian Fischer of the alleged violations that form the basis for this lawsuit. *Id.* at 4. Defendants argue that the complaint should be dismissed because Plaintiff has not plausibly alleged the personal involvement of any Defendant. (Dkt. No. 2–1 at 2–3.) For the reasons discussed below, this argument is without merit.

Under Second Circuit precedent, " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a § 1983 cause of action against an individual, a Plaintiff must show some "tangible connection" between the unlawful conduct and the Defendant. *Bass v.*

*Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the Defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (per curiam); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted). [2]

**\*9** Here, several of the *Colon* categories apply. First the complaint alleges that Defendants Rock, Uhler, and Zerniak authorized the denial of grievance video tapes and the paper deprivation order. (Dkt. No. 5 at 3–4.) This plausibly suggests that these Defendants directly participated in the alleged violation. Thus, the complaint alleges facts plausibly suggesting personal involvement by Defendants Rock, Uhler, and Zerniak.

Second, the complaint alleges that Defendants McKay, Haponik, Koenigsmann, Bellinier, and Boll served on the committee that responded to grievances that Plaintiff filed about the subject matter of this lawsuit. (Dkt. No. 5 at 3.) Receiving letters of complaint from an inmate and failing to respond is generally insufficient to establish personal involvement. *Shomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009). However, district court decisions in this Circuit have established that

> where a supervisor receives an
> inmate grievance or other complaint
> and responds to it, the supervisor
> may be liable.... At first glance,
> these holdings might seem counter-
> intuitive, as giving supervisors an
> incentive to inaction in order to

avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them. Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.

*Walker v. Pataro,* No. 99 CIV. 4607(GBD)(AJP), 2002 U.S. Dist. LEXIS 7067, at *42–43, 2002 WL 664040, at *12–13 (S.D.N.Y. Apr. 23, 2002) (internal citations omitted) (collecting and analyzing decisions). [3]

Here, the complaint alleges that Defendants McKay, Haponik, Koenigsmann, Bellinier, and Boll responded to Plaintiff's grievances. (Dkt. No. 5 at 3.) Therefore, the complaint plausibly suggests that these Defendants were personally involved in the alleged violation.

Third, the complaint alleges that Plaintiff notified Defendant Fischer about the subject matter of this lawsuit. (Dkt. No. 5 at 4.) District courts in this circuit have routinely held that a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring" within the meaning of *Colon. Rivera v. Goord,* 119 F.Supp.2d 327, 344–45 (S.D.N.Y.2000). *See also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, district courts have held that "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). However, the Second Circuit has recently cautioned courts against dismissing claims at the 12(b)(6) stage for failure to allege personal involvement where the Plaintiff alleges that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133,

141 (2d Cir.2013) ("At the pleading stage, even if Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference ... that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained.").

**\*10** Here, under *Grullon,* Plaintiff is entitled to the inference that Defendant Fischer received his notifications, read them, and became aware of the alleged conditions of which Plaintiff complained. Therefore, the complaint plausibly suggests Defendant Fischer's personal involvement.

**B. Access to the Courts**
Plaintiff alleges that he was denied access to the courts. (Dkt. No. 5 at 2.) Defendants argue that the complaint should be dismissed because Plaintiff has not plausibly alleged that he has lost any meaningful access. (Dkt. No. 2–1 at 3–4.) Specifically, Defendants argue that the record indicates that Plaintiff "has had plenty of access to ... the courts." *Id.* at 3. For the reasons discussed below, it is recommended that the Court grant Defendants' motion and dismiss this claim with leave to amend.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F.Supp. 713, 725 (S.D.N.Y.1993) (citing *Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980)). To state a claim for denial of access to the courts, a Plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the Plaintiff suffered an actual injury. *Lewis v. Casey,* 518 U.S. 343, 351–53, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994) (Hurd, M.J.).

Here, Plaintiff alleges that the Defendants denied him access to the courts. (Dkt. No. 5 at 2.) Facts on the face of the complaint and of which the Court may take judicial notice show, however, that Plaintiff was not denied such access. As discussed above, Plaintiff filed myriad federal lawsuits during the time period in which he alleges that he was deprived of paper. Further, although Plaintiff asserts that he "has lost all appeals with the Third Department" because of the paper

deprivation order (Dkt. No. 5 at 4), the public record shows that Plaintiff lost appeals in the Third Department during the relevant time period on grounds other than failure to file timely paperwork. *See, e.g., Johnson v. Dennison,* 53 A.D.3d 962, 860 N.Y.S.2d 758 (N.Y.App. Div.3d Dep't 2008) (dismissing appeal regarding April 2006 parole decision as moot in light of later decision by the Board of Parole). The record also shows that Plaintiff was a frequent litigant in the Second Department during the relevant time period. *See, e.g., People v. Johnson,* 101 A.D.3d 750, 954 N.Y.S.2d 487 (N.Y.App. Div.2d Dep't 2013); *People v. Johnson,* 58 A.D.3d 643, 869 N.Y.S.2d 911 (N.Y.App. Div.2d Dep't 2009). Therefore, Plaintiff has not pleaded an actual injury and the claim should be dismissed.

 **\*11** Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* Here, there is a possibility, however slim, that Plaintiff could amend the complaint to allege facts plausibly suggesting that he suffered an actual injury. Therefore, I recommend that the Court dismiss this claim with leave to amend.

### C. Denial of Evidence and Access to Inmate Grievance Procedure

Plaintiff alleges that he was denied "grievance video tapes " and denied access to grievance procedures. (No. 5 at 4.) Defendants move to dismiss this claim, arguing that inmates have no protected interest in grievance proceedings. (Dkt. No. 2–1 at 4–5.) Defendants are correct. "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do [ ] not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–370 (W.D.N.Y.2005). Therefore, I recommend that the Court dismiss this claim without leave to amend.

Because I have determined that Plaintiff's complaint is subject to dismissal on the constitutional merits, I decline at this time to address Defendants' argument that any allegations concerning events before April 16, 2010, are time-barred. (Dkt. No. 2–1 at 5.)

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 2) be ***GRANTED.*** It is recommended that Plaintiff be granted leave to amend his claim regarding access to the courts, but denied leave to amend his claims regarding access to the grievance program; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Walker v. Pataro,* No. 99 CIV. 4607, 2002 U.S. Dist. LEXIS 7067, 2002 WL 664040 (S.D.N.Y. Apr.23, 2002).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b) (1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

### All Citations

Slip Copy, 2015 WL 1735102

### Footnotes

1   On February 4, 2015, this case was reassigned to the undersigned for all further proceedings. (Dkt. No. 18).

2   *See, e.g., Johnson v. Adams,* No. 10 Civ. 1082, 2012 U.S. Dist. LEXIS 104723, 2012 WL 3052957 (N.D.N.Y. July 5, 2012) (recounting plaintiff's litigation history). An additional review of the Public Access to Court Electronic Records database shows that, at a minimum, plaintiff filed federal cases in the Northern District of New York under the following docket numbers from 2007 to 2013: 9:07–cv–00158–LEK–GHL, 9:07–cv–01018–DNH–DRH, 9:07–cv–01237–TJM– DEP, 9:08–cv–00196–DNH, 9:09–cv–00244–DNH–GHL, 9:09–cv–01431–GTS, 9:10–cv–00247–DNH–DRH, 9:10–cv– 00342–GLS, 9:10–cv–00436–GLS–RFT, 9:10–cv–00860–FJ–RFT, 9:10–cv–00861–LEK–DEP, 9:10–cv–01082–DNH– DEP, 9:11–cv–00386–GLS–CFH, 9:12–cv–00019–NAM–TWD, 9:12–cv–00091–MAD, 9:12–cv–00329–GTS–DEP.

**3**    In at least two other cases, plaintiff has made precisely the same grievance denial claim, and courts have rejected it for the same reason. *See Johnson v. Gonzalez,* No. 14 Civ. 745, 2015 U.S. Dist. LEXIS 31516, at *8–9, 2015 WL 1179384, at *5 (N.D.N.Y. Feb.20, 2015)* ("[B]ecause the IGPs are created under state law and, thus, not required by the Constitution, allegations against prison officials for violation of, or interference with, those procedures cannot give rise to a cognizable claim under § 1983."); *Johnson v. Barney,* No. 04 Civ. 10204, 2006 U.S. Dist. LEXIS 90398, at *7, 2006 WL 3714442, at *2 (S.D.N.Y. Dec.13, 2006)* ("[I]nmate grievance procedures are not even constitutionally required.").

**1**    Taking judicial notice of Plaintiff's litigation history in federal and state court is appropriate in determining this motion to dismiss. It is "well established that courts may take judicial notice of publicly available documents on a motion to dismiss." *In re DDAVP Indirect Purchaser Antitrust Litig.,* 903 F.Supp.2d 198, 208 (S.D.N.Y.2012). Under Federal Rule of Evidence 201, a court "may take judicial notice on its own" of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)-(c). A court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation. *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992); *see also Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings."). Courts also may take judicial notice of another court's order to recognize the judicial act the order represents or the litigation subject matter. *See City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273, 1279 (E.D.N.Y.1995) (*citing United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994)).

**2**    In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon.*" *Reynolds v. Barrett,* 685 F.3d 193, 205 n. 14 (2d Cir.2012). The Second Circuit declined to address the issue in *Reynolds,* however, and has not addressed it since that time. I will assume for the purposes of this motion that *Colon* remains good law.

**3**    The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

---

**End of Document**                                                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6125890
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan JOHNSON, Plaintiff,

v.

Jeff McKAY, Gail Haponik, Joseph Bellinier,
Maureen E. Boll, Brian Fischer, David Rock,
Theodore Zerniak, and Donald Uhler, Defendants.

No. 9:14–CV–0803 (BKS/TWD).
|
Signed Oct. 16, 2015.

**Attorneys and Law Firms**

Jonathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, by Ryan L. Belka, Assistant Attorney General,
Buffalo, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

Hon. BRENDA K. SANNES, District Judge.

**INTRODUCTION**

 **\*1** Plaintiff pro se Johnathan Johnson commenced this
action against Defendants Jeff McKay, Gail Haponik, Carl
Koenigsmann, Joseph Bellinier, Maureen E. Boll, Brian
Fischer, David Rock, Theodore Zerniak, and Donald Uhler,
asserting claims under 42 U.S.C. § 1983 and New York state
law arising out of his incarceration at Upstate Correctional
facility. (Dkt. No. 5). After Defendants moved to dismiss the
Complaint for failure to state a claim (Dkt. No. 2), the matter
was referred to United States Magistrate Judge Thérèse Wiley
Dancks, who issued a Report–Recommendation on March 4,
2015, recommending that Plaintiff be granted leave to amend
his claim regarding denial of access to the courts, but denied
leave to amend his claim regarding denial of access to prison
grievance procedures. (Dkt. No. 19). On April 16, 2015, the
Court adopted the Report–Recommendation in its entirety.
(Dkt. No. 21).

On April 24, 2015, Plaintiff filed an Amended Complaint.
(Dkt. No. 24). Plaintiff alleges that Defendants: (1) denied
him access to the courts by depriving him of paper, mail,
outside communications, and access to the prison law library;
and (2) retaliated against him for filing lawsuits and grievance
complaints. (Dkt. No. 24). On April 29, 2015, Defendants
moved to dismiss the Amended Complaint for failure to
state a claim under Federal Rule of Civil Procedure 12(b)(6).
(Dkt. No. 26). The matter was again referred to Magistrate
Judge Dancks, who issued a Report–Recommendation on
September 3, 2015, recommending that Plaintiff's claim for
denial of access to the courts be dismissed with prejudice,
but that Plaintiff be granted leave to amend his First
Amendment retaliation claim against Defendants Donald
Uhler and Theodore Zerniak. (Dkt. No. 30).

**DISCUSSION**

Plaintiff filed objections to the Report–Recommendation on
September 14, 2015, objecting only to the recommended
dismissal of his access to the courts claim. (Dkt. No. 32).
Plaintiff asserts that he "misconstrued the court's directions"
that he must allege facts to plausibly suggest a nonfrivolous
underlying claim that has been frustrated by the Defendants'
actions in order to state a claim for denial of access to the
courts. (*Id.*, pp. 1–2). Plaintiff further states that he "can and
should be granted leave to interposes [sic] the claims that he
sustained injury ..." (*Id*., p. 2). Thus, Plaintiff requests leave
to amend his claim and file a Second Amended Complaint.
(*Id.*, p. 4). Defendants have not responded to Plaintiff's
objections.

This Court reviews *de novo* those parts of a report and
recommendation to which a party specifically objects. 28
U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3). Under *de novo*
review, the Court must "examine the entire record, and make
an independent assessment of the magistrate judge's factual
and legal conclusions." *Almonte v. N.Y. State Div. of Parole,
No. 04 Civ. 484, 2006 WL 149049, at \*5, 2006 U.S. Dist.
LEXIS 2926, at \*15 (N.D .N.Y. Jan. 18, 2006)* (citing *United
States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65
L.Ed.2d 424 (1980)). Findings and recommendations as to
which there was no properly preserved objection are reviewed
for clear error. *Petersen v. Astrue,* 2 F.Supp.3d 223, 228–
29 (N.D.N.Y.2012); *see also* Fed.R.Civ.P. 72(b), Advisory
Committee Notes: 1983 Addition.

 **\*2** Upon *de novo* review, the Court accepts and adopts
the Report–Recommendation to the extent it recommends
dismissal of Plaintiff s denial of access to the courts

claim. Magistrate Judge Dancks accurately recounted the facts and procedural history of this case and employed the proper legal standards in finding deficiencies in Plaintiff's claim. However, in light of Plaintiff's pro se status and his representation that he misunderstood the Court's previous decision, Plaintiff will be granted leave to amend his denial of access to the courts claim. *See* Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (A pro se complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal citation omitted). As explained in the Court's decision dated April 16, 2015 (Dkt. No. 21), to state a claim for denial of access to the courts under § 1983, Plaintiff must allege facts to plausibly suggest: "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar v. Ashcroft,* 585 F.3d 559, 592 (2d Cir.2009) (quoting *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)). Thus, Plaintiff must specifically identify and describe the nonfrivolous claims or court cases that were frustrated by Defendants' actions.

Upon review of the remainder of the Report–Recommendation for clear error, the Court finds none. Plaintiff has failed to state a plausible claim for First Amendment retaliation against Defendants Uhler and Zerniak, for the reasons stated in the Report–Recommendation. As recommended by Magistrate Judge Dancks, Plaintiff will be granted leave to amend this claim.

## CONCLUSION

It is therefore

**ORDERED** that the Report–Recommendation (Dkt. No. 30) is **ADOPTED in part and REJECTED in part;** and it is further

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 26) is **GRANTED;** and it is further

**ORDERED** that Plaintiff's claim for denial of access to the courts is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff's claim for First Amendment retaliation is **DISMISSED** without prejudice; and it is further

**ORDERED** that within 30 days of the date of this Memorandum–Decision and Order, Plaintiff may file a Second Amended Complaint limited to his claims for denial of access to the courts and First Amendment retaliation; and it is further

**ORDERED** that if Plaintiff fails to file a Second Amended Complaint within 30 days of this Memorandum–Decision and Order, this action will be dismissed; and it is further;

**ORDERED** that the Clerk of the Court shall serve on the parties a copy of this Memorandum–Decision and Order in accordance with the Local Rules of the Northern District of New York; and it is further

 **\*3  ORDERED** that the Clerk of the Court shall provide Plaintiff with copies of the

unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2015 WL 6125890

---

**End of Document**                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment
**Report and Recommendation Adopted in Part, Rejected in Part by**
Johnson v. McKay, N.D.N.Y., October 16, 2015

2015 WL 6126878
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan JOHNSON, Plaintiff,

v.

Jeff McKAY, Gail Haponik, Dr. Carl
Koenigsmann, Joseph Bellinier, Maureen E.
Boll, Brian Fischer, David Rock, Theodore
Zerniak, Donald Uhler, Defendants.

No. 9:14–CV–0803 (BKS/TWD).
|
Signed Sept. 3, 2015.

### Attorneys and Law Firms

Johnathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of
New York, Ryan L. Belka, Esq., of Counsel, Albany, NY, for
Defendants.

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge.

## I. INTRODUCTION

**\*1** This pro se prisoner civil rights action, commenced by
Plaintiff Johnathan Johnson pursuant to 42 U.S.C. § 1983, has
been referred to me for Report and Recommendation by the
Honorable Brenda K. Sannes, United States District Judge,
pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). [1]

In his original Complaint (Dkt. No. 5), Plaintiff claimed
that Defendants Jeff McKay, Gail Haponik, Dr. Carl
Koenigsmann, Joseph Bellinier, Maureen E. Boll, Brian
Fischer, David Rock, Theodore Zerniak, and Donald Uhler:
(1) denied him access to the courts by depriving him of
paper, mail, outside communications and access to the prison
law library; and (2) denied him videotapes for and access
to inmate grievance procedures. *Id.* Defendants moved to

dismiss the Complaint pursuant to Federal Rule of Civil
Procedure 12(b)(6). (Dkt. No. 2.)

This Court recommended that Defendants' motion to dismiss
be granted, and that Plaintiff be granted leave to amend his
claim regarding access to the courts and denied leave to
amend his claims regarding access to the inmate grievance
program. *Johnson v. McKay,* No. 9:14–CV–0803 (BSK/
TWD), 2015 WL 1735102, at \*11, 2015 U.S. Dist. LEXIS
50817, at \* 14 (N.D.N.Y. April 16, 2015). [2] Judge Sannes
approved and adopted this Court's Report–Recommendation
and ordered the dismissal with prejudice of Plaintiff's claim
for denial of evidence for and access to grievance procedures,
and the dismissal without prejudice of Plaintiff's denial of
access to the courts claim. *Johnson v. McKay,* 2015 WL
1735102, at \* 6, 2015 U.S. Dist. LEXIS 50014, at 14
(N.D.N.Y. April 16, 2015).

Plaintiff filed a notice of interlocutory appeal to the Second
Circuit on April 23, 2015 (Dkt. No. 22), and an Amended
Complaint against the same Defendants on April 24, 2015.
(Dkt. No. 24.) In his Amended Complaint, Plaintiff has
asserted claims for: (1) denial of his First Amendment right
to access to the courts, specifically the Appellate Division,
Third Department and the New York State Court of Claims;
and (2) retaliation for filing lawsuits and inmate grievance
complaints. [3] *Id.* Defendants have now filed a Rule 12(b)(6)
motion to dismiss Plaintiffs' Amended Complaint. (Dkt. No.
26.) For the reasons that follow, the Court recommends that
Defendants' motion to dismiss be granted.

## II. PLAINTIFF'S AMENDED COMPLAINT

### A. Access to the Courts

Plaintiff alleges in his Amended Complaint that
Defendants Donald Uhler ("Uhler"), former Deputy
Superintendent at Upstate Correctional Facility ("Upstate"),
and Theodore Zerniak ("Zerniak"), a Corrections Captain
at Upstate, "authorized depriving [Plaintiff] of access to ...
correspondence privileges of personal correspondence and
privileged correspondence ... during the years of 2010–thru
2013" and thus "refused to permit [Plaintiff] to petition the
courts for grievance etc." (Dkt. No. 24 at 4–6.) Plaintiff claims
they did so through the issuance of "paper" deprivation orders
under DOCCS Directive 4933, § 305.2, N.Y. Comp.Codes
R. & Regs. ("N.Y.C.R.R.") tit. 7, § 305.2, which violated
Plaintiff's right under Directive 4933, § 304.13, 7 N.Y.C.R .R.

§ 304.13, to send and receive regular and privileged correspondence. *Id.* at 6–7.

**\*2** Plaintiff alleges in conclusory fashion that Defendants Jeff McKay ("McKay"), Gail Haponik ("Haponick"), Joseph Bellnier ("Bellnier"), Maureen Boll ("Boll"), and Brian Fischer ("Fischer") implemented and enforced Uhler and Zerniak's unconstitutional issuance of deprivation orders, thereby depriving him of "access to the courts, law library, grievance proceedings, outside communication and *ALL* inside communication," including communication with Defendants David Rock ("Rock") and Fischer. *Id.* at 6.

Plaintiff also claims that on October 3, 2011, Uhler had all of the documents regarding Plaintiff's litigation pending in the Appellate Division, Third Department confiscated from his cell. *Id.* at 7. Uhler allegedly refused to return the state court litigation documents resulting in dismissal by the Third Department of pending cases challenging conditions at Upstate from 2010 to 2013. *Id.* at 7. Plaintiff contends that he "had to deny Court of Claims appearance from 2010–thru 2013 due to the depriving [him] of 'ALL' his lawsuits in State Court and to date." *Id* at 7–8.

**B. Retaliation**

Plaintiff alleges in his Amended Complaint that Uhler and Zerniak placed him on paper deprivation orders in retaliation for his filing of inmate grievances and federal and state lawsuits during the period 2010 through 2013. *Id.* at 5–6. Plaintiff further claims that the "prison guards retaliated against Johnson in eleven and Eight Building, and alleged that Johnson, had papers covering cell lights, doors, windows, etc. and subsequently, Johnson pending lawsuits, documents, Article 78 petition(s), Court of Claims documents, Federal Court's document would taking from Johnson's cell ." *Id.* at 5.

**III. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b) (6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3** A complaint may be dismissed pursuant to Rule 12(b) (6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombley.* 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion [s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b) (6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (citations omitted); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe pro se complaints liberally even after *Twombly* ).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it." *Cuoco,* 222 F.3d at 112 (citation omitted).

## IV. ANALYSIS

### A. Present Status of the District Court's Jurisdiction Over the Action

Although neither party has raised the issue, because Plaintiff has a pending interlocutory appeal to the Second Circuit from the decision granting the motion to dismiss his original Complaint, the Court must consider whether the district court has been divested of jurisdiction by the appeal.

Normally, the docketing of a notice of appeal will divest the district court of jurisdiction over the issues presented in the appeal. *Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. The Bank of New York Mellon,* 775 F.3d 154, 158 n. 3 (2 Cir.2014) (citing *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)). "The divestiture of jurisdiction rule is, however, not a per se rule." *United States v. Rodgers,* 101 F.3d 247, 251 (2d Cir.1996). "It is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *Id.* (citation and internal quotation marks omitted). Therefore, "its application is guided by concerns of efficiency and is not automatic ." *Id.*

 **\*4**  The Second Circuit has ruled that a notice of appeal from a non-final order of the district court did not divest the jurisdiction of the district court. *See Leonhard v. United States,* 633 F.2d 599, 610 (2d Cir.1980) ("we see no efficiency to be gained by allowing a party arbitrarily to halt the district court proceedings by filing a plainly unauthorized notice which confers on this Court the power to do nothing but dismiss the appeal ."). In fact, in *Leonhard,* the Circuit Court found retention of jurisdiction in the district court under those circumstances to be "the preferable view." *Leonhard,* 633 F.2d at 610. This Court agrees and finds that the district court has jurisdiction over the case and the power to determine Defendants' motion to dismiss Plaintiff's Amended Complaint despite Plaintiff's interlocutory appeal.

### B. Personal Involvement

Defendants move to dismiss the complaint on the grounds that Plaintiff fails to adequately allege the personal involvement of any Defendant. (Dkt. No. 26 at 5.) Plaintiff claims his

Amended Complaint addresses all of the listed Defendants. (Dkt. No. 28 at 4 .)

Under Second Circuit precedent, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a § 1983 cause of action against an individual, a Plaintiff must show some "tangible connection" between the unlawful conduct and the Defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (per curiam); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted) [4] .

#### 1. *Uhler and Zerniak*

The factual allegations in Plaintiff's Amended Complaint regarding Defendants Uhler and Zerniak's issuance of paper deprivation orders and Uhler's removal of legal papers from Plaintiff's cell are adequate to make a plausible showing of personal involvement by those two defendants under the first *Colon* category. (Dkt. No. 24 at 5–7.)

#### 2. *McKay, Haponik, Bellnier, Boll, Rock, and Fischer*

 **\*5**  Plaintiff has alleged in his Amended Complaint that Defendants McKay, Haponik, Bellnier, Boll, Rock, and Fischer implemented and enforced the unconstitutional paper deprivation orders issued by Uhler and Zerniak under Directive 4933, which resulted in Plaintiff's denial of access

to the courts. *Id.* at 6. This plausibly suggests, although barely, that these Defendants directly participated in the alleged violation of Plaintiff's constitutional rights under the first *Colon* factor.

## C. Access to Courts

Plaintiff alleges that he was denied access to the courts as a result of being deprived of paper by all of the Defendants with the exception of Rock and having his legal materials removed from his cell by Uhler. (Dkt. No. 24 at 5–7.) "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). To state a claim for denial of access to the courts, a Plaintiff must allege facts that plausibly suggest: "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar v. Ashcroft,* 585 F.3d 559, 592 (2d Cir.2009) (quoting *Christopher v. Harbury,* 536 U.S. 403, 415–16, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)).

As the District Court noted in dismissing Plaintiff's original Complaint for failure to state a claim:

> "[T]he right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Harbury,* 536 U.S. at 415. In other words, plaintiff must demonstrate an "actual injury" by showing that his underlying claim was nonfrivolous. *Lewis v. Casey,* 518 U.S. 343, 351–353, 116 S.Ct. 2174, 135 L.Ed.2d 606 [ ] (1996) (reasoning that the "actual injury" requirement means that inmates "must demonstrate that a nonfrivolous legal claim ha[s] been frustrated or was being impeded.") "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Harbury,* 536 U.S. at 415. Ultimately, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Id.* at 417.

*Johnson v. McKay,* 2015 **WL** 1735102, at * 3.

The District Court found that Plaintiff had failed to state any facts suggesting what underlying claims or causes of action were allegedly frustrated by Defendants. *Id.* at * 4. Finding Plaintiff's claim that he sustained injury because he lost his appeals in State court to be entirely conclusory, the District Court concluded that Plaintiff had failed to state a plausible claim for denial of access to the courts because the original Complaint alleged no facts suggesting an actual injury. *Id.*

**\*6** Although Plaintiff was granted leave to file an amended complaint with respect to his access to the courts claim "to plausibly suggest that he suffered an actual injury," *Johnson v. McKay,* 2015 **WL** 1735102, at * 6, his Amended Complaint fares no better than his original Complaint in that regard. Plaintiff has not described the underlying claims and causes of action in the Appellate Division Third Department and New York State Court of Claims, or claims he has been prevented from pursuing in litigation because of the alleged denial of access to the courts. (Dkt. No. 24.) In addition, Plaintiff has again failed to allege facts plausibly showing that the actions of the Defendants have any bearing whatsoever on his losses in State court. Therefore, the Court recommends that Plaintiff's First Amendment denial of access to the courts claim be dismissed.

## D. Retaliation

Plaintiff has added a claim for retaliation against Defendants in his Amended Complaint. (Dkt. No. 24.) According to Plaintiff, during the years 2010 through 2013, he filed inmate grievances against prison employees, nurses, and prison guards at Upstate, and he filed lawsuits in Federal and State court. (Dkt. No. 4 at 5.) Plaintiff claims that the deprivation orders issued by Defendants Uhler and Zerniak during those years, which deprived him of the ability communicate with the courts, were issued in retaliation for the filing of lawsuits and grievances against all of the Defendants and other prison employees. *Id.* at 5. Plaintiff further claims that Uhler had Plaintiff's legal papers relating to matters pending in the Third Department confiscated from his cell in retaliation for the lawsuits Plaintiff had filed. *Id.* at 7. In addition, Plaintiff has alleged generally that "the prison guards retaliated against Johnson" after he filed grievances against prison employees, nurses and prison guards. [5] *Id.*

To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Holland v. Goord,* 758 F.3d 215, 225 (2d Cir.2014)

(quoting *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009); *see also Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema,* 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). "Adverse action" for purposes of a retaliation claim has been defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak,* 389 F.3d at 381 (internal quotation marks omitted).

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in a defendant's decision to take action against the plaintiff. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon,* 58 F.3d at 873). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

**\*7** Even if a plaintiff makes the appropriate showing of retaliation, a defendant may avoid liability if he demonstrates that he would have taken the adverse action in the absence of the protected conduct. *See Scott v. Coughlin,* 344 F.3d 282, 287–88 (2d Cir.2003) ("Regardless of the presence of retaliatory motive, ... a defendant may be entitled to summary judgment if he can show ... that even without the improper motivation the alleged retaliatory action would have occurred.") (citation omitted); *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 371 (S.D.N.Y.2011).

Because of the relative ease with which claims of retaliation can be incanted, courts have scrutinized retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkiewicz,* 534 U.S. at 508. As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official even those otherwise not rising to the level of a constitutional violation can be characterized as a constitutionally proscribed retaliatory act.

*Dawes,* 239 F.3d at 491. Accordingly, claims of retaliation must be supported by specific facts; conclusory statements are not sufficient. *Flaherty,* 713 F.2d at 13.

Plaintiff alleges that Uhler and Zerniak retaliated against him for filing lawsuits and grievance against all of the Defendants and other prison personnel over the years. (Dkt. No. 24 at 5.) The filing of lawsuits and grievances is protected conduct for purposes of First Amendment retaliation claims. *See Colon,* 58 F.3d at 872; *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Therefore, the allegations in Plaintiff Amended Complaint plausibly show that Plaintiff was engaged in protected conduct.

Plaintiff has alleged that Uhler and Zerniak's retaliatory issuance of paper deprivation orders denied him the ability to pursue litigation pending in the Third Department and Court of Claims. (Dkt. No. 26 at 5–8.) The Court finds that impeding or preventing an inmate from pursuing constitutionally protected state court litigation in retaliation for the filing of lawsuits could constitute adverse action for purposes of a retaliation claim. Furthermore, Courts have held that theft, confiscation, or destruction of an inmate's legal documents can constitute an adverse action for purposes of a retaliation claim. *See, e.g., Smith v. City of New York,* No. 03 Civ. 7576(NRB), 2005 **WL** 1026551, at \*3, 2005 U.S. Dist. LEXIS 7903, at \*10 (S.D.N.Y. May 3, 2005) (retaliatory destruction of prisoner's legal documents appears designed to deter plaintiff's exercise of constitutional rights and constitutes adverse action for purposes of a retaliation claim).

**\*8** However, Plaintiff has failed to make a plausible showing that Uhler and Zerniak's adverse actions against him were causally connected to his exercise of protected First Amendment rights. Plaintiff's conclusory assertion that Uhler and Zerniak retaliated against him for filing lawsuits against all of the Defendants and filing grievances during the period 2010 through 2013 lacks the specificity required to state a

claim for retaliation. *See Flaherty,* 713 F.2d at 13 (retaliation claims must be supported by specific facts).

Plaintiff's Amended Complaint is devoid of specific facts regarding the content of the deprivation orders allegedly issued by Uhler and Zerniak, when the orders were issued, and the facts and circumstances surrounding issuance of the orders. Plaintiff's Amended Complaint is likewise devoid of specific facts regarding the lawsuits he relies upon as protected conduct for his retaliation claim the defendants in each, the claims asserted, when they were commenced, the status or outcome, and the temporal proximity between lawsuits in which Uhler and Zerniak were named as defendants and their issuance of deprivation letters or Uhler's removal of Plaintiff's legal papers. [6]

Because Plaintiff has failed to make a plausible factual showing of causation in his Amended Complaint, the Court recommends that his retaliation claim against Uhler and Zerniak be dismissed.

### E. Leave to Amend

As noted above, a claim in a pro se complaint should not be dismissed without granting leave to amend at least once where the complaint, read liberally, gives some indication that a valid claim might be stated. *Cuoco,* 222 F.3d at 112. The District Court has already allowed Plaintiff an opportunity to amend his access to the courts claim. *See Johnson v. McKay,* 2015 **WL** 1735102, at *6. Judge Sannes clearly explained in her Decision granting leave that "[t]o state a claim for denial of access to the courts, plaintiff must plead the underlying claim and facts to plausibly suggest that it is not frivolous." *Id.* at 4. Plaintiff has failed to do so in his Amended Complaint. Given Plaintiff's obvious disregard of Judge Sannes' clear analysis of the deficiencies in his original Complaint and his continued failure in his Amended Complaint to plead specific facts regarding the underlying legal claims and facts in the lawsuits at issue, the Court is disinclined to recommend that the District Court afford Plaintiff another opportunity to amend his access to the courts claim against the Defendants. Therefore, the Court recommends that Plaintiff's First Amendment access to the courts claim be dismissed with prejudice as against all of the Defendants.

Footnotes

However, because Plaintiff's retaliation claim against Uhler and Zerniak is asserted for the first time in his Amended Complaint, and it is not entirely clear that Plaintiff will be unable to assert a valid retaliation claim against one or both of those Defendants, the Court recommends that Plaintiff's retaliation claim against Uhler and Zerniak be dismissed without prejudice, and that Plaintiff be granted leave to file a Second Amended Complaint limited to his retaliation claim against those two Defendants.

**\*9 ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim (Dkt. No. 26) be *GRANTED;* and it is further

**RECOMMENDED** that the dismissal of Plaintiff's access to the courts claim as against all of the Defendants be dismissed with prejudice; and Plaintiff's retaliation claim against Uhler and Zerniak be dismissed without prejudice and with leave to file a Second Amended Complaint limited solely to that claim; and it is hereby

**ORDERED** that the Clerk that the Clerk provide Plaintiff with a copy of this Order and Report–Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d **15**, 16 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b) (1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

### All Citations

Not Reported in F.Supp.3d, 2015 WL 6126878

**1**    Plaintiff is a frequent litigator who is barred from proceeding *in forma pauperis* in federal court absent a showing of an exception to the "three strikes" rule in the Prison Litigation Reform Act of 1996. 42 U.S.C. § 1997e(a). *See Johnson v. Adams,* No. 10 Civ. 1082 (DNH/DEP), 2012 **WL** 3052957, 2012 U.S. Dist. LEXIS 104723 (N.D.N.Y. July 5, 2012) (recounting Plaintiff's litigation history); *Johnson v. McKay,* No. 9:14–CV–0803 (BSK/TWD), 2015 **WL** 1735102, at * 4 n. 2, 2015 U.S. Dist. LEXIS 50014, at * 10 n. 2 (N.D.N.Y. April 16, 2015) (identifying cases filed in the Northern District of New York from 2007 to 2013). This action was commenced in the New York State Supreme Court, County of Franklin and removed to the United States District Court for the Northern District of New York by Defendants on July 2, 2014. (Dkt. No. 1.) Plaintiff's motion to remand was denied by the Hon. Gary L. Sharpe, Chief United States District Judge, by Decision and Order dated December 9, 2014. (Dkt. No. 17.)

**2**    The Court will provide Plaintiff with copies of unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**3**    Plaintiff included the retaliation claim in his Amended Complaint despite the ordering language in Judge Sannes' Memorandum–Decision and Order authorizing Plaintiff to file an Amended Complaint "limited to his claim for denial of access to the courts, to plausibly suggest that he suffered an actual injury." *Johnson v. McKay,* 2015 **WL** 1735102, at * 6. Because the Plaintiff's Amended Complaint can be liberally construed to allege that some of the retaliatory acts were undertaken to deny him access to the courts, the Court has construed the retaliation claim to be within the scope of the grant of leave for purposes of Defendants' Rule 12(b)(6) motion.

**4**    In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal's* effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). The Second Circuit itself has noted that *"Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon." Reynolds v. Barrett,* 685 F.3d 193, 205 n. 14 (2d Cir.2012). The Second Circuit declined to address the issue in *Reynolds,* however. In *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir.2013), the Second Circuit stated that "[*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but again declined to address the issue because it was not adequately pled in the complaint and has not addressed it since that time. The Court will assume for the purposes of this motion that *Colon* remains good law.

**5**    Plaintiff has not identified the prison guards who allegedly retaliated against him, nor has he named any prison guards as defendants. (See Dkt. No. 24 at 1–3, 5.) The Court has therefore disregarded Plaintiff's claim against the non-defendant prison guards.

**6**    As a general matter, it is difficult to establish that a defendant had cause to retaliate against a plaintiff for filing a grievance against another party. *See, e.g., See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when the only alleged basis for retaliation was a complaint about an incident involving another corrections officer); *Guillory v. Ellis,* No. 9:11–CV–600 (MAD/ATB), 2014 **WL** 4365274, at 18, 2014 U.S. Dist. LEXIS 120709, at * 49 (N.D.N.Y. Aug.28, 2014) ("it is difficult to establish one defendant's retaliation for complaints against another defendant"); *Roseboro,* 791 F.Supp.2d at 369 (failure by plaintiff to provide any basis to believe corrections counselor would retaliate for a grievance in which she was not personally named); *Ciaprazi v. Goord,* No. 9:02–CV–915 (GLS/DEP), 2005 **WL** 3531464, at * 8–9, 2005 U.S. Dist. LEXIS 38232, at * 22 (N.D.N.Y. Dec.22, 2005) (granting summary judgment and dismissing retaliation claim based only on plaintiff's conclusory allegations that the manifest falsity of the misbehavior report and testimony during the disciplinary hearing indicate the disciplinary matters were motivated by retaliatory animus due to grievances plaintiff filed against individuals other than the defendants involved in the disciplinary hearing). There is no logical basis for concluding that it would be any less difficult to establish that a lawsuit against another party or parties would give a defendant cause to retaliate.

---

2015 WL 5316209
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Walter J. ROACHE, Plaintiff,

v.

Michael HOGAN, Associate
Commissioner; Forensics Service of
Mental Health, et al., Defendants.

No. 9:13–CV–0253 (BKS/DEP).
|
Signed Sept. 11, 2015.

**Attorneys and Law Firms**

Walter J. Roache, New York, NY, pro se.

Adrienne J. Kerwin, Esq., Hon. Eric T. Schneiderman, Office
of New York State Attorney General, Albany, NY, for
Defendants.

**MEMORANDUM–DECISION AND ORDER**

Hon. BRENDA K. SANNES, District Judge.

**I. Introduction**

 *1 Plaintiff pro se Walter Roache brought this action against
defendants Michael Hogan, Donald Sawyer, Jeff Nowicki
and Shelby Ferguson under 42 U.S.C. § 1983 alleging that
he was improperly denied access to his legal papers at the
Central New York Psychiatric Center (CNYPC) in Marcy,
New York and, as a result, lost the opportunity to pursue
appeals in a pending federal and state case. Dkt. No. 5. On
October 17, 2014, defendants filed a motion for summary
judgment seeking to dismiss the amended complaint. Dkt.
No. 40. Plaintiff filed a response in opposition. Dkt.
No. 44. The motion was referred to United States Magistrate Judge
David E. Peebles who, on August 7, 2015, issued a Report and
Recommendation ("R & R") recommending that defendant's
motion for summary judgment be granted in part and denied
in part. Dkt. No. 49. Magistrate Judge Peebles recommended:
(1) that all of plaintiff's claims asserted against defendants
Nowicki, Sawyer and Hogan be dismissed, and (2) that
plaintiff's denial of access to the courts and retaliation claims

asserted against defendant Ferguson survive defendants'
motion and be set for trial. Dkt. No. 49, at 38–39.

Plaintiff has filed a timely, verified response to the Report and
Recommendation. Dkt. No. 50. Defendant has not responded
to this response. After reviewing plaintiff's response, the
Court adopts the Report and Recommendation in its entirety
for the reasons set forth below.

**II. Standard of Review**

This Court reviews *de novo* those portions of the Magistrate
Judge's findings and recommendations that have been
properly preserved with a specific objection. *Petersen v.
Astrue,* 2 F.Supp.3d 223, 228–29 (N.D.N.Y.2012); 28 U.S.C.
§ 636(b)(1)(C). Findings and recommendations as to which
there was no properly preserved objection are reviewed for
clear error. *Id.* Properly raised objections must be "clearly
aimed at particular findings" in the Report. *Vlad–Berindan
v. MTA N.Y.C. Transit,* No. 14 Civ. 675(RJS), 2014 WL
6982929, at *1, 2014 U.S. Dist. LEXIS 170985, at *3
(S.D.N.Y. Dec.9, 2014); *Petersen,* 2 F.Supp.3d at 228. When
a party files "merely perfunctory responses," attempting
to "engage the district court in a rehashing of the same
arguments set forth in the original petition," the report will
be reviewed for clear error only. *Edwards v. Fischer,* 414
F.Supp.2d 342, 346–47 (S.D.N.Y.2006).

**III. Background**

In his amended complaint, plaintiff alleges that when he was
transferred from Fishkill Correctional Facility on April 29,
2010 to the Central New York Psychiatric Center (CNYP), he
had active pending legal cases; that he was not permitted
to go through all of his legal papers, which were placed in
long term storage; and that, as a result, he lost his right to
appeal in a pending federal case and a pending state case.
Dkt. 5; Dkt. No. 49, pp. 2–7.[1] Plaintiff sought damages
from defendant Shelby Ferguson, who was in charge of
long-term storage at the CNYPC, and three defendants to
whom plaintiff complained after Ferguson allegedly ignored
plaintiff's requests: (1) defendant Nowicki, the Chief of the
Mental Health Treatment Services for the Sex Offender
Treatment Program at CNYPC; (2) defendant Sawyer, the
then-Executive Director of the CNYPC; and (3) defendant
Hogan, the then-Commissioner of the Office of Mental
Health. Dkt. 5. As Magistrate Judge Peebles noted, in addition

to a claim for denial of access to the courts, the complaint, liberally construed, alleges a claim for retaliation, namely that the defendants precluded plaintiff from accessing his legal papers in retaliation for the plaintiff's commencement of an Article 78 proceeding to obtain access to his property. Dkt. No. 5; Dkt No. 49, p. 28.

**\*2** In his Report and Recommendation, Magistrate Judge Peebles concluded that plaintiff has raised triable issues of fact regarding his claims against Ferguson for denial of access to the courts and retaliation, and recommended that the defendants' motion for summary judgment be denied as to those claims against Ferguson. Dkt. No. 49, p. 38–39. Magistrate Judge Peebles recommended that all of plaintiff's claims against defendants Nowicki, Sawyer and Hogan be dismissed. *Id.* Magistrate Judge Peebles concluded that Hogan's referral of a letter which he had received from plaintiff to another individual for response was insufficient to establish Hogan's personal involvement in the denial of access to courts claim. Dkt. No. 49, pp. 12–13. Magistrate Judge Peebles recommended that the denial of access to courts claims against Sawyer and Nowicki be dismissed because there was no record evidence that they acted deliberately and maliciously. Dkt. No. 49, p. 23–24.

Magistrate Judge Peebles recommended that plaintiff's retaliation claim be dismissed against Hogan and Sawyer because there was no evidence from which a reasonable fact finder could find that either of these defendants took an adverse action in retaliation for the plaintiff's Article 78 proceeding. Dkt. No. 49, pp. 32–33. Magistrate Judge Peebles recommended that the retaliation claim against Nowicki be dismissed because plaintiff failed to raise a triable issue of fact that Nowicki retaliated against plaintiff. Dkt. No. 49, pp. 31–32.

### III. Plaintiff's Objections to the Report and Recommendation

To the extent that plaintiff has specifically objected to the findings and recommendations in Magistrate Judge Peebles' Recommendation and Recommendation, the Court has reviewed those objections de novo. [2]

#### A. Plaintiff's Factual Objections

Plaintiff argues that "the issue of importance" is the "sole year" of 2010, because he arrived at the CNYPC on April 29,

2010 and, "[a]t the end of 2010," his federal and state case were " 'dead' and or dismissed, moot, denied." Dkt. No. 50, p. 2. Magistrate Judge Peebles, however, identified plaintiff's federal action related to good time credits as a case that was not dismissed until February 22, 2012. Dkt. No. 49, pp. 18–19. In any event, plaintiff's objection is irrelevant because Magistrate Judge Peebles has recommended that plaintiff's denial of access to the courts claim be set for trial. [3]

Plaintiff's other factual objections are similarly unsupported and irrelevant. Plaintiff argues that it is "totally wrong" to discuss the incident in which he was called to go through his papers in long term storage as one incident because there were in fact two. Dkt. No. 50, pp. 3–4. Plaintiff states that he walked out the first time, when he was taken to the fourth floor to go through his papers, and defendant Shelby Ferguson refused to help plaintiff cut the heavy duty tape surrounding the boxes. Dkt. No. 50, p. 3–5. Plaintiff states that the second time he was taken to review his papers, on September 6, 2011, after Judge Clark had ordered that plaintiff be allowed to organize his property, Ferguson said that "he didn't care what the Judge said, he wasn't giving me nothing." *Id.* at 4. This objection is irrelevant because Magistrate Judge Peebles has recommended that plaintiff's claims against defendant Ferguson, for denial of access to the courts and for retaliation, be set for trial.

**\*3** Plaintiff states that there was a discrepancy between the amount of time defendant Nowicki told Judge Clark that it would take Ferguson to respond to a resident's request for long term storage, and the time stated in declarations filed by Nowicki and Ferguson in this case. *Id.,* at 7–8, 11. Whereas Nowicki told the judge assigned to the Article 78 hearing that they would try to get a box from long term storage for plaintiff "as soon as [they] could," but it may "be a week, it could be two weeks," Ferguson filed an affidavit with the Court stating that he tries to respond to resident's requests for items from long term storage "as soon as possible, but usually within 5 business days." Dkt. No. 40–2, p. 3. Again, this objection is irrelevant because Magistrate Judge Peebles has recommended that plaintiff's claims against defendant Ferguson be set for trial.

#### B. Plaintiff's Legal Objections

Plaintiff primarily argues that Hogan, Sawyer and Nowicki should be held responsible for Ferguson's denial of access to plaintiff's legal papers. [4] Plaintiff states that Hogan, Nowicki and Sawyer refused to get involved in this matter, and argues

that they should be held liable for "refusing to instruct" Ferguson to turn over plaintiff's legal papers. Dkt. No. 50, pp. 13–16, 18, 20–21.

As Magistrate Judge Peebles noted, to establish a denial of access to courts claim, a plaintiff must show that the defendant acted with invidious intent and that the plaintiff suffered an actual injury. Dkt. No. 49, p. 16; *see Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003); *Jean–Laurent v. Lawrence,* No. 12–CV–1502 (JPO), 2015 WL 1208318, at *5, 20015 U.S. Dist. LEXIS 32567, at *10 (S.D.N.Y. Mar.17, 2015). Personal involvement of an individual defendant in an alleged constitutional deprivation "is a prerequisite to an award of damages under § 1983." *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir.2001). *See* Dkt. No. 49, pp. 10–12.

The case law on which plaintiff relies, *Williams v. Smith,* 781 F.2d 319 (2d Cir.1988) and *Turpin v. Mailet,* 619 F.2d 196 (2d Cir.1980), Dkt. No. 50, p. 12, does not support his claim that Hogan, Sawyer and Nowicki should be held responsible for denying plaintiff access to his legal papers. *See, e.g., Williams,* 781 F.2d at 323–24 (finding issue of fact regarding the personal responsibility of a superintendent for depriving plaintiff of the right to call witnesses at a disciplinary hearing when the superintendent affirmed the plaintiff's disciplinary conviction on administrative appeal and "given the frequency with which [the correctional facility] has violated inmates' rights to call witnesses during [the superintendent's] tenure, [may have] accept[ed] a custom or policy at [the correctional facility] allowing that unconstitutional practice to occur") (citations omitted); *Turpin,* 619 F.2d 196 (noting that allegation of a second unlawful arrest claimed to have been caused by a city's policy was sufficient to raise an issue of fact regarding municipal liability under 42 U.S.C. § 1983, but reversing conviction of city for insufficient evidence to support municipal liability).

**\*4** With respect to Hogan, as Magistrate Judge Peebles noted, a supervisor who refers a matter to a subordinate for investigation is not personally responsible, and absent any additional evidence regarding Hogan's involvement in denying plaintiff access to his legal papers, there is insufficient evidence of his personal responsibility. Dkt. No. 49, p. 13; *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). The Report and Recommendation is therefore adopted with respect to the access to courts claim against defendant Hogan. With respect to Sawyer and Nowicki, plaintiff has not objected to Magistrate Judge Peebles' conclusion that

there is no record evidence that they acted deliberately and maliciously. Dkt. No. 49, pp. 23–24. Magistrate Judge Peebles' Report and Recommendation is therefore adopted with respect to the access to courts claim against Sawyer and Nowicki.

The Court has reviewed, for clear error, the portions of the Report and Recommendation to which plaintiff has not specifically objected, and found none.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Peebles' Report and Recommendation (Dkt. No. 49) is **ADOPTED** in its entirety for the reasons stated therein; and it is further

**ORDERED** that defendant's summary judgment motion (Dkt. No. 40) is **GRANTED IN PART AND DENIED IN PART,** and it is further

**ORDERED** that plaintiff's claims against defendants Nowicki, Sawyer and Hogan in the amended complaint (Dkt. No. 5) are **DISMISSED with prejudice;** and it is further

**ORDERED** that defendants Nowicki, Sawyer and Hogan are **DISMISSED** from this action; and it is further

**ORDERED** that to the extent plaintiff asserts a Sixth Amendment claim based on his allegation regarding defendant Ferguson's presence for plaintiff's review of his property on September 6, 2011, it is **DISMISSED with prejudice;** and it is further

**ORDERED** that plaintiff's denial of access to the courts and retaliation claims asserted against defendant Ferguson survive defendants' motion and will be set down for trial; and it is further

**ORDERED** that Clerk of the Court is directed to provide plaintiff with copies of the unpublished opinions cited in this Decision and Order; and it is further [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Walter Roache, a resident of the Central New York Psychiatric Center ("CNYPC"), a facility operated by the New York State Office of Mental Health ("OMH"), has commenced this action against Shelby Ferguson, Jeffrey Nowicki, Michael Hogan, and Donald Sawyer, current and former OMH employees, pursuant to 42 U.S.C. § 1983, alleging that, as a result of being denied access to his legal papers since being placed into the CNYPC, he lost the opportunity to pursue appeals in connection with two legal actions filed by him in state and federal court.

**\*5** Currently pending before the court is a motion for summary judgment brought by defendants seeking dismissal of plaintiff's claims on various grounds. For the reasons set forth below, I recommend that defendants' motion be granted in part, and otherwise denied.

I. *BACKGROUND* [1]

Plaintiff has been civilly confined in the CNYPC, a secure treatment facility operated by the OMH pursuant to New York Mental Hygiene Law § 10.03(o), since on or about April 29, 2010, having been transferred there after being incarcerated at the Fishkill Correctional Facility. *Dkt. No. 5 at 2; Dkt. No. 40–1 at 13*. Upon plaintiff's arrival at the CNYPC, two unidentified individuals employed at the facility began searching his property, including his four laundry bags filled with papers relating to plaintiff's legal actions, for contraband. *Dkt. No. 5 at 2; Dkt. No. 40–1 at 12–13*. According to plaintiff, the two unidentified individuals halted the search before finishing and told him the search would be completed at a later date. *Dkt. No. 5 at 2; Dkt. No. 40–1 at 13*. Approximately one month later, after the search had not been resumed and he had not received any of the legal papers contained in the two bags that had yet to be searched, plaintiff inquired into the matter, and was instructed to "write long-term storage and personal property and tell them what happened." *Dkt. No. 40–1 at 13–14,* 16; *see also* Dkt. No. 5 at 2.

At the times relevant to plaintiff's claims, defendant Ferguson was employed as a Secure Care Treatment Aide I ("SCTA I") and the Property Manager of long-term storage at the CNYPC. [2] *Dkt. No. 40–2 at 1,* 3. Plaintiff claims that he wrote to defendant Ferguson to "explain[ ] what happened and how [he] had never [been provided the opportunity] to review the other half [of his legal papers]." *Dkt. No. 40–1 at 14; see also Dkt. No. 5 at 2*. Plaintiff informed defendant Ferguson that, at the time, he had two cases pending that needed his immediate attention, one filed in federal court regarding his good time credits, and a second pending in state court concerning parole. *Id.* While defendant Ferguson did not respond to plaintiff's requests in writing, he spoke to plaintiff regarding the issue at least two times when he was on plaintiff's gallery. *Dkt. No. 5 at 3; Dkt. No. 40–1 at 22*. On one occasion, defendant Ferguson explained to plaintiff that he needed to "get rid of [some] papers." *Dkt. No. 5 at 3*. On the second occasion, after plaintiff had written several letters, defendant Ferguson threatened to never answer plaintiff's requests if he continued to write letters. *Dkt. No. 40–1 at 22*.

According to plaintiff, because defendant Ferguson ignored his requests, he began to write to (1) defendant Nowicki, the Chief of the Mental Health Treatment Services for the Sex Offender Treatment Program at the CNYPC; (2) defendant Sawyer, the Executive Director of the CNYPC at the relevant times; and (3) defendant Hogan, the former Commissioner of the OMH, for assistance in gaining access to his legal papers located in long-term storage. [3] *Dkt. No. 40–1 at 17– 18,* 19; *see also Dkt. No. 40–3 at 1; Dkt. No. 40–4 at 1; Dkt. No. 40–5 at 1*. Although defendant Nowicki responded to plaintiff's letter, the substance of the response is not clear. *SeeDkt. No. 40–1* (plaintiff testifying vaguely at his deposition that "[defendant Nowicki] said he notified him and he would contact him to do so" without further explanation). [4] Defendant Sawyer wrote plaintiff a letter indicating that he " 'concur[red]' " with defendant Nowicki's decisions regarding the matter. *Id.* at 41–42. Plaintiff does not recall if defendant Hogan ever responded to him. *Id.* at 44.

**\*6** After his efforts to obtain access to his property from OMH officials failed, plaintiff commenced an Article 78 proceeding in Oneida County Supreme Court. [5] *Dkt. No. 5 at 3; Dkt. No. 40–1 at 24*. According to plaintiff, the proceeding was dismissed because he failed to exhaust the available administrative remedies. *Id.* Following the dismissal, plaintiff filed a request for "a reargument," which resulted in Supreme Court Justice Bernadette T. Clark ordering an in-person hearing concerning the matter on August 10, 2011. [6] *Id.* Defendant Nowicki, plaintiff, Attorney Clark, and Jim Williams, a New York State Assistant Attorney General,

appeared at the hearing. *Dkt. No. 5 at 3; Dkt. No. 40–1 at 27.* According to plaintiff, Justice Clark ordered the CNYPC to provide plaintiff an opportunity to review and organize his property in long-term storage.[7] *Dkt. No. 40–1 at 25,* 146; *see also Dkt. No. 5 at 3.*

On or about September 6, 2011, plaintiff was summoned to the fifth floor of the CNYPC pursuant to Justice Clark's order, in order to afford him an opportunity to organize his property that was being held in long-term storage. *Dkt. No. 40–1 at 28.* Aside from plaintiff and Attorney Clark, defendants Ferguson and Nowicki, as well as another individual employed by the OMH, were present. *Id.* at 32; *Dkt. No. 40–4 at 4–5.* According to plaintiff, at some point while he was organizing his papers, defendant Ferguson told him that he would not be permitted to take any of his property with him back to his room despite Justice Clark's order. *Dkt. No. 40–1 at 33;see also Dkt. No. 5 at 3–4.* Defendants Ferguson and Nowicki, however, contend that, after a minute of looking at his belongings, plaintiff "became hostile ... [,] expressed no interest in sorting his documents or property, [and] turned and walked out of the room." *Dkt. No. 40–2 at 4; Dkt. No. 40–4 at 5.* Plaintiff alleges that, after defendant Ferguson refused to permit plaintiff to store any of his property in his room, Attorney Clark agreed to file a motion in Oneida County Supreme Court asking Justice Clark to intervene. *Dkt. No. 40–1 at 36.* According to plaintiff, Justice Clark thereafter rendered another decision again finding that plaintiff had failed to exhaust available administrative remedies. *Id.* at 37–38.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on March 7, 2013, by the filing of a complaint together with an application to proceed *in forma pauperis* ("IFP"), accompanied by a request for the appointment of *pro bono* counsel. Dkt. Nos. 1–3. Although plaintiff's IFP application was granted, Senior District Judge Lawrence E. Kahn denied plaintiff's motion for counsel and dismissed plaintiff's complaint without prejudice to his right to file an amended complaint. *Dkt. No. 4.* On June 18, 2013, plaintiff submitted an amended complaint, which was accepted for filing by Judge Kahn on November 13, 2013. Dkt. Nos. 5, 7. Plaintiff's amended complaint asserts that his rights under the First, Fifth, Sixth, and Fourteenth Amendments have been violated by defendants' refusal to allow him access to his property, including his legal papers, held in long-term storage at the CNYPC. *See generally Dkt.*

*No. 5.* As relief, plaintiff seeks monetary damages in the total amount of nine million dollars. *Id.* at **15**.

**\*7** Following the close of discovery, defendants filed the currently pending motion for summary judgment requesting dismissal of all plaintiff's claims based on (1) the lack of personal involvement of defendants Sawyer and Hogan, (2) the lack of evidence demonstrating a genuine dispute of material fact with respect to whether plaintiff's rights have been violated, and (3) qualified immunity. *See generally Dkt. No. 40–7.* Defendants' motion, to which plaintiff has responded in opposition, *Dkt. No. 44,* has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Legal Standard Governing Motions for Summary Judgment*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of N.Y.,* 426 F.3d 549, 553 (2d Cir.2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Personal Involvement*

**\*8** Defendants seek dismissal of all claims asserted against defendants Sawyer and Hogan, arguing that neither of them was personally involved in any of the allegations giving rise to plaintiff's constitutional claims. *Dkt. No. 40–7 at 5–8.*

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). To prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.,* No. 91–CV–8135, 1994 **WL** 23069, at \*3 (S.D.N.Y. Jan.24, 1994).

As the former Executive Director of the CNYPC and Commissioner of the OMH, respectively, defendants Sawyer and Hogan cannot be liable for damages under section 1983 solely by virtue of being supervisors, "and [liability] cannot rest on *respondeat superior.*" *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Instead, to establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional

practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

The evidence before the court with respect to the personal involvement of both defendants Sawyer and Hogan is similar. In his amended complaint, plaintiff contends that he sent letters to those individuals complaining about being unable to access his personal belongings in long-term storage "to no avail." *Dkt. No. 5 at 3.* At his deposition, plaintiff originally stated that he could not recall if he ever received a response from defendant Hogan regarding his complaints about his property in long-term storage. *SeeDkt. No. 40–1 at 44.* Later in the deposition, however, plaintiff testified as follows:

**\*9** Q Is there a letter from the Commissioner telling— dealing with the papers that you didn't get originally? Did you ever get anything from the Commissioner about that? About the stuff what you are talking about today?

A Yes.

Q Okay. What did it say?

A Basically, it's up to Nowicki and his staff.

Q Okay. So Sawyer said it's up to Nowicki. Sawyer is the director.

A Everybody says it's up to him

Q Okay. I just wanted to go through them all. Sawyer says, 'I defer to Nowicki?' "

A Right.

Q And then Hogan says it's up to Nowicki?

A Right.

*Dkt. No. 40–1 at 56–57.*

Although defendant Hogan has no independent recollection of plaintiff or his individualized needs, *Dkt. No. 40–3 at 5,* the record reflects that defendant Hogan received a letter from the plaintiff and referred the matter to John Culkin, the Director of the Bureau of Sex Offender Evaluation and Treatment at

the OMH. *Dkt. No. 40–1 at 71.* Culkin, in turn, informed plaintiff that, because the CNYPC was already investigating plaintiff's complaints, "it would be inappropriate for the Central Office to become involved in [his] case." *Id.* Because it is well established that a supervisor cannot be deemed personally involved if he refers the matter to a subordinate for response or investigation, and because there is no additional evidence that demonstrates defendant Hogan's involvement in plaintiff's allegations regarding his property in long-term storage, I recommend the court dismiss the claims asserted against defendant Hogan. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *accord, Rivera v. Fischer,* 655 F.Supp.2d 235, 238 (W.D.N.Y.2009).

With respect to defendant Sawyer, the only evidence implicating him in the allegations that plaintiff was denied access to his property in longterm storage is plaintiff's deposition testimony that, in response to a letter, defendant Sawyer deferred to defendant Nowicki's decisions. *See, e.g., Dkt. No. 40–1 at 56–57.* Neither the letter from plaintiff to defendant Sawyer nor that from defendant Sawyer to plaintiff is in the record for the court to verify this testimony. While denying any independent recollection of plaintiff's specific requests in his declaration submitted in support of defendants' motion, defendant Sawyer states that, in the ordinary course of business, he would "assign staff to investigate the complaint." *Dkt. No. 40–5 at 3, 5.* In addition, although defendant Sawyer explains that plaintiff's attorney wrote to him in January 2011, regarding a search of plaintiff's room, that incident is not related to plaintiff's allegations that he has been denied access to his belongings in long-term storage. *Id.* at 4. Based on the evidence before the court, I find that a genuine dispute of material fact exists as to whether defendant Sawyer received plaintiff's letter and independently investigated his complaints before responding. Although it certainly seems plausible that, like defendant Hogan, defendant Sawyer may have referred the matter to a subordinate for investigation, the absence of any independent evidence to verify defendant Sawyer's suspicion that he did, in fact, refer it is enough to raise a genuine dispute of material fact. Plaintiff consistently testified at his deposition that defendant Sawyer responded to his letter and deferred to defendant Nowicki's decisions. *Dkt. No. 40–1 at 41,* 56–57. Defendant Sawyer, on the other hand, has only provided evidence suggesting that, notwithstanding his failure to independently recall plaintiff's individualized needs, he would have referred the matter to a subordinate in the ordinary course of business. *Dkt. No. 40–5 at 3,* 5. Based on the evidence, I find that a reasonable

factfinder could conclude, if plaintiff's testimony is credited, that defendant Sawyer learned about plaintiff's alleged constitutional violations and failed to remedy them by simply deferring to defendant Nowicki's decisions. Accordingly, I recommend the defendants' motion be denied to the extent it seeks dismissal of plaintiff's claims against defendant Sawyer based on lack of personal involvement.

## C. *Plaintiff's Access to Courts Claim* [8]

**\*10** Defendants also seek dismissal of plaintiff's First Amendment denial of access to the courts claim based on their contention that no reasonable factfinder could conclude that (1) plaintiff suffered any prejudice as a result of defendants' actions, or (2) defendants acted deliberately and maliciously. *Dkt. No. 40–7 at 9–13.*

Undeniably, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *accord, Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts.*" (emphasis in original)). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents, or file them[.]" *Lewis,* 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis,* 320 F.3d at 351. Second, a plaintiff must demonstrate that he suffered an actual injury. *Id.*

### 1. *Actual Injury*

Plaintiff contends that he was prejudiced by defendants' refusal to allow him access to his legal papers in long-term storage since he arrived at the CNYPC in April 2010, because he was precluded from filing an appeal in two particular cases, both of which plaintiff was unable to identify except to describe the first as a federal court case filed in this district, related to good time credits, and the second as a state court case concerning parole. *Dkt. No. 5 at 1,* 5; *Dkt. No. 40–1 at 14–***15***,* 33–34, 61–62. Plaintiff contends that, because he was denied access to his papers, he cannot provide the case numbers or any other identifying information for these actions. *Dkt. No. 5 at 9.*

According to the Federal Judiciary's Public Access to Court Electronic Records ("PACER") system, aside from this pending lawsuit, plaintiff has filed three actions in the Northern District of New York, including (1) *Roache v. Schneiderman* ("*Roache I* "), No. 12–CV–1034 (N.D.N.Y. filed June 26, 2012); (2) *Roache v. Connell* ("*Roache II* "), No. 09–CV–1302 (N.D.N.Y. filed Nov. 20, 2009); and (3) *Roache v. Connell* ("*Roache III* "), No. 06–CV–0200 (N.D.N.Y. filed Feb. 15, 2006). Because *Roache I* was commenced by plaintiff after his transfer into the CNYPC and judgment was entered closing *Roache III* in 2006, years before his arrival at the CNYPC, those actions cannot be the ones to which plaintiff refers when he contends, in this case, that he was denied access to his legal papers concerning good time credits. In addition, *Roache I* was a civil rights action asserting a due process claim based on an allegation that plaintiff was unlawfully detained in the CNYPC, and did not involve good time credits. *See generally Roache I,* No. 12–CV–1034, *Dkt. No. 1.* In the same vein, plaintiff filed a petition for writ of habeas corpus in *Roache III* that sought review of state court decisions and did not concern good time credits. *See generally Roache III,* No. 06–CV–0200, *Dkt. No. 7.* Plaintiff's petition for writ of habeas corpus in *Roache II,* however, does contain allegations regarding good time credits, and the case was pending at the time plaintiff was transferred into the CNYPC. *See generally Roache II,* No. 09–CV–1302. Accordingly, for purposes of this action, I have assumed that plaintiff is referring to *Roache II* when he contends he was denied access to his legal papers concerning a federal court case filed in this district involving good time credits. [9]

**\*11** Turning now to whether plaintiff suffered an actual injury from the alleged denial of access to his papers in connection with *Roache II,* plaintiff contends that the lack of access precluded him from appealing the dismissal of his petition. *See, e.g., Dkt. No. 5 at 10; Dkt. No. 40–1 at 15.* On February 22, 2012, Senior District Judge Frederick J. Scullin, Jr., issued a decision and order dismissing plaintiff's petition in *Roache II* based on multiple grounds, including that plaintiff asserted claims that are not cognizable on federal habeas review. *Roache II,* No. 09–CV–1302, *Dkt. No. 28.* Plaintiff does not allege, and there is no indication from the docket sheet in *Roache II,* that he did not receive this decision and order. To appeal the order, plaintiff would have been required to file a motion with the Court of Appeals for the Second Circuit requesting the issuance of a certificate of appealability ("COA") since Judge Scullin did not issue

one, finding that plaintiff had "failed to make a substantial showing of the denial of a constitutional right as 28 U.S.C. § 2253(c)(2) requires[.]" *Dkt. No. 28 at 14* (quotation marks omitted). Pursuant to 28 U.S.C. § 2253, "[u]nless a circuit justice or judge issues a[COA], an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). The Second Circuit requires any motion for a COA to include the following materials:

> (1) the Court's Form T–1080 Motion Information Statement, (2) a copy of the district judge's decision denying the COA, and (3) a statement that (a) identifies each issue to be raised on appeal and the relevant facts and (b) makes a substantial showing of the denial of a constitutional right as to each issue.

HOW TO FILE HABEAS CORPUS PETITIONS OR APPEALS, http://www.ca2.uscourts.gov/ clerk/case_filing/ appealing_a_case/pdf/How % 20to% 20File% 20a% 20Prisoner% 20Habeas% 20Appeal.pdf (last visited July 29, 2015). Assuming it is true that, as plaintiff alleges, he was not granted access to his legal papers regarding *Roache II* after arriving at the CNYPC in April 2010, a reasonable factfinder could conclude that plaintiff would have been unable to "make[ ] a substantial showing of the denial of a constitutional right" without access to those papers. Depending on the issues raised in plaintiff's motion for COA, it seems likely he would need to refer to his legal papers in connection with the action. For this reason, I find the record before the court gives rise to a genuine dispute of material fact as to whether plaintiff suffered an actual injury with respect to defendants' alleged decision to deny plaintiff access to his legal papers in long-term storage concerning the federal court case to which plaintiff refers. [10]

As it relates to plaintiff's contention that he could not appeal one of his cases filed in state court regarding parole, defendants have provided a list of all of plaintiff's cases filed in New York State and argue that "there is no admissible evidence that any deadline to file a notice of appeal or perfect an appeal was missed because the plaintiff could not access documents." *Dkt. No. 40–7 at 10–11; Dkt. No. 40–1 at 185– 200.* This contention, however, ignores plaintiff's allegations contained both in his verified complaint and his deposition testimony—both of which constitute admissible evidence—

that he was unable to file an appeal in connection with a state court case concerning parole. *Dkt. No. 5 at 5,* 9, 13, 14; *Dkt. No. 40–1 at 15,* 62–63. Defendants have offered only a list of plaintiff's state cases, without any accompanying context, docket sheets, or proof that would demonstrate that plaintiff's lack of access to his legal papers did not cause him to miss an opportunity to file an appeal. Accordingly, because there is nothing in the record that disputes plaintiff's testimony concerning whether he was precluded from filing an appeal, I find that a genuine dispute of material fact exists as to whether plaintiff suffered an actual injury by defendants' alleged failure to allow plaintiff access to his legal papers.

### 2. *Deliberate and Malicious Intent*

**\*12** To succeed on his court access claim, plaintiff must also show, in addition to actual injury, that defendants acted deliberately and maliciously in denying him access. *See, e.g., Dawes v. VanBenschoten,* 21 F. App'x 29, 31 (2d Cir.2001) (citing *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987)). This inquiry turns on whether the defendant under consideration "intended to hinder a plaintiff's ability to obtain a remedy in a court of law." *Rodriguez v. Diaz,* No. 05–CV– 1831, 2011 WL 3427147, at \*3 (S.D.N.Y. Aug. 3, 2011); *see also Davis,* 320 F.3d at 351 ("To state a claim for denial of access to the courts ... a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim."); *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1989) (finding the *pro se* plaintiff's complaint stated a claim for denial of access to the courts where the complaint could "reasonably be read to allege that state prison officials intentionally violated [the plaintiff's] right of reasonable access to the courts"). Because I have recommended dismissal of plaintiff's claims against defendant Hogan based on lack of personal involvement, I have analyzed this element of plaintiff's denial of access to the courts claim only as against defendants Sawyer, Nowicki, and Ferguson.

### i. *Defendant Sawyer*

The only evidence regarding defendant Sawyer's involvement in allegedly denying plaintiff access to the courts is plaintiff's testimony that, in response to a letter from plaintiff complaining of being denied access to his property in long-term storage, defendant Sawyer deferred to defendant Nowicki's decisions. *See, e.g., Dkt. No. 40–1 at 56–57.* Neither the letter from plaintiff to defendant Sawyer nor that from defendant Sawyer to plaintiff is in the record and available to corroborate this testimony. Even assuming

he failed to remedy plaintiff's complaints, and was thus personally involved, there is no record evidence upon which a reasonable factfinder could conclude that defendant Sawyer acted deliberately and maliciously. Accordingly, I recommend plaintiff's access to the courts claim asserted against defendant Sawyer be dismissed on this basis.

### ii. *Defendant Nowicki*

The record is similarly devoid of any evidence from which a reasonable factfinder could conclude that defendant Nowicki acted deliberately and maliciously. The record reflects that defendant Nowicki responded to plaintiff's letters, in which he complained of being denied access to his property in long-term storage, and informed plaintiff he would contact defendant Ferguson in an attempt to remedy the situation. *Dkt. No. 40–1 at 19.* In addition, defendant Nowicki was present at the hearing before Justice Clark concerning plaintiff's Article 78 petition and seemingly cooperated with the judge and plaintiff's own attorney in accommodating plaintiff's requests. *Id.* at 123. According to plaintiff's own testimony, while he was examining his legal papers held in long-term storage on September 6, 2011, defendant Nowicki appeared and asked whether " 'everything was going all right.' " *Id.* at 32. In light of this evidence, and the lack of any evidence to suggest defendant Nowicki intentionally denied plaintiff access to his legal papers, no reasonable factfinder could conclude that defendant Nowicki acted deliberately and maliciously in denying plaintiff access to the courts. Accordingly, I recommend that this claim be dismissed as against defendant Nowicki.

### iii. *Defendant Ferguson*

**\*13** Plaintiff alleges defendant Ferguson denied him access to his legal papers by continuously refusing to retrieve plaintiff's papers from long-term storage and denying plaintiff permission to store any of his legal documents, apparently in violation of Justice Clark's order. *Dkt. No. 5 at 7,* 9; *Dkt. No. 40–1 at 33.* At his deposition, plaintiff testified that, when he made an inquiry to defendant Ferguson regarding his long-term storage requests, defendant Ferguson responded, " 'If you keep writing, I am never going to answer you.' " *Dkt. No. 40–1 at 22.* Defendant Ferguson also allegedly told plaintiff that he "didn't care what [Justice Clark] said" and denied plaintiff permission to hold onto any of his papers in long-term storage. *Dkt. No. 5 at 4; Dkt. No. 40–1 at 33.*

Defendant Ferguson, on the other hand, contends that he "retrieved the item/items [in long-term storage requested by

plaintiff] to the best of his abilities" when plaintiff submitted requests. *Dkt. No. 40–2 at 4*. He and defendant Nowicki also maintain that, contrary to plaintiff's allegation that defendant Ferguson ignored Justice Clark's order on September 6, 2011, plaintiff became hostile and "expressed no interest in sorting his documents or property, turned and walked out of the room." *Id.* In viewing the foregoing evidence in the light most favorable to plaintiff, I find that a reasonable factfinder could infer, if plaintiff's testimony is credited, that defendant Ferguson deliberately and maliciously interfered with his access to the courts by denying him access to his legal papers in long-term storage.

In summary, although there exists a genuine dispute of material fact with respect to whether plaintiff suffered an actual injury in connection with his alleged lack of access to his legal papers, a reasonable factfinder could conclude that only defendant Ferguson denied plaintiff access to this property with the requisite intent. [11]

### D. *Plaintiff's Retaliation Claim*

In their motion, defendants also seek dismissal of plaintiff's retaliation claim asserted against all of them based on plaintiff's failure to "identify any alleged reason why [they] would do so." *Dkt. No. 40–7 at 13*.

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.,* 210 F.3d 79, 85 (2d Cir.2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). The Second Circuit has cautioned, however, that, because of "the ease with which claims of retaliation may be fabricated, courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995); *accord, Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2013).

**\*14** To establish a claim under section 1983 for unlawful retaliation, a plaintiff must prove that (1) he engaged in protected conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against

the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Garrett v. Reynolds,* No. 99–CV–2065, 2003 **WL** 22299359, at *4 (N.D.N.Y. Oct.3, 2003) (Sharpe, M.J.). "[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similar situated individual or ordinary firmness from exercising his or her constitutional rights.' " *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)).

In this case, liberally construed, plaintiff's complaint asserts a retaliation claim against the defendants based on an allegation that they precluded him access to his legal papers in long-term storage in retaliation for his filing the Article 78 proceeding. *Dkt. No. 5 at 3–4,* 14. The filing of an Article 78 proceeding is a protected activity under the First Amendment, *see, e.g., Cabassa v. Gummerson,* No. 01–CV–1039, 2008 **WL** 4416411, at *22 (N.D .N.Y. Sept. 24, 2008) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.), and depriving an inmate access to legal papers may constitute adverse action, *see, e.g., Smith v. City of N.Y.,* No. 03–CV–7576, 2005 **WL** 1026551, at *3 (S.D.N.Y. May 3, 2005). Thus, the question in this case is whether there is sufficient record evidence from which a reasonable factfinder could conclude that there is a causal connection between plaintiff's filing of the Article 78 petition and defendants' alleged denial of access to his legal papers.

### 1. *Defendant Ferguson*

With respect to defendant Ferguson, there is evidence that, in denying plaintiff permission to store any legal papers from long-term storage in his room on September 6, 2011, defendant Ferguson told plaintiff he "did not care who said what" and that "he didn't care what [Justice Clark] said, he was doing what he wants, and that [plaintiff] wasn't getting nothing [sic]." *Dkt. No. 5 at 4*. Assuming these allegations are true, a reasonable factfinder could infer that defendant Ferguson was motivated by plaintiff's Article 78 petition in denying plaintiff permission to store his property. Although defendant Ferguson did not explicitly credit plaintiff's Article 78 proceeding for his decision to deny plaintiff permission, when these statements are considered in conjunction with the evidence demonstrating that, in April and August 2010, approximately a year prior to the Article 78 hearing before Justice Clark in August 2011, he was granted at least some access to his property in long-term storage, *Dkt. No. 40–1 at 121; Dkt. No. 40–2 at 4,* a factfinder could conclude that it was the Article 78 proceeding that motivated defendant

Ferguson to deny plaintiff permission to store his property in his room on September 6, 2011. Said differently, the record demonstrates that, while defendant Ferguson may have denied plaintiff access to his property in long-term storage for a certain period of time after plaintiff was transferred into the CNYPC, *Dkt. No. 5 at 7,* 9, 10; *Dkt. No. 40–1 at 16–17,* there is also evidence that defendant Ferguson, as the property manager for the CNYPC, granted plaintiff's requests for access before the Article 78 hearing. *See e.g., Dkt. No. 40–1 at 121; Dkt. No. 40–2 at 4.* Defendant Ferguson's statements on September 6, 2011, which reference the hearing, could give rise to an inference that, on that date, he intended to retaliate against plaintiff for obtaining a favorable ruling from Justice Clark. In addition, when defendant Ferguson's statements from September 6, 2011, are considered in conjunction with plaintiff's allegation that he had earlier told plaintiff that he would never respond if plaintiff continued to write letters requesting access to his long-term storage, it seems reasonable that a factfinder may conclude that defendant Ferguson developed a pattern of retaliatory conduct with respect to plaintiff and his requests for access to his property in long-term storage. [12] For these reasons, I recommend the court deny defendants' motion with respect to plaintiff's retaliation claim asserted against defendant Ferguson.

### 2. *Defendant Nowicki*

**\*15** Turning to defendant Nowicki, plaintiff alleges in his complaint that, after the Article 78 hearing, defendant Nowicki "allowed [defendant] Ferguson to continue with [his] abuse of authority and commit contempt of court [.]" [13] *Dkt. No. 5 at 14.* Additionally, when asked if he wrote to defendant Nowicki after September 6, 2011, at which time defendant Ferguson refused to allow plaintiff to store some of his property in his room, plaintiff responded that he wrote to defendant Nowicki "off and on throughout the months" because more papers were subsequently confiscated after that date. *Dkt. No. 40–1 at 46.* Plaintiff also testified that he wrote letters to "everybody" after he was denied his legal papers on September 6, 2011. *Id.* at 44, 46. Even assuming all of this is true, however, it does not give rise to a genuine dispute of material fact with respect to whether defendant Nowicki's actions were motivated by retaliatory intent for plaintiff filing an Article 78 petition. Plaintiff's vague allegation that he wrote "everybody" after September 6, 2011, apparently with no satisfactory response, fails to demonstrate that defendant Nowicki retaliated against plaintiff for engaging in any protected activity. Instead, the evidence demonstrates that

defendant Nowicki was cooperative during and after the Article 78 proceeding, answering Justice Clark's questions, scheduling the meeting on September 6, 2011, for plaintiff to organize his legal papers pursuant Justice Clark's order, and checking-in during the meeting to be sure " 'everything [was] going all right.' " *Dkt. No. 40–1 at 32,* 137, 146, 154; *Dkt. No. 40–4 at 69.*

Even construing the evidence in the light most favorable to plaintiff, no reasonable factfinder could conclude that defendant Nowicki retaliated against plaintiff for filing an Article 78 petition. Accordingly, I recommend the court dismiss plaintiff's retaliation claim asserted against defendant Nowicki.

### 3. *Defendants Hogan and Sawyer*

As for defendants Hogan and Sawyer, there is no record evidence from which a reasonable factfinder could conclude that either of these defendants took adverse action against plaintiff in retaliation for plaintiff filing an Article 78 petition. With respect to defendant Sawyer, there is no evidence that he was aware of the Article 78 proceeding. As to defendant Hogan, while plaintiff alleges in his complaint that defendant Hogan became aware of the Article 78 proceeding through defendant Nowicki, these are conclusory and insufficient to support a finding that defendant Hogan's conduct was motivated by plaintiff's protected activity. *Dkt. No. 5 at 14.* Even assuming, however, that defendant Hogan learned of the Article 78 proceeding, the only evidence regarding the alleged adverse action by defendant Hogan is plaintiff's allegation that, after the incident with defendant Ferguson on September 6, 2011, he wrote "everybody"—without alleging or otherwise providing any proof that (1) "everybody" included defendant Hogan, (2) defendant Hogan failed to respond to plaintiff's satisfaction, or (3) assuming defendant Hogan failed to respond to plaintiff's satisfaction, he did so with retaliatory animus for the Article 78 proceeding. Accordingly, in light of the absence of any evidence from which a reasonable factfinder could conclude that either defendant Sawyer or defendant Hogan retaliated against plaintiff for filing an Article 78 proceeding, I recommend the court grant defendants' motion with respect to plaintiff's retaliation claim asserted against these individuals.

### E. *Plaintiff's Sixth Amendment Claim*

**\*16** To the extent plaintiff asserts a Sixth Amendment claim based on his allegation that defendant Ferguson violated the attorney-client privilege by remaining present for plaintiff's

review of his property on September 6, 2011, I recommend it be dismissed. The Sixth Amendment "only protect[s] the attorney-client relationship from intrusion in the criminal setting[.]" *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Because plaintiff's allegations regarding defendant Ferguson's conduct do not arise in the context of a criminal proceeding, plaintiff has failed to assert a cognizable constitutional right.

### F. *Qualified Immunity*

Defendants contend that they are all entitled to qualified immunity because "it was objectively reasonable for [them] to believe that they were not violating plaintiff's constitutional rights." *Dkt. No. 40–7 at* **15**. Because I have recommended the dismissal of all claims against defendants Nowicki, Hogan, and Sawyer, I will proceed with analyzing defendants' qualified immunity argument with respect to only plaintiff's court access claim and retaliation claims against defendant Ferguson.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* —— U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012); *see also Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Sudler v. City of N.Y.,* 689 F.3d 159, 174 (2d Cir.2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably ." *Pearson,* 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler,* 689 F.3d at 174 (citing *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *abrogated on other grounds by Pearson,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson,* 555 U.S. at 231 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir.2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a statutory or constitutional right, and if so, whether that right "was clearly established at the time of the challenged conduct." *Terebesi v. Torreso,* 764 F.3d 217, 230 (2d Cir.2014) (citing *Reichle,* 132 S.Ct. at 2093). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (quotation marks and alterations omitted). "To this end, a plaintiff need not show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Terebesi,* 764 F.3d at 230 (quoting *al-Kidd,* 131 S.Ct. at 2083). However, '[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) (citations omitted). This "objective reasonableness" part of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

**\*17** In this instance, plaintiff's rights to access the courts and to be free from retaliation for engaging in a protected activity were firmly established at the time defendant Ferguson allegedly violated those rights, and defendants do not contest this point. Instead, defendants argue that, even assuming defendant Ferguson did violate plaintiff's rights, he lacked the requisite knowledge, "constructive or actual, that [his] conduct violated plaintiff's constitutional rights." *Dkt. No. 40–7 at* **15**. This contention, however, is not borne out in the record. The record exposes genuine disputes of material fact with respect to whether defendant Ferguson denied plaintiff access to his legal papers with the requisite deliberate and malicious intent and whether he did so with retaliatory animus for plaintiff filing an Article 78 petition in state court. In his declaration submitted in support of the pending motion, defendant Ferguson states that he "retrieved the item/items [requested by plaintiff]" on different occasions, and that he was present on two occasions while plaintiff went through and

sorted some of his property held in long-term storage. *Dkt. No. 40–2 at 4*. This evidence, however, fails to resolve the disputes of material fact regarding plaintiff's access to courts and retaliation claims, and, accordingly, precludes a finding of qualified immunity at this juncture. Assuming a reasonable factfinder credits plaintiff's allegations regarding defendant Ferguson's conduct, no reasonable person in defendant Ferguson's position would believe that he was not violating plaintiff's rights. Moreover, as was noted above, to the extent defendants seek to rely on a CNYPC policy regarding the amount of personal property a resident may store in his room as justification for their conduct, there is no evidence in this matter that plaintiff violated this rule or that he would have violated this rule had defendant Ferguson permitted him to access his legal paper in long-term storage, as requested on numerous occasions by plaintiff. Accordingly, I recommend the court deny defendants' motion to the extent it seeks a finding of qualified immunity.

## IV. *SUMMARY AND RECOMMENDATION*

Although no reasonable factfinder could conclude that defendants Nowicki, Sawyer, and Hogan violated plaintiff's rights to access the courts or to be free from adverse action in retaliation for engaging in protected activity, the record now before the court contains genuine disputes of material fact regarding whether defendant Ferguson deliberately and maliciously denied plaintiff access to his legal papers in long-term storage and whether he did so out of retaliation for plaintiff's filing of an Article 78 petition in state court. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (*Dkt. No. 40* ) be GRANTED in part and DENIED in part, as follows:

(1) All of plaintiff's claims asserted against defendants Nowicki, Sawyer, and Hogan be DISMISSED; and

**\*18** (2) Plaintiff's denial of access to the courts and retaliation claims asserted against defendant Ferguson survive defendants' motion and be set down for trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed Aug. 7, 2015.

**All Citations**

Slip Copy, 2015 WL 5316209

## Footnotes

1    The Court adopts the thorough background of this case set forth in Magistrate Judge Peebles' Report and Recommendation.

2    The Court has not considered plaintiff's factual allegations that have nothing to do with Magistrate Judge Peebles' Report and Recommendation. *See* Dkt. No. 50, pp. 8–9 (complaining that staff take pictures of a resident's room before staff searches but not after the searches and noting that defendant Nowicki said they would look into it); *Id.,* pp. 9–10 (complaining that CNYP fails to file reports or investigations of staff assaults on residents).

3    Evidence of events occurring after 2010 is also related to plaintiff's claim that the defendants retaliated against him for commencing an Article 78 proceeding. Dkt. No. 49, pp. 26–33.

4    Plaintiff's discussion of qualified immunity, Dkt. No. 50, pp. 13, 16, is irrelevant because Magistrate Judge Peebles recommended rejecting defendants' argument regarding qualified immunity. Dkt. No. 49, p. 38. Plaintiff's discussion of how he was unable to prevail in his two pending legal cases, Dkt. No. 50, pp. 19–21, is irrelevant because Magistrate Judge Peebles concluded that plaintiff had raised a triable issue of fact regarding whether he suffered an actual injury by the denial of access to his legal papers. Dkt. No. 49, p. 22.

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

2    In July 2011, defendant Ferguson was promoted to Secure Care Treatment Aide II ("SCTA II"). *Dkt. No. 40–2 at 5.*

**3**     Defendant Sawyer left his position at the CNYPC in June 2011. *Dkt. No. 40–5 at 1.* Defendant Hogan left the OMH in October 2012. *Dkt. No. 40–3 at 1.*

**4**     Attached to defendant Nowicki's declaration submitted in support of defendants' motion for summary judgment are memoranda addressed to plaintiff from defendant Nowicki in response to various letters from plaintiff. *Dkt. No. 40–4 at 18,* 20, 26, 33, 36, 39, 41, 52, 55. The earliest memorandum, however, is dated November 10, 2010, and responds to a complaint from plaintiff regarding a search of his room by OMH officials. *Id.* at 18. None of the memoranda respond to complaints from plaintiff regarding access to his property in long-term storage. *Dkt. No. 40–4 at 18,* 20, 26, 33, 36, 39, 41, 52, 55.

**5**     Although the record reflects some indication that plaintiff was granted access to at least some of his belongings in long-term storage with help from his attorney, Stephen Clark, Esq. in April and June 2011, it is not clear whether that occurred prior to the filing of plaintiff's Article 78 petition. *Dkt. No. 40–1 at 123,* 135–36.

**6**     Plaintiff's amended complaint in this action states that the hearing occurred on September 10, 2011. *Dkt. No. 5 at 3.* This appears to be a mistake because, at his deposition in connection with this matter, plaintiff was asked to read the date appearing on the transcript of the hearing, and he answered, "Oh, yeah. August 10, 2011." *Dkt. No. 40–1 at 26.*

**7**     It does not appear that Justice Clark's directive was memorialized in any written decision or order.

**8**     Plaintiff characterizes this claim in his complaint in various ways, including describing defendants conduct as violating the First, Fifth, Sixth, and Fourteenth Amendments. *See generallyDkt. No. 5.* Although it could be construed as a substantive due process claim brought under the Fourteenth Amendment, the Supreme Court has instructed that, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotation marks omitted); *Butler v. Hogue,* No. 08–CV–0264, 2010 **WL** 4025886, at *2 (N.D.N.Y. Oct. 13, 2010) (Sharpe, J.). Thus, plaintiff's causes of action related to his allegations of the denial of access to his legal papers should be analyzed under the First Amendment, applicable through the Fourteenth Amendment, rather than as asserting a substantive due process cause of action.

**9**     At his deposition in connection with this matter, plaintiff testified that he believed he commenced the federal court case to which he refers "in 2007 or something like that." *Dkt. No. 40–1 at* **15**. According to PACER, however, plaintiff did not commence any action in this district in 2007.

**10**     It is worth noting that the docket sheet in *Roache II* reflects that plaintiff was able to, and did, contact the court on two occasions between the time that he was transferred into the CNYPC and when Judge Scullin dismissed his petition. *Roache II,* No. 09–CV–1302, Dkt. Nos. 24, 26. In a letter dated September 27, 2010, plaintiff requested a status update regarding the action and identified the matter with the correct case number. *Roache II,* No. 09–CV–1302, *Dkt. No. 24 at 1.* On or about July 1, 2011, plaintiff again wrote a letter to the court requesting he be released "on his own recognizance or on reasonable bail." *Roache II,* No. 09–CV–1302, *Dkt. No. 26.* These letters rebut plaintiff's allegation that he did not have the case numbers for any of the actions to which his legal papers in long-term storage relate. The letters do not, however, provide any meaningful evidence that plaintiff was not denied access to his legal papers. In this regard, the letters merely reflect that plaintiff could access the court with respect to *Roache II,* not that defendants did not deny him access to his legal papers in connection with the action. Nevertheless, it is curious that plaintiff did not complain to the court in either of the letters about being denied access to his legal papers. It is also noteworthy that plaintiff also failed to claim that he was denied access to his legal papers in his notice of appeal to the Second Circuit of Judge Scullin's decision dismissing the habeas petition in *Roache II,* which plaintiff filed on July **15**, 2015. *Roache II,* No. 09–CV–1302, *Dkt. No. 30* . While the absence of any complaint in these filings raises a suspicion regarding the plausibility of plaintiff's allegations, it does not necessarily disprove them.

**11**     Defendants implicitly contend that plaintiff was denied access to his property in long-term storage, including his legal papers, because allowing him to do so would violate CNYPC rules regarding the limits on storing personal property in his room. *Dkt. No. 40–7 at 11.* There is no record evidence to support this conclusion. While defendants Ferguson and Nowicki explain the CNYPC rule regarding the limitations on personal property storage in their declarations submitted in support of the pending motion, they fail to provide necessary context by adducing evidence that plaintiff violated this rule at any time or that plaintiff was denied access to his property because doing so would create a violation of the rule. *See Dkt. No. 40–2 at 2–3; Dkt. No. 40–4 at 2–3.* Accordingly, to the extent defendants seek to evade liability on plaintiff's access to the courts claim on the basis that they were enforcing a policy reasonably related to legitimate penological interests, *Arce v. Walker,* 58 F.Supp.2d 39, 44 (W.D.N.Y.1999), I find there is no evidence to support a conclusion that plaintiff violated any CNYPC policy.

12    Although plaintiff testified at his deposition that defendant Ferguson warned him that, if he continued to write letters, defendant Ferguson would not respond, I do not construe this as asserting a retaliation claim based on defendant Ferguson's alleged refusal to answer plaintiff's letters or provide plaintiff with access to his property in longterm storage out of retaliation for plaintiff writing his letter requests. Plaintiff's complaint does not contain allegations to this effect, and the primary focus of plaintiff's complaint, deposition testimony, and opposition to the pending motion is on his denial of court access claim.

13    In his complaint and during his deposition in connection with this matter, plaintiff consistently characterized defendant Ferguson's refusal to give him his legal papers after the Article 78 hearing as "contempt of court." *Dkt. No. 5 at 12; Dkt. No. 40–1 at 37.*

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, David L. Cochran, Esq., of Counsel, New York, NY, for Defendants.

## DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* civil rights action, brought pursuant to 42 U.S.C. § 1983, was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008 recommended that Defendants motion to dismiss be granted in part and denied in part. Specifically, Judge Lowe recommended that Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be dismissed if, within thirty (30) days from the filing of this Final Order, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim. It was recommended that Plaintiff's remaining claims be dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation, essentially raising the same arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Lowe for the reasons stated in the Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

## *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable Thomas J. McAvoy, Senior United States District Judge, for Report and Recommendation with regard to any dispositive motions filed, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, in his Complaint, Raymond Robles ("Plaintiff") alleges that three employees of the New York State Department of Correctional Services ("DOCS"), as well as DOCS itself, violated his rights under the Eighth and Fourteenth Amendments when they (1) required him to submit to a random urinalysis test when they knew he was taking a medication that would prevent him from providing a urine sample, and (2) charged, convicted, and punished him with eighty-seven days in a Special Housing Unit for refusing to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31]

However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem

with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." [49]

## III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any "*person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." " [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

*7 For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine

## Sample Given Their Knowledge of His Medications and/or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

## D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 16959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

## E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation,

but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report; (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

*10 Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by *the Constitution and laws,* shall be liable to the party injured ....“ 42 U.S.C. § 1983 [emphasis added]. The term “the Constitution and laws” refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is “merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion,” which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way “issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint”-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED* **in part** and *DENIED* **in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be *DISMISSED* if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be *DISMISSED* **with prejudice,** and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

---

Footnotes

30   *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at \*1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1   *See, infra,* note 41 of this Report-Recommendation (citing cases).

2   (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27    *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6),

that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28    *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29    *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31    *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33    *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz.* *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

**36**    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

**37**    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

**38**    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

**39**    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**40**    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

**41**    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

**42**    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

**43**    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8 ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 4 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he

is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19,

2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.*" ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States.*" ) [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2016 Thomson Reuters. No claim to original U.S. Government Works.    15

KeyCite Yellow Flag - Negative Treatment

Distinguished by  Tirado v. Shutt,   S.D.N.Y.,   February 23, 2015

2005 WL 1026551
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Andre SMITH, Plaintiff,

v.

THE CITY OF NEW YORK, Captain Kennedy
# 425, Corrections Officer Bennett #
12929, Warden Mark Farsi, Defendants.

No. 03 Civ. 7576(NRB).
|
May 3, 2005.

**Attorneys and Law Firms**

Andre Smith, Southport Correctional Facility, Pine City, NY,
Plaintiff pro se.

Michael Chestnov, Assistant Corporation Counsel, New
York, NY, for Defendants.

MEMORANDUM AND ORDER

BUCHWALD, J.

 **\*1**  Plaintiff Andre Smith, presently incarcerated at the
Southport Correctional Facility in Pine City, New York,
brings this action *pro se* under  42 U.S.C. § 1983
against the City of New York, Captain Anthony Kennedy
("Captain Kennedy"), Corrections Officer Dwayne Bennett
("C.O.Bennett"), and Warden Mark Farsi ("Warden Farsi").
Plaintiff claims that defendants destroyed his personal
property and legal papers in retaliation for his filing a federal
lawsuit against another corrections officer, thereby interfering
with his right of access to the courts and depriving him
of his property without due process. Plaintiff brings suit
under  42 U.S.C. § 1983 seeking compensatory and punitive
damages for violations of his First, Fourth, and Fourteenth
Amendments constitutional rights.

Plaintiff filed his initial complaint against defendants on
July 11, 2003, and an amended complaint ("Am.Compl.") on
September 28, 2003. On October 20, 2004, defendants moved
for summary judgment pursuant to  Fed.R.Civ.P. 56. For
the reasons discussed below, defendants' motion is granted in part
and denied in part.

BACKGROUND [1]

At all times relevant to this complaint, plaintiff was
incarcerated in the Central Punitive Segregation Unit at
the Otis Bantum Correction Center on Rikers Island. On
the morning of July 8, 2003, plaintiff left Rikers Island
for arraignment in a criminal proceeding. *See* Pl.'s Dep. at
86. When he returned to his housing area ("2-South") at
approximately 6:00 p.m., plaintiff's cell and locker were open
and C.O. Bennett informed plaintiff that his property had been
moved from Cell 14 to Cell 15. *Id.* at 91, 93. Plaintiff claims
that prison regulations required him to be present when his
property was moved. When plaintiff asked why his property
was taken, C.O. Bennett replied with something to the effect
of, "I don't like you, I'm pretty sure you know why." *Id.* at
94-95.

After learning that C.O. Bennett had moved his belongings,
plaintiff demanded to speak with Captain Kennedy, C.O.
Bennett's supervisor. When Captain Kennedy arrived, he
allegedly told plaintiff "things happen, this is our house."
Am. Compl. ¶ 19. [2]  Eventually, plaintiff requested to
see the property removed from his cell and locker. Pl.'s
Dep. at 113-14. When C.O. Bennett retrieved plaintiff's
property, several items were missing. *Id.* at 118. In addition
to approximately nine hundred dollars worth of personal
property, [3]  plaintiff was missing a substantial amount of his
legal materials from his cell and locker. Am. Compl. ¶¶ 15-16.

At the time of the incident, plaintiff had one criminal case [4]
and two civil lawsuits pending in this district. Both of
plaintiff's civil lawsuits involved incidents at plaintiff's prison
facility, and both named Rikers Island corrections officers
as defendants. [5]  One of plaintiff's cases named a corrections
officer Jordan ("C.O.Jordan"), another corrections officer
assigned to plaintiff's housing unit, as a defendant. Plaintiff's
complaint alleges that C.O. Jordan and C.O. Bennett are
friends from working together in 2-South, and that C.O.
Bennett's actions were in retaliation for plaintiff naming C.O.
Jordan in the lawsuit. All of the corrections officers named by
plaintiff in his two lawsuits were served copies of plaintiff's
complaints by U.S. Marshals on July 8, 2003, the date of the
current incident. [6]

**\*2** The specific legal materials allegedly destroyed varied for each case. In his criminal case, plaintiff lost his copies of numerous motions drafted by his lawyer, along with his copy of his grand jury minutes. Pl.'s Dep. at 119. Through his lawyer, plaintiff was able to secure replacement copies of the legal documents within approximately three weeks, well before the case went to trial in November of 2003. *Id.* at 120, 204-05.

In the two civil cases, both filed on June 2, 2003, the plaintiff lost copies of his complaints, docket sheets, a *pro se* book, a jailhouse lawyer's manual, and different motions that he was "supposed to be looking over and studying because [he] was pro se." *Id.* at 121. In one case, No. 03 Civ. 3989, plaintiff was able to replace the destroyed documents within one week, but plaintiff complains that "instead of [the parties] settling the case at a specific time, [they] had to wait." *Id.* at 123-24. In the other case, No. 03 Civ. 3979, plaintiff allegedly lost copies of various documents sent by defendants' counsel. *See id.* at 124. Plaintiff does not elaborate how the loss has impacted that case, and concedes that he is not certain that he even possessed these documents on July 8, 2003, the date of the alleged incident. *See id.* at 128. As of the date of this opinion, case No. 03 Civ. 3979 remains pending before Chief Judge Mukasey.

DISCUSSION

Between his complaint and deposition testimony, plaintiff has alleged three constitutional claims under § 1983:(1) retaliation for the exercise of a constitutionally protected right; (2) denial of access to the courts; and (3) deprivation of property without due process. [7] These claims are discussed in turn below.

I. Standard for Summary Judgment

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477

U.S. 317 (1986). In reviewing the record, we must assess "the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944, 957 (2d Cir.1993).

In order to defeat such a motion, the nonmoving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, (1986). An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248 (internal quotation marks omitted). In addition, when deciding a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *See Nora Beverages v. Perrier Group of America, Inc.,* 269 F.3d 114, 123 (2d Cir.2001).

II. First Amendment Retaliation

**\*3** Plaintiff alleges that the defendants deprived him of property in retaliation for his filing federal lawsuits against other corrections officers at Rikers Island. Such actions are prohibited under the Constitution because "retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993).

Courts approach such retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official-even those not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). To survive summary judgment, a plaintiff alleging retaliation must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes,* 239 F.3d at 492. *See also Winthrow v. Donnelly,* 356 F.Supp.2d 273, 275 (W.D.N.Y.2005) (applying *Dawes* standard to summary judgment motion); *Contes v.. Porr,* 345 F.Supp.2d 372, 377-78 (S.D.N.Y.2004) (same). Since access to the courts is an established constitutional right, *Bounds v. Smith,* 430 U.S. 817, 821 (1977), we turn to the second and third prongs of the retaliation test.

Adverse action is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his

or her constitutional rights." *Dawes,* 239 F.3d at 493. What constitutes adverse action is context specific, and "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before [retaliatory] action taken against them is considered adverse." *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (2d Cir.1999). *De minimis* acts of retaliation do not chill the exercise of constitutional rights, and thus are insufficient to support a First Amendment retaliation claim. *See Davidson v. Chestnut,* 193 F.3d 144, 150-51 (2d Cir.1999).

The adverse action alleged by plaintiff involves the destruction of his legal papers and his personal property. This action was specifically directed against plaintiff, was in violation of prison regulations, and deprived him of a substantial amount of personal property. Such retaliatory destruction of a prisoner's personal property has previously been found substantial enough to qualify as an adverse action. *See Soto v. Iacavino,* No. 01 Civ. 5850, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003). In addition, the retaliatory conduct alleged here involves more than just the destruction of personal property. Instead, the conduct appears designed specifically to deter plaintiff's exercise of his constitutional rights through the destruction of his legal papers. Accordingly, we find that plaintiff has established an adverse action substantial enough to satisfy the second prong of the retaliation test. *See Salahuddin v. Mead,* No. 95 Civ. 8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002).

**\*4** For the third prong, plaintiff must establish a casual connection between the filing of his lawsuits and the retaliatory event. "The causal connection must be sufficient to support the inference 'that the speech played a substantial part' [in the adverse action]." *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000) (quoting *Ezekwo v. NYC Health & Hosps. Corps.,* 940 F.2d 775, 780-81 (2d Cir.1991). With respect to C.O. Bennett, plaintiff has provided direct evidence of the connection between the two events as well as a temporal connection. First, plaintiff alleges that C.O. Bennett's statement "I don't like you, I'm pretty sure you know why" is evidence that plaintiff's property was destroyed because of his lawsuit against C.O. Bennett's co-worker, C.O. Jordan. Taken alone, this statement might not provide sufficient evidence to survive summary judgment, as C.O. Bennett has provided an affidavit that he had no knowledge of plaintiff's lawsuit against Officer Jordan. *See* Defs.' Notice of Motion for Summ. J., Ex. F (Aff. of Dwayne Bennett). However, when this alleged statement is combined with circumstantial evidence regarding the timing of the incident,

plaintiff has established genuine issues of material fact regarding the reason for the destruction of his property. *See Colon v. Coughlin,* 58 F.3d 865, 872-73 (2d Cir.1995) ("In light of the combination of circumstantial and direct evidence of retaliation that [plaintiff] presents, we conclude that his claim, however valid it may ultimately prove to be, is sufficiently strong to defeat the motion for summary judgment.").

First, plaintiff has established that his property was destroyed on the very same day that the other Rikers Island corrections officers were served with the plaintiff's complaints in his civil suits. Defs.' Ex. C, D.[8] Although plaintiff had filed his lawsuits in early June, it is quite likely that July 8, 2003, is the first date that the individual corrections officers learned they had been named in plaintiff's lawsuits. Second, plaintiff alleges that C .O. Jordan had been working in 2-South immediately prior to C.O. Bennett's shift on the day of the incident, providing C.O. Jordan with an opportunity to discuss with C.O. Bennett plaintiff's lawsuits. Pl.'s Dep. at 95. In light of this highly suspicious timing and C.O. Bennett's alleged statement, a reasonable jury could find a causal connection between the destruction of plaintiff's property and plaintiff's protected action. Accordingly, defendants' motion for summary judgment on the retaliation claim is denied as to C.O. Bennett.

With respect to the other named individual defendants, Captain Kennedy and Warden Farsi, plaintiff must establish their personal involvement in the retaliation in order to sustain a claim under section 1983. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). The Second Circuit has described the personal involvement of a supervisory defendant that is required to sustain a claim under section 1983:

> **\*5** The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by

failing to act on information indicating
that unconstitutional acts were occurring

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff does not claim either defendant actually destroyed his property. Instead, plaintiff cites two statements by Captain Kennedy and Warden Farsi as evidence of their complicity in the retaliatory action, implying either that they directly ordered the retaliation, or at least were aware of it and failed to act as C.O. Bennett committed the constitutional violation. With respect to Captain Kennedy, plaintiff alleges in his complaint that Captain Kennedy told him "things happen, this is our house" after the incident. Am. Compl. ¶ 19. During his deposition, plaintiff further argued that "[Captain Kennedy] is a supervisor, he had-has to know everything that's going on," and reasoned it was "possible" that Captain Kennedy ordered the retaliation. Pl.'s Dep. at 134. As for Warden Farsi, plaintiff states that C.O. Bennett told plaintiff that Warden Farsi had said to C.O. Bennett "this inmate has been bringing too much attention to this jail. Eventually he's going to find out whose house this is." Am. Comp. ¶ 20. At his deposition, plaintiff further stated that "one of his officers is being sued; you would think that this warden would know about it." *Id.* at 163.

Plaintiff's evidence of both defendants personal involvement is minimal, and it is quite possible that plaintiff merely assumes Captain Kennedy's and Warden Farsi's involvement based on their respective positions within the prison. If so, plaintiff's claim against the defendants will ultimately be unsuccessful. *See Colon,* 58 F.3d at 874. When ruling on a summary judgment motion, however, the Court must view the evidence in the light most favorable to the nonmovant. Given the alleged statements as well as the circumstantial evidence, a reasonable jury could believe that the defendants were personally involved in the violation. Moreover, the defendants have not submitted any evidence that Captain Kennedy and Warden Farsi were not involved in the incident, failing to obtain affidavits from either regarding their alleged involvement. As we have stated before, "[t]he Court is not so sanguine about its ability to identify a plaintiff's false assertions that it will grant summary judgement to defendants who are unwilling to swear that they did not make the incriminating statements alleged." *Allah v. Greiner,* No. 03 Civ. 3789, 2004 WL 1713811, at * 5 (S.D . N.Y. July 29, 2004).

**\*6** Accordingly, the motion for summary judgment on plaintiff's retaliation claim against Captain Kennedy and Warden Farsi is also denied. If the defendants can present the Court with affidavits or other evidence refuting plaintiff's allegations, the Court will consider another summary judgment motion on these claims.

We caution plaintiff that our denial of defendants' summary judgment motion does not reflect an opinion about the ultimate merits of plaintiff's case. At trial, plaintiff will likely be faced with direct testimony from C.O. Bennett denying any knowledge of plaintiff's lawsuits, and from Captain Kennedy and Warden Farsi denying any personal involvement in the alleged retaliation.[9] A reasonable jury might chose to believe such testimony rather than the primarily circumstantial evidence of retaliation that plaintiff has provided so far. Unlike the present motion, plaintiff's evidence will not be viewed in its most favorable light at trial, and the burden will be on him to prove his case against the defendants. Weighed equally against defendants' evidence, plaintiff's retaliation claim might very well fail.

Whether or not plaintiff will be ultimately be successful in convincing a jury, however, is not for this Court to decide by motion. *Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 54 (2d Cir.1998) ("[S]ummary judgment may not be granted simply because the court believes the plaintiff will be unable to meet his or her burden of persuasion at trial."). Based on the current record viewed in the light most favorable to the plaintiff, a reasonable jury could find that the defendants retaliated against him for the filing of lawsuits against Rikers Island corrections officers. Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is denied.

**III. Denial of Access to the Courts**

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821 (1977). Prisoners must have a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825. The active interference of prison officials in the preparation or filing of legal documents may constitute denial of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 350 (1996). However, a prisoner must show an actual injury in order to sustain a claim for denial of access to the courts. *Id.* at 349. Actual injury occurs only when "the loss of [plaintiff's] materials prejudiced his ability to pursue a legal claim."

*Santiago v. N.Y.C. Dep't of Corr.,* No. 97 Civ. 9190, 2003 WL 1563773, at *5 (S.D.N.Y. Mar. 6, 2003); *see also Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003). Accordingly, to survive summary judgment, plaintiff must introduce evidence to establish that his ability to pursue his criminal and civil cases was hindered by the destruction of his legal papers. *See, e.g., Thomas v. Thomas,* No. 97 Civ. 4541, 2000 WL 307391, at *3 (S.D.N.Y. Mar. 23, 2000).

**A. The Criminal Case**
 *7 A prisoner who is represented by counsel on criminal charges suffers no actual injury to his access to the courts if he is able to present his legal claims through his attorney. *See Perez v. Metro. Corr. Ctr. Warden,* 5 F.Supp.2d 208, 211-12 (S.D.N.Y.1998); *Santiago,* 2003 WL 1563773, at *5; *Shepherd v. Fraisher,* No. 96 Civ. 3283, 1999 WL 713839, at *5 (S.D.N.Y. Sept. 14, 1999). Despite the loss of plaintiff's personal copies of his criminal papers, plaintiff's was afforded a full opportunity to pursue his criminal defense through his legal representative. Plaintiff's counsel was able to move on plaintiff's behalf and ultimately took plaintiff's case to trial in November of 2003. Pl.'s Dep. at 205. Plaintiff has not alleged that his attorney's ability to present his claims was fundamentally impeded by the loss of plaintiff's copies of the documents, just that it was an "inconvenience" to replace them. Pl.'s Dep. at 120. Accordingly, plaintiff had a reasonably adequate opportunity to present his claim via counsel, and has not established any actual impact on his defense in his criminal case from the destruction of his legal documents. *Perez,* 5 F.Supp.2d at 211.

**B. The Civil Cases**
With respect to his civil cases, plaintiff has also failed to establish any actual injury from the destruction of his legal papers. First, both cases were only in their initial stages when plaintiff's legal mail was destroyed. As discussed above, plaintiff's complaints had just been served on defendants on the day of the incident. As such, it is highly unlikely in either case that there were any documents, either from the court or from defendants, that required plaintiff's response or immediate consideration when his legal papers were destroyed. Second, plaintiff was able to replace most of the documents within a relatively short period, and has articulated nothing more than minor delays from the loss of the documents. In case No. 03 Civ. 3989, plaintiff received a favorable settlement, and claims only that the case might have settled earlier if not for the destruction of the documents. Plaintiff's other case alleging assault by a corrections officer,

No. 03 Civ. 3979, is still active and awaiting disposition nearly two years after the alleged incident.

The constitutional right of reasonable access to the courts is not violated by "[i]nterferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts." *Jermosen v. Coughlin,* No. 89 Civ. 1866, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995). Plaintiff has not established any injury to his legal claims from the destruction of his papers other than the alleged delays. Accordingly, there are no genuine issues of material fact regarding plaintiff's claim of denial of access to the courts, and we grant summary judgment to the defendants on this issue.

**IV. Deprivation of Property Without Due Process**
A quintessential aspect of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)). However, when the deprivation is based upon the "random and unauthorized" act of a state employee, an adequate post-deprivation remedy is sufficient to satisfy due process. *Parratt v. Taylor,* 451 U.S. 527, 541 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986); *see also Hudson v. Palmer,* 468 U.S. 517, 533 (1984) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of procedural requirements of Due Process Clause if a meaningful postdeprivation remedy for the loss is available"); *Hellenic American Neighborhood Action Comm. v. The City of New York,* 101 F.3d 877, 880 (2d Cir.1996). In *Parratt,* the Court recognized the impracticability of providing predeprivation hearings for tortious deprivations of property as "the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Id.* Accordingly, "[w]here a pre-deprivation hearing is impractical and a post-deprivation hearing meaningful, the State satisfies its constitutional obligations by providing the latter." *Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir.1984).

 *8 However, not all unauthorized deprivations of property can be remedied by postdeprivation hearings. The Second Circuit has distinguished between the random and unauthorized acts of low-level state employees and certain unauthorized deprivations caused by high-level state officials. *Dwyer v. Regan,* 777 F.2d 825, 832-33 (2d

Cir.1985). Recognizing that high-level policymakers have "final authority over the decision-making process," a high-ranking official's "ability to anticipate the actions that he intended [is] ... fairly attributable to the State itself." *Id.* at 833. As such, the acts of high-ranking officials, are not "random and unauthorized" withing the meaning of *Parratt* and *Hudson.* Because the State can reasonably be expected to foresee the actions of its high-ranking senior officials, due process will not be satisfied by postdeprivation remedies for their actions. *Id.*

In the instant case, it is difficult to imagine how the State could have anticipated defendants' actions, or what type of predeprivation hearing the State could have provided plaintiff. Moreover, plaintiff has offered no evidence that the actions was anything other than "random and unauthorized" within the meaning of *Parratt* and *Hudson.* Even assuming *arguendo* that Captain Kennedy and Warden Farsi were somehow involved in the deprivation, they are not the type of high-level policymakers whose actions are fully attributable to the State. *Mejia v. New York City Dep't of Corr.,* No. 96 Civ 2396, 1999 WL 138306, at *2 (E.D.N .Y. Mar. 5, 1999) (assistant warden and captain named in action do not qualify as policymakers). Accordingly, the availability of postdeprivation remedies is a defense to plaintiff's due process claim.

It is well established that New York provides inmates with the opportunity for a meaningful postdeprivation hearing by way of state law causes of action for "negligence, replevin, or conversion which could fully compensate [the plaintiff] for his alleged property loss ." *Cook v. City of New York,* 607 F.Supp. 702, 704 (S.D.N.Y.1985); *see also Dove v. City of New York,* No. 99 Civ. 3020, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000); *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). "[P]laintiff's failure to take advantage of the state [law] does not convert his cause of action into a constitutional due process claim." *Smith,* 901 F.Supp. at 647; *see also Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987) ("[S]ection 1983[can]not be made a vehicle for transforming mere civil tort claims into constitutional injuries.").

Because the deprivation of plaintiff's property was random and unauthorized and plaintiff had access to meaningful postdeprivation remedies, due process was not violated. As such, defendants are entitled to summary judgment on this claim.

V. Plaintiff's Claims Against the City of New York

**\*9** In order to hold a municipality liable as a "person" under section 1983, the plaintiff must "first prove the existence of a municipal policy or custom to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection-an 'affirmative link'-between the policy and the deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985).

Plaintiff has failed to establish that the alleged constitutional violations were a result of any city policy or practice. Plaintiff's complaint alleges only that the city "hired unqualified people and failed to adequately train them." Am. Compl. ¶ 25. First, plaintiff has offered no evidence to show that the City of New York has a policy of hiring unqualified individuals, nor has he identified any specific deficiencies in its supervision or training of its corrections officers. *See Board of the County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 409-10 (1997) (liability may attach if "violation of federal rights may be a highly predictable consequence of a [municipality's] failure [to train officers] ... to handle recurring situations"). Second, such a theory can only be the basis of section 1983 liability if the municipality's deficient conduct was the cause of plaintiff's injury. *See Morrissey v. City of New York,* 963 F.Supp. 270, 273-74 (S.D.N.Y.1997). As plaintiff has not established that any "identified deficiency in a city's [training or hiring] program" caused the his injury, *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391 (1989), we grant the defendants' motion for summary judgment on all of plaintiff's claim against the City of New York.

CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment is denied with respect to the plaintiff's First Amendment retaliation claim against C.O. Bennett, Captain Kennedy, and Warden Farsi, and granted with respect to the other claims against the individual defendants, and granted with respect to all claims against the City of New York.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1026551

Footnotes

1   This factual statement is based on the plaintiff's amended complaint and deposition testimony except where noted.

2   At his deposition, however, plaintiff testified that Captain Kennedy stated that he did not know where plaintiff's belongings were because C.O. Bennett had packed them. Pl.'s Dep. at 132.

3   The missing personal property included personal photographs, hygiene products, clothing, books and magazines. *See id.* at 192-93.

4   It is unclear from the record where the criminal case against plaintiff was filed.

5   Plaintiff's lawsuits concerned an alleged assault by a corrections officer, and an earlier incident of destruction of plaintiff's property by corrections officers. *See Smith v. Benston, et al.,* No. 03 Civ 3979(MBM) (S.D.N.Y. filed June 2, 2003)("No. 03 Civ 3979"); *Smith v. Robertson,* No. 03 Civ. 3989(KMW) (S.D.N.Y. Oct. 16, 2003)(order dismissing the action with prejudice due to settlement) ("No. 03 Civ 3989").

6   While it does not appear that the individual defendants were served directly by U.S. Marshals, other corrections officers at Rikers Island accepted service on their behalf on the morning of July 8, 2003. Defs.' Exs. C, D.

7   To the extent plaintiff makes a claim for violation of his Fourth Amendment rights, plaintiff's claim fails because he does not have a right to be free from searches and seizures of the property in his cell. *See Hudson v. Palmer,* 468 U.S. 517, 525-27, 528 n. 8 (1984) (; *Bell v. Wolfish,* 441 U.S. 520, 537 (1979)("Loss of freedom of choice and privacy are inherent incidents of confinement...."); *Salahuddin v. Mead,* No. 95 Civ. 8581, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002).

8   While a U.S. Marshal did not directly serve C.O. Jordan, the proof of service filed by plaintiff establishes that another corrections officer at Rikers Island, C.O. Houston, accepted service on C.O. Jordan's behalf on the morning of July 8, 2003.

9   Assuming that these defendants are not successful in any renewed motion for summary judgment they might make after submission of the required affidavits.

**End of Document**                                                  © 2016 Thomson Reuters. No claim to original U.S. Government Works.